UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION, a Utah Corporation,<br><br><br>Plaintiff,<br><br>vs.<br><br>OHIO PACIFIC TECH CORPORATION, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRATECH SYSTEMS, a Foreign Corporation,<br><br>Defendants.<br><br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant,<br>Cross-Claim Plaintiff,<br>Cross-Claim Defendant<br><br>vs.<br><br>ULTRATECH SYSTEMS, a Foreign Corporation,<br><br>Defendant,<br>Cross-Claim Defendant,<br>Cross-Claim Plaintiff, | CIVIL NO.  CV03-00706 HG-LEK<br><br>MEMORANDUM OF DEFENDANT OHIO PACIFIC TECH COPORATION, INC., fka GMP ASSOCIATES, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Trial Date:     April 11, 2006<br><br>(Caption Continued) |

OHIO PACIFIC TECH, INC., fka
GMP ASSOCIATES, INC., an Ohio
Corporation,

      Defendant,
      Cross-Claim Plaintiff
      Cross-Claim Defendant

      vs.

ULTRATECH SYSTEMS, a Foreign
Corporation

      Defendant,
      Cross-Claim Defendant,
         Cross-Claim
Plaintiff,

# January 9, 2006TABLE OF CONTENTS

Table of Contents ..................................................... ii

Table of Authorities ................................................iii

I.    STATEMENT OF CASE ............................................. 1

II.   STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO .... GENUINE
ISSUE TO BE TRIED................................................... 2

III.    ARGUMENT ...................................................... 6

  A.   SUMMARY JUDGMENT STANDARD ...................................6

  B.   GMP IS ENTITLED TO SUMMARY JUDGMENT ON BODELL'S
       CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL
       RELATIONS BECAUSE BODELL CANNOT SATISFY THE ELEMENTS OF
       THIS CLAIM.................................................7

  C.   GMP IS ENTITLED TO SUMMARY JUDGMENT ON ULTRATECH AND
       ESI'S CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL
       RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE BECAUSE
       ULTRATECH AND ESI CANNOT SATISFY THE ELEMENTS OF THIS
       CLAIM.................................................14

     1. GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims
        for Interference with Contractual
        Relations.................................................14

     2. GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims
        for Interference with Prospective Contractual
        Relations.................................................16

     3. GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims
        for Interference with Prospective Business
        Advantage...............................................17

  D.   ULTRATECH AND ESI'S CLAIMS OF NEGLIGENCE ARE BARRED
       BECAUSE GMP DID NOT OWE THEM A DUTY................................. 18

  E.   ULTRATECH AND ESI'S CLAIMS OF NEGLIGENCE ARE .. BARRED BY
THE ECONOMIC LOSS DOCTRINE........................................... 21

IV.   CONCLUSION ..................................................... 25

# TABLE OF AUTHORITIES

**Cases**

2314 Lincoln Park West Condo. Ass'n v. Mann, Gib, Ebel & Frazier, Ltd. ........... 25

Alvord & Swift v. Muller Constr. Co. ................................................................. 25

*Anderson v. Liberty Lobby* ............................................................................... 10

Bronster v. United States Steel Corporation, et al. .......................................... 24

Burgess, et al v. Arita, et al ............................................................................. 16

Carmania Corp. N.V. v. Hambrecht Terrell Int'l ............................................... 25

Chow v. Alston ................................................................................................. 10

City Express, Inc. v. Express Partners, et al. ................................................... 24

Commercial Indus. Constr., Inc. v. Anderson .................................................. 13

*Corp. v. Catrett* ................................................................................................ 9

Crow-Crimmins-Wolff & Munier v. County of Westchester .............................. 23

Debcon, Inc. v. City of Glasgow ...................................................................... 23

DeVoto v. Pacific Fidelity Life Ins. ................................................................... 11

Floor Craft Floor Coverings, Inc. v. Parma Cmty. Gen. Hosp. Ass'n ............... 25

Johnston v. KFC Nat'l Management Co. ........................................................... 22

Kecko Piping Co., Inc. v. Town of Monroe ....................................................... 13

Kutcher v. Zimmerman ..................................................................................... 11

Locricchio v. Legal Services Corp., et al. ......................................................... 11

Meridian Mortg. Inc. v. First Hawaiian Bank .................................................... 11

Meridian Mortg., Inc. v. First Hawaiian Bank ................................................... 11

Omega Env't, Inc. v. Gilbarco, Inc., .................................................................. 11

Palco Linings, Inc. v. Pavex, Inc .................................................................. 25

R. S. Noonan, Inc. v. School Dist., ................................................................ 13

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Tran. Co., Inc., ......................... 21

Sensenbrenner v. Rust, Orling & Neale, Architects, Inc ....................................... 25

Shaw v. Santa Monica Bank ...................................................................... 10

Underhill Construction Corp. v. New York Telephone Co. ................................... 23

Weinberg v. Mauch ................................................................................ 18

Zoby v. American Fidelity Co. .................................................................... 13

MEMORANDUM OF DEFENDANT OHIO PACIFIC TECH
COPORATION, INC.,
fka GMP ASSOCIATES, INC. IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

## I.    STATEMENT OF CASE

The Defendant Ohio Pacific Tech Corporation Inc., fka GMP
Associates, Inc. ("GMP"), respectfully submits this Memorandum in
support of its Motion for Summary Judgment pursuant to Rule 56
of the Federal Rules for Civil Procedure.    GMP is entitled to
summary judgment against the plaintiff, Bodell Construction
Company ("Bodell"), because the undisputed facts establish that
Bodell cannot prove essential elements of its claim for intentional
interference with contractual relations, its only cause of action
against GMP.    Similarly, GMP is entitled to summary judgment
against the defendants, UltraTech Systems, Inc. ("UltraTech") and
Engineered Systems, Inc. ("ESI") because the undisputed facts
establish that UltraTech and ESI cannot prove essential elements of
their claims for intentional interference with contractual relations
and prospective economic advantage and their claims for negligence
are barred by the lack of a duty owed to them by GMP and, as an
independent basis, the economic loss doctrine.

1

## II.  STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED[1]

This litigation arises from the design and construction of the Wahiawa Wastewater Treatment Plant (hereinafter "the Project"). The upgrades were required by a Consent Decree in March of 1998 between the City and County of Honolulu ("City") and the State of Hawaii, Department of Health which required that the quality of the wastewater entering into Wahiawa Reservoir be upgraded.  The consent decree imposed a strict deadline of March 2001 for completion of the Project and sanctions if the water did not meet a certain quality requirement.  Mansfield dec. at ¶ 3

In March of 1999, the City retained Brown and Caldwell to perform preliminary engineering on the Project.  Brown and Caldwell recommended a medium pressure ultraviolet disinfection system. Exhibit B

The City retained GMP as the engineering consultant for the design of the Project by contract dated, December 4, 1996. Mansfield dec. at ¶ 5.  The City retained GMP as the construction manager for the Project by subsequent contract dated, December

---

[1] The undisputed facts are set forth in the accompanying Statement of Undisputed Facts; they are summarized here for the court's convenience.

30, 1999. Under these contracts, GMP was required to determine the Project was constructed pursuant to the plans and specifications. Mansfield dec. at ¶ 6

On Brown and Caldwell's recommendation, and GMP's experience, GMP used a Trojan 4000 system, a horizontal lamp medium pressure system, as a basis for the design of the Project. Mansfield dec. at ¶ 8.  GMP prepared the plans and specifications for the Project ("Specifications") calling for the Trojan 4000 system or "equal."   Section 11376, 1.2B of the Specifications further provided that "[a]ny cost resulting from changes due to the use of an alternate system shall be borne by the Contractor." Mansfield dec. at ¶ 9.

Other ultraviolet disinfection system suppliers submitted pre-bid substitution requests to be considered as alternates to the Trojan system.  Mansfield dec. at ¶ 10.  ESI was the local supplier of UltraTech's disinfection system submitted an advertising brochure of its product ("Product") as a pre-bid substitution request to be considered as alternate and listed as the only variance from specifications "low pressure" instead of medium pressure. Mansfield dec. at ¶ 11.  The submittal however, did not contain any

specific information to show that the product complied with the Specifications.  GMP reviewed the UltraTech submittal and advised the City that the brochure did not contain sufficient information to allow it to determine that the Product complied with the Specifications or was suitable for the Project.  Mansfield dec. at ¶ 12.  UltraTech did not ask for any clarification of the Specifications. Exhibit I.

Despite GMP's advice, the City issued a letter on December 9, 1999 stating that the UltraTech Product was acceptable for "bidding purposes," but still had to meet the Specifications. Exhibit K.  This procedure is not provided for in the procurement law of the State of Hawaii.  GMP had been retained by the City to provide engineering services and construction management services on other contracts including separate wastewater treatment projects.  Mansfield dec. at ¶ 13.  The usual procedure for substitution in a project by the City requires approval of an alternate supplier in advance of the contractor submitting bids. Mansfield dec. at ¶ 14.

After the City opened bids on the Project, Bodell submitted the lowest bid and was retained as general contractor on the Project. Exhibit L.  Bodell used UltraTech as its ultraviolet disinfection

supplier when submitting its bid.  Exhibit M.  In its submission to Bodell, UltraTech provided <u>vertical</u> lamp orientation as opposed to the <u>horizontal</u> lamps required under the Specifications.  Exhibit N. Bodell forwarded a Purchase Order to UltraTech for the specified system, which UltraTech did not sign. Exhibit O; Exhibit P depo of Ellner pg 275-276; Exhibit Q depo of Humke pgs.149-150.

Cyril Hamada, a City engineer on this project, communicated with Greg Ellner of UltraTech, prior to and throughout the bid process.   Even before any of these substitutions. Mr. Ellner admitted to Mr. Hamada that the UltraTech Product could not meet the experience requirement of the Specifications.   Exhibit R. Nevertheless, UltraTech made three attempts to comply with Project Specifications.   GMP prepared a list of deficient items which UltraTech did not meet. Mansfield dec. at ¶ 15; Exhibits T, U, V. After failing to meet the horizontal lamp requirements, UltraTech tried unsuccessfully to substitute a vertical lamp arrangement. Exhibit V Mansfield dec. at ¶ 17.  The Project was on the verge of delay and out of concern that the strictly imposed deadline for completion would not be met, Bodell moved forward using the Trojan 4000 product.   Exhibit W; and Mansfield dec. at ¶ 18.

5

Bodell now seeks the additional costs it incurred as a result of using the Trojan 4000 product and UltraTech and ESI seek lost profits for not being able to supply the disinfection system.

### III.   ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed.R.Civ.P. 56(c).   Rule 56 motions are favored and are "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action' ....   Rule 56 must be construed with due regard not only for the rights of persons asserting claims [ ], but also for the rights of persons opposing such claims to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." _Celotex Corp. v. Catrett_, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   In order to defeat this Motion for Summary Judgment, the opposing parties must step forward with admissible and substantial

6

evidence that meet their burden of proof on each element of each claim pleaded in the Complaint. _Anderson v. Liberty Lobby_, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, there is no genuine issue of material fact which requires a trial, and neither Bodell, UltraTech nor ESI can meet its burden of proof, GMP's motion should be granted.

**B.  GMP IS ENTITLED TO SUMMARY JUDGMENT ON BODELL'S CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS BECAUSE BODELL CANNOT SATISFY THE  ELEMENTS OF THIS CLAIM.**

Bodell cannot establish the necessary elements of tortious interference with contractual relations.

"In order to establish a cause of action against a third party for intentional interference with a contractual right, it must be shown that the third party acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse, or, in other words, the willful violation of a known right." Chow v. Alston, 2 Haw. App. 480, 484, 634 P.2d 430 (1981) (internal citations omitted); see also Shaw v. Santa Monica Bank, 920 F. Supp. 1080, 1087 (D. Hawaii 1996); Kutcher v. Zimmerman, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (1998);

Meridian Mortg., Inc. v. First Hawaiian Bank,109 Hawai'i 35, 122
P.3d 1133 (Haw. App. 2005); see also 45 Am. Jur. 2d Interferences
§ 3 (1969).

"[T]ortious interference requires a state of mind or motive more
culpable than mere intent."  Locricchio v. Legal Services Corp., et
al., 833 F.2d 1352, 1358 (9th Cir. 1987) (citing DeVoto v. Pacific
Fidelity Life Ins., 618 F.2d 1340, 1347 (9th Cir.) cert.denied, 449
U.S. 869 (1980)).  It must be proven that GMP "either pursued an
improper objective of harming [UltraTech] or used wrongful means
that caused injury in fact."  Meridian Mortg. Inc. v. First Hawaiian
Bank, 109 Hawai'i 35, 48, 122 P.3d 1133, 1146 (Haw. App. 2005)
(citing Omega Env't, Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166 (9th
Cir. 1997)).

As a matter of law and undisputed fact, Bodell cannot
establish that GMP acted with legal malice.  To the contrary, GMP
acted with legal justification.  The City and GMP entered into a
contract on December 30, 1999 under which GMP was required to
perform construction management services for the Project.
Pursuant to those duties, GMP was required to "Assist in the
coordination of the work of the Contractor with the activities and

responsibilities of the City to complete the project in accordance with the City's contract objectives on cost, time and quality." Exhibit E  Special Provisions Section 2 A 1.  Further, GMP had a duty to the City to "Monitor the work of the Contractor to determine that the work was proceeding in accordance with the contract documents."  Exhibit E  Special Provisions Section 2 A 3.

The contract documents, through the Specifications, called for the System UV 4000TM medium pressure UV lamp system, as manufactured by Trojan Technologies, Inc., or equal.  In order to be considered an "equal," the alternative system must have been successfully used at a minimum of 5 other permanent wastewater locations in the United States, disinfecting a peak flow of 5 MGD or greater for at least one year.  Exhibit F Section 1.2 A  Mr. Ellner of UltraTech admitted that the UltraTech Product could not meet the experience requirement of the Specifications.  Exhibit R and Ellner depo Exhibit S pg.376-378 GMP denied the substitution of the UltraTech system because it could not meet the Project Specifications. Mansfield dec. at ¶ 15.  In other words, the work as proposed by the contractor admittedly would not meet the contract documents nor the City's objectives on quality.  Therefore, GMP did

not act with malice or other improper motive or means in rejecting the unsuitable alternative.  To the contrary, GMP was carrying out the affirmative duties and obligations it owed to the City.

An engineer acting in his professional capacity is bound by contract to guard the interests of its principal.  Thus, a party who acts within the scope of his obligations to the owner will not be liable for advising the owner pursuant to the contract.  <u>See</u>, <u>e.g.</u>, <u>Kecko Piping Co., Inc. v. Town of Monroe</u>, 374 A.2d 179 (Conn. 1977); <u>R. S. Noonan, Inc. v. School Dist.</u>, 162 A.2d 623 (Pa. 1960); <u>Zoby v. American Fidelity Co.</u>, 242 F.2d 76 (4th Cir. 1957); <u>Commercial Indus. Constr., Inc. v. Anderson</u>, 683 P.2d 378 (Colo. App. 1984).

> Interference is not wrongful if it is privileged...Privilege can be created by the relationship between the owner and the design professional...The privilege is granted to enable the owner to be advised honestly without the risk of the person giving advice being taken to court.

Justin Sweet, *Legal Aspects of Architecture, Engineering and the Construction Process*, § 27.10, pp. 536-37 (4th ed. West Publishing 1999).

Pursuant to its contract with the City, GMP had a duty to advise the City that UltraTech's system did not meet the

requirements of the Specifications. Therefore, GMP cannot be held liable for the City's refusal to accept the alternative system. In addition, the transmittal of this truthful information is considered privileged. Kutcher v. Zimmerman, 87 Haw. 394, 408-9, 957 P.2d 1076, 1090-91 (1998) (citing Restatement (Second) of Torts § 772 (a), "One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person . . . (a) truthful information, (b) or honest advice within the scope of a request for advice). GMP provided truthful information to the City that UltraTech's substitute system did not meet the Specifications and therefore GMP did not improperly interfere with Bodell's contractual relations with the City. In fact, UltraTech, admits that its system did not meet the Specifications. [Cite]

In Kecko Piping Co., the court held that a subcontractor failed to prove that an architect had tortiously interfered with the making of a contract between a subcontractor and general contractor regarding remodeling and renovation of a school building by the town where the architect enjoyed a qualified privilege to cause

another not to perform a contract; the architect was under obligation to advise the town as to the suitability of subcontractors for renovation, and the architect did not exceed the limits of the qualified privilege. *Supra*, at 182.

In R. S. Noonan, Inc. v. School Dist., the plaintiff contractor was the lowest bidder for a school construction project but the school board rejected all submitted bids on the advice of its architect, advertised for new bids, and thereafter awarded the contract to another company. 162 A.2d 623 (Pa. 1960). The plaintiff filed suit against, *inter alia*, the architect, claiming damages for malicious interference with the plaintiff's business relationship with the school district. Id. The court stated that the complaint showed on its face that the architect's actions in the matter were privileged. Accordingly, the court affirmed a lower court decree which sustained the architect's demurrer to the complaint. Id. at 626.

Zoby v. American Fidelity Co., involved an action for unlawful interference by the defendant surety companies with the plaintiff's prospective contract with the Navy for completing construction of a steam generator. 242 F.2d 76 (4th Cir. 1957). The court held that the interference by the surety companies in recommending to the

Navy that it accept another's bid for the contracts in lieu of the plaintiff's bid was privileged. Id. at 79-80.

In Commercial Indus. Constr., Inc. v. Anderson, the losing bidder on a construction project sued the architect, who had rejected all submitted bids, alleging tortious interference with contractual relations. 683 P.2d 378 (Colo. App. 1984). The trial court granted defendant's motion for summary judgment, holding that because the owner was privileged to reject all bids, the architect, who was acting solely as the owner's agent, was also privileged. Id. at 380.

Moreover, in the case of Burgess, et al v. Arita, et al, the Court found that an officer asserting his corporation's contractual right to withhold the corporation's consent to a sale of a leasehold cannot be deemed a tortious interference when the corporation is legally permitted to exercise the right to withhold consent. 5 Haw.App. 581, 594, 704 P.2d 930, 940 (1985). Just as the corporate officer was justified in withholding consent, GMP was justified in denying substitution of the UV system. Without evidence of an act of intentional inducement, which requires legal malice, a party has no basis for a claim of tortious interference with contractual relations.

Meridian Mortg. Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 122 P.3d 1133 (Haw. App. 2005). Bodell cannot prove the essential elements of intentional interference with contractual relations and therefore summary judgment should be entered in favor of GMP on Bodell's claim.

**C.    *GMP IS ENTITLED TO SUMMARY JUDGMENT ON ULTRATECH AND ESI'S CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE BECAUSE ULTRATECH AND ESI CANNOT SATISFY THE ELEMENTS OF THIS CLAIM.***

Count I of both UltraTech and ESI's Complaints against GMP allege "interference with contractual relations and prospective economic advantage." Under all possible interpretations of this ambiguous claim, be it (1) interference with contractual relations, (2) interference with prospective contractual relations or (3) interference with prospective business advantage, UltraTech and ESI cannot establish the requisite elements of the causes of action and the claim must be denied.

**1.    GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims for Interference with Contractual Relations.**

UltraTech and ESI's claims for interference with contractual relations fail for the same reasons that Bodell's claims fail. As an additional basis, the claims fail because a claim for interference with contractual relations requires, first and foremost, an underlying contract. Weinberg v. Mauch, 78 Haw. 40, 50, 890 P.2d 277, 287 (1995). In this case, there was no underlying contract because UltraTech failed to sign the Purchase Order which would have created a contract with Bodell. Exhibit O. This is supported by the testimony of Leroy Humke, an employee of Bodell, who testified that a purchase order forms an agreement. Exhibit Q depo of Humke pgs 149-150 Mr. Humke further testified in his deposition that he had no knowledge of Bodell receiving a signed purchase order from UltraTech. Exhibit Q depo of Humke pgs 149-150. Furthermore, Greg Ellner of Ultra Tech testified in his deposition that he did not recall signing the purchase order. Exhibit P depo of Ellner pgs 275-276. UltraTech's failure to sign the purchase order precludes any finding that a contract existed between Bodell and UltraTech. ESI, as a local supplier for UltraTech, similarly failed to enter into a contract with Bodell. GMP cannot, as a matter of law, be found responsible for intentionally

interfering with a contract between Bodell and UltraTech or ESI, which never existed. Therefore, UltraTech and ESI can not satisfy the elements of this claim.

**2. GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims for Interference with Prospective Contractual Relations.**

If UltraTech and ESI's claims are properly construed as claims for tortious interference with prospective contractual relations, summary judgment is nevertheless warranted. A claim for tortious interference with prospective contractual relations requires that:

> 1) a prospective contractual relationship existed between the plaintiff and a third party; 2) the defendant knew of this relationship; 3) the defendant intentionally interfered with the plaintiff's prospective contract; 4) the defendant acted without proper justification; 5) the defendant's interference caused the third party to fail to consummate the prospective contract with the plaintiff; and 6) the defendant's interference caused damages to the plaintiff.

Kutcher v. Zimmerman, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (1998).

To establish that GMP intentionally interfered with UltraTech and ESI's prospective contractual relationship without proper justification, UltraTech must demonstrate "intent" and "legal

16

malice" on the part of GMP.  Id.

As a matter of law and undisputed fact, there was no malice on the part of GMP.  As is more fully explained in Section B above, in rejecting the UltraTech Product, GMP was acting in accordance with its duties and requirements under its agreement with the City.  Therefore GMP was not acting with any form of legal malice and was, instead, acting with proper justification in carrying out its contractual duties.

### 3.    GMP is Entitled to Summary Judgment on UltraTech and ESI's Claims for  Interference with Prospective Business Advantage.

To sustain a claim for interference with prospective business advantage, a plaintiff must demonstrate:

> 1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; 2) knowledge of the relationship, advantage, or expectancy by the defendant; 3) a purposeful intent to interfere with the relationship, advantage, or expectancy; 4.) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and 5.) actual damages.

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Tran. Co., Inc., 91 Haw. 224, 258, 982 P.2d 853, 887 (1999) (emphasis and footnote in

17

original omitted).

As with their claims for interference with prospective contractual relations, UltraTech and ESI must further demonstrate the existence of some improper conduct on the part of GMP.  Id. (citing 2 Joseph D. Zamore, Business Torts § 12.01[2], at 12-5 to 12-6 (1999), which explains how the "primary objective of the tort of interference with prospective business advantage" is to permit competition for business among competitors "so long as the means used are not themselves *improper*.")(emphasis added).  As discussed above, GMP was acting pursuant to its contract with the City in rejecting the UltraTech Product.  Therefore, as a matter of law, GMP can not be found to have acted through any improper means.  Accordingly, UltraTech and ESI's claims for interference with prospective business advantage must be dismissed through summary judgment.

**D.   ULTRATECH AND ESI'S CLAIMS OF NEGLIGENCE ARE BARRED BECAUSE GMP DID NOT OWE THEM A DUTY**

UltraTech and ESI both allege at Count III of their respective complaints GMP acted negligently in the course of their

work on the Project.  These claims of negligence must fail because as a matter of law and undisputed fact, GMP did not owe a duty to either UltraTech or ESI.  "A necessary element in a negligence action is a duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks." Birmingham, et al v. Fodor's Travel Publ'ns, Inc., et al., 73 Haw. 359, 366, 833 P.2d 70, 75 (1992) (quoting Johnston v. KFC Nat'l Management Co., 71 Haw. 229, 232, 788 P.2d 159, 161 (1990)).

No contract existed between UltraTech, ESI and GMP which would create a duty owed by GMP to UltraTech and ESI. Further, there is no duty under the law extending from an engineer such as GMP to a party as attenuated as a potential supplier of equipment and its local representative such as UltraTech and ESI.

Numerous courts have found that an engineer owes no duty to other project participants that are even closer in relationship than a potential supplier, such as bidders and subcontractors.  In the Montana Supreme Court case, Debcon, Inc. v. City of Glasgow, the court held that the project engineer for the owner did not owe a duty to a failed bidder under a theory of

19

negligence and thus was not responsible for the bidder's lost profits. 305 Mont. 391, 401, 28 P.3d 478, 486 (2000).   The court determined the failed bidder to be a stranger to the contract between the engineer and the owner and thus the engineer owed no duty to the bidder.   Id.   Similarly, in Crow-Crimmins-Wolff & Munier v. County of Westchester, a New York appellate court stated that "without privity of contract, there is no duty owed to the subcontractor by the architect and the subcontractor is barred from bringing a direct suit for damages.   90 N.E.2d 785, 786, 455 N.Y.S.2d 390, 391 (2d Dep't 1982).  In Underhill Construction Corp. v. New York Telephone Co., the New York Court noted that "the sub-contractor ordinarily is not considered to be a third-party beneficiary of the prime contract unless otherwise indicated." N.Y.L.J. Sept. 15, 1976, at 11, col. 1, 3 (Sup. Ct. 1976), aff'd as modified, 56 A.D.2d 760, 391 N.Y.S.2d 1000 (1st Dep't 1977), aff'd without opinion, 44 N.Y.2d 666, 406 N.Y.S.2d 40, 376 N.E.2d 201 (1978). GMP contracted with the City and not UltraTech or ESI. Furthermore, UltraTech and ESI were not third-party beneficiaries under GMP's contract with the City.  Without a contract or third-party beneficiary status, GMP owed no duty to either UltraTech or

ESI.

## E.   ULTRATECH AND ESI'S CLAIMS OF NEGLIGENCE ARE BARRED BY THE ECONOMIC LOSS DOCTRINE

UltraTech and ESI are respectively seeking damages for extra cost and lost profits, which are purely economic damages not resulting from injury to person or property.  Thus, their claims for negligence against GMP are barred by the economic loss rule.  "The economic loss rule bars recovery in tort for purely economic loss." City Express, Inc. v. Express Partners, et al., 87 Haw. 466, 469, 959 P.2d 836, 839 (1998).  Hawaii has adopted the economic loss doctrine "insofar as it applies to claims for relief based on a product liability or negligent design and/or manufacture theory."  Bronster v. United States Steel Corporation, et al., 82 Haw. 32, 40, 919 P.2d 294, 303 (1996).

The overwhelming majority of other jurisdictions preclude recovery of purely economic losses for claims against design professionals grounded in tort.  See, e.g., Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269 (M.D. Pa. 1990) (dismissing claim against architect/engineer by subcontractor for purely economic loss dismissed on summary judgment); Carmania Corp. N.V. v.

Hambrecht Terrell Int'l, 705 F. Supp. 936, 938-939 (S.D.N.Y. 1988) (dismissing negligence claims brought by owner against architect where owner sought solely economic loss); 2314 Lincoln Park West Condo. Ass'n v. Mann, Gib, Ebel & Frazier, Ltd., 555 N.E.2d 346, 348-353 (Ill. 1990) (barring condominium owners from bringing negligence claim for economic loss against architect); Alvord & Swift v. Muller Constr. Co., 391 N.Y.S.2d 1012 (1976) (applying the economic loss rule to subcontractor plaintiffs who brought economic loss claims in tort against the Owner's architect who was not in privity with the subcontractors); Floor Craft Floor Coverings, Inc. v. Parma Cmty. Gen. Hosp. Ass'n, 560 N.E.2d 206, 208-212 (Ohio 1990) (affirming dismissal of  negligence claim by General Contractor seeking recovery against architect for purely economic loss); Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988).

　　　　The Palco Linings case provides the most thorough analysis of the economic loss doctrine in the construction setting and demonstrates the doctrine's applicability to this action.  755 F. Supp. 1269.  In Palco Linings, a subcontractor on a construction project sued, among others, the engineer (hereinafter the "design

professional") for negligence with respect to the project.  The design professional moved for summary judgment on the grounds that the economic loss rule, as a matter of law, barred recovery for increased costs of construction and delay damages caused by allegedly deficient services provided by the design professional. Id. at 1270.

The Palco Linings court followed the "majority of the courts in the United States," including the United States Supreme Court, and recognized the economic loss rule in the context of a construction dispute.    Id. at 1271. The court found that the economic loss doctrine was grounded on lack of privity; in other words, if a party, like UltraTech and ESI, sues a design professional, like GMP, for non-personal injury and non-property loss, the absence of a contract between them warrants application of the economic loss bar to recovery.  Id. at 1272.  The court relied on, among other things, the Restatement (Second) of Torts, § 552(B)(2), the comment to which provides that mere negligent conduct of one in the position of GMP does not give rise to liability. Furthermore, the court in Palco Linings described the issue in terms of lack of privity and duty: a design professional like GMP owes no duty to one like UltraTech and ESI to avoid pure economic

loss. <u>Id.</u> at 1277.  As the court stated:

> When a construction design proves to be defective, the plaintiff stands to "experience increased costs in performing a service." Even assuming that defendant did negligently supervise, inspect or specify the installation of the liner to the reservoir, or water flow therein, defendant had no duty to plaintiff to avoid causing economic loss.

<u>Id.</u> (internal citation omitted).

Purely economic losses have been characterized as lost profits, consequential economic loss, including but not limited to, lost overhead, clean up costs, and repair costs, lost opportunities and damages paid to third parties as a result of a defendant's negligence.  Hnatt, <u>Purely Economic Loss: A Standard For Recovery</u>, 73 Iowa L. Rev. 1181, 1187 (1988).  UltraTech claims it has been denied the benefit of its bargain with Bodell and its reasonable expectation of economic advantage.  Likewise, ESI claims it has been denied the benefit of its bargain and its reasonable expectation of economic advantage as UltraTech's local supplier.  Thus, UltraTech and ESI are seeking recovery solely for economic damages, which by law, they are precluded from recovering.  <u>See</u> <u>Palco Linings</u>; <u>see also</u>, <u>City Express, Inc.</u> 87 Haw. 466 (purely economical damages are not recoverable in negligence).  The economic loss rule directly precludes

UltraTech and ESI's negligence claims against GMP, and accordingly summary judgment should be entered in favor of GMP on both claims.

## IV.  CONCLUSION

For the foregoing reasons, this Court must grant summary judgment in favor of the Defendant Ohio Pacific Tech Corporation Inc., fka GMP Associates, Inc. on the Bodell Construction Company's claim for intentional interference with contractual relations and UltraTech Systems, Inc.'s and Engineered Systems, Inc.'s claims for intentional interference with contractual relations and negligence. All claims are barred by as a matter of law, and GMP is entitled to judgment.

DATED:  Honolulu, Hawaii, ___January 9, 2006_____.

RICHARD C. SUTTON, JR.
Attorney for Defendant, Cross-
Claim Defendant, Cross-Claim
Plaintiff, OHIO PACIFIC TECH
CORPORATION fka GMP
ASSOCIATES, INC.