IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign corporation; JOHN DOES 1-50; DOE CORPORATIONS 1-50,<br><br>Defendants. | CIVIL NO. 03-00706 (JMS/LEK)<br><br>DECLARATION OF LEROY HUMKE |

## DECLARATION OF LEROY HUMKE

LEROY HUMKE, declares as follows

1. I have worked in the construction industry since 1976 and I am currently employed with Plaintiff BODELL CONSTRUCTION COMPANY ("Bodell") as the General Manager of its industrial projects including the City and County of Honolulu ("City") project that is the subject of this action and is known as, "Wahiawa Wastewater Treatment Plant Effluent Reuse & Wahiawa Reservoir Outfall Adjustment Job No. W10-99" (the "Project"). I make this declaration based on personal knowledge unless otherwise indicated.

2. Attached hereto as Exhibit "2" is a true and correct copy of excerpts of the General Instructions for Bidders for the Project that Bodell received from the City.

3. Attached hereto as Exhibit "4" is a true and correct copy of the December 6, 1999 Addendum No. 2 to the Contract Documents for the Project that Bodell received from the City.

4. Attached hereto as Exhibit "9" is a true and correct copy of a December 9, 1999 letter from James K. Honke, Chief Division of Infrastructure Design and Engineering, to Paul Scott, Engineered Systems, regarding the Project which was included in a December 13, 1999 fax to Bodell from Engineered Systems.

5. Attached hereto as Exhibit "10" is a true and correct copy of a December 13, 1999 fax that Bodell received from Engineered Systems, Inc., the manufacturer's representative in Hawaii for UltraTech Systems, Inc. ("UTS"), setting forth UTS' proposed scope of supply for the ultra violet disinfection system for the Project. On the first page is a handwritten note indicating that UTS' final bid price received over the telephone just prior to Bodell's bid submission was $267,500.

6. Attached hereto as Exhibit "11" is a true and correct copy of a December 14, 1999 fax that Bodell received from Mike Elhoff of Hawaii

Engineering Services, the manufacturer's representative for Trojan Technologies, Inc. ("Trojan") setting forth Trojan's proposed scope of supply for ultra violet disinfection system for the Project. On the last page is a handwritten note indicating Trojan's bid price received over the telephone just prior to Bodell's bid submission was $1,100,000.

7. The bid opening date for the Project was December 16, 1999. I was responsible for the final review and approval of Bodell's Proposal for the Project, a true and correct copy of excerpts of which are attached hereto as Exhibit "12."

8. Bid item 81 in Bodell's Proposal is the price bid by Bodell, $487,420, to supply and install the ultra violet disinfection system for the Project plus incidental accessories such as rubber mats, wier, etc. Bodell relied upon the City's December 9, 1999 letter (Exhibit "9") stating that UTS was approved "for bidding purposes only" to use the UTS price quote of $267,500 in calculating its bid price for this item, which includes the UTS supplied equipment plus certain other related items not included in the UTS proposed scope of supply.

9. It was my belief at the time I approved Bodell's Proposal for submission to the City, based upon my review of the City's December 9, 1999 approval letter (Exhibit "9"), that the City had determined that UTS was a qualified manufacturer of ultra violet disinfection equipment for the Project. I interpreted the phrase, "approved for bidding purposed only" to mean that Bodell still had to

submit a design from UTS for a system that could meet the performance requirements of the specification and could fit in the allotted space before receiving final approval for the specific UTS design submitted. I did not, however, believe that Bodell still had to establish UTS as a qualified manufacturer as this is what I believed the City had already done to its satisfaction and was simply confirming with its December 9, 1999 approval letter. This belief was bolstered by the fact that I was aware that the City had also approved a UTS system for installation at the Kailua Wastewater Treatment Plant, another City project upon which Bodell was the prime contractor, which was at that time in the process of being installed.

10. Bodell would not have used the UTS price quote in its bid if the City had not issued a pre-bid approval letter for UTS stating that UTS was approved for bidding purposes.

11. Shortly after the bid opening, I received a telephone call from Guy Inouye of the City who asked me which manufacturer Bodell had based its price for bid item 81 on, and I informed him it was UTS. He then asked whether Bodell would be able to supply the Trojan system for the same price, and I advised him that Bodell could not. He then asked if Bodell would be willing to delete bid item 81 from Bodell's eventual contract with City, reduce the Contract price accordingly, and handle the equipment purchase separately so that the Trojan

system could be acquired in lieu of the UTS system, to which I responded affirmatively.

12. Attached hereto as Exhibit "16" is a true and correct copy of a January 19, 2000 letter from Mark B. Bodell, Vice President of Bodell's Construction Operations to Guy Inouye, with enclosure. This letter constituted Bodell's response to the City's request for a breakdown of how Bodell's price for bid item 81 was calculated in order to determine the amount by which Bodell's Proposal could be reduced if bid item 81 were to be deleted.

13. For reasons that the City has never explained to me, and which I do not know, the City never followed through with its proposal to delete bid item 81 in order to allow the City to purchase the Trojan system in lieu of the UTS system.

14. Attached hereto as Exhibit "17" is a true and correct copy of the February 25, 2000 Contract between the City and Bodell.

15. Bodell subsequently made a number of submittals of a UTS designed system to the City and its construction manager, all of which were rejected by the City. The City then directed Bodell to supply a Trojan system.

16. Attached hereto as Exhibit "27" is a true and correct copy of the January 23, 2001 Bodell Purchase Order for the Trojan UV disinfection equipment that Bodell purchased and installed at the Project.

17. The above-referenced documents have been kept in the regular course of business under Bodell's custody and control in its files for the Wahiawa

Wastewater Treatment Plant, Job No. W10-99.

I declare, verify and certify that the foregoing is true and accurate to the best of my knowledge.

DATED: _____ Utah, Jan 9th, 2006.

LEROY HUMKE