# EXHIBIT 15

```
 1              UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF HAWAII

 3    ------------------------------------------

 4    BODELL CONSTRUCTION, a Utah Corporation,

 5           Plaintiff,

 6        vs.            Case No. 03-00706 HG-LEK

 7    OHIO PACIFIC TECH CORP., INC., fka

 8    GMP ASSOCIATES, INC., an Ohio Corp.;

 9    CITY AND COUNTY OF HONOLULU, et al.,

10           Defendants.

11    and related cross-claims.

12    ------------------------------------------

13

14

15              DEPOSITION OF CYRIL HAMADA

16

17    Taken on behalf of the Plaintiff at Cades Schutte, 1000

18    Bishop St., Suite 1200, Honolulu, Hawaii 96813,

19    commencing at 9:12 a.m., Tuesday, June 21, 2005,

20    pursuant to Notice.

21

22

23    BEFORE:    BARBARA ACOBA, CSR No. 412, RPR

24               Notary Public, State of Hawaii

25
```

```
 1   State of Hawaii?
 2        A.   I wouldn't know.
 3        Q.   Did you perform any investigation to ascertain
 4   whether or not the Lanai system was meeting
 5   specifications?
 6        A.   No, I did not.
 7        Q.   Were you also aware that Ultratech had been
 8   installing a system at Kailua?
 9        A.   I found that out later, yes.
10        Q.   And did you consider Ultratech, as of
11   December 1999, to be a fly-by-night operation or rather
12   an operation that was operating and installing and
13   maintaining equipment in the State of Hawaii?
14             MR. SUTTON:  Object to the form of the
15   question.
16             MR. OGOMORI:  I'll join in that objection.
17             THE WITNESS:  I would not have characterized
18   them as a fly-by-night operation.
19   BY MR. BIALEK:
20        Q.   In fact, didn't you believe that Ultratech de
21   facto met the experience clause?
22             MR. SUTTON:  Object to the form.
23             MR. OGOMORI:  I'll join in that objection.
24             THE WITNESS:  Technically speaking, he did not
25   meet the horizontal requirements.
```

```
 1   BY MR. BIALEK:
 2       Q.   Well, was it your belief that Ultratech de
 3   facto met the experience clause?
 4           MR. POTTENGER:  Asked and answered.
 5           MR. SUTTON:  Objection.
 6           MR. OGOMORI:  I'll join in that objection.
 7   BY MR. BIALEK:
 8       Q.   You can answer.
 9       A.   I would say yes.
10       Q.   Was it your belief that since the City had
11   already accepted an Ultratech system at one of its
12   facilities, that it fulfilled the intent of the
13   experience clause?
14           MR. SUTTON:  Object to the form.
15           MR. OGOMORI:  I'll join in that objection.
16           THE WITNESS:  It did not fulfill the experience
17   clause as written.
18   BY MR. BIALEK:
19       Q.   But did it meet the intent of the experience
20   clause?
21           MR. POTTENGER:  Object to the form.
22           MR. OGOMORI:  Object to the form.
23           THE WITNESS:  I don't understand what you mean
24   by intent.
25
```

```
 1  BY MR. BIALEK:
 2      Q.   Well, did you ever advise anyone that because
 3  the City and County of Honolulu had already accepted the
 4  Ultratech system for another installation on -- in
 5  Hawaii, that it met the experience clause or that it was
 6  a moot point?
 7      A.   I would say that would be a fair statement.
 8      Q.   Was that part of your decision to approve the
 9  substitution request?
10      A.   Can you restate the question, please.
11      Q.   Was the fact that the City had already approved
12  another waste water facility to use the Ultratech system
13  a factor in approving the substitution request?
14      A.   It was a factor, yes.
15      Q.   What other factors did you take into
16  consideration in approving the substitution request?
17      A.   Basically was the Title 22 requirements and the
18  space requirements.
19      Q.   So you had believed that the Ultratech system
20  met Title 22, correct?
21      A.   Yes.
22      Q.   And you believed that it would fit into the
23  allocated space, correct?
24      A.   I wasn't so sure about that, let's put it that
25  way.
```

1  Q.  But you approved it anyway?
2  A.  Yes.
3  Q.  And you believed that since the City had
4  already approved the Ultratech equipment for Kailua,
5  that also went into your --
6  A.  That was a factor, yes.
7  Q.  And then you also believed that there was an
8  economic benefit to the City?
9  A.  I was -- I thought there was an economic
10 benefit, yes.
11 Q.  Do you know what the difference in price was
12 between the Ultratech system and the Trojan system?
13 A.  After the bid opening?
14 Q.  Correct.
15 A.  I didn't investigate after the bid opening.
16 Q.  Did you ever learn what the difference in price
17 was between the Ultratech equipment and the Trojan
18 equipment?
19 A.  I heard something to the effect, yeah.
20 Q.  Who did you hear it from?
21        MR. OGOMORI:  Objection to the extent it calls
22 for attorney-client privilege.
23 BY MR. BIALEK:
24 Q.  Other than your attorneys and your joint
25 defendants, did you hear it from anybody else?

1  A.  I can't recall.  I cannot recall at this time.
2  Q.  Prior to the issuance of the specifications --
3  A.  Yes.
4  Q.  -- did GMP ever submit a basis for the design,
5  including any calculations showing that the Trojan
6  system would meet specifications?
7  A.  For the Wahiawa job?
8  Q.  Correct.
9  A.  No, they did not.
10  Q.  Prior to the acceptance of the Trojan system
11  that Bodell ultimately installed, did GMP ever submit
12  any calculations to the City demonstrating that the
13  Trojan system would meet specifications?
14          MR. SUTTON:  Object to the form of the
15  question.
16          THE WITNESS:  Can you repeat the question,
17  please.
18          (Reporter read back)
19          THE WITNESS:  To the best of my knowledge, no,
20  they did not.
21  BY MR. BIALEK:
22  Q.  Can you look at Stone Exhibit 2, please.
23  A.  Yes.
24  Q.  You've seen this document before, correct?
25  A.  I vaguely recall it, yes.