Document ID: 396192v2_GGU  

Of Counsel:
KOBAYASHI, SUGITA & GODA
BERT T. KOBAYASHI, JR.     659-0
RONALD T. OGOMORI     5850-0
GEORGE GUSMAN     6914-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax: (808) 539-8799
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
  CITY AND COUNTY OF HONOLULU

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah Corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign Corporation,<br><br>      Defendant. | CIVIL NO. CV03-00706 HG-LEK (Contract)<br><br>MEMORANDUM IN SUPORT OF MOTION |

_____
*Caption continued*

Document ID: 396192v2_GGU





CITY AND COUNTY OF HONOLULU, )
)
      Defendant, Third-Party )
      Plaintiff, and Counterclaim )
      Defendant, )
)
  vs. )
)
ENGINEERED SYSTEMS, INC., )
)
      Third-Party Defendant, )
      Counterclaim Plaintiff and )
      Cross-Claim Plaintiff. )
)
CITY AND COUNTY OF HONOLULU, )
)
      Defendant, Cross-Claim )
      Plaintiff/Cross-Claim )
      Defendant, )
)
  vs. )
)
ULTRA TECH SYSTEMS, INC., a )
foreign Corporation, )
)
      Defendant, Cross-Claim )
      Defendant/Cross-Claim )
      Plaintiff and Cross-Claim )
      Plaintiff/Defendant, )
)
  vs. )
)
OHIO PACIFIC TECH, INC., fka )
GMP ASSOCIATES, INC., an Ohio )
Corporation )
)
      Cross-Claim )
      Defendant/Plaintiff. )
)

2




## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................... 3

II. UNDISPUTED FACTS ............................................................. 5

III. RELEVANT LAW AND ARGUMENT................................. 12

    A. UTS/ESI'S CLAIM FOR INTERFERENCE WITH
    CONTRACTUAL RELATIONS AND PROSPECTIVE
    ECONOMIC ADVANTAGE FAIL AS A MATTER OF LAW. 12

        1. UTS/ESI CANNOT SATISFY THE REQUIREMENTS
        OF A INTERFERENCE WITH CONTRACTUAL
        RELATIONS CLAIM AND/OR SUCH CLAIM IS
        BARRED BY PRIVILEGE ............................................... 12

            a. THERE WAS NO CONTRACT BETWEEN
            BODELL AND UTS ............................................... 13

            b. THE CITY'S ACTIONS WERE PRIVILEGED .... 13

        2. UTS CANNOT SATISFY THE REQUIREMENTS OF
        AN INTERFERENCE WITH PROSPECTIVE
        ECONOMIC ADVANTAGE CLAIM AND/OR SUCH
        CLAIM IS BARRED BY PRIVILEGE............................. 15

            a. THE CITY DID NOT PURPOSEFULLY
            INTERFERE WITH ANY SUCH PROSPECTIVE
            ECONOMIC ADVANTAGE ................................... 16

    B. THERE IS NO EVIDENCE TO SUPPORT A
    MISREPRESENTATION CLAIM AGAINST THE CITY ....... 18

    C. THE NEGLIGENCE CLAIM ASSERTED BY UTS/ESI
    FAILS AS MATTER OF LAW ..................................................... 19

        1. NEITHER UTS NOR ESI HAVE STANDING TO
        ASSERT A NEGLIGENCE CLAIM AGAINST THE

CITY BASED UPON THE DRAFTING, PUBLISHING, DISTRIBUTING, OR INTERPRETATION OF THE PROJECT SPECIFICATIONS ........................................... 19

    2.    THE CITY CANNOT BE LIABLE FOR ANY IMPROPER ACTIONS COMMITTED GMP IN REGARD TO DRAFTING, PUBLISHING, DISTRIBUTING, AND/OR INTERPRETATION OF THE PROJECT SPECIFICATIONS ................................. 23

IV.    CONCLUSION ...................................................................... 25



## TABLE OF AUTHORITIES

Page

FEDERAL CASES

Locricchio v. Legal Services Corp., 833 F.2d 1352, 1358 (9th Cir.1987) ....... 16

Malta Const. Co. v. Henningson, Durham & Richardson, 694 F.Supp. 902,
    906 fn 5 (N.D.Ga. 1988) ............................................................... 24

Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1041 (Cal. 1991).............. 18

Omega Environmental, Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166
    (9th Cir.1997)................................................................................ 16

STATE CASES

Bowers v. Alamo Rent-A-Car, Inc., 88 Hawai'i 274, 277, 965 P.2d 1274,
    1277 (1998)................................................................................. 22

Mustin v. Barnes, 77 S.E.2d 94 (1953).......................................... 24

Pele Defense Fund v. Puna Geothermal Venture,
    9 Haw.App. 143, 151, 827 P.2d 1149, 1154 (1992) .................................. 23

Robert's Hawaii School Bus v. Laupahoehoe Transportation Co., Inc.,
    91 Hawaii 224, 258, 982 P.2d 853, 887 (1999) ............................... 15, 17

Schaffer v. Earl Thacker Co., Ltd., 6 Haw. App. 188, 716 P.2d 163 (1986)....18, 19

State v. Harada, 98 Hawai'i 18, 42, 41 P.3d 174, 198 (2002)........................ 21

State v. Kaakimaka, 84 Hawai'i 280, 291, 933 P.2d 617, 628 (1997) .............. 21, 22

State v. Mahoe, 89 Hawai'i 284, 972 P.2d 287 (1998)................................ 22, 23

State v. Nizam, 7 Haw.App. 402, 407, 771 P.2d 899, 903 (1989) ................. 20

State v. Savitz, 97 Hawai'i 440, 447, 39 P.3d 567, 574 (2002) ..................... 21

Systems Contractors Corp. v. Williams and Associates,
    769 So.2d 777 (La.App. 5 Cir. 2000) ......................................... 24, 25

Weinberg v. Mauch, 78 Hawaii 40, 50, 890 P.2d 277, 287 (Sup. Ct. 1995) ....13



Wyatt v. Ruck Construction, Inc., 571 P.2d 683, 117 Ariz. 186
   (Ariz. App. 1977) ........................................................................ 13, 14,
                                                                            15, 18


STATE STATUTES

HRS § 103D-104 ......................................................................... 21

HRS § 103D-703 ......................................................................... 20, 22, 23

HRS § 103D-704 ......................................................................... 20

HRS §§ 103D-703 ....................................................................... 20

Document ID: 396192v2_GGU

 

## MEMORANDUM IN SUPPORT OF MOTION

## I.    **INTRODUCTION**

COMES NOW, Defendant, Cross-Claim Plaintiff/Defendant and Third-

Party Plaintiff/Counterclaim Defendant City and County of Honolulu ("City") and

submits this Motion for Summary Judgment in regard to the claims raised by

Cross-Claim Plaintiff/Defendant UltraTech System, Inc. ("UTS") and Third-Party

Defendant/Counterclaim Plaintiff Engineered Systems, Inc. ("ESI") against the

City.  The claims raised by UTS and ESI against the City are identical.

This case arises out of the design and construction of improvements to the

Wahiawa Wastewater Treatment Plant ("Project") that were required by a Consent

Decree executed by the City and the State of Hawaii.  More specifically, the case

involves a substitution request related to the ultraviolet disinfection system ("UV

System") that was to be installed as part of the Project.  Section 11376 of the

Project's specifications (hereinafter referred to as "UV System Specifications")

prepared by the City's designer, Defendant and Cross-Claim Plaintiff/Defendant

Ohio Pacific Tech, Inc., fka GMP Associates, Inc. ("GMP"), called for the

installation of the Trojan 4000 System or something of "equal" quality.  The City

issued a conditional approval of a UV system manufactured by UltraTech Systems,

Inc. ("UTS System") for "bidding purposes only" with the caveat that the UTS

System needed to satisfy all of the requirements contained in the Project's contract

Document ID: 396192v2_GGU



documents ("Project Contract").  GMP thereafter advised the City that the UTS

System did not meet all of the requirements contained in the Project Contract.  As

a result, the City rejected Bodell's request to utilize the UTS System for the

Project.

By way of the instant Motion, the City is seeking a dismissal of UTS/ESI's

claims against the City.  First, the City respectfully asserts that UTS/ESI's claims

for interference with contractual and/or business opportunity fail as matter of law.

Specifically, since there was no contract between Bodell and UTS/ESI, the

interference with contractual relations claim fails.  Moreover, as there is no

evidence that the City acted improperly or with any intent to interfere with any

potential contractual or business relationship between Bodell and UTS/ESI, such

claims fail as a matter of law.  Finally, even if UTS/ESI are able to satisfy the

*prima facie* elements of an interference claim, the City asserts that its actions were

privileged as the City was seeking to ensure not only the successful performance of

its contract with Bodell, but also meeting the requirements contained in the

Consent Decree between the City and State of Hawaii to avoid stiff monetary fines

for noncompliance.

Second, in regard to UTS/ESI's misrepresentation claim, such claim fails as

a matter of law.  Specifically, UTS/ESI misrepresentation claim is based upon the

City's conditional pre-approval of the UTS Ultraviolet Disinfection System ("UTS

Document ID: 396192v2_GGU



System"), which was accomplished by way of a December 9, 1999 letter from the City to ESI. However, Greg Ellner, the president of UTS, has testified that he understood that this pre-approval letter was conditional and that the UTS System was still required to satisfy the requirements of the Project Contract. With no evidence of a false statement, this misrepresentation claim must fail.

Finally, UTS/ESI have asserted a negligence claim against the City based upon the drafting, publishing, distributing, and/or interpretation of the UV System Specifications. This claim fails as UTS/ESI do not have standing to assert a claim against the City based upon the UV System Specifications. Moreover, as the City retained an independent contractor to both prepare the UV System Specifications and interpret such specifications, the City cannot be liable for any wrongdoing committed by such independent contractor if in fact there was a problem with the UV System Specifications.

## II.   UNDISPUTED FACTS

A.   This case arises out of a City construction project related to the Wahiawa Waste Water Treatment Plant ("Wahiawa WWTP") and identified as Wahiawa WWTP Effluent Reuse and Wahiawa Reservoir Outfall Adjustment, Job No. W10-99, Contract No. F-97110 ("Project"). See Bodell's First Amended Complaint (hereinafter "Complaint"), filed on February 17, 2004, page 2, paragraph 1.

Document ID: 396192v2_GGU

B.     The Project provided for the construction of upgrades and/or
improvements to the Wahiawa WWTP, including the construction of an open
channel gravity flow, ultraviolet disinfection system ("UV System") complete with
a cleaning system, lamps, and electronic ballasts.  See Complaint, page 2,
paragraph 2.

C.     The Project was mandated by a Consent Decree entered into between
the City and the State of Hawaii ("State") as a result of a lawsuit filed by the State
against the City in Civil No. 94-1896-05.  See Exhibit "A" attached to the City's
Concise Statement of Facts ("Statement").

D.     Pursuant to the terms of the Consent Decree, the City was required to
complete the upgrades and/or improvements to the Wahiawa WWTP to allow the
City to reclaim all of the wastewater from the Wahiawa WWTP no later than three
years after the effective date of the Consent Decree.  As the effective date of the
Consent Decree was March 2, 1998, the improvements were required to have been
completed by March 2, 2001.  Id. This deadline was subsequently extended to
August 31, 2001.  Id.

E.     Section 12 of the Consent Decree provided stipulated penalties to be
assessed against the City if it did not meet the deadline in making the required
improvements to the Wahiawa WWTP.  More specifically, Section 12, entitled
"Stipulated Penalties," provided as follows:

Document ID: 396192v2_GGU  

A.    If the City misses the deadline specified in Section 8.A, or any extension of that deadline approved by the Court, the City shall pay the following stipulated penalty, which shall be deposited according to HRS Sec. 342D-39:

1.    $600,000, a one time lump sum penalty, and;

2.    A daily penalty. Measured from the date the delay beings, the penalty per day during each month of delay shall be:

$1,000        first six months of delay

$2,000        seventh and eight months of delay

$3,000        ninth and tenth months of delay

$4,000        eleventh and twelfth months of delay

$5,000        thirteenth month of delay and thereafter.

Id.

F.    The City retained Defendant, Cross-Claim Plaintiff/Defendant Ohio Pacific Tech, Inc. fka GMP Associates, Inc. ("GMP") to act as the City's engineering design consultant for the Project. GMP's duties included the preparation of the plans and specifications for the Project. Pursuant to the terms of the Consent Decree, the specifications for the Project were drafted to be consistent with the requirements of the Consent Decree. See Exhibit "B" to the Statement.

G.    The UV System Specifications called for the installation of the Trojan 4000 System manufactured by Trojan Technologies, Inc. ("Trojan System") or something "equal" to the Trojan System. See Exhibit "C" to the Statement.

7

Document ID: 396192v2_GGU



H.     Part 2.4(A)(3) of the UV System Specifications required that the "[t]he major axis of the UV lamps shall be horizontal and parallel to flow. UV systems that operate with lamps perpendicular to the flow are unacceptable." Id.

I.     Pursuant to Part 1.2(A) of the UV System Specifications, the manufacturer of the proposed UV System was required to submit documentation of "at least five (5) permanent wastewater installations using this equipment type, in North America, disinfecting a peak flow of 5 [million gallons per day] or greater for at least one (1) years." Id.

J.     Part 1.2(A) of the UV Systems Specifications also required that the proposed UV System be tested and certified to meet California Title 22 or Hawaii R-1 quality water standards. Id.

K.     Part 2.3(B) of the UV System Specifications provided express performance requirements for the UV System, including a requirement that the UV System shall produce an effluent that "does not exceed 2.2/100mL FC, based on a 7-day moving median." Id.

L.     In November of 1999, the City solicited bids for the Project. See Complaint, pp. 3.

M.     Included in the City bid package was Section 1.13 of the Project's General Instructions to Bidders ("General Instructions"), which set forth among other things the requirements for the substitution of a piece of equipment that was

Document ID: 396192v2_GGU

specified by name in the UV System Specifications. <u>See</u> Exhibit "D" to the

Statement.  Specifically, Section 1.13 of the General Instructions stated in relevant

part as follows:

> (a) Where the invitation for bids specifies one or more manufacturer's brand names or makes or materials, devices, equipment or system as indicating a quality, style, appearance, or performance, or method of construction, the bidder's bid shall be based on either one of the specified brands, makes, or method, or an alternate brand, make, or method which has **expressly** been found to be equal or better by the **Officer-in-Charge** . . . .

(Emphasis added).

N.  In a letter dated November 18, 1999, Third Party Plaintiff/Defendant

Engineered System, Inc. ("ESI") (which was acting as the local representative for

UTS) requested the City's approval to substitute the UTS System for the specified

Trojan System.  <u>See</u> Exhibit "E" to the Statement.

O.  In response to ESI's November 18, 1999 letter, the City sent a letter

dated December 9, 1999 to ESI which stated as follows:

> Based on the material submitted your request to:

> 1.  Substitute Ultratech UV disinfection system for the specified Trojan is approved **for bidding purposes only**;

> **Final approval is subject to review of the fabrication drawings, shop drawings, and meeting all of the requirements of the contract documents**.

> Should you have any questions, please contact Cyril Hamada at 523-4323.

<u>See</u> Exhibit "F" to the Statement (emphasis added).

9

Document ID: 396192v2_GGU    

P.    By way of a fax dated December 13, 1999, ESI sent a letter to various contractors, including Bodell, representing that the UTS System met all of the requirements of the Project Specifications. <u>See</u> Exhibit "G" to the Statement.

Q.    The December 13, 1999 fax included the City's December 9, 1999 letter. <u>Id.</u>

R.    Bodell was the successful low bidder on the Project and utilized the UTS System in its bid. <u>See</u> Complaint, page 7, paragraphs 27-29.

S.    In response to ESI's and UTS' proposal to substitute the UTS System for the Trojan System, the City requested additional product information (i.e. space and experience requirements) on the UTS System from ESI. However, in a letter to the City dated December 27, 1999, Paul Scott of ESI declined to provide the City with the requested additional information regarding the qualifications of the UTS System. ESI confirmed that a formal contract had not yet been issued by the City to Bodell, and that Bodell had not yet committed to ordering of any equipment from UTS. More specifically, Mr. Scott stated in his December 27, 1999 letter as follows:

> We anticipate that there will be some post-award negotiations that will be made regarding this equipment. Since there has been no contractor selected, and the order for the equipment is still very much in question, we decline to provide information specific to this project until we receive some commitment of funds from a customer.

<u>See</u> Exhibit "H" to the Statement.

Document ID: 396192v2_GGU



T.    Ultimately, the City's construction manager (GMP) determined that the UTS System failed to satisfy the requirements of the UV System Specifications.  <u>See</u> Exhibit "I" to the Statement.

U.    Leroy Humke, who was the leader of Bodell's bid team, testified that he considered only a fully executed purchase order as representing a contract between Bodell and UTS for the purchase of the UTS System.  <u>See</u> Exhibit "J" to the Statement, pp. 149-150.

V.    Mr. Humke also testified that he was not aware of Bodell receiving a signed purchase order from UTS.  <u>Id.</u>

W.    Greg Ellner, who is the president of UTS, testified that the City's December 9, 1999 letter was a conditional approval of the UTS System as the UTS System still had to satisfy the requirements of the Project Contract, which included the UV System Specifications.  <u>See</u> Exhibit "K" to the Statement, pp. 144-149.

X.    Mr. Ellner also testified that the UTS horizontal UV System could not satisfy the experience requirement contained in Part 1.2(A) of the UV System Specifications.  <u>Id.</u> at pp. 66-70.

Y.    Mr. Ellner also testified that UV System Specifications contained language which prohibited the use of UV Systems with lamps perpendicular to flow (i.e. vertical systems).  <u>Id.</u> at pp. 135-138.

Document ID: 396192v2_GGU



Z.    Mr. Ellner also testified that at the time of Bodell's submittals to GMP

for approval of the UTS System, UTS' vertical system was not certified as meeting

the requirements of California Title 22 as set forth in Part 1.2(A) of the UV System

Specifications. Id. at pp. 81-84; 176-180.

AA.    Mr. Ellner also testified that UTS did not submit any proof that any

UTS System satisfied the 7-day moving median requirement set forth in Part

2.3(B) of the UV System Specifications. Id. at 236-238.

BB.    Mr. Ellner also testified that he did not recall signing a purchase order

with Bodell for Bodell's purchase of any UTS System. Id. at 275-276.

CC.    Section 4.1.1 of the City's General Terms and Conditions, which are

incorporated into all City contracts, provide that all consultants retained by the City

(such as GMP) are retained as independent contractors. See Exhibit "L" to the

Statement.

III.    **RELEVANT LAW AND ARGUMENT**

   A.    **UTS/ESI'S CLAIM FOR INTERFERENCE WITH
         CONTRACTUAL RELATIONS AND PROSPECTIVE
         ECONOMIC ADVANTAGE FAIL AS A MATTER OF LAW**

      1.    **UTS/ESI CANNOT SATISFY THE REQUIREMENTS OF
            A INTERFERENCE WITH CONTRACTUAL
            RELATIONS CLAIM AND/OR SUCH CLAIM IS
            BARRED BY PRIVILEGE**

In order to succeed on an interference with contractual relations claim, a

plaintiff must prove each of the following elements:

Document ID: 396192v2_GGU



1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff.

See Weinberg v. Mauch, 78 Hawaii 40, 50, 890 P.2d 277, 287 (Sup. Ct. 1995).

### a.    THERE WAS NO CONTRACT BETWEEN BODELL AND UTS

For UTS/ESI's interference with contractual relations claim to succeed, UTS/ESI must prove that there was a contract between UTS and Bodell. See Weinberg, supra. Here, Mr. Humke stated that he did not believe a contract came into existence between Bodell and UTS until there was a fully executed purchase order. See Exhibit "J", pp. 149-150. However, there was no fully executed purchase order for Bodell's purchase of the UTS System. See Exhibit "J" to the Statement, pp. 149-150; Exhibit "K" to the Statement, pp. 275-276. As there was no contract between Bodell and UTS, this claim fails as a matter of law. See Weinberg, supra.

### b.    THE CITY'S ACTIONS WERE PRIVILEGED

Alternatively, the City's actions in rejecting the UTS System were privileged. Specifically, in Wyatt v. Ruck Construction, Inc., 571 P.2d 683, 117 Ariz. 186 (Ariz. App. 1977), the court addressed the viability of a claim brought by a roofing subcontractor against the City of Tucson. The roofing subcontractor's interference claim against the City of Tucson was based upon the cancellation of

Document ID: 396192v2_GGU

the subcontractor's contract with the general contractor, which occurred at the direction of the City of Tucson because the subcontractor could not comply with the requirements of the project specifications in question. In affirming the lower court's granting of summary judgment in favor of the City of Tucson based upon a finding that the City's actions were privileged, the court in Wyatt held as follows: "If a defendant has a present, existing interest to protect such as the ownership or condition of property, **or a prior contract of his own, he is privileged to prevent the performance of a contract of another which threatens it**." Wyatt, 571 P.2d at 687, 117 Ariz. at 190 (emphasis added).

Here, the City's actions in rejecting the UTS System were done to protect not only its contract interests under the City's contract with Bodell, but also to ensure compliance with the Consent Decree. The City had a strong interest in ensuring that the Project was completed properly by Bodell as a failure to properly complete the Project would have subjected the City to significant monetary fines. See Exhibit "A" to the Statement. The City relied upon GMP's analysis and recommendation that the UTS System failed to satisfy the requirements of the Project Specifications, a decision which is supported by the admissions of Mr. Ellner that the UTS System could not satisfy the requirements of the Project Specification requirements. See Exhibit "K" to the Statement, pp. 66-70; 81-84; 135-138; 176-180; and 236-238. As the City was acting to protect its interests

14

Document ID: 396192v2_GGU



under both its contract with Bodell and the Consent Decree, the City cannot be liable to UTS or ESI based on the City's rejection of the UTS System. See Wyatt, supra.

### 2. UTS CANNOT SATISFY THE REQUIREMENTS OF AN INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM AND/OR SUCH CLAIM IS BARRED BY PRIVILEGE

To succeed on an interference with prospective business advantage claim, a plaintiff must satisfy all of the following elements:

> 1) The existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; 2) Knowledge of the relationship, advantage, or expectancy by the defendant; 3) A purposeful intent to interfere with the relationship, advantage, or expectancy; 4) Legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and 5) Actual damages.

Robert's Hawaii School Bus v. Laupahoehoe Transportation Co., Inc., 91 Hawaii 224, 258, 982 P.2d 853, 887 (1999) (citing Locricchio v. Legal Services Corp., 833 F.2d 1352, 1357 (9th Cir.1987); Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166 (9th Cir.1997)).

In Robert's Hawaii, the court indicated that the defendant must act with a purposeful intent to interfere with the advantage and that such interference must also be "improper." Robert's Hawaii, 91 Hawaii at 258, 982 at 887. Similarly, in Meridian, the Hawaii Intermediation Court of Appeals noted that with respect to

15

Document ID: 396192v2_GGU  

intent, "tortious interference requires a state of mind or motive more culpable than mere intent." <u>Meridian</u>, 109 Hawai'i at 48, 122 P.3d at 1146 citing <u>Locricchio v. Legal Services Corp.</u>, 833 F.2d 1352, 1358 (9th Cir.1987). Further:

> The third element, intent, **denotes purposefully improper interference**. The plaintiff must prove that the defendant either pursued an **improper objective of harming the plaintiff or used wrongful means that caused injury in fact**. Asserting one's rights to maximize economic interests does not create an inference of ill will or improper purpose.

<u>Id.</u> (quoting <u>Omega Environmental, Inc. v. Gilbarco, Inc.</u>, 127 F.3d 1157, 1166 (9th Cir.1997)) (emphasis added).

### a.  THE CITY DID NOT PURPOSEFULLY INTERFERE WITH ANY SUCH PROSPECTIVE ECONOMIC ADVANTAGE

To succeed on this claim, UTS/ESI must prove that the City acted with the improper motive of harming the plaintiff or used improper means in its actions. <u>See</u> <u>Meridian</u>, <u>supra</u>.  The City respectfully asserts, however, that the City acted properly in its rejection of the UTS System.

Specifically, Mr. Ellner testified that he understood the City's December 9, 1999 letter to be a conditional approval. <u>See</u> Exhibit "K" to the Statement, pp. 144-149.  Although the UTS System was approved for bidding purposes, Mr. Ellner understood that the UTS System was still required to satisfy the requirements of the contract documents. <u>Id.</u>

Document ID: 396192v2_GGU

In addition, Mr. Ellner has admitted that neither UTS' horizontal nor vertical systems satisfied the requirements of the UV System Specifications.  First, in regard to UTS' vertical system, Mr. Ellner admitted that the UV System Specifications contained language which prohibited vertical UV Systems.  See Exhibit "K" to the Statement, pp. 135-138.  In any event, the UTS vertical system could not satisfy the requirements of the UV System Specifications since Mr. Ellner admitted that at the time that the UTS System was rejected, the UTS vertical System did not have California Title 22 certification as required by Part 1.2(A) of the UV System Specifications.  Id. at 81-84; 176-180.  Second, in regard to UTS' horizontal system, Mr. Ellner admitted that such system could not satisfy the experience requirement set forth in Part 1.2(A) of the UV System Specifications. Id. at 66-70.  Finally, Mr. Ellner admitted that UTS did not submit any proof that either the vertical or horizontal UTS Systems satisfied the 7-day moving median requirement set forth in Part 2.3(B) of the UV System Specifications.  Id. at 236-238.

In summary, as the City relied upon GMP's conclusion that the UTS System did not satisfy the requirements of the Project Contract, and Mr. Ellner has admitted that GMP's conclusion was correct, UTS/ESI cannot show any improper conduct on the part of the City.  Thus, this claim must fail as a matter of law.  See Robert's Hawaii, supra.

Document ID: 396192v2_GGU




b.    **THE CITY'S ACTIONS WERE PRIVILEGED**

As more fully set forth above, the City's actions were privileged.  See,

Wyatt, supra.  Thus, this claim fails as a matter of law.  Id.

### B.    THERE IS NO EVIDENCE TO SUPPORT A MISREPRESENTATION CLAIM AGAINST THE CITY

UTS/ESI have asserted a negligent or intentional misrepresentation claim

against the City as their respective second claims for relief. The basis of this

misrepresentation claim is the City's pre-approval of the UTS System, which was

done by way of the City's December 9, 1999 letter. However, UTS/ESI's claim for

misrepresentation must fail as they cannot satisfy the elements of a negligent or

intentional misrepresentation claim.

Specifically, for a misrepresentation claim to succeed, there must be a false

representation made by the defendant.  See Schaffer v. Earl Thacker Co., Ltd., 6

Haw. App. 188, 716 P.2d 163 (1986) (holding that claim of negligent

misrepresentation requires that a false representation be made); Milne Employees

Ass'n v. Sun Carriers, 960 F.2d 1041 (Cal. 1991) (holding that a claim of

intentional misrepresentation requires the satisfaction of the same elements of a

claim for negligent misrepresentation with the additional element of a showing of

an intent to deceive).

Here, UTS/ESI cannot satisfy the requirements of a misrepresentation claim

(whether negligent or intentional) based on the City's pre-approval of the UTS

Document ID: 396192v2_GGU

 

System because it cannot show that anything contained in the City's December 9, 1999 pre-approval letter was false. Specifically, Mr. Ellner admitted that he knew that the December 9, 1999 letter provided only a conditional approval of the UTS System, which was subject to the UTS System satisfying the requirements of the Project Contract. See Exhibit "K" to the Statement, pp. 144-149. As UTS/ESI cannot point to any false statement contained in the City's December 9, 1999 letter, this misrepresentation claim fails as a matter of law. See Schaffer, supra.

### C. THE NEGLIGENCE CLAIM ASSERTED BY UTS/ESI FAILS AS MATTER OF LAW

#### 1. NEITHER UTS NOR ESI HAVE STANDING TO ASSERT A NEGLIGENCE CLAIM AGAINST THE CITY BASED UPON THE DRAFTING, PUBLISHING, DISTRIBUTING, OR INTERPRETATION OF THE PROJECT SPECIFICATIONS

Both UTS and ESI assert in their third claim for relief a claim of negligence against the City that is based upon the drafting, publishing, distributing and/or interpretation of the Project's specifications. However, UTS and ESI lack standing to assert a claim against the City based upon the Project Contract.

Specifically, the Hawaii procurement code provides the exclusive means for remedies available to "persons aggrieved" in connection with among other things, "a contract controversy" or the resolution of "claims or differences." Specifically, Hawaii Revised Statutes ("HRS") § 103D-704, *Exclusivity of remedies*, provides in relevant part that, "[t]he procedures and remedies provided for in this part, and the

Document ID: 396192v2_GGU

 

rules adopted by the policy board, shall be the exclusive means available for **persons aggrieved** in connection with the solicitation or award of a contract, a suspension or debarment proceeding, **or in connection with a contract controversy**, to resolve their claims or differences." (Emphasis added). The procurement code does not define the term "persons aggrieved." However, the Hawaii courts have stated that "[a] cardinal principle of statutory construction is that each part of a statute should be construed in connection with every other part so as to produce a harmonious whole." State v. Nizam, 7 Haw.App. 402, 407, 771 P.2d 899, 903 (1989).

Thus, it is relevant to examine HRS § 103D-703, which governs the chief procurement officer's, or a designee's, authority to resolve contract and breach of contract controversies. Specifically, this Section provides as follows:

> (a) This section applies to controversies between a governmental body and a **contractor** which arise under, or by virtue of, a contract between them, including, without limitation, controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission.

(Emphasis added).

As such, when the term "persons aggrieved," as the term is used in HRS § 103D-704, is read together with HRS §§ 103D-703, the phrase "persons aggrieved" would only apply to a contractor where a controversy exists between the governmental body and that contractor "arise[ing] under, or by virtue of, a

Document ID: 396192v2_GGU



contract between them." See State v. Harada, 98 Hawai'i 18, 42, 41 P.3d 174, 198 (2002) (applying the maxim *exprssio unius est exclusion alterius* or "the express mention of one thing [in a statute] implies the exclusion of another") (bracket added) see also State v. Savitz, 97 Hawai'i 440, 447, 39 P.3d 567, 574 (2002) (defining *expressio unius est exclusio alterius* as "[w]hen certain ... things are specified in a law, ... an intention to exclude all others from its operation may be inferred") (quoting Black's Law Dictionary 581 (6th ed. 1990)); State v. Kaakimaka, 84 Hawai'i 280, 291, 933 P.2d 617, 628 (1997) ("When the legislature expresses things through a list, the court assumes that what is not listed is excluded.") (citation omitted).

HRS § 103D-104 defines a "contractor" as "any person having a contract with a governmental body." HAR § 3-120-2 further defines the term "contractor" as "any individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the work under the terms of the contract with the [City], and acting directly or through its agents or employees." Here, there is no dispute that there was no contract between the City and either UTS or ESI.

In State v. Savitz, 97 Hawai'i 440, 447, 39 P.3d 567, 574 (2002) the court defined the phrase *expressio unius est exclusio alterius* as "[w]hen certain ... things are specified in a law, ... an intention to exclude all others from its operation may be inferred." Id. see also State v. Kaakimaka, 84 Hawai'i 280, 291, 933 P.2d 617,



Document ID: 396192v2_GGU

628 (1997) (stating that "[w]hen the legislature expresses things through a list, the court assumes that what is not listed is excluded."). As such, it must be assumed that the legislature did not intend to grant suppliers the right to assert claims that arise under or by virtue of a procurement contract as only "contractors" are listed under HRS § 103D-703 as having the ability to assert claims that arise under a procurement contract.

Further, as even contractors must comply with specific statutory requirements in asserting procurement claims before being provided with the ability to file a lawsuit on such claims, it would be absurd to grant suppliers (or their representatives) greater rights than contractors by allowing such suppliers to immediately file claims against the City without having to comply with the same underlying requirements and restrictions that are imposed on contractors. For example, there are various procedural/administrative steps that a contractor must take pursuant to HRS § 103D-703 before securing the ability to file a lawsuit against the City. See Bowers v. Alamo Rent-A-Car, Inc., 88 Hawai'i 274, 277, 965 P.2d 1274, 1277 (1998) (explaining that, because the legislature is presumed not to intend an absurd result, legislation should be construed to avoid, if possible, inconsistency, contradiction, and illogicality) (internal quotation marks and citation omitted). See also, State v. Mahoe, 89 Hawai'i 284, 972 P.2d 287 (1998), the Court stated:

Document ID: 396192v2_GGU

 

A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.

Id. at 287-288, 972 P.2d at 290-91.

Based on the above, the City respectfully asserts that UTS' and ESI's negligence claim against the City fails as a matter of law because neither party has standing to assert such a claim against the City. Moreover, even if such entities had standing to file a claim, such entities have failed to exhaust their administrative remedies pursuant to HRS § 103D-703, which would also bar their respective claims. See Pele Defense Fund v. Puna Geothermal Venture, 9 Haw.App. 143, 151, 827 P.2d 1149, 1154 (1992).

> 2. **THE CITY CANNOT BE LIABLE FOR ANY IMPROPER ACTIONS COMMITTED GMP IN REGARD TO DRAFTING, PUBLISHING, DISTRIBUTING, AND/OR INTERPRETATION OF THE PROJECT SPECIFICATIONS**

It is undisputed that GMP drafted the UV System Specifications. See Complaint, pp. 4, paragraph 12. It is also undisputed that GMP was the City's project manager, which required GMP to review and evaluate Bodell's submittals seeking to obtain approval for the UTS System. Id. at pp. 8-10. In GMP's role as both design engineer and project manager, GMP acted as an independent contractor for the City. See Exhibit "L" to the Statement.

Document ID: 396192v2_GGU



As a general rule, an employer or contractee is not liable for the torts of an independent contractor or of the latter's servants committed in the course of performance of the contracted work.  41 Am. Jur. 2d Independent Contractors § 29 (2004).  This rule is based upon the theory that "the characteristic incident of the relation created by an independent contract is that the employer does not possess the power of controlling the person employed as to the details of the stipulated work; it is, therefore, a necessary judicial consequence that the employer is not answerable for an injury resulting from the manner in which the details of the work are carried out by the independent contractor." Id.

Relevant to this case, courts have noted that "'insofar as the preparation of plans is concerned, an engineer is an independent contractor' and the defendant who hired the engineer to produce plans is not vicariously liable for the negligence of the engineer-independent contractor." Malta Const. Co. v. Henningson, Durham & Richardson, 694 F.Supp. 902, 906 fn 5 (N.D.Ga. 1988) citing Mustin v. Barnes, 77 S.E.2d 94 (1953).

Similarly, in Systems Contractors Corp. v. Williams and Associates, 769 So.2d 777 (La.App. 5 Cir. 2000), a contractor sued the City of New Orleans through the New Orleans Aviation Board for the negligent acts and omissions of the City's engineers and architects who the City hired as independent contractors to design renovations to the New Orleans International Airport.  However, the

24

Document ID: 396192v2_GGU  

court stated that "a principal generally is not liable for the offenses committed by an independent contractor while performing its contractual duties." Id. at 781. However, the court noted that two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor.

Here, GMP was an independent contractor for the City. See Exhibit "L" to the Statement. Moreover, the allegations complained of by UTS/ESI relate to the drafting and interpretation of the specifications by GMP. The City relied upon GMP to both draft and interpret the UV System Specifications. If there was any problem with the drafting or interpretation of the UV System Specifications, such is a problem attributable to GMP for which the City cannot be liable. See Systems Contractors Corp., supra.

## IV.    CONCLUSION

In summary, the City respectfully requests that this Honorable Court grant the City's Motion in regard to all claim asserted by UTS and ESI respectively.

Dated: Honolulu, Hawaii _____ February 17, 2006 _____.

BERT T. KOBAYASHI, JR.
RONALD T. OGOMORI
GEORGE GUSMAN III
Attorneys for Defendant,
   Cross-Claim Plaintiff/Defendant and
   Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU

25