Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



Of Counsel:
KOBAYASHI, SUGITA & GODA
BERT T. KOBAYASHI, JR.     659-0
RONALD T. OGOMORI          5850-0
GEORGE GUSMAN              6914-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax: (808) 539-8799
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah Corporation, | ) CIVIL NO. CV03-00706 HG-LEK ) (Contract) ) |
| Plaintiff, | ) ) MEMORANDUM IN SUPORT OF |
| vs. | ) MOTION ) |
| OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign Corporation, | ) ) ) ) ) ) |
| Defendant. | ) ) ) ) ) ) ) ) ) |
| | ) Trial Date: April 11, 2006 ) |

_Caption continued_

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



CITY AND COUNTY OF HONOLULU,    )
                                )
        Defendant, Third-Party  )
        Plaintiff, and Counterclaim  )
        Defendant,              )
                                )
    vs.                         )
                                )
ENGINEERED SYSTEMS, INC.,       )
                                )
        Third-Party Defendant,  )
        Counterclaim Plaintiff and  )
        Cross-Claim Plaintiff.  )
                                )
CITY AND COUNTY OF HONOLULU,    )
                                )
        Defendant, Cross-Claim  )
        Plaintiff/Cross-Claim   )
        Defendant,              )
                                )
    vs.                         )
                                )
ULTRA TECH SYSTEMS, INC., a     )
foreign Corporation,            )
                                )
        Defendant, Cross-Claim  )
        Defendant/Cross-Claim   )
        Plaintiff and Cross-Claim  )
        Plaintiff/Defendant,    )
                                )
    vs.                         )
                                )
OHIO PACIFIC TECH, INC., fka    )
GMP ASSOCIATES, INC., an Ohio   )
Corporation                     )
                                )
        Cross-Claim             )
        Defendant/Plaintiff.    )
                                )

TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................... 3

II.   UNDISPUTED FACTS ............................................................. 6

III.  SUMMARY JUDGMENT STANDARD .................................... 14

IV.   RELEVANT LAW AND ARGUMENT ..................................... 15

      A.   BODELL'S CLAIM FOR BREACH OF CONTRACT
           FAILS AS THE UNDISPUTED EVIDENCE ESTABLISHES
           THAT THE UTS SYSTEM DID NOT IN FACT MEET ALL
           THE REQUIREMENTS OF THE CONTRACT DOCUMENTS
           AS MANDATED BY THE CITY'S CONDITIONAL
           APPROVAL LETTER DATED DECEMBER 9, 1999.................. 15

      B.   THE CITY'S CONDITIONAL APPROVAL OF THE
           UTS SYSTEM BY WAY OF THE CITY'S LETTER
           DATED DECEMBER 9, 1999 DOES NOT SUPPORT
           BODELL'S ARGUMENT THAT IT WAS ENTITLED
           TO A CONTRACT MODIFICATION IF THE UTS
           SYSTEM WAS REJECTED FOR FAILING TO SATISFY
           THE REQUIREMENTS OF THE PROJECT CONTRACT ........... 19

           1.   THE CITY'S DECEMBER 9, 1999 LETTER IS NOT
                AMBIGUOUS AS BODELL HAS ADMITTED THAT
                IT UNDERSTOOD THAT THE CITY'S APPROVAL
                WAS CONDITIONAL AND SUBJECT TO THE
                UTS SYSTEM SATISFYING THE PROJECT
                REQUIREMENTS ................................................................. 19

           2.   ASSUMING *ARGUENDO* THAT THE CITY'S
                DECEMBER 9, 1999 LETTER WAS AMBIGUOUS,
                ANY SUCH AMBIGUITY IMPOSED A DUTY OF
                INQUIRY ON BODELL THAT BODELL FAILED TO
                SATISFY, WHICH BARS BODELL'S CLAIM AS A
                MATTER OF LAW ................................................................. 21

C.   BODELL'S' CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING FAILS AS BODELL KNEW OR SHOULD HAVE KNOWN THAT THE PROPOSAL TO DELETE THE ULTRA TECH SYSTEM FROM BODELL'S BID WAS NOT INCORPORATED INTO THE FINAL CONTRACT DOCUMENTS ............................................................. 25

D.   THERE IS NO EVIDENCE TO SUPPORT A MISREPRESENTATION CLAIM AGAINST THE CITY ............. 27

V.   CONCLUSION ............................................................................. 29



## TABLE OF AUTHORITIES

<u>Page</u>

FFEDERAL CASES

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)...........................14

<u>Bhan v. NME Hospitas, Inc.</u>, 929 F.2d 1404 (9th Cir. 1991)..........................14

<u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978),
   cert. denied, 440 U.S. 981 (1979), reh'g denied, 441 U.S. 968 (1979) .........15

<u>California Architectural Evidence. Prod., Inc. v. Franciscan Ceramics</u>,

   818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)....15

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)................................................14

<u>Community Heating & Plumbing Co. Inc. v. Kelso</u>, 987 F.2d 1575, 1578
   (Fed. Cir. 1993)..........................................................................................20, 22

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,
   475 U.S. 574, 586 (1986) ..........................................................................14, 15

<u>Milne Employees Ass'n v. Sun Carriers</u>, 960 F.2d 1041 (Cal. 1991)...............28
<u>T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc.</u>, 809 F.2d 626, 630

   (9th Cir. 1987)...............................................................................................14


STATE CASES

<u>Best Place, Inc. v. Penn America Insurance Co.</u>,
   82 Hawaii 120, 920 P.2d 334 (Sup. Ct. 1996)...............................25, 26, 27

<u>Cho Mark Oriental Food, Ltd. v. K& K Int'l</u>, 73 Haw. 509, 520,
   836 P.2d 1057, 1064 (1992) ........................................................................20

Foundation International, Inc. v. E.T. Ige Construction, Inc.,
    102 Hawaii 487, 495, 78 P.3d 23, 31 (Sup. Ct. 2003) ..................................20, 22,
                                                                                   23, 24

Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (1985) ...26

Premier Electrical Construction Co. v. City of Chicago,
    512 N.E.2d 44, 159 Ill. App.3d 98 (Ill. 1987) ..............................................16, 19

Schaffer v. Earl Thacker Co., Ltd., 6 Haw. App. 188, 716 P.2d 163 (1986)....28

## FEDERAL RULES

Fed.R.Civ.P. 56(e) ............................................................................................14

## STATE RULES

Federal Rules of Civil Procedure 56 ................................................................14

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO




<u>MEMORANDUM IN SUPPORT OF MOTION</u>

## I.   **INTRODUCTION**

COMES NOW, Defendant, Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff/Counterclaim Defendant City and County of Honolulu ("City") and submits this Motion for Summary Judgment ("Motion").  The Motion seeks a ruling by this Honorable Court that the claims asserted by Plaintiff Bodell Construction Company ("Bodell") in against the City in thee First Amended Complaint dated February 17, 2004 ("Complaint") fail and/or are barred as a matter of law.

This case arises out of the design and construction of improvements to the Wahiawa Wastewater Treatment Plant ("Project") that were required by a consent decree executed by the City and the State of Hawaii.  More specifically, the case involves a substitution request related to the ultraviolet disinfection system ("UV System") that was to be installed as part of the Project.  The contract documents prepared by the City's designer, Defendant and Cross-Claim Plaintiff/Defendant Ohio Pacific Tech, Inc., fka GMP Associates, Inc. ("GMP"), called for the installation of the Trojan 4000 System or something of "equal" quality.  The City issued a conditional approval of a UV system manufactured by UltraTech Systems, Inc. ("UTS System") for "bidding purposes only" with the caveat that the UTS System needed to satisfy all of the requirements contained in the contract

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

documents. GMP thereafter advised the City that the UTS System did not meet all of the requirements contained in the contract documents. As a result, the City rejected Bodell's request to utilize the UTS System for the Project.

By way of the instant Motion, the City is seeking a dismissal of the claims asserted by Bodell against the City in the Complaint. First, Bodell's breach of contract claim against the City (Count I of the Complaint) is based upon the City's letter dated December 9, 1999 [attached as Exhibit "F" to the Separate and Concise Statement of Facts ("Statement")], which expressly provided that the City's approval of the UTS System was for "bidding purposes only" and was conditioned upon the UTS System "meeting all of the requirements of the contract documents." Bodell's breach of contract claim fails as a matter of law as the undisputed evidence establishes that the UTS did not satisfy the express requirements contained in the contract documents.

Second, Bodell argues in relation to Count I of the Contract that the City's letter dated December 9, 1999 (attached as Exhibit "F" to the Statement) assured Bodell of a contract modification in the event that the UTS System was rejected. The City respectfully asserts that this argument is likewise misplaced. The December 9, 1999 merely provides that the UTS System was approved for "bidding purposes only," but that said approval was conditioned upon the UTS System satisfying the contract requirements. The December 9, 1999 letter does not

4

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



contain any statement that the City would provide a contract adjustment to Bodell

if the UTS System failed to satisfy the requirements of the contract documents.

Moreover, even if the December 9, 1999 letter was in fact ambiguous, Bodell had a

duty to seek clarification from the City as to the meaning of the City's approval of

the UTS System for "bidding purposes only" and Bodell's failure to do so bars its

claim as a matter of law.

Third, Bodell's claim for a breach of the implied duty of good faith and fair

dealing (Count II of the Complaint) also fails as there is absolutely no evidence

that the City acted in bad faith.  Specifically, there is no evidence that the City

intended to mislead Bodell into using the UTS System.  As referenced in the

Complaint, the City and Bodell did have discussions regarding the removal of the

UTS System from Bodell's bid.  However, despite these discussions, the proposal

to delete the UTS System was not implemented.  More importantly, Leroy Humke

of Bodell admitted that Bodell signed the construction contract for the Project

("Project Contract") with full knowledge that the proposal to delete the UTS

System from Bodell's bid for the Project had not been adopted.

Finally, there is no evidence supporting Bodell's misrepresentation claim

(Count III of the Complaint) based on the City's December 19, 1999 letter.

Specifically, Bodell has not identified any false representation with regard to such

letter, and in fact admits that it understood that the City's approval of the UTS

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



System was conditional and subject to the UTS System satisfying the requirements of the contract documents.

In short, the City seeks a ruling by this Honorable Court granting summary judgment as to all claims asserted by Bodell against the City. The facts and laws supporting the City's position is set forth more fully below.

## II.    UNDISPUTED FACTS

A.    This case arises out of a City construction project related to the Wahiawa Wastewater Treatment Plant ("WWTP") and identified as Wahiawa WWTP Effluent Reuse and Wahiawa Reservoir Outfall Adjustment, Job No. W10-99, Contract No. F-97110 ("Project"). See Complaint, pp. 2, paragraph 1.

B.    The Project provided for the construction of upgrades and/or improvements to the WWTP, including the construction of an open channel gravity flow, ultraviolet disinfection system ("UV System") complete with a cleaning system, lamps, and electronic ballasts. See Complaint, page 2, paragraph 2.

C.    The Project was mandated by a Consent Decree entered into between the City and the State of Hawaii ("State") as a result of a lawsuit filed by the State against the City in Civil No. 94-1896-05. See Exhibit "A" attached to the City's Concise Statement of Facts ("Statement").

D.    Pursuant to the terms of the Consent Decree, the City was required to complete the upgrades and/or improvements to the Wahiawa WWTP to allow the

6

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO




City to reclaim all of the wastewater from the Wahiawa WWTP no later than three years after the effective date of the Consent Decree.  As the effective date of the Consent Decree was March 2, 1998, the improvements were required to have been completed by March 2, 2001.  Id.  This deadline was subsequently extended to August 31, 2001.  Id.

      E.     Section 12 of the Consent Decree provided stipulated penalties to be assessed against the City if it did not meet the deadline in making the required improvements to the Wahiawa WWTP.  More specifically, Section 12, entitled "Stipulated Penalties," provided as follows:

> A.    If the City misses the deadline specified in Section 8.A, or any extension of that deadline approved by the Court, the City shall pay the following stipulated penalty, which shall be deposited according to HRS Sec. 342D-39:
>
> 1.    $600,000, a one time lump sum penalty, and;
>
> 2.    A daily penalty.  Measured from the date the delay beings, the penalty per day during each month of delay shall be:
>
> | $1,000 | first six months of delay |
> |--------|---------------------------|
> | $2,000 | seventh and eight months of delay |
> | $3,000 | ninth and tenth months of delay |
> | $4,000 | eleventh and twelfth months of delay |
> | $5,000 | thirteenth month of delay and thereafter. |

Id.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



F.      The City retained Defendant, Cross-Claim Plaintiff/Defendant Ohio

Pacific Tech, Inc. fka GMP Associates, Inc. ("GMP") to act as the City's

engineering design consultant for the Project.  GMP's duties included the

preparation of the plans specifications for the Project.  See Exhibit "B" to the

Statement.

G.      Section 11376 of the Project Specifications (hereinafter referred to as

"UV System Specifications") called for the installation of the Trojan 4000 System

manufactured by Trojan Technologies, Inc. ("Trojan System") or something

"equal" to the Trojan System.  See Exhibit "C" to the Statement.

H.      Part 2.4(A)(3) of the UV System Specifications required that the

"[t]he major axis of the UV lamps shall be horizontal and parallel to flow.  UV

systems that operate with lamps perpendicular to the flow are unacceptable."  Id.

I.      Pursuant to Part 1.2(A) of the UV System Specifications, the

manufacturer of the proposed UV System was required to submit documentation of

"at least five (5) permanent wastewater installations using this equipment type, in

North America, disinfecting a peak flow of 5 [million gallons per day] or greater

for at least one (1) years."  Id.

J.      Part 1.2(A) of the UV Systems Specifications also required that the

proposed UV System be tested and certified to meet California Title 22 or Hawaii

R-1 quality water standards.  Id.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



K.     Part 2.3(B) of the UV System Specifications provided express performance requirements for the UV System, including a requirement that the UV System shall produce an effluent that "does not exceed 2.2/100mL FC, based on a 7-day moving median." Id.

L.     In November of 1999, the City solicited bids for the Project. See Complaint, pp. 3.

M.     Included in the City bid package was Section 1.13 of the Project's General Instructions to Bidders ("General Instructions"), which set forth among other things the requirements for the substitution of a piece of equipment that was specified by name in the UV System Specifications. See Exhibit "D" to the Statement. Specifically, Section 1.13 of the General Instructions stated in relevant part as follows:

> (a) Where the invitation for bids specifies one or more manufacturer's brand names or makes or materials, devices, equipment or system as indicating a quality, style, appearance, or performance, or method of construction, the bidder's bid shall be based on either one of the specified brands, makes, or method, or an alternate brand, make, or method which has **expressly been found to be equal or better by the Officer-in-Charge** . . . .

Id. (Emphasis added).

N.     In a letter dated November 18, 1999, Third Party Plaintiff/Defendant Engineered System, Inc. ("ESI") (which was acting as the local representative for

9

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



UTS) requested the City's approval to substitute the UTS System for the specified

Trojan System.  See Exhibit "E" to the Statement.

O.    In response to ESI's November 18, 1999 letter, the City sent a letter

dated December 9, 1999 to ESI which stated as follows:

> Based on the material submitted your request to:
>
> > 1.    Substitute Ultratech UV disinfection system for the specified Trojan is approved **for bidding purposes only**;
>
> **Final approval is subject to review of the fabrication drawings, shop drawings, and meeting all of the requirements of the contract documents**.
>
> Should you have any questions, please contact Cyril Hamada at 523-4323.

See Exhibit "F" to the Statement (emphasis added).

P.    By way of a fax dated December 13, 1999, ESI sent a letter to various

contractors, including Bodell, representing that the UTS System met all of the

requirements of the Project Contract.  See Exhibit "G" to the Statement.

Q.    The December 13, 1999 fax included the City's December 9, 1999

letter.  Id.

R.    Bodell was the successful low bidder on the Project and utilized the

UTS System in its bid.  See Complaint, page 7, paragraphs 27-29.

S.    In response to ESI's and UTS' proposal to substitute the UTS System

for the Trojan System, the City requested additional product information (i.e. space

and experience requirements) on the UTS System from ESI.  However, in a letter

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



to the City dated December 27, 1999, Paul Scott of ESI declined to provide the

City with the requested additional information regarding the qualifications of the

UTS System.  ESI confirmed that a formal contract had not yet been issued by the

City to Bodell, and that Bodell had not yet committed to ordering of any equipment

from UTS.  More specifically, Mr. Scott stated in his December 27, 1999 letter as

follows:

> We anticipate that there will be some post-award negotiations that will
> be made regarding this equipment.  Since there has been no contractor
> selected, and the order for the equipment is still very much in
> question, we decline to provide information specific to this project
> until we receive some commitment of funds from a customer.

See Exhibit "H" to the Statement.

T.      After the City awarded the Project to Bodell but before Bodell and the

City executed the contract for the Project, the City proposed removing the UTS

System from Bodell's bid.  See Exhibit "I" to the Statement.

U.      Bodell indicated to the City that Bodell was agreeable to eliminating

the UTS System from its bid.  See Exhibit "J" to the Statement.

V.      Bodell signed the contract with the City for the Project on or about

February 25, 2000.  See Exhibit "K"

W.      Leroy Humke was the head of Bodell's bidding team for the Project.

See Exhibit "L" at 28.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



X.    According to Humke, Bodell did not inquire with the City as to the status of the proposal to eliminate the UTS System from Bodell's bid prior to Bodell's execution of the Project Contract.   Bodell understood that the Project had been awarded to Bodell consistent with the Project's plans and specifications.  Id. at pp. 107-109.

Y.    At the time that Bodell signed the Project Contract, Bodell was aware that the proposal to delete the UTS System from Bodell's bid had not been implemented.  Id. at pp. 109-110.

Z.    Prior to its execution of the Project Contract, Bodell did not seek clarification as to the meaning of the City's approval of the UTS System for "bidding purposes only".  Id. at pp. 60-63.

AA.   Bodell interpreted the City's December 9, 1999 letter to mean that the UTS System was approved for bidding purposes but that the UTS System still had to meet the requirements of the contract documents.  Id. at pp. 60-63.

BB.   Mr. Humke stated in his deposition that when he received ESI's fax dated December 13, 1999 (Exhibit "G"), which included a copy of the City's December 9, 1999 letter (Exhibit "F"), Mr. Humke expected to hold UTS to the requirement that the UTS System satisfied the requirements of the contract documents.  See Exhibit "L" at pp. 64-73.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



CC.   Ultimately, the City's construction manager (GMP) determined that the UTS System failed to satisfy the requirements of the UV System Specifications.  See Exhibit "M" to the Statement.

DD.   Greg Ellner, who is the president of UTS, testified that the UTS horizontal UV System could not satisfy the experience requirement contained in Part 1.2(A) of the UV System Specifications.  See Exhibit "N" to the Statement, pp. 66-70.

EE.   Mr. Ellner also testified that UV System Specifications contained express language that prohibited the use of vertical UV Systems.  Id. at pp. 135-138.

FF.   Mr. Ellner also testified that at the time of Bodell's submittals to GMP for approval of the UTS System, UTS' vertical system was not certified as meeting the requirements of California Title 22 as set forth in Part 1.2(A) of the UV System Specifications.  Id. at pp. 81-84; 176-180.

GG.   Mr. Ellner also testified that UTS did not submit any proof that any UTS System (vertical or horizontal) satisfied the 7-day moving median requirement set forth in Part 2.3(B) of the UV System Specifications.  Id. at 236-238.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

 

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where no genuine issue of material fact

exists and a party is entitled to prevail in the case as a matter of law.   Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Federal Rules of Civil Procedure

56 (c). The moving party has the initial burden of "identifying for the court those

portions of the materials on file that it believes demonstrate the absence of any

genuine issue of material fact." T.W. Elec. Serv. v. Pacific Elec. Contractors

Assoc., 809 F.2d 626, 630 (9th Cir. 1987), citing Celotex Corp. v. Catrett, 477 U.S.

317 (1986). The moving party may meet this burden by pointing out the

insufficiency of evidence to support his opponent's claims, and need not proffer

evidence which negates these claims.  Celotex, 477 U.S. at 323.

If the moving party satisfies its initial burden, the opposing party may not

rely on denials in the pleadings but must produce specific evidence, through

affidavits or admissible discovery material, to show that a dispute exists.

Fed.R.Civ.P. 56(e).  In addition, the dispute must be genuine.  The "opponent must

do more than simply show that there is some metaphysical doubt as to the

materials facts." Bhan v. NME Hospitas, Inc., 929 F.2d 1404 (9th Cir. 1991)

citing, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  The opposing party cannot simply assert that it will be able to discredit the

movant's evidence at trial. See, T.W. Elec., 809 F.2d at 630.  Legal memoranda

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. <u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979), reh'g denied, 441 U.S. 968 (1979).

Furthermore, if the "factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." <u>California Architectural Evidence. Prod., Inc. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988), citing <u>Mitsubishi Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

## IV.    RELEVANT LAW AND ARGUMENT

### A.    BODELL'S CLAIM FOR BREACH OF CONTRACT FAILS AS THE UNDISPUTED EVIDENCE ESTABLISHES THAT THE UTS SYSTEM DID NOT IN FACT MEET ALL THE REQUIREMENTS OF THE CONTRACT DOCUMENTS AS MANDATED BY THE CITY'S CONDITIONAL APPROVAL LETTER DATED DECEMBER 9, 1999.

Bodell's breach of contract claim against the City (Count I of the Complaint) is based upon the rejection of the UTS System after the City had issued a conditional approval of the UTS System for "bidding purposes only" with the added condition that the UTS System needed to meet "all of the requirements of the contract documents." Bodell's breach of contract claim fails as a matter of law

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO




as the undisputed evidence establishes that the UTS did not satisfy the express requirements contained in the contract documents.

In Premier Electrical Construction Co. v. City of Chicago, 512 N.E.2d 44, 159 Ill. App.3d 98 (Ill. 1987), a construction contractor brought a claim for breach of contract against the city based upon the city's rejection of the contractor's request for substitution of equipment different from the equipment specified in the contract. In Premier, the underlying construction contract related to improvements to the lighting control tower at O'Hare International Airport. Id. at 45, 159 Ill. App. at 99. The contract was awarded to the plaintiff. Id. The plaintiff submitted a list of the plaintiff's material providers and the defendant thereafter sent a responsive letter that expressly stated that "the equipment must be in full compliance with the contract plans and specifications, and that the acknowledgement 'does not relieve you, as general contractor, from any responsibility for compliance with the terms of the contract.'" Id. at 46, 159 Ill. App. at 100.

After sending the list of material providers to the defendant, the plaintiff submitted shop drawings and product information to the defendant, listing Texas Instruments ("Texas") as the supplier of certain lighting equipment. Id. Shortly thereafter, the defendant informed the plaintiff that the Texas equipment could not be substituted for the Cutler-Hammer, Eaton Corporation ("CHEC") lighting

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



equipment, which was specified in the contract. Id. The plaintiff thereafter asserted a breach of contract claim against the defendant based upon the rejection of the substitute equipment.

On appeal, the court addressed the contractor's breach of contract action stating that such action "must allege the existence of the contract, plaintiff's performance of all required contractual conditions, the facts of the alleged breach, and consequential damages." Id. at 47, 59 Ill. App. at 101. The court utilized this standard in addressing the plaintiff's allegation that the defendant had breached the contract by withdrawing approval of the Texas equipment. The plaintiff argued that the defendant's acknowledgement of its receipt of the plaintiff's list of material providers constituted an approval of the plaintiff's substitution of Texas equipment for the CHEC equipment. However, the court rejected this argument, stating that nothing in the defendant's response letter supported an allegation that the defendant actually unconditionally approved the substitute.

Here, Leroy Humke of Bodell, who was the leader of Bodell's bidding team, testified that he understood the City's December 9, 1999 letter to be a conditional approval of the UTS System. See Exhibit "L" to the Statement, pp. 28; 60-63. More importantly, Mr. Humke admitted that he understood that the UTS System, although approved for "bidding purposes," still needed to satisfy the requirements of the Project Contract. Id. at 60-63. Thus, there is no dispute that Mr. Humke

17

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



knew that the UTS System would be rejected if it did not satisfy all of the requirements contained in UV System Specifications.  Id.

    As Bodell understood that the UTS System was required to satisfy the requirements of the Project Contract, the City respectfully asserts that the rejection of the UTS System was proper and does not support a breach of contract claim. The City's position is supported by the testimony of UTS' president, Greg Ellner, who admitted that both versions of the UTS System (UTS' horizontal and vertical UV systems) did not satisfy the requirements of the UV System Specifications. Specifically, in regard to UTS' vertical system, Mr. Ellner admitted that the UV System Specifications contained language, which expressly prohibited vertical UV Systems.  See Exhibit "N" to the Statement, pp. 135-138.  Moreover, Mr. Ellner admitted that UTS did not have California Title 22 certification for its vertical system as required by Part 1.2(A) of the UV System Specifications at the time that the UTS System was rejected.  Id. at 81-84; 176-180.  In addition, Mr. Ellner admitted that UTS' horizontal system did not satisfy the experience requirement set forth in Part 1.2(A) of the UV System Specifications.  Id. at 66-70.  Finally, Mr. Ellner admitted that UTS did not submit any proof that its vertical or horizontal systems satisfied the 7-day moving median requirement set forth in Part 2.3(B) of the UV System Specifications.  Id. at 236-238.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

 

In summary, Bodell knew that the approval contained in the City's December 9, 1999 letter was conditioned upon the UTS System meeting the requirements of the Project Contract. Moreover, Mr. Ellner has admitted that neither the UTS vertical nor horizontal system could satisfy the requirements of the UV System Specifications. Accordingly, the City respectfully asserts that Bodell's breach of contact claim must fail as Bodell cannot show that the City's rejection of the UTS System was in any way improper. See Premier Electrical, supra.

**B. THE CITY'S CONDITIONAL APPROVAL OF THE UTS SYSTEM BY WAY OF THE CITY'S LETTER DATED DECEMBER 9, 1999 DOES NOT SUPPORT BODELL'S ARGUMENT THAT IT WAS ENTITLED TO A CONTRACT MODIFICATION IF THE UTS SYSTEM WAS REJECTED FOR FAILING TO SATISFY THE REQUIREMENTS OF THE PROJECT CONTRACT**

**1. THE CITY'S DECEMBER 9, 1999 LETTER IS NOT AMBIGUOUS AS BODELL HAS ADMITTED THAT IT UNDERSTOOD THAT THE CITY'S APPROVAL WAS CONDITIONAL AND SUBJECT TO THE UTS SYSTEM SATISFYING THE PROJECT REQUIREMENTS**

Bodell has asserted that the City's December 9, 1999 letter entitled Bodell to a contract adjustment even if the UTS System was rejected for failing to meet the requirements of the UV System Specifications. However, Bodell's assertion is misplaced.

Specifically, "[i]n interpreting plans and specifications, 'absent an ambiguity, the contract terms should be interpreted according to their plain,

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

ordinary, and accepted sense in common speech.'" See Foundation International, Inc. v. E.T. Ige Construction, Inc., 102 Hawaii 487, 495, 78 P.3d 23, 31 (Sup. Ct. 2003) (citing Cho Mark Oriental Food, Ltd. v. K& K Int'l, 73 Haw. 509, 520, 836 P.2d 1057, 1064 (1992). Further, contracts are not deemed to be ambiguous by the mere fact that parties disagree as to the meaning of their provisions. See Community Heating & Plumbing Co. Inc. v. Kelso, 987 F.2d 1575, 1578 (Fed. Cir. 1993). A contract is ambiguous if it is susceptible to two different and reasonable interpretations, each of which is found to consistent with the contract language. Id. at 1579.

Here, the City respectfully asserts that the City's December 9, 1999 letter plainly indicated that the approval of the UTS System for bidding purposes was expressly conditioned upon the UTS System satisfying the requirements of the Project Contract, which included the UV System Specifications. See Exhibit "F" to the Statement. Nowhere in this letter was there any statement or indication that the City would provide a contract adjustment to Bodell if the UTS System failed to satisfy the requirements of the Project Contract. Id. Based on the conditional language contained in this letter, the City respectfully asserts that it was not reasonable for Bodell to make an assumption in interpreting this letter that Bodell would receive a contract adjustment if the UTS System in fact failed to meet the requirements of the Project Contract.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



The City's position is supported by the deposition of Leroy Humke of Bodell. Mr. Humke, who was the head of Bodell's bid team on the Project, stated in his deposition that he understood that while Bodell was authorized to bid using the UTS System, the UTS System would still have to satisfy the requirements of the Project Contract before the City would grant final approval of the UTS System. See Exhibit "L" to the Statement, pp. 28; 60-63. In addition, based upon Bodell's receipt of ESI's fax dated December 13, 1999 ("Exhibit "F") and UTS' representation that the UTS System was in conformance with the Project requirements, Mr. Humke stated that he would hold UTS responsible if the UTS System did not satisfy all of the requirements of the contract documents. See Exhibit "L" at pp. 64-73.

> 2. **ASSUMING *ARGUENDO* THAT THE CITY'S DECEMBER 9, 1999 LETTER WAS AMBIGUOUS, ANY SUCH AMBIGUITY IMPOSED A DUTY OF INQUIRY ON BODELL THAT BODELL FAILED TO SATISFY, WHICH BARS BODELL'S CLAIM AS A MATTER OF LAW**

Alternatively, if the City's approval of the UTS System for bidding purposes is determined to be ambiguous, the City respectfully asserts that any ambiguity in the December 9, 1999 letter was a patent ambiguity that imposed upon Bodell a duty of inquiry. Since Bodell failed to inquire with the City regarding any ambiguity contained in the December 9, 1999 letter, Bodell's claim is barred as a matter of law.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

In determining whether an ambiguity is a patent ambiguity, "'the language must be placed at a point along a spectrum of ambiguity.'" <u>See</u> <u>Community Heating</u>, 987 F.2d at 1579 (citing <u>Newsom v. United States</u>, 676 F.2d 647, 649 (1982)). "'There is a grey area between the point along this spectrum at which a document requires more exacting language and that at which additional detail will add nothing but worthless surplusage.'" <u>See</u> <u>Community Heating</u>, 987 F.2d at 1579 (citing <u>Fort Vancouver Plywood Co. v. United States</u>, 860 F.2d 409, 414 (Fed.Cir.1988)). "Thus, a patent ambiguity does not exist where the ambiguity is 'neither glaring nor substantial nor patently obvious.'" <u>See</u> <u>Community Heating</u>, 987 F.2d at 1579 (citing <u>Vista Scientific Corp. v. United States</u>, 808 F.2d 50, 52 (Fed.Cir.1986)).

In <u>Foundation International</u>, <u>supra</u>, the Hawaii Supreme Court explained as follows regarding a contractor's duty of inquiry when a patent ambiguity exists in government contract:

> In addition, it is generally accepted that where a material term is left unstated, or where confusion plainly exists in the interpretation of a phrase, a contractor has an obligation to clarify a "patent ambiguity" before entering into a contract.
>
> Ambiguities in a government contract are normally resolved against the drafter. **An exception to that general rule applies, however, if the ambiguity is patent. The existence of a patent ambiguity in a government contract raises the duty of inquiry, regardless of the reasonableness of the contractor's interpretation. That duty requires the contractor to inquire of the contracting officer as to the true meaning of the contract before submitting a bid. Absent**

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO




**such inquiry, a patent ambiguity in the contract will be resolved against the contractor**.

The patent ambiguity doctrine is a court-made rule that is designed to ensure, to the greatest extent possible, that all parties bidding on a contract share a common understanding of the scope of the project. That objective is particularly important in government contracts, in which significant post-award modifications are limited by the government's obligation to use competitive bidding procedures and by the risk of prejudice to other potential contractors. **In addition, the duty of inquiry prevents contractors from taking advantage of ambiguities in government contracts by adopting narrow interpretations in preparing their bids and then, after the award, seeking equitable adjustments to perform the additional work the government actually wanted**.

Foundation International, 102 Hawaii at 498-499, 78 P.3d 23, 34-35 (emphasis added, citations omitted).

Here, the City respectfully asserts that if there was an ambiguity in regard to the City's December 9, 1999 letter, that it was a patent ambiguity. Specifically, the City's approval of the UTS System was for "bidding purposes only" with the caveat that "[f]inal approval is subject to review of the fabrication drawings, shop drawings, and meeting all the requirements of the contract documents." See Exhibit "F" to the Statement. Leroy Humke testified that he interpreted the City's December 9, 1999 letter to mean that Bodell could bid using the UTS System but that the UTS System was still required to meet all requirements of the contract documents before the City would give its final approval. See Exhibit "L", pp. 60-63. Thus, Bodell should have raised a question as to what would happen if Bodell

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



bid using the UTS System but the UTS System was subsequently rejected for failing to meet the requirements of the Project Contract.  However, Bodell made no inquiry with the City as to the meaning or implications of the language contained in the City's December 9, 1999 letter.  <u>See</u> Exhibit "L" to the Statement, pp. 60-63.

In addition, the City's conditional approval contained in the December 9, 1999 letter was not an express approval of the UTS System as was required by Section 1.13 of the General Instructions to Bidders.  Specifically, Section 1.13 required that before an alternate was bid, that the alternate "**expressly** [have] been found to be equal or better by the Officer-in-Charge."  <u>See</u> Exhibit "H" to the Statement (emphasis added).  As the December 9, 1999 only provided a conditional approval of the UTS System, Bodell was obligated to inquire with the City as to the apparent contradiction between the language of the December 9, 1999 letter and Section 1.13 of the General Instructions to bidders.  <u>See</u> <u>Foundation International</u>, 102 Hawaii at 498-499, 78 P.3d 23, 34-35.  However, Bodell never made such an inquiry to either the City or its construction manager.  <u>See</u> Exhibit "L" to the Statement, pp. 60-63.

Bodell's failure to inquire with the City in regard to a patent ambiguity between the language of the December 9, 1999 letter and Section 1.13 of the City's General Conditions requires that this Honorable Court construe any such ambiguity against Bodell. <u>See</u> <u>Foundation International</u>, <u>supra</u>. As such, the City

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

respectfully requests that this Honorable Court rule that any claim by Bodell

against the City based on the City's December 9, 1999 is barred as a matter of law.

C.    **BODELL'S' CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING FAILS AS BODELL KNEW OR SHOULD HAVE KNOWN THAT THE PROPOSAL TO DELETE THE ULTRA TECH SYSTEM FROM BODELL'S BID WAS NOT INCORPORATED INTO THE FINAL CONTRACT DOCUMENTS**

In Count II of the Complaint, Bodell has alleged that the City breached the

implied duty of good faith and fair dealing in regard to the Project Contract. See

Complaint, pp. 12-13.  The basis of this claim is that the City pre-approved the

UTS System, offered to remove the UTS System from Bodell's bid, failed to

remove the UTS System from Bodell's bid, and then rejected the UTS System. Id.

However, Bodell's assertions are misplaced as there is no evidence that the City

acted improperly in regard to the administration of the Project Contract.

In Hawaii, every contract contains an implied duty of the parties to deal with

each other in good faith. In The Best Place, Inc. v. Penn America Insurance Co., 82

Hawaii 120, 920 P.2d 334 (Sup. Ct. 1996), the Hawaii Supreme Court recognized

as a "well-established principle of contract law" the obligation to deal in good

faith. The court stated:

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO



> The obligation to deal in good faith is now a well-established principle of contract law. Restatement (Second) Contracts § 205 (1979) provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." In <u>Hawaii Leasing v. Klein</u>, 5 Haw. App. 450, 456, 698 P.2d 309, 313 (1985), the Intermediate Court of Appeals (ICA) explicitly recognized that parties to a contract have a duty of good faith and fair dealing in performing contractual obligations.

<u>Id.</u> at 124, 920 P.2d at 338.

Here, there is no evidence that the City acted in bad faith at any time in regard to its contract with Bodell. Specifically, Bodell knew that the City's December 9, 1999 letter was a conditional approval of the UTS System and that the UTS System needed to satisfy the requirements of the Project Contract. <u>See</u> Exhibit "L" at 60-63. Although the City and Bodell had discussions subsequent to the award of the Project in regard to removing the UTS System from Bodell's bid, Bodell knew that the UTS System had not been removed from its bid at the time that Bodell signed the Project Contract. <u>Id.</u> at 109-110. Prior to Bodell's execution of the Project Contract, Bodell did not inquire with the City as to the status of the proposal to remove the UTS System from Bodell's bid. More importantly, Bodell understood that the Project had been awarded consistent with the Project Contract and did not incorporate the proposal to delete the UTS System from Bodell's bid. <u>Id.</u> at 107-109. The City relied upon GMP to evaluate the UTS and to provide the

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

 

City with a recommendation as to whether the UTS System satisfied the requirements of the UV System Specifications. As set forth more fully above, Greg Ellner of UTS admitted that UTS' vertical and horizontal systems could not satisfy the requirements of UV System Specifications. In reliance upon GMP's conclusion that the UTS System did not satisfy the requirements of the UV System Specifications, the City rejected the UTS System.

Based on the above, the City asserts that Bodell's claim for a breach of the duty of good faith and fair dealing must fail as there is no indication that anyone from the City acted in bad faith in administering the Project Contract. Without evidence of bad faith actions on the part of the City, Bodell's claim must fail. See The Best Place, supra.

### D. THERE IS NO EVIDENCE TO SUPPORT A MISREPRESENTATION CLAIM AGAINST THE CITY

Bodell has asserted a negligent and/or intentional misrepresentation claim against the City in Count III of the Complaint. The basis of Bodell's misrepresentation claim is the City's pre-approval of the UTS System, which was accomplished by way of the City's December 9, 1999 letter. See Bodell's First Amended Complaint, Count III. However, Bodell's claim for misrepresentation must fail as Bodell cannot satisfy the elements of a negligent or intentional misrepresentation claim.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO

Specifically, for a misrepresentation claim to succeed, there must be a false representation made by the defendant. See Schaffer v. Earl Thacker Co., Ltd., 6 Haw. App. 188, 716 P.2d 163 (1986) (holding that claim of negligent misrepresentation requires that a false representation be made); Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1041 (Cal. 1991) (holding that a claim of intentional misrepresentation requires the satisfaction of the same elements of a claim for negligent misrepresentation with the additional element of a showing of an intent to deceive).

Here, Bodell cannot satisfy the requirements of a misrepresentation claim (whether negligent or intentional) based on the City's pre-approval of the UTS System because it cannot show that anything contained in the City's December 9, 1999 pre-approval letter was false. This assertion is supported by the testimony of Leroy Humke, who testified that he understood that the December 9, 1999 letter provided only a conditional approval which was subject to the UTS System satisfying the requirements of the Project Contract. See Exhibit "L" pp. 60-63. As Bodell cannot point to any false statement contained in the December 9, 1999 letter, its negligent/intentional misrepresentation claim fails as a matter of law. See Schaffer, supra; Milne Employees, supra.

Last Edited: 2/16/2006 7:23:00 AM
Document ID: 396290v1_RTO




## V.    CONCLUSION

In summary, the City respectfully requests that this Honorable Court grant the City's Motion in its entirety.

Dated: Honolulu, Hawaii _____ February 17, 2006 _____.


_____
BERT T. KOBAYASHI, JR.
RONALD T. OGOMORI
GEORGE GUSMAN III
Attorneys for Defendant,
   Cross-Claim Plaintiff/Defendant and
   Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU