## AMENDMENT NO. 3

This AGREEMENT made this _24th_ day of _March_, 1999 by and between the CITY AND COUNTY OF HONOLULU, a municipal corporation of the State of Hawaii, hereinafter called the CITY, and GMP ASSOCIATES, INCORPORATED authorized to do business in Hawaii whose business address is 1100 Alakea Street, Suite 1800, Honolulu, Hawaii, hereinafter called the CONSULTANT.

## WITNESSETH THAT:

Whereas, pursuant to HRS 103D-304, relating to procurement of professional services, the parties hereto have entered into an Agreement identified as Contract No. F49687 dated December 4, 1996, Contract No. F49687(A), Amendment No. 1, dated October 3, 1997, and Contract No. F49687(B), Amendment No. 2, dated December 31, 1998 for services of the CONSULTANT to prepare environmental documents in accordance with Chapter 343, Hawaii Revised Statutes (HRS), for the WAHIAWA EFFLUENT REUSE FOR CENTRAL OAHU, and to provide engineering and design services in accordance with the approved PER (Preliminary Engineering Report), hereinafter referred to as the "PROJECT"; and

Whereas, the CITY wishes to amend the CONTRACT to change the scope of work.

NOW, THEREFORE, the CITY and the CONSULTANT, in consideration of the mutual promises hereinafter set forth, it is hereby understood and agreed by and between the parties hereto to amend Contract No. F49687, Contract No. F49687 (A), and Contract No. F49687 (B) as follows:

1.  CONTRACT

A.  Item 2.(G)   Re-designate Item 2.(G) to become new Item 2.(J).  Delete "one million four hundred nine thousand nine hundred forty one dollars and seven cents ($1,409,941.07)" and replace with "six hundred eighty one thousand one hundred seventy dollars and seven cents ($681,170.07)"  *$24,262.05*

B.  Add the following new items:

"(G)  A lump sum of six hundred ninety nine thousand nine hundred thirteen dollars ($699,913) for preparation of construction documents for Wahiawa WWTP Effluent Reuse and Lake Wilson Outfall Adjustment.

(H)  A lump sum of twenty eight thousand eight hundred fifty eight dollars ($28,858) for engineering services during bidding of Wahiawa WWTP Effluent Reuse and Lake Wilson Outfall Adjustment."

2.  SPECIAL PROVISIONS

A.  Paragraph 1.  PROJECT

---

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3

C&C / Bodell
C010962

Delete the second and third sentences of the paragraph in its entirety and replace with the following:

"The first objective of the engineering services is to prepare the necessary environmental documents required for the PROJECT in accordance with Chapter 343, HRS. The second objective of engineering services is to prepare final construction documents for Wahiawa WWTP Effluent Reuse Facilities and Lake Wilson Outfall Adjustment. Additional objectives of engineering services may include preparation of operation and maintenance manuals, start-up services, and optimization services."

B.  Paragraph 2.  <u>SERVICES</u>

Supplement the existing paragraph by adding the following new subparagraph after 2.H.:

"The Consultant shall also perform engineering and design services to prepare final construction documents in accordance with the approved PER for Wahiawa WWTP Effluent Reuse Facilities and Lake Wilson Outfall Adjustment. The approved PER will be supplied to the Consultant by the City. Engineering and design services shall include survey, field investigation, engineering computations, construction plans, construction

---

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3

C&C / Bodell
C010963

specifications, and construction cost estimates, and other related services as directed by the City.

I.    The Consultant shall make submittals of Wahiawa WWTP Effluent Reuse Facilities and Lake Wilson Outfall Adjustment plans, specifications, and construction cost estimates to the City and the State Department of Health (DOH) as the work progresses. Such submittals shall be made in four (4) copies to the City and two (2) copies to DOH and shall be due on dates set forth in the project progress schedule. The City shall approve each submittal before the Consultant proceeds with the next phase of work.

J.    Conformance to City Standards. All work for the Wahiawa WWTP Effluent Reuse Facilities and Lake Wilson Outfall Adjustment plans, specifications, and construction cost estimates shall conform to the standards of the City. Where there are no established standards, the Consultant shall submit proposed standards for approval and obtain written approval before proceeding.

1. Specifications, shall be typewritten on 8-1/2" sheets. Final specifications shall be typewritten on bond paper. In addition, the final specifications shall also be submitted on 3.5", 1.44 megabyte floppy diskettes in WordPerfect (5.1 or 6.0 DOS) file format.

2. Computations shall be shown on 8-1/2" X 11" sheets, written legibly, and shall be submitted with the first submittal. The final computation submittal(s) shall be stamped and signed by the responsible professional engineer(s) and bound in a three-ring loose leaf binder. The final computation submittal shall be in duplicate and shall be submitted to the City only.

3. Drawings shall be made on 22" X 36" sheets. Acceptable scales as follows: Architectural Drawings: 1/8", 1/4", 3/8", 1/2", 3/4", 1", 1-1/2", and 3" = 1' Engineering Plan Drawing: 1" equal 10', 20', 40', 100', and 200'

C&C / Bodell
C010965

Engineering Profile Drawing: 1" equal 4' and 10'

Minimum height of lettering: 1/4"

All tracings shall be pencil or ink work on prepared tracing paper, cloth, or mylar furnished by the Consultant. The quality of all tracings shall be legible and reproducible. In addition, the Consultant shall submit to the City the final design drawings and specifications on 5-inch CD-ROM disk using AutoCad (version 12 or later) CAD software. This CD-ROM disk shall be the master electronic bid set from which copies will be made for distribution.

The Consultant shall also provide engineering and design services during the advertising, bidding, and construction phases of the project. Services during advertising and bidding shall include: review, evaluate, and make a recommendation of all requests for substitutions and alternate materials or designs; provide consultation, advice, and recommendation to Contractor's requests for information, clarification, or questions; prepare

addendums to make bid documents conform to approved substitution requests or changes required for clarification or new information; prepare new construction cost estimates in the event of approved design changes, or significant approved substitution requests.

Services during construction shall include: provide consultation, advice, and recommendation to Contractor's questions after the bidding period; provide consultation and advice during construction as required to interpret plans and specifications and to resolve actual field conditions; provide consultation, advice, and recommendation on shop drawings, working drawings, technical submittals, operations manuals. All responses and recommendations shall be submitted in a timely manner in accordance with the construction contract documents."

C.    Paragraph 3. Item B.   Delete this item in its entirety.

D.    Paragraph 3. Item C.   Delete this item in its entirety.

E.    Paragraph 3. Item D.   Delete this item in its entirety.

F.    Paragraph 3. Item E.   Delete this item in its entirety.

G.    Paragraph 3. Item F.   Delete this item in its entirety.

H.    Paragraph 3. Item G.   Add this new item to the

contract:

> "G.  Subject to amendment to this contract, provide engineering services during construction."

I.   Paragraph 3. Item H.  Add this new item to the contract:

> "H.  Subject to amendment to this contract, provide engineering and design services for the preparation of operation and maintenance manuals."

J.   Paragraph 3. Item I.  Add this new item to the contract:

> "I.  Subject to amendment to this contract, provide engineering and design services for start-up training and optimization."

J.   TIME

1.  Delete "225 days" and replace with "375 days."

2.  Add the following to the PROJECT PROGRESS SCHEDULE:

CONSTRUCTION DOCUMENTS FOR WAHIAWA EFFLUENT REUSE FACILITIES AND LAKE WILSON OUTFALL ADJUSTMENT

Preliminary (60%), submit within     90 days after NTP;

Prefinal (90%), submit within     45 days after approval of Preliminary;

Final (100%), submit within     15 days after approval of Prefinal;

ENGINEERING SERVICES DURING ADVERTISING AND BIDDING

Concurrent with advertising and bidding period

ENGINEERING SERVICES DURING CONSTRUCTION

Concurrent with construction period and until project acceptance.

K.  Paragraph 6.  <u>PROFESSIONAL LIABILITY INSURANCE</u>  Delete this Paragraph in its entirety.

L.  <u>COMPENSATION AND PAYMENT SCHEDULE</u>

1.  <u>PROJECT PAYMENT SCHEDULE</u>

Add the following to the schedule:

"G.  Construction Documents for Wahiawa WWTP Effluent Reuse Facilities and Lake Wilson Outfall Adjustment

| | |
|---|---|
| Preliminary Submittal | $400,000.00 |
| Prefinal Submittal | $225,000.00 |
| Final Submittal | $ 74,913.00 |

H. Engineering Services During Advertising and Bidding    $ 28,858.00"

Paragraph II Allowance  Delete A. in its entirety and replace with the following:

"A.  Allowance for paragraph 3.A, 3.G, and 3.H: preparation and attendance of meeting and other additional services, preparation

---

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3

C&C / Bodell
C010969

of operation and maintenance manuals,
start-up and optimization service

$681,170.07"

M. Paragraph 8. <u>AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS</u>  Delete the entire GENERAL TERMS AND CONDITIONS FOR CONTRACTS FOR PROFESSIONAL SERVICES FOR THE CITY AND COUNTY OF HONOLULU dated October 1996 and substitute the February 1998 version attached.

1. Supplement section 4.3 Insurance by adding the following:

"A. The Consultant shall procure or cause to be procured and maintain (as provided herein), at no cost to the City, during the life of this Contract and any extensions thereof, all insurance to cover the operations under this contract, that may be required under the laws, ordinances or regulations of any governmental authority, including but not limited to the coverages below:

1. <u>Workers Compensation and Employers Liability Insurance.</u>  The Consultant shall maintain workers compensation and employers liability insurance. Workers compensation coverage shall be in

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3                    Page 10

C&C / Bodell
C010970

accordance with State statutes. Employers liability coverage shall provide limits of not less than $1,000,000 each accident for bodily injury by accident or $1,000,000 each employee, $1,000,000 aggregate, for bodily injury by disease. This policy shall include a waiver of subrogation in favor of the City.

2.  <u>Commercial General and Umbrella Liability Insurance.</u>  Consultant shall maintain commercial general liability (CGL) and if necessary commercial umbrella insurance with a limit of not less than $1,000,000 each occurrence, and general aggregate. CGL insurance shall be written on ISO occurrence form, CG 00 01 (or a substitute form providing equivalent coverage), and shall cover liability arising from premises, operations, independent Consultants, products-completed operations, personal injury and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a

business contract). The City shall be included as an insured under the CGL, using ISO additional insured endorsement CG 20 10 (or equivalent), and under the commercial umbrella, if any. The policy(ies) shall contain a waiver of subrogation in favor of the City.

3. <u>Business Automobile and Umbrella Liability Insurance.</u> Consultant shall maintain business auto liability (including no-fault coverage) and if necessary, commercial umbrella liability insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of any auto (including owned, hired, and non-owned autos) used by Consultant in the performance of this contract. Business auto coverage shall be written on ISO form CA 00 02, CA 00 05, CA 00 12, CA 00 20, or substitute form providing equivalent liability coverage. If necessary, the policy shall be endorsed to provide contractual liability coverage.

4. <u>Professional Liability</u> insurance with limits of not less than $1,000,000 per occurrence/annual aggregate, covering the Consultant and its employees and agents, and any subconsultant and their employees or agents for liability arising out of errors, omissions, or negligence in the performance of professional services under the contract. Such insurance shall remain in full force and effect continuously for the period of design and construction of the work, and for a period of 1 year following substantial completion of construction, provided that such coverage is reasonably available at commercially affordable premiums, as mutually determined and agreed.

B. The insurance specified above shall:

1. Provide that such insurance is primary coverage with respect to all insureds for claims arising from Consultant's negligent acts and/or omissions or misconduct; and that any insurance (or self-insurance) carried by the City shall be excess and non-contributing;

2. Contain a standard Cross Liability endorsement providing that the insurance applies separately to each insured, applicable to policies specified in A.2 and A.3 above;

3. Not be terminated, canceled, not renewed or substantially changed without THIRTY (30) DAYS prior written notice to the City, except for non-payment of premium;

4. Except for Professional Liability insurance required in A.4 above, be written on an "Occurrence" form of policy, unless otherwise specifically approved by the City;

5. Be provided by insurers authorized to do business in the State of Hawaii, and with a current Best's rating of not less than A-, or otherwise as approved by the City.

C. The Consultant will provide and maintain current certificates of insurance, prepared by a duly authorized agent, or if requested, copies of the policies, evidencing the insurance in effect at all times during the term of this agreement as required herein, to the City.

It is further agreed that, except for the amendments set forth above, all other provisions of Contract No. F 49687, F49687(A), and F 49687(B) shall remain in full force and effect.

C&C / Bodell
C010975

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

APPROVAL RECOMMENDED:

FOR Director, Department of
Design and Construction

CITY AND COUNTY OF HONOLULU

For

Director, Department of Budget
and Fiscal Services

APPROVED AND ACCEPTED:
GMP ASSOCIATES, INC.

Signature:

Print or type name: Wagdy A. Guirguis

Title: President

Federal I.D. No.: 34-1210249

APPROVED AS TO FORM AND LEGALITY:

MAILE R. CHUN

Deputy Corporation Counsel

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3

Page 16

C&C / Bodell
C010976

## CORPORATE ACKNOWLEDGEMENT

STATE OF HAWAII                    )
                                   ) SS:
CITY AND COUNTY OF HONOLULU )

On this _2nd_ day of _March, 1999_ before me personally appeared _Wagdy Guirguis_, to me personally known, who, being by me duly sworn, did say that he is the ___President___, respectively of ___GMP Associates, Inc.___, and that the said instrument was signed in behalf of the said corporation by authority of its Board of Directors, and said officer severally acknowledged said instrument to be the free act and deed of said corporation.

M. F. CHISOSTOMO , Notary Public
1st Judicial Circuit, State of Hawaii
My commission expires: _04-03-99_

(Costdata.frm, 10/96)

## CERTIFICATE OF CURRENT COST OR PRICING DATA

This is to certify that, to the best of my knowledge and belief, cost or pricing data as defined in section 3-122-122, HAR, and submitted pursuant to section 3-122-125, HAR; either actually or by specific identification in

writing to the officer-in-charge in support of * F 49687 (C)
Wahiawa Effluent Reuse for Central Oahu

are accurate, complete, and current as of ** 2/25/99

(Month, day, year)

This certification includes the cost or pricing data supporting any advance agreement(s) between the offeror and the City which are part of the proposal.

Firm: GMP Associates, Inc.

Signature:

Lee A. Mansfield, Senior Vice President
(Print name & title of person signing)

***Date of execution: 3/1/99

* Describe the project and reference (i.e. project name, PCD No., field change, change order number, etc.).

** The date should be a mutually determined date prior to but as close to the date when price negotiations were concluded and the price was agreed to as possible.

*** Date of execution should be as soon after the date when the price negotiations were concluded and the contract price was agreed to as practical.

Wahiawa Effluent Reuse for Central Oahu
Contract Amendment No. 3                    Page 17

C&C / Bodell
C010978

(2/98)

## GENERAL TERMS AND CONDITIONS
### FOR CONTRACTS FOR PROFESSIONAL SERVICES
### FOR THE
### CITY AND COUNTY OF HONOLULU

## SECTION 1 - DEFINITIONS; GENERAL PROVISIONS

**1.1    DEFINITIONS.**  Terms as used in these General Terms and Conditions and the contract, unless the context requires otherwise, shall have the following meaning:

"Amendment" means modifications.

"Change order" means a written order signed by the officer-in-charge and approved by the Director of Finance, directing the contractor to make changes which the changes clause of the contract authorizes the officer-in-charge to order without the consent of the contractor.

"City" means the City and County of Honolulu, State of Hawaii.

"Contract" means the written agreement between the City and the successful contractor.

"Contractor" or "consultant" means the person having a contract with the City.

"Day" means calendar day unless otherwise specified.

"Design and plans" means any and all designs, plans, construction drawings, specifications, cost estimates, work schedules, proposals, studies, reports and other items.

"Designee" means a person appointed by the Director of Finance or the officer-in-charge to act on his/her behalf with delegated authority.

"Director of Finance" means the chief procurement officer of the executive branch of the City and County of Honolulu, or the director's designee.

"General terms and conditions" means these General Terms and Conditions for Contracts for Professional Services for the City and County of Honolulu.

"HRS" means the Hawaii Revised Statutes of the State of Hawaii.

"Modification" means any written alteration in specifications, delivery point, rate of delivery, period of performance, price, quantity, or other provisions of the contract accomplished by mutual action of the parties to the contract.

"Notice to proceed" means the written document indicating the official commencement date of services.

"Officer-in-charge" means the head of the department or a designee of the officer-in-charge for which services are being rendered.

"Professional services" means those services within the scope of the practice of architecture, landscape architecture, professional engineering, land surveying, real property appraisal, law, medicine, accounting, dentistry, or any other practice defined as professional pursuant to section 415A-2, HRS, or the professional and scientific occupation series contained in the United States Office of Personnel Management's Qualifications Standards Handbook.

"Qualified list method" means the method of source selection for professional services under HRS 103D-304.

## 1.2     GENERAL PROVISIONS

**1.2.1**     Nondisclosure of designated trade secrets or proprietary information.  A person shall request in writing nondisclosure of designated trade secrets or other proprietary data to be confidential. *Such data shall accompany the proposal, be clearly labeled as confidential, and shall be readily separable from other data in order to facilitate eventual public inspection of the nonconfidential portion of the data.*  [3-122-46, HAR]

**1.2.2**     Independent price determination.  By submitting an offer or price, the person certifies that the price submitted for the contract was independently arrived at without collusion. [3-122-192, HAR]

**1.2.3**     No reimbursement.  The City shall not provide any reimbursement for the cost of developing or presenting proposals in response to the request for proposal.  Failure to include the requested information may have a negative impact on the evaluation of the offeror's proposal.

**1.2.4**     Cancellation of solicitation.  Solicitations may be cancelled in whole or in part when in the best interest of the agency.  [3-122-95, HAR]

**1.2.5**     Determination of contractual terms and conditions.  The Director of Finance is authorized to determine the contractual provisions, terms, and conditions of solicitations and contracts, provided such provisions, terms, and conditions are not contrary to statutory or Chapter 91, HRS, administrative rule requirements governing the procurement.  [3-122-7, HAR]

## SECTION 2 - HAWAII ADMINISTRATIVE RULES (HAR)

The Hawaii Administrative Rules, Title 3, Department of Accounting and General Services, State of Hawaii (HAR), govern the procurement of goods and services and are by reference incorporated herein and made a part of the request for proposals and contract document.

Wherever "chief procurement officer" appears in the HAR, it shall mean the Director of Finance.

Wherever "head of the purchasing agency" and "procurement officer" appear in the HAR, both shall mean the officer-in-charge, or their authorized designees.  For all agencies except the Board of Water Supply, the officer-in-charge shall have authority to act as specified herein.

Sections of the HAR are provided in whole or in part in these general terms and conditions for convenience only and the applicable section numbers are indicated in brackets.  These provisions are

GENERAL TERMS AND CONDITIONS          2

not intended to relieve the contractor from the responsibility of familiarizing themselves with the HAR relating to this contract. Should any provision of these general terms and conditions be found to be inconsistent with the HAR, the provision in the HAR shall take precedent.

## SECTION 3 - AWARD AND EXECUTION OF CONTRACT

**3.1    AWARD OF CONTRACT.** The contractor, upon being selected to render the services for the project, will be notified of its commission by the officer-in-charge. Said notice shall not be construed to be authorization to proceed with the performance of services under the contract.

**3.2    EXECUTION OF CONTRACT**

**3.2.1**    If the contractor is an individual, or partnership, the contractor shall cause the contract to be signed before a notary public duly acknowledged. If the contractor is a corporation, or if the joint venture is made up of two or more corporations, the contractor shall cause the contract to be signed and sealed before a notary public who shall acknowledge the person(s) signing, their titles, and shall affix thereto their corporate resolution, or other instrument vesting such officer with authority to sign the contract on their behalf.

**3.2.2**    If performance and payment bonds are required in the solicitation or contract, such documents shall be executed in the same manner above.

**3.2.3**    The signed contract, bonds, if any bonds are required, shall be returned together with evidence of insurance coverages as may be required, to the officer-in-charge for further processing, within ten days after notification of award.

**3.3    CONTRACT NOT BINDING UNLESS PROPERLY EXECUTED AND APPROPRIATION AVAILABLE.** (a) The contract shall not be binding or of any force and effect without an endorsement by the Director of Finance that there is an appropriation or balance of an appropriation over and above all outstanding contracts sufficient to cover the amount required by the contract.

(b)    Exceptions to the certification of funds required in (a) above are:

(1)    If a contract is a multi-term contract pursuant to section 3-122-149, HAR, the Director of Finance shall only be required to certify that there is an appropriation or balance of an appropriation over and above all outstanding contracts that is sufficient to cover the amount required to be paid under the contract during the current fiscal year or remaining portion of the current fiscal year of the first term of the multi-term contract. Payment and performance obligations for succeeding fiscal periods shall be subject to the availability and appropriation of funds therefore from sources which are identified in writing;

(2)    If the contract is one under which the total amount to be paid to the contractor cannot be accurately estimated at the time the contract is to be awarded; and

(3)    If there is no direct expenditure of public funds from the City to the contractor.

(4) Certification of a portion of the total funds required for a contract may be permitted when an immediate solicitation will result in significantly more favorable contract terms and conditions to the City than a solicitation made at a later date; provided that certification for partial funding shall be permitted only if the Director of Finance states in the certificate that the availability of funds in excess of the amount certified as available shall be contingent upon future appropriations or special fund revenues. All contracts partially funded shall be enforceable only to the extent to which funds have been certified as available.

(c) Contracts involving federal funds. Unless otherwise specified in the solicitation, for any contract supplemented by federal funds or receiving one hundred per cent federal funds, payment shall be made upon receipt of federal funds. The obligation of the City shall extend only to that portion of funds certified to and payable out of City funds. [3-122-102; 3-122-103, HAR]

**3.4    COMMENCEMENT OF WORK.** Work shall not commence until a contract has been executed and availability of funds certified by the Director of Finance, and the officer-in-charge has issued a written notice to proceed or the executed contract specifies the official commencement for services to begin.

## SECTION 4 - LEGAL RELATIONS AND RESPONSIBILITY

### 4.1    INDEPENDENT CONTRACTOR

**4.1.1**  The contractor shall perform the work as an independent contractor and shall indemnify and hold harmless the City, its departments, and all of their officers, employees or agents, from any and all deaths, injuries, losses and damages to persons or property, and any and all claims, demands, suits, action and liability therefor including reasonable attorney fees and cost of defense, caused by error, omissions or negligence in the performance of the contract by the contractor or the contractor's subcontractors, agents and employees, until such time as action against the contractor for death, injuries, losses and damages is barred by the provisions of Chapter 657, HRS, relating to limitations of actions.

**4.1.2**  Laws, regulations. The contractor shall keep itself fully informed of all laws, ordinances, codes, rules and regulations, governmental general and development plans, setback limitations, rights-of-way, and all changes thereto, which in any manner affect the contract and the performance thereof. The contractor shall comply with all such laws, ordinances, codes, rules and regulations, governmental general and development plans, setback limitations, rights-of-way, including the giving of all notices necessary and incident to the proper and lawful prosecution of the work, and all changes thereto. If any discrepancy or inconsistency is discovered between the contract and any such law, ordinance, code, rule, regulation, design standard, design criterion, governmental general and development plans, setback limitation, rights-of-way, the contractor shall forthwith report the same in writing to the officer-in-charge.

### 4.2    COPYRIGHT OR PATENT

**4.2.1**  If the contractor is required or desires to use any design, device, material or process covered by letters of patent or copyright, the right for such use shall be procured by the contractor from the patentee or owner. The contractor shall indemnify and hold harmless the City and its

C&C / Bodell
C010982

departments, from any and all claims for infringement by reason of the use of any such patented design, device, material or process, or any trademark or copyright in connection with the work to be performed under the contract, and shall indemnify the City and its departments, and all of their officers, employees or agents, for any costs, expenses and damages which it may be obliged to pay by reason of any such infringement at any time during the prosecution or after the completion of the work.

**4.2.2**   The City shall have an unrestricted, royalty-free, nonexclusive and irrevocable license to reproduce, publish, translate or otherwise use and to authorize others to publish and use all materials obtained or produced in connection with the work hereunder which may be copyrighted by the contractor prior to the completion of the contract.

## 4.3   INSURANCE

**4.3.1** If required in the solicitation or contract, the contractor shall procure or cause to be procured and maintained at no cost to the City, during the life of the contract and any extensions thereof, or until such time as action against the contractor or its subcontractor(s) for death, injuries, losses and damages is barred by the provisions of Chapter 657, HRS: worker's compensation, employer's liability, comprehensive general liability (bodily injury) and comprehensive automobile liability (bodily injury and property damage) insurance, and all other insurance that may be required under the laws, ordinances or regulations of any governmental authority, for its employees, operations, and vehicles engaged in the performance of the contract. The Director of Finance or officer-in-charge may require minimum amounts of coverages or additional coverages as deemed necessary for the performance of the contract.

**4.3.2**   If required in the solicitation or contract, the contractor shall procure and maintain professional liability insurance with limits of not less than the amount specified in the contract, covering the contractor, the contractor's employees or agents for liability arising out of errors, omissions, or negligence in the performance of professional services under the contract.

**4.3.3**   The insurance specified above shall:

(1)     Name the City as additional insured (except workers compensation and professional liability insurance). "City" as used herein shall mean the City and County of Honolulu, its elected and appointed officials, employees and agents.

(2)     Provide that such insurance is primary coverage with respect to all insureds; and that any insurance carried by the City shall be excess and noncontributing;

(3)     Not be terminated, cancelled, not renewed or substantially changed without thirty (30) days prior written notice to the City; and

(4)     Show the certificate holder as the Director of Finance, 530 South King Street, Honolulu, Hawaii, 96813.

**4.3.4**   The contractor will provide certificates of insurance prepared by a duly authorized agent, or if requested, copies of the policies, evidencing the insurance in effect as required herein, to the City, upon execution of the contract.

C&C / Bodell
C010983

## SECTION 5 - MODIFICATIONS

**5.1    MODIFICATIONS OF CONTRACTS.** The City may at any time make such modifications in the contract, and the services, designs and plans, or studies prepared by the contractor as the officer-in-charge deems necessary and advisable. Such modifications shall be made by a supplemental agreement in writing or by a written order of the Director of Finance; provided that modifications by such a written order shall be limited to modifications in the scope of services and in the designs, plans and studies; and provided further that modifications involving no reduction or increase in compensation of the contractor may be made by written order of the officer-in-charge.

**5.1.1** Change order. (a) The officer-in-charge, with the approval of the Director of Finance, may at any time, and without notice to any surety, unilaterally, order of the contractor:

(1)    Changes in the work within the scope of the contract; and

(2)    Changes in the time of performance of the contract that do not alter the scope of the contract work.

(b) If any change order increases or decreases the contractor's cost of, or the time required for, performance of any part of the work under the contract, an adjustment shall be made and the contract modified in writing accordingly. Any adjustment in contract price made pursuant to this clause shall be determined, where applicable, in accordance with subsection 5.2, Price adjustment, or as negotiated. Failure of the parties to agree to an adjustment shall not excuse the contractor from proceeding with the contract as changed, provided that the officer-in-charge promptly and duly makes the provisional adjustments in payment or time for the direct costs of the work as the City deems reasonable. The right of the contractor to dispute the contract price or time or both shall not be waived by its performing the work, provided however, that it follows the written notice requirements for disputes and claims established by the contract or these provisions.

(c) *Within ten days* after receipt of a written change order, unless the period is extended by the officer-in-charge in writing, the contractor shall respond with a claim for an adjustment. The requirement for a timely written response cannot be waived and shall be a condition precedent to the assertion of a claim.

(d) Claim barred after final payment. No claim by the contractor for an adjustment hereunder shall be allowed if written response is not given prior to final payment under the contract.

(e) Claims not barred. In the absence of a change order, nothing in this subsection shall be deemed to restrict the contractor's right to pursue a claim under the contract or for breach of contract. [3-125-2, HAR]

**5.1.2** Modifications. (a) By written order, the officer-in-charge, with the approval of the Director of Finance, may at any time, and without notice to any surety, subject to mutual agreement of the parties to the contract and all appropriate adjustments, make modifications within the general scope of the contract to include any one or more of the following:

(1)    Drawings, designs, or specifications, for the goods to be furnished;

(2)    Method of shipment or packing;

C&C / Bodell
C010984

(3)   Place of delivery;

(4)   Description of services to be performed;

(5)   Time of performance (i.e., hours of the day, days of the week, etc.);

(6)   Place of performance of the services; or

(7)   Other provisions of the contract accomplished by mutual action of the parties to the contract.

(b) If any modification increases or decreases the contractor's cost of, or the time required for, performance of any part of the work under the contract, an adjustment shall be made and the contract modified in writing accordingly. Any adjustment in contract price made pursuant to this clause shall be determined, where applicable, in accordance with subsection 5.2, Price adjustment or as negotiated.

(c) Claim barred after final payment.  No claim by the contractor for an adjustment hereunder shall be allowed if written agreement of modification is not made prior to final payment under the contract.

(d) Claims not barred.  In the absence of a contract modification, nothing in this subsection shall restrict the contractor's right to pursue a claim arising under the contract or for breach of contract. [3-125-3, HAR]

5.1.3   Variations in definite quantities.  Upon the agreement of the parties, the quantity of goods or services or both specified in the contract may be increased by a maximum of ten percent provided the unit prices will remain the same except for any price adjustments otherwise applicable and the officer-in-charge makes a written determination that such an increase will either be more economical than awarding another contract or that it would not be practical to award another contract. [3-125-8, HAR]

5.1.4   Order to stop work.  (a) The officer-in-charge may, with the approval of the Director of Finance, by written order to the contractor, at any time, and without notice to any surety, require the contractor to stop all or any part of the work called for by the contract. *This order shall be for a specified period not exceeding sixty days* after the order is delivered to the contractor, unless the parties agree to any further period.  Any order shall be identified specifically as a stop work order issued pursuant to this subsection.  Upon receipt of an order, the contractor shall forthwith comply with its terms and take all reasonable steps to minimize the occurrence of costs allocable to the work covered by the order during the period of work stoppage.  Before the stop work order expires, or within any further period to which the parties shall have agreed, the officer-in-charge, with the approval of the Director of Finance, shall either:

(1)   Cancel the stop work order, or

(2)   Terminate the work covered by the order as provided in subsection 9.2, Termination for default, or subsection 9.3, Termination for convenience.

(b) Cancellation or expiration of the order.  If a stop work order issued under this subsection is canceled at any time during the period specified in the order, or if the period of the order or any extension thereof expires, the contractor shall have the right to resume work.  An appropriate

GENERAL TERMS AND CONDITIONS            7

C&C / Bodell
C010985

adjustment shall be made in the delivery schedule or contract price, or both, and the contract shall be modified in writing accordingly, if:

    (1)    The stop work order results in an increase in the time required for, or in the contractor's cost properly allocable to, the performance of any part of the contract; and

    (2)    The contractor asserts a claim for such an adjustment *within thirty days* after the end of the period of work stoppage; provided that, if the officer-in-charge decides that the facts justify such action, any claim asserted may be received and acted upon at any time prior to final payment under the contract.

    (c) Termination of stopped work. If a stop work order is not cancelled and the work covered by the order is terminated for default or convenience, the reasonable costs resulting from the stop work order shall be allowable by adjustment or otherwise.

    (d) Adjustment of price. Any adjustment in contract price made pursuant to this clause shall be determined in accordance with subsection 5.2, Price adjustment. [3-125-6, HAR]

**5.2    PRICE ADJUSTMENT.** Any adjustment in contract price pursuant to a clause in the contract shall be made in one or more of the following ways:

    (1)    By agreement on a fixed price adjustment before commencement of the pertinent performance or as soon thereafter as practicable;

    (2)    By unit prices specified in the contract or subsequently agreed upon;

    (3)    By the costs attributable to the event or situation covered by the clause, plus appropriate profit or fee, all as specified in the contract or subsequently agreed upon;

    (4)    In such other manner as the parties may mutually agree; or

    (5)    In the absence of agreement between the parties, by a unilateral determination by the Director of Finance upon the recommendation of the officer-in-charge of the costs attributable to the event or situation covered by the clause, plus appropriate profit or fee, all as computed by the officer-in-charge in accordance with generally accepted accounting principles and applicable sections of chapters 3-123 and 3-126, HAR.

    (6)    The contractor shall provide cost or pricing data for any price adjustments subject to the provisions of chapter 3-122, subchapter 15, HAR.  [3-125-12, HAR]

**5.3    NOVATION OR CHANGE OF NAME**

**5.3.1    No assignment.** No contract is transferable, or otherwise assignable, without the written consent of the Director of Finance.

**5.3.2    Recognition of a successor in interest; assignment.** When in the best interest of the City, a successor in interest may be recognized in an assignment agreement in which the transferor, the transferee and the City shall agree that:

    (1)    The transferee assumes all of the transferor's obligations;

C&C / Bodell
C010986

(2)     The transferor remains liable for all obligations under the contract but waives all rights under the contract as against the City; and

(3)     The transferor shall continue to furnish, and the transferee shall also furnish, all required bonds.

**5.3.3**    Change of name.  When a contractor requests to change the name in which it holds a contract with the City, the Director of Finance shall, upon receipt of a document indicating such change of name (for example an amendment to the articles of incorporation of the corporation), enter into an agreement with the requesting contractor to effect such a change of name.  The agreement changing the name shall specifically indicate that no other terms and conditions of the contract are thereby changed.  [3-125-14, HAR]

**5.4    CLAIMS BASED ON THE OFFICER-IN-CHARGE'S ACTIONS OR OMISSIONS.**  (a)  If any action or omission on the part of an officer-in-charge or designee of such officer, requiring performance changes within the scope of the contract constitutes the basis for a claim by the contractor for additional compensation, damages, or an extension of time for completion, the contractor shall continue with performance of the contract in compliance with the directions or orders of such officials, but by so doing, the contractor shall not be deemed to have prejudiced any claim for additional compensation, damages, or an extension of time for completion; provided:

(1)     The contractor shall have given written notice to the officer-in-charge;
   (A)    *Prior to the commencement* of the work involved, if at that time the contractor knows of the occurrence of the action or omission;
   (B)    *Within thirty days after* the contractor knows of the occurrence of the action or omission, if the contractor did not have knowledge prior to the commencement of the work; or
   (C)    Within further time as may be allowed by the officer-in-charge in writing.

(2)     This notice shall state that the contractor regards the act or omission as a reason which may entitle the contractor to additional compensation, damages, or an extension of time.  The officer-in-charge or designee of such officer, upon receipt of the notice may rescind the action, remedy the omission, or take other steps as may be deemed advisable in the discretion of the officer-in-charge or designee of such officer;

(3)     The notice required by paragraph (1) describes as clearly as practicable, at the time, the reasons why the contractor believes that additional compensation, damages, or an extension of time may be remedies to which the contractor is entitled; and

(4)     The contractor maintains and, upon request, makes available to the officer-in-charge within a reasonable time, detailed records to the extent practicable, of the claimed additional costs or basis for an extension of time in connection with the changes.

(b)     Nothing herein contained, however, shall excuse the contractor from compliance with any rules of law precluding any City officers and any contractors from acting in collusion or bad faith in issuing or performing change orders which are clearly not within the scope of the contract.

(c)     Any adjustment in the contract price made pursuant to this clause shall be determined in accordance with subsection 5.2, Price adjustment.  [3-125-15, HAR]

C&C / Bodell
C010987

## SECTION 6 - PERFORMANCE OF CONTRACT

**6.1    TIME.** Time is of the essence of the contract. Performance of the services under the contract shall be commenced on the date designated in the notice to proceed or in the contract and the services as required in the contract shall be completed within the number of days or on the date specified.

**6.2    DELAY.** If any excusable delay occurs, it shall be dealt with in accordance with subsection 9.2.3, Excuse for nonperformance or delayed performance. No extension of time however, shall be granted unless the written application therefor stating in detail the cause or causes of delay is filed by the contractor with the officer-in-charge *within fifteen days* after the commencement of the delay. No such extension shall be deemed a waiver of the right of the officer-in-charge to require the completion of services under the contract within the time required herein as so extended by the specific terms of such extension or extensions, nor a waiver of right to terminate the contract for any other or additional delay not covered by the specific terms of such extension or extensions. The number of days of each extension of time shall be determined by the Director of Finance upon the recommendation of the officer-in-charge.

**6.3    EXTENSION OF TIME ON CONTRACTS.** If a contract has exhausted its provision for extension(s) of time of performance, or if the contract does not include a provision for extension(s) of time of performance, the contract may be extended upon approval of the Director of Finance, provided:

(1)    The period of each extension is for one hundred eighty calendar days or less;

(2)    The officer-in-charge makes a written determination that it is not practical to award another contract at the time of the expiration of the contract for reasons to include but be limited to the following:
(A)    A new contract cannot be executed by the time the contract expires; or
(B)    The need for the good or service is short term;

(3)    All parties agree to the extension of time of performance; and

(4)    The price or conditions of the contract remain the same as the original contract, or as amended per the contract; or if not the same or as amended, they are fair and reasonable. [3-122-3, HAR]

**6.4    PROSECUTION OF THE WORK.** The contractor shall be available upon reasonable demand to discuss the progress of the services being performed under the contract. All questions arising during the performance of the contract which must be resolved by the officer-in-charge shall be brought to the officer-in-charge's immediate attention.

The contractor shall direct its work to relate appropriately to, and in accordance with, established principles, practices and standards for such work. The contractor shall direct its work to relate appropriately to, and in accordance with, established engineering, planning and/or architectural design principles and practices for good exterior appearance, and the natural and man-made environment.

C&C / Bodell
C010988

The contractor shall furnish sufficient technical supervision and administrative personnel to insure the proper performance of the services under the contract.

The contractor shall be responsible for the accuracy of all computations and completeness of all studies, designs and plans.

All notes, deliverables, plans, specifications, calculations, field notes, and other data produced in the performance of the contract shall be the property of the City.

The officer-in-charge shall have access, at all reasonable times, to all notes, designs, drawings, tracings or other technical data pertaining to the services being performed under the contract for the purpose of inspection and making copies of them. Upon completion of the services under the contract, any or all of such notes, studies, designs, drawings, tracings or other technical data shall be delivered and surrendered to the officer-in-charge on demand, provided that copies of notes, studies and other technical data may be delivered and surrendered instead of the originals.

**6.5    AUTHORITY OF THE OFFICER-IN-CHARGE AND DIRECTOR OF FINANCE.** The decisions of the officer-in-charge shall be final and binding upon parties unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence, provided that decisions on questions or disputes relating to the acceptance of the services performed under the contract, suspension or termination of the contract, extension of time, reduction or increase in the compensation of the contractor and payment shall become final and binding upon all parties only upon approval of the Director of Finance, and provided further that nothing herein shall be construed as making final and binding any decision of the officer-in-charge and/or Director of Finance on a question of law. Pending final decision of any dispute or question, the contractor shall proceed diligently with the performance of services under the contract in accordance with the decision of the officer-in-charge and/or Director of Finance.

**6.6    LIQUIDATED DAMAGES.** The amount of damage to the City as a result of failure to complete performance of specified services under the contract within the time fixed or any extension thereof, exclusive of overhead expenses, being certain but difficult, if not impossible to ascertain, the contractor agrees to pay the sum stated in the contract as liquidated damages, and not by way of penalty, for every calendar day of delay until the services are completed and accepted, or a reasonable time has expired for completion and acceptance of the services remaining to be performed.

When the contractor is given notice of delay or nonperformance as specified in subsection 9.2, Termination for default, and fails to cure in the time it is agreed specified, the contractor shall pay to the City the amount specified in the contract per calendar day from the date set for cure until either the officer-in-charge reasonably obtains similar goods or services if the contractor is terminated for default, or until the contractor provides the goods or services if the contractor is not terminated for default. To the extent that the contractor's delay or nonperformance is excused under 9.2.3, Excuse for nonperformance or delayed performance of the termination for default clause, liquidated damages shall not be due the City. The contractor remains liable for damages caused other than by delay. [3-125-19, HAR]

**6.7    SUBCONTRACTING.** The contractor shall not subcontract all or any part of the services under the contract without the prior written consent of the officer-in-charge. Any consent by the officer-in-charge to subcontract or otherwise dispose of any portion of the contract shall not be construed to relieve the contractor of any responsibility for the performance of the contract.

C&C / Bodell
C010989

## SECTION 7 - SERVICES TO BE PERFORMED BY THE CITY

**7.1    COOPERATION BY THE CITY.**  The City shall, without cost to the contractor, through the officer-in-charge, cooperate fully with the contractor and will promptly place at the disposal of the contractor all available pertinent information which the City may have in its possession. The officer-in-charge will certify to the accuracy of certain information in writing whenever it is possible to do so.  The officer-in-charge does not represent that other information not certified as accurate is so and takes no responsibility therefor, and the contractor shall rely on such information at the contractor's own risk.

**7.2    REVIEW BY THE OFFICER-IN-CHARGE.**  The officer-in-charge shall review all submittals and other work and data required to be made by the contractor and reject or approve such submittals in their entirety or approve the same subject to such deletions, additions and revisions as the officer-in-charge may deem necessary and proper.  In submittals specified in the special provisions, all items not required by the officer-in-charge to be deleted, added, or revised after review by the officer-in-charge and not defective by reason or error, omissions or negligence on the part of the contractor, his subcontractor, agents or employees shall be deemed to have been approved.

## SECTION 8 - COMPENSATION

**8.1    COMPENSATION.**  The contractor shall be paid the amount stated in the contract or he amount determined in accordance with the special provisions, whichever is lower, as full compensation for the performance of the services under the contract.

**8.2    PROGRESS PAYMENT.**  The contractor's compensation shall be paid as set forth in the contract.

**8.3    ACCEPTANCE AND FINAL PAYMENT.**  The officer-in-charge shall approve and accept completion of the contract upon the satisfactory fulfillment of the terms of the contract and receipt of a certificate from the State Director of Taxation and the Internal Revenue Service, as provided in section 103-53, HRS, relating to prerequisite for final settlement of contracts, provided that final payment will be made upon approval of the Director of Finance.  The tax clearances required at final settlement of a contract shall be on an original certificate and valid for a period of forty-five (45) calendar days from the later date stamped on the form, provided that the contractor does not delay in obtaining clearance from both agencies.

**8.3.1**  In the event equipment is provided under the contract, which received prior approval from the Director of Finance, the contractor shall also provide a written list of equipment installed or provided, listing the description, make, model, serial number, cost, and location of the equipment or room number in which the equipment is located.

For purposes of this subsection, "equipment" means any item such as a water heater that can be removed with a hand tool, or like an air conditioner, is capable of being moved or transferred to another location and is accessible to tagging with an identification number.

**8.3.2**  Acceptance by the contractor of the final payment shall constitute payment in full for all services performed under the contract.

C&C / Bodell
C010990

**8.4    AUTHORITY TO WITHHOLD MONEY DUE OR PAYABLE.** The officer-in-charge may withhold such amounts from the money due or to become payable under the contract to the contractor, or any assignee under subsection 5.3, Novation or change of name, as may be necessary to protect the City against liability or to satisfy the obligations of the contractor to the City, State Department of Taxation, Internal Revenue Service, and to employees, subcontractors and material suppliers who have performed labor or furnished material and equipment under the contract and may make such payments from such amounts as may be necessary to discharge such obligations and protect the City.

**8.5    RETAINAGE.** In accordance with HRS 103-32.1, the officer-in-charge may determine the need for retainage of a portion of the monthly payments to the contractor or payments made upon completion of phases of the contract to insure the proper performance of the contract; provided that the sum withheld shall not exceed five per cent of the amount due the contractor and that after fifty per cent of the contract is completed and progress is satisfactory, no additional sum shall be withheld; provided further that if progress is not satisfactory, the officer-in-charge may continue to withhold as retainage, sums not exceeding five per cent of the amount due the contractor.

For federally funded contracts, the amount of retainage shall be the amount allowed by federal regulations.

**8.6    PROMPT PAYMENT TO SUBCONTRACTORS.**

(1)    Any money, other than retainage, paid to a contractor shall be dispersed to subcontractors within ten days after receipt of the money in accordance with the terms of the subcontract; provided that the subcontractor has met all the terms and conditions of the subcontract and there are no bona fide disputes; and

(2)    Upon final payment to the contractor, full payment to the subcontractor, including retainage, shall be made within ten days after receipt of the money; provided that there are no bona fide disputes over the subcontractor's performance under the subcontract. [3-125-23, HAR]

## SECTION 9 - TERMINATION OF CONTRACTS

**9.1    RIGHT OF THE CITY TO TERMINATE.** The City shall have the right to suspend performance of the services under the contract or terminate the contract in whole or in part at any time by written notice to the contractor. If the termination is for reasons other than default of the contractor as provided in subsection 9.2, the contractor shall be compensated in accordance with subsection 9.3, Termination for convenience.

**9.2    TERMINATION FOR DEFAULT.** If the contractor refuses or fails to perform any of the provisions of the contract with such diligence as will ensure its completion within the time specified in the contract, or any extension thereof, otherwise fails to timely satisfy the contract provisions, or commits any other substantial breach of the contract, the officer-in-charge may notify the contractor in writing of the delay or nonperformance, and *if not cured in ten days* or any longer time specified in writing by the officer-in-charge, the officer-in-charge may, with the approval of the Director of Finance, terminate the contractor's right to proceed with the contract or a part of the contract as to which there has been delay or other breach of contract. In the event of termination in

GENERAL TERMS AND CONDITIONS          13

C&C / Bodell
C010991

whole or in part, the Director of Finance may procure similar goods or services in a manner and upon terms deemed appropriate by the Director of Finance. The contractor shall continue performance of the contract to the extent it is not terminated and shall be liable for excess costs incurred in procuring similar goods or services.

**9.2.1**    Contractor's duties.  Notwithstanding termination of the contract and subject to any directions from the Director of Finance or the officer-in-charge, the contractor shall take timely and necessary action to protect and preserve property in the possession of the contractor in which the City has an interest.

**9.2.2**    Compensation.  Payment for completed goods delivered and accepted by the City shall be at the contract price.  Payment for the protection and preservation of property shall be in an amount agreed upon by the contractor and the officer-in-charge; if the parties fail to agree, the Director of Finance, upon recommendation of the officer-in-charge, shall set an amount subject to the contractor's rights under chapter 3-126, HAR.  The City may withhold from amounts due the contractor as the Director of Finance deems to be necessary to protect the City against loss because of outstanding liens or claims of former lien holders and to reimburse the City for the excess costs incurred in procuring similar goods and services.

**9.2.3**    Excuse for nonperformance or delayed performance.  Except with respect to defaults of subcontractors, the contractor shall not be in default by reason of any failure in performance of the contract in accordance with its terms, if the contractor has notified the officer-in-charge *within fifteen days* after the cause of the delay and the failure arises out of causes including but not limited to:  acts of God; acts of the public enemy; acts of the City and any other governmental body in its sovereign or contractual capacity; fires; floods; epidemics; quarantine restrictions; strikes or other labor disputes; freight embargoes; or unusually severe weather.  If the failure to perform is caused by the failure of a subcontractor to perform or to make progress, and if the failure arises out of causes similar to those set forth above, the contractor shall not be deemed to be in default, unless the goods or services to be furnished by the subcontractor were obtainable from other sources in sufficient time to permit the contractor to meet the contract requirements.

Upon request of the contractor, the officer-in-charge shall ascertain the facts and extent of the failure, and, if the officer-in-charge determines that any failure to perform was occasioned by any one or more of the excusable causes, and that, but for the excusable cause, the contractor's progress and performance would have met the terms of the contract, the completion date or delivery schedule shall be revised accordingly, subject to the rights of the City under subsection 9.3, Termination for convenience.  As used in this paragraph, the term "subcontractor" means subcontractor or subconsultant at any tier.

**9.2.4**    Additional rights and remedies.  The rights and remedies provided in this clause are in addition to any other rights and remedies provided by law. [3-125-17, HAR]

**9.3**    **TERMINATION FOR CONVENIENCE.**  The Director of Finance may, upon recommendation of the officer-in-charge, when the interests of the City so require, terminate the contract in whole or in part, for the convenience of the City.  The Director of Finance shall give written notice of the termination to the contractor specifying the part of the contract terminated and when termination becomes effective.

**9.3.1**    Contractor's obligations.  The contractor shall incur no further obligations in connection with the terminated work and on the dates set in the notice of termination the contractor will

GENERAL TERMS AND CONDITIONS          14          C&C / Bodell
C010992

stop work to the extent specified. The contractor shall also terminate outstanding orders and subcontracts as they relate to the terminated work. The contractor shall settle the liabilities and claims arising out of the termination of subcontracts and orders connected with the terminated work subject to the City's approval. The contractor may be directed to assign the contractor's right, title, and interest under terminated orders or subcontracts to the City. The contractor must still complete the work not terminated by the notice of termination and may incur obligations as are necessary to do so.

**9.3.2**    Right to goods.

(1)    The contractor may be required to transfer title and deliver to the City in the manner and to the extent directed by the officer-in-charge or the Director of Finance: any completed goods; and the partially completed goods and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights, hereinafter called "manufacturing material," as the contractor has specifically produced or specially acquired for the performance of the terminated part of the contract.

(2)    The contractor shall, upon direction of the officer-in-charge, protect and preserve property in the possession of the contractor in which the City has an interest. If the officer-in-charge does not exercise this right, the contractor shall use the contractor's best efforts to sell such goods and manufacturing materials. Use of this section in no way implies that the City has breached the contract by exercise of the termination for convenience clause.

**9.3.3**    Compensation

(1)    The contractor shall submit a termination claim specifying the amounts due because of the termination for convenience together with cost or pricing data to the extent required by subchapter 15, chapter 3-122, HAR, bearing on such claim. If the contractor fails to file a termination claim *within one year* from the effective date of termination, payment may be made to the contractor, if at all, in accordance with paragraph (3) below.

(2)    A settlement may be agreed to by both parties provided the contractor has filed a termination claim supported by cost or pricing data to the extent required by subchapter 15, chapter 3-122, HAR, and that the settlement does not exceed the total contract price plus settlement costs reduced by payments previously made by the City, the proceeds of any sales of goods and manufacturing materials under paragraph 9.3.2, Right to goods, and the contract price of the work not terminated.

(3)    Absent complete agreement under paragraph (2), the contractor shall be paid the following amounts, provided payments agreed to under paragraph (2) shall not duplicate payments under this paragraph for the following:

(A)    Contract prices for goods or services accepted under the contract;

(B)    Costs incurred in preparing to perform and performing the terminated portion of the work plus a five percent markup on actual direct costs on such portion of the work, the markup shall not include anticipatory profit or consequential damages, less amounts paid or to be paid for accepted goods or services; provided that if it appears that the contractor would have sustained a loss if the entire contract would have been completed, no markup shall be allowed or

GENERAL TERMS AND CONDITIONS          15

C&C / Bodell
C010993

included and the amount of compensation shall be reduced to reflect the anticipated rate of loss;

(C)     Subject to the prior approval of the Director of Finance the costs of settling and paying claims arising out of the termination of subcontracts or orders pursuant to paragraph 9.3.1, Contractor's obligations. Subcontractors shall be entitled to a markup of no more than ten percent on direct costs incurred to the date of termination. These costs must not include costs paid in accordance with subparagraph (3)(B).

(D)     The total sum to be paid the contractor under this paragraph shall not exceed the total contract price reduced by the amount of payments otherwise made, the proceeds of any sales of supplies and manufacturing materials under subsection 9.3.2, Right to goods, and the contract price of work not terminated.

(4)     Cost claimed, agreed to, or established under paragraphs (2) and (3) shall be in accordance with Chapter 3-123, HAR. [3-125-21, HAR]

## SECTION 10 - DISPUTES ON CONTRACT AND BREACH OF CONTRACT CONTROVERSIES.

**10.1    FINAL DECISION.** (a) When a controversy cannot be resolved by mutual agreement between the officer-in-charge and the contractor, the Director of Finance shall, upon recommendation by the officer-in-charge, after written request by the contractor for a final decision, promptly issue a written decision.

(b) Any such decision shall be final and conclusive, unless fraudulent, or unless the contractor brings an action seeking judicial review of the decision in a circuit court of this State *within the six months* from the date of receipt of the decision.

**10.1.1** The Director of Finance shall issue a written decision within the following time limitations:

(1)     For claims not exceeding fifty thousand dollars: *ninety calendar days* after receipt of the claim.

(2)     For claims exceeding fifty thousand dollars: *ninety calendar days* after receipt of the claim; provided that if a decision is not issued within ninety calendar days, the Director of Finance shall notify the contractor of the time within which a decision will be made.

If the Director of Finance fails to issue a decision on a claim not exceeding fifty thousand dollars within ninety calendar days after receipt, or does not issue a decision within the time promised for a claim in excess of fifty thousand dollars, the contractor may proceed as if an adverse decision had been received.

**10.2    PAYMENT.** The amount determined payable pursuant to the decision, less any portion already paid, normally should be paid without awaiting contractor action concerning appeal. Such payments shall be without prejudice to the rights of either party and where such payments are required to be returned by a subsequent decision, interest on such payments shall be paid at the statutory rate from the date of payment.

GENERAL TERMS AND CONDITIONS          16

**10.3   CLAIMS AGAINST THE CONTRACTOR.** All controversies involving claims asserted by the City against a contractor which cannot be resolved by mutual agreement shall be the subject of a decision by the Director of Finance, upon recommendation by the officer-in-charge. [3-126-29, HAR]

**10.4   CONTINUED PERFORMANCE OF THE CONTRACT.** The contractor shall comply with any decision of the Director of Finance and proceed diligently with performance of the contract pending final resolution by a circuit court of this State of any controversy arising under, or by virtue of, the contract, except where there has been a material breach of contract by the City; provided that in any event the contractor shall proceed diligently with the performance of the contract where the Director of Finance has made a written determination that continuation of work under the contract is essential to the public health and safety. [3-126-28, 3-126-29, 3-126-31, HAR]

**10.5   REMEDIES.** Any dispute arising under or out of the contract is subject to chapter 3-126, HAR. The procedures and remedies provided for shall be the exclusive means available for persons aggrieved in connection with the solicitation or award of a contract, a suspension or debarment proceeding, or in connection with a contract controversy, to resolve their claims or differences. The contested case proceedings set out in chapter 91, HRS, shall not apply to protested solicitations and awards, debarments or suspensions, or the resolution of contract controversies. [HRS 103D-704]

## SECTION 11 - COST OR PRICING DATA

**11.1   COST OR PRICING DATA.** Pursuant to chapter 3-122, subchapter 15, HAR, cost or pricing data may be required as determined by the officer-in-charge or by chapter 3-122, subchapter 15, HAR, along with the certification of current cost or pricing data, substantially in the form attached hereto as Exhibit "A".

**11.1.2** Cost and pricing data means all facts as of the date of price agreement that prudent buyers and sellers would reasonably expect to affect price negotiations significantly. Cost or pricing data are factual, not judgmental, and are therefore verifiable. While they do not indicate the accuracy of a prospective contractor's judgment about future costs or projections, they do include the data forming the basis for that judgment. Cost or pricing data are more than historical accounting data; they are all facts that can reasonably be expected to contribute to the soundness of estimates of future costs and to the validity of determinations of costs already incurred. They also include such factors as:

(1)    Vendor quotations;

(2)    Nonrecurring costs;

(3)    Information on changes in production methods and in production or purchasing volume;

(4)    Data supporting projections of business prospects and objectives and related operations costs;

(5)    Unit cost trends such as those associated with labor efficiency;

(6)    Make or buy decisions;

C&C / Bodell
C010995

(7)     Labor union contract negotiations; and

(8)     Information on management decisions that could have a significant bearing on costs.

**11.1.3**  When cost or pricing data are required, they shall be submitted to the officer-in-charge prior to beginning price negotiations at any reasonable time and in any reasonable manner prescribed by the officer-in-charge.  Such data shall either be actually submitted or specifically identified in writing.  The contractor is required to keep such submission current until the negotiations are concluded.

The contractor shall provide written certification as soon as practicable after agreement is reached on price that the cost or pricing data submitted are accurate, complete, and current as of the date of reaching agreement on price.

**11.1.4**  If a prospective contractor refuses to supply the required data, the Director of Finance, upon recommendation of the officer-in-charge, shall determine in writing whether to disqualify the noncomplying contractor, to defer award pending further investigation, or to enter into the contract.  If, after award, a contractor refuses to supply the required data, the officer-in-charge shall determine in writing whether to further investigate the price adjustment, not to allow any price adjustment, or to set the amount of the price adjustment, subject to the contractor's rights under chapter 3-126, HAR.

The certificate of cost or pricing data is not to be construed as a representation as to the accuracy of the contractor's judgment on the estimated portion of future costs or projections.  It does, however, constitute a representation as to the accuracy of the data upon which the contractor's judgment is based.

The exercise of an option at the price established in the initial negotiation in which certified cost or pricing data were used does not require recertification or further submission of data.

**11.1.5**  If certified cost or pricing data are subsequently found to have been inaccurate, incomplete, or not current as of the date stated in the certificate, the City is entitled to an adjustment of the contract price, including profit or fee, to exclude any significant sum by which the price, including profit or fee, was increased because of the defective data.  It is presumed that overstated cost or pricing data increased the contract price in the amount of the defect plus related overhead and profit or fee. Therefore, unless there is a clear indication that the defective data were not used or relied upon, the price should be reduced in such amount.

In determining the amount of a downward adjustment, the contractor shall be entitled to an offsetting adjustment of any understated cost or pricing data submitted in support of price negotiations for the same pricing action up to the amount of the City's claims for overstated cost or pricing data arising out of the same pricing action.

**11.1.6**  If the contractor and the officer-in-charge cannot agree as to the existence of defective cost or pricing data or amount of adjustment due to defective cost or pricing data, the officer-in-charge shall set an amount in accordance with provisions of this section and the contractor may appeal this decision as a contract controversy under chapter 3-126, HAR.

## SECTION 12 - SEXUAL HARASSMENT POLICY

GENERAL TERMS AND CONDITIONS          18

C&C / Bodell
C010996

**12.1   GENERAL.** The contractor must comply with Revised Ordinances of Honolulu (ROH) section 1-18, on sexual harassment. The contractor shall have and enforce a policy prohibiting sexual harassment. The contractor's sexual harassment policy must set forth the same or greater protection than those contained or required by the ordinance. Section 1-18, ROH is on file and available for viewing in the Purchasing Division. Contractors needing a copy must pick up the copy from the Office of the City Clerk, Room 203, City Hall, 530 South King Street, Honolulu, Hawaii.

**12.1.1** The ordinance is applicable to the employer's business and includes:

(1)   Prohibitions against an officer's or employee's sexual harassment of the following:
   (a)   Another officer or employee of the employer;
   (b)   An individual under consideration for employment with the employer; or
   (c)   An individual doing business with the employer;

(2)   A provision prohibiting a management or supervisory officer or employee from knowingly permitting a subordinate officer or employee to engage in the sexual harassment prohibited under paragraph (1) above;

(3)   A prohibition against retaliation towards an officer, employee, or individual who has complained of sexual harassment, conducted an investigation of a complaint, or acted as a witness during an investigation of a complaint;

(4)   A prohibition against a malicious false complaint of sexual harassment by an officer, employee, or individual;

(5)   Provisions allowing an officer, employee, or individual to make a sexual harassment complaint to an appropriate management, supervisory, or personnel officer or employee;

(6)   Procedures for investigating a sexual harassment complaint in an unbiased, fair, and discreet manner with appropriate safeguards to maintain confidentiality and protection from embarrassment;

(7)   A provision requiring the use of the "reasonable person of the same gender standard," to determine if sexual harassment has occurred. Under the standard, sexual harassment shall be deemed to have occurred if the alleged offender's conduct would be considered sexual harassment from the perspective of a reasonable person of the same gender as the alleged victim. If the alleged victim is a woman, the "reasonable person of the same gender standard" shall be equivalent to and may be called the "reasonable woman standard;"

(8)   Disciplinary actions which may be imposed on an officer or employee who committed a prohibited act; and

(9)   For an employer with at least five employees, a provision requiring the annual viewing of a video on the sexual harassment policy by each management or supervisory officer or employee.

**12.2   POLICY TERM.** The policy required under this section shall be in effect for at least the duration of the contractor's contract with the City.

C&C / Bodell
C010997

**12.3    PLEDGE AND ACCEPTANCE.** The action of the contractor signing the contract shall constitute the contractor's pledge and acceptance of the provisions for the sexual harassment policy as required by section 1-18, HRS.

C&C / Bodell
C010998