COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

---:---

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, )<br>a Utah Corporation, )<br>)<br>                    Plaintiff, )<br>)<br>          vs. )<br>)<br>OHIO PACIFIC TECH, INC., fka )<br>GMP ASSOCIATES, INC., an Ohio)<br>Corporation; CITY AND COUNTY )<br>OF HONOLULU; ULTRA TECH )<br>SYSTEMS, INC., a foreign )<br>Corporation, )<br>)<br>                    Defendant. )<br>_____)<br>CITY AND COUNTY OF HONOLULU, )<br>)<br>     Defendant, Third-Party )<br>     Plaintiff, and )<br>     Counterclaim Defendant, )<br>)<br>          vs. )<br>)<br>ENGINEERED SYSTEMS, INC., )<br>)<br>     Third-Party Defendant )<br>     and Counterclaim )<br>     Plaintiff. )<br>_____) | CIVIL NO. CV03-00706 HG-LEK<br>(Contract)<br><br>COPY |

**VOLUME I**

DEPOSITION OF LEROY HUMKE

Taken on behalf of the Defendant, Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff/Counterclaim Defendant City and County of Honolulu, at the Law Offices of Kobayashi Sugita & Goda, Suite 2600 First Hawaiian Center, 999 Bishop Street, Honolulu, Hawaii , commencing at 10:35 a.m., on Wednesday, June 22, 2005, pursuant to Notice.

Exhibit "L"

COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)

2

```
 1   CITY AND COUNTY OF HONOLULU, )
                                  )
 2        Defendant, Cross-Claim  )
          Plaintiff/Cross-Claim   )
 3        Defendant,              )
                                  )
 4            vs.                 )
                                  )
 5   ULTRA TECH SYSTEMS, INC., a  )
     foreign Corporation,         )
 6                                )
          Defendant, Cross-Claim  )
 7        Defendant/Cross-Claim   )
          Plaintiff.              )
 8
```

 9

10                    **VOLUME I**

11              DEPOSITION OF LEROY HUMKE

12   Taken on behalf of the Defendant, Cross-Claim
     Plaintiff/Defendant and Third-Party
13   Plaintiff/Counterclaim Defendant City and County of
     Honolulu, at the Law Offices of Kobayashi Sugita & Goda,
14   Suite 2600 First Hawaiian Center, 999 Bishop Street,
     Honolulu, Hawaii , commencing at 10:35 a.m., on
15   Wednesday, June 22, 2005, pursuant to Notice.

16

17   BEFORE:

18        Cassie Uyekubo, CSR 293
          Notary Public, State of Hawaii
19

20

21

22

23

24

25

CARNAZZO COURT-REPORTING CO., LTD., 532-0222

1    Q    So what would his role entail?

2    A    It's just that, first contact with owners on

3    projects, determining our support, determining whether

4    it's one we're interested in pursuing.

5    Q    So he will get information about a construction

6    project from the owners?

7    A    Correct.

8    Q    And then he will relay that to your Estimating

9    Department?

10    A    Primarily to me.

11    Q    And you make the decision whether Bodell wants to

12    submit a bid?

13    A    We make them as a team.  We try to.

14    Q    But you head that team?

15    A    I do.

16    Q    And you said, Kevin Shupe?

17    A    Yes, sir.

18    Q    He is the head of the Estimating Department?

19    A    At present, he's -- yes.

20    Q    How long has he held that position?

21    A    Months.

22    Q    When did he start as the head of the Estimating

23    Department?

24    A    First of the year.

25    Q    What was his -- did he just join Bodell?

60

1    before you?

2    A    I do.

3    Q    Okay.  Have you seen this document prior to Bodell

4    preparing its bid proposal for the project?

5    A    I did see this document.

6    Q    Okay.  And in the letter, which is dated

7    December 9th 1999, it states, "Based on the materials

8    submitted your request to" -- it looks like, Number 1,

9    "Substitute UltraTech UV disinfection system for the

10   specified Trojan is approved for bidding purposes only."

11        Do you see that?

12   A    I do.

13   Q    Did you understand what "bidding purposes only"

14   was?

15             MR. BIALEK:  Objection.

16             THE WITNESS:  Well, I read it for what

17   it says, "bidding purposes."

18   Q    (By Mr. Ogomori) What is your understanding of

19   what "bidding purposes only" means?

20             MR. BIALEK:  Objection.

21             THE WITNESS:  They would submit

22   proposals to the contractors to include their product in

23   our proposals.

24   Q    (By Mr. Ogomori) Okay, so that you could use

25   UltraTech's price for bidding purposes only?

```
 1    A      I could use their -- for bidding purposes.
 2    Q      Okay.  Now, going down to the next line it says,
 3    "Final approval is subject to review of the fabrication
 4    drawings, shop drawings, and meeting all the
 5    requirements of the contract documents."
 6           Do you see that?
 7    A      I do.
 8    Q      And you reviewed this document prior to Bodell
 9    submitting its bid proposal for the project, correct?
10    A      I would have read it, yes.
11    Q      Okay, how did you interpret that line to mean?
12    A      The same as I interpret all proposals I get from
13    vendors or submittals.
14    Q      That the approval is subject to the vendor
15    establishing that the equipment meets all the
16    requirements for the contract documents?
17    A      That it complies with the contract documents, yes.
18    Q      And satisfies all the requirements?
19    A      Yes.  Yeah.
20    Q      All right.  So did you understand that this letter
21    provided a conditional approval that was subject to the
22    vendor, in this case, UltraTech, meeting all the
23    requirements of the contract documents?
24    A      Meeting the requirements.  You know, not all the
25    time do they meet all.  Not everybody meets all.
```

1    There's things in there that change -- equipment's been

2    outdated, things like that.  So, to meet the contract

3    requirements -- that's what I read that as, as far as

4    certain language in the contract.

5    Q    Okay.  After getting this letter -- or let me ask

6    you this.  Who did you receive this letter from?

7    A    Oh, I don't recall that, if the City sent it to

8    Paul Scott, I --

9    Q    After getting this letter and reviewing it, did

10   you ever seek clarification from the City in regards to

11   the contents of this letter?

12                   MR. SCHULMEISTER:  You mean, before bid,

13   right?

14                   MR. OGOMORI:  Before bid.

15                   THE WITNESS:  Not that I recall.

16   Q    (By Mr. Ogomori) Okay, did you ever seek

17   clarification from UltraTech prior to bid?

18   A    Other than we would expect their scope of work to

19   comply with the contract documents.

20   Q    Okay, what about from GMP?  Did you ever seek

21   clarification prior to submitting the bid on the

22   project?

23                   MR. SCHULMEISTER:  Classification

24   regarding what?

25                   MR. OGOMORI:  Regarding this document.

63

1          THE WITNESS:  Not that I recall.

2     Q      (By Mr. Ogomori) Okay, so you mentioned the scope

3   of supply that you were requesting from UltraTech.  Did

4   I state what you just referred to before?

5     A      Well, that would be a standard from all -- that we

6   would ask for.

7     Q      Okay, so after getting word that UltraTech's

8   equipment was approved for bidding purposes only, did

9   Bodell request a scope of supply from UltraTech?

10    A      I would have thought that that would be asked for,

11   yes.

12    Q      Who would have been the person at Bodell to ask

13   for this information?

14    A      I don't know.

15    Q      Would it have been Roger Green?

16    A      Sure.

17    Q      Okay, what about Gary Jeppson?  Would he have been

18   the one?

19    A      Any of the parties.

20    Q      So somebody from the team that was responsible for

21   preparing Bodell's bid proposal would have sought

22   information from UltraTech?

23    A      Correct.

24    Q      And what you had said, this information would be

25   included in a scope of supply?

64

```
1    A     Typically.

2    Q     Let me show you what has been marked as Exhibit 83

3    to Ellner's deposition.

4              MR. SCHULMEISTER:  You're going to show

5    him?  Or you're going to ask him?

6              MR. OGOMORI:  Well, can you take a look

7    at it?

8              MR. BIALEK:  I don't have my last -- off

9    the record.

10       (Discussion off the record)

11   BY MR. OGOMORI

12   Q     Do you have that document before you?

13   A     I do.

14   Q     Okay, it is a fax or a memo dated December 13th

15   1999 from Engineered Systems Inc.  And it's addressed

16   to, All Bidding Contractors.  Do you see that?

17   A     I do.

18   Q     Now, there's some handwritten notations on Exhibit

19   Number 83 in the upper right-hand corner.

20        Do you see that?

21   A     Yes, sir.

22   Q     Do you recognize whose handwriting that is?

23   A     That is mine.

24   Q     And the top handwriting notation it looks like

25   4 -- is it 15, or 4-25?
```

65

```
1    A    Yes, sir.

2    Q    Do you know which it is?

3    A    I -- 4-15 -- it looks like a 2.

4    Q    And the notation below that in your handwriting is

5    267 -- is that 500?  Or 267,000?

6    A    Yes, sir.

7    Q    One of the two?

8    A    One of the two.

9              MR. SCHULMEISTER:  My kid gets mad when

10   you answer questions like that.  This or that, and you

11   go, yes.

12             THE WITNESS:  Pick one.

13   BY MR. OGOMORI

14   Q    And there's also a notation below that, it says,

15   "Section 11376 UV equipment."  Do you see that?

16   A    I do.

17   Q    Is that in your handwriting as well?

18   A    No, sir.

19   Q    Okay, whose handwriting is that?

20   A    That looks to be Gary Jeppson's.

21   Q    And this references the UV Disinfection Equipment

22   Specification Section, correct?

23   A    I -- I'm assuming that's what you're looking at,

24   okay.

25   Q    Now, on the bottom of Exhibit Number 83, there's a
```

1    notation that says, "I called Eric and UltraTech to

2    verify, question mark."  And it's signed -- it looks

3    like a "G."

4    A      Gary Jeppson.

5    Q      Okay, is that Gary's initials?

6    A      Yeah, it would be.

7    Q      Okay, and that's how he signs his name or

8    initials?

9    A      Well, it's his initials.

10   Q      Okay, and it's dated 12-14-99.  I'm referring to

11   the notation by Gary Jeppson.

12   A      Correct.

13   Q      Now, this document, Plaintiff's Exhibit Number 83,

14   it was -- it says, "Doug Martin."  It seems like it was

15   authored by Doug Martin.  Do you see that?

16   A      I do.

17   Q      Do you know who a "Doug Martin" is?

18   A      I don't.

19   Q      You never met him before?

20   A      Not to my knowledge.

21   Q      Okay --

22   A      No.

23   Q      Okay.  And it says here, under Plaintiff's Exhibit

24   Number 83, it says, "On behalf of Ultratech Systems Inc

25   we are pleased to provide the attached Scope of

1    Supplies.   Prices will follow on bid day."

2        Do you see that?

3    A    I do.

4    Q    So, this is the Scope of Supply that you referred

5    to earlier in conjunction with providing or requesting

6    information from UltraTech?

7    A    That's what it would look to be, yes, sir.

8    Q    Okay, and in fact, it seems like there's a packet,

9    and the first document after the first page, it is a

10   letter dated December 10th 1999, and it's on Ultratech

11   letterhead.   And it is signed by Greg Ellner.   Do you

12   see that?

13   A    Yes, sir.

14   Q    Okay.   Do you remember reviewing this document

15   prior to Bodell preparing its bid for the project?

16   A    Not personally.

17   Q    But you anticipate someone within that bidding

18   team reviewed this document?   And I'm referring to the

19   letter from UltraTech dated December 10th 1999.

20   A    As part of this packet, I would assume that, yes.

21   Q    Okay.   And in fact, it's addressed to the

22   attention of bidding contractors, do you see that?

23   A    Yes, sir.

24   Q    And on the next page, as well?   And I'm referring

25   to Document B00103, on the bottom.

1    A     Yes, sir.

2    Q     Okay, and it also refers to the UV system for

3    Wahiawa Wastewater Treatment Plant, do you see that?

4    A     Yes, sir.

5    Q     And the first line, it states, "As a named

6    supplier, UltraTech systems is pleased to offer our UV

7    equipment which is in conformance with this project's

8    plans and specifications."  Do you see that?

9    A     Yes, sir.

10   Q     How did you interpret that line to mean?

11   A     Interpret it today?

12   Q     Yes.

13   A     Yes.  Just what it says, per plans, project plans

14   and specifications.

15   Q     That the Ultratech system that they're offering is

16   in conformance with the project's plans and

17   specifications?

18   A     That's what that line says.  Yes, sir.

19   Q     All right.  Now, taking a look -- and I'm

20   referring to this December 10th 1990 letter from

21   UltraTech -- is anywhere in this document or these two

22   pages, does it include language to the effect that the

23   City's approval was conditioned upon final approval of

24   the drawings and -- shop drawings and meeting all the

25   requirements of the contract documents?

1      MR. BIALEK:  Objection.  You are just
2  asking him these two pages, or the entire exhibit?
3      MR. OGOMORI:  I'm asking for the two
4  pages, just talking about UltraTech's December 10th 1999
5  letter.
6      MR. BIALEK:  Without the attachments?
7      MR. OGOMORI:  Yes.
8      MR. BIALEK:  Objection as to form.
9      THE WITNESS:  Okay, now that I've read
10  it completely, would you just restate or have her --
11  either way?
12  Q    (By Mr. Ogomori) I'm not going to ask you to flip
13  back.  I'm going to give you a copy of Ellner's Exhibit
14  Number 66.
15  A    Okay.
16  Q    And I had asked you earlier, that document from --
17  signed by letter from James Honke, it provided that,
18  "Final approval is subject to review of the fabrication
19  drawing, shop drawings, and meeting all the requirements
20  of the contract documents."  Do you see that?
21  A    Yes, sir.
22  Q    Okay, I'm asking, is any similar language
23  contained in UltraTech's December 10th 1999 letter?
24      MR. BIALEK:  Objection as to form.
25      THE WITNESS:  I need to make sure I've

1   got what you're asking me.  Are you asking, does this

2   letter reference this letter?

3   Q    (By Mr. Ogomori) I'm asking if the December 10th

4   1990 letter from UltraTech, does it contain any language

5   that references that, "final approval is subject to

6   review of the fabrication drawings, shop drawings, and

7   meeting all of the requirements of the contract

8   documents?"

9                   MR. BIALEK:  Objection.

10                  THE WITNESS:  As a named supplier, yes.

11  Q    (By Mr. Ogomori) It states that, "Final approval

12  is subject to review of the fabrication drawings, shop

13  drawings, and meeting all the contract requirements?"

14  A    If you go to the contract documents, you will find

15  that all suppliers have that responsibility.

16  Q    No, I'm just asking you, in this letter, in the

17  two pages right here, does it contain language?

18                  MR. SUTTON:  The letter you're referring

19  to, counsel, is -- the two-page one is --

20                  MR. BIALEK:  -- December 10th.

21                  MR. SUTTON:  That's the exhibit --

22                  MR. BIALEK:  It's part of the Exhibit

23  B00103.

24                  THE WITNESS:  So, it's back to me?

25  Q    (By Mr. Ogomori) Yes.

1    A    Okay.

2                    MR. SCHULMEISTER:  Do you have a clear

3    idea of what the question is?

4                    THE WITNESS:  I don't think I do

5    anymore.

6    Q    (By Mr. Ogomori) Okay.

7    A    So, can I tell you what I think the question is?

8    Q    Okay.

9    A    I think you're asking me is, is -- does this

10   letter reference this letter.  I think that's what

11   you're asking me.

12   Q    No, that's not what I'm asking you, okay?  I'll

13   try and clear it up.

14   A    Okay.

15   Q    Okay, Exhibit Number 66 of Ellner's deposition, it

16   contains language that states that, "Final approval is

17   subject to review of the fabrication drawings, shop

18   drawings, and meeting all the requirements of the

19   contract documents."  Do you see that?

20   A    Yes, sir.

21   Q    Okay, I'm asking you, does UltraTech's letter

22   dated December 10th 1999 contain language or a similar

23   statement that, "Final approval of the UltraTech system

24   is subject to review of the fabrication drawings, shop

25   drawings, and meeting all the requirements of the

72

1    contract documents?"

2                    MR. SCHULMEISTER:  Objection as to form.

3                    MR. BIALEK:  Objection.

4                    THE WITNESS:  And I say, referral, yes.

5    It says, "project plans and specifications."

6    Q    (By Mr. Ogomori) Where does it state that "Final

7    referral is subject to review of the fabrication

8    drawings and meeting all the requirements of the

9    contract documents?"

10   A    In the submittal process of the plans and

11   specifications.

12   Q    Okay, but I'm asking you in that letter.  I'm not

13   asking you later on.  I'm asking you in that letter.

14   A    It alludes -- you're asking me if it refers to it.

15   Yes, sir.  I refer to it as it refers to it.  I don't

16   get to read them as point blank, does it, point blank,

17   say what that letter says.  I don't have time.  We don't

18   have time.  If they reference, as a supplier -- whether

19   it be UltraTech or the guy furnishing the bolts for the

20   handrail -- if they comply in writing that they are

21   meeting the plans and specifications, we can hold them

22   to that, and we move on.

23   Q    Okay.  So when you receive a letter like that, and

24   I'm referring you to this December 10th 1999 letter from

25   UltraTech, you assume and you expect to hold the

73

1    supplier to the requirement that they are, in fact,

2    going to meet the contract requirements, correct?

3    A    Yes, sir.

4              MR. BIALEK:  Objection.

5              MR. OGOMORI:  Let me show you what we'll

6    mark as next in line -- Exhibit Number 3.

7              (Deposition Exhibit 3 marked.)

8         This is a document from Engineered Systems Inc and

9    it's dated December 15th 1999.

10        And it's addressed to, "All Bidding Contractors."

11   Do you see that?

12             THE WITNESS:  I do.

13   Q    (By Mr. Ogomori) Okay, it also has phone number,

14   it says, Area Code 801-261-4110?  Do you recognize that

15   number?

16   A    I -- I don't recognize that number.  We have a

17   huge bank of numbers.  I don't know all of them.

18   Extension 308, I recognize.

19   Q    Okay, and who's extension is that?

20   A    Gary Jeppson.

21   Q    And in fact, it states, in handwriting,

22   "Attention, Gary Jeppson?"

23   A    Correct.

24   Q    Do you know who wrote that notation, "Attention,

25   Gary Jeppson?"

1    1999 there was a request by Bodell for approval?  I

2    think there is a lack of foundation.

3                    THE WITNESS:  Yeah, in 1999, we wouldn't

4    have went anywhere.  We didn't have an award.

5                    MR. SCHULMEISTER:  You're referring to

6    the April letter.

7                    MR. OGOMORI:  Yes.

8                    MR. SCHULMEISTER:  That's 2000.

9    Q    (By Mr. Ogomori) So, in 1999, Bodell and the City

10   are having discussions regarding the inquiry about

11   deleting Item Number 81 from Bodell's bid proposal,

12   correct?

13   A    Correct.

14   Q    Subsequently, the contract is signed, I believe,

15   in February of 2000, correct?

16   A    As -- as I understand it.

17        I don't recall the exact date.

18   Q    Now, the contract that Bodell signed, did it

19   provide for the deletion of Item Number 81 from the bid

20   proposal?

21   A    It did not.

22   Q    Okay, so when Bodell signed the contract in

23   February of 2000, did Bodell have an understanding as to

24   whether this inquiry had been abandoned as to whether to

25   delete Item Number 81 from Bodell's bid proposal?

110

1    MR. BIALEK:  Objection as to form.

2    MR. SCHULMEISTER:  I'll join.

3    THE WITNESS:  I don't know that there

4  was any understanding other than awarded per plans and

5  specs.

6  Q    (By Mr. Ogomori) Okay.  I'm going to mark this as

7  Exhibit Number 9.

8              (Deposition Exhibit 9 marked.)

9    This is a letter from Bodell dated January 19th

10  2000.  And it's addressed to Guy Inouye from the City

11  and County of Honolulu, do you see that?

12  A    I do.

13  Q    And it is a letter signed by Mark Bodell.

14  A    Agreed.

15  Q    Okay, and you are copied on this letter.

16  A    I am.

17  Q    Along with Gary Jeppson and Chuck Eckman.

18  A    Correct.

19  Q    And all three of you were part of the team that

20  prepared the bid proposal for Bodell in regards to the

21  project?

22  A    That would be correct.

23  Q    Okay, and this references a -- the inquiry from

24  the City as to deleting Item Number 81 from Bodell's bid

25  proposal, correct?

```
1    STATE OF HAWAII              )
                                  )SS.
2                                 )

3

4        I, CASSIE UYEKUBO, C.S.R., a Notary Public in and
     for the State of Hawaii, do hereby certify:
5

6        That on June 22, 2005, appeared before me LEROY
     HUMKE, the witness whose testimony is contained herein,
7    that prior to being examined, the witness was by me duly
     sworn or affirmed; that the proceedings were taken in
8    computerized machine shorthand by me and were thereafter
     reduced to print under my supervision; that the
9    foregoing represents, to the best of my ability, a
     correct transcript of the proceedings had in the
10   foregoing matter;

11

12       That the witness, if applicable, was notified
     through counsel, by mail or by telephone to appear and
13   sign; that if the transcript is not signed, either the
     reading and signing were waived by the witness and all
14   parties, or the witness has failed to appear and the
     original is therefore kept on file without signature
15   pursuant to Court rules.

16

17       I further certify that I am not counsel for any of
     the parties hereto, nor in any way interested in the
18   outcome of the cause named in the caption.

19

20   Dated: _____    JUL 0 5 2005

21

22       Cassie Uyekubo

23   Cassie Uyekubo, C.S.R. #293
     Notary Public, State of Hawaii
24   My Commission Expires: November 8, 2005

25
```