# EXHIBIT 11

```
                                                              1

              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII
     _____

     BODELL CONSTRUCTION COMPANY,

     a Utah corporation,

                    Plaintiff,

          vs.                         CIVIL NO. 03-00706(HG/LEK)

     OHIO PACIFIC TECH, INC., fka GMP   (Contract)

     ASSOCIATES, INC., an Ohio

     corporation; CITY AND COUNTY OF

     HONOLULU; ULTRA TECH SYSTEMS,

     INC., a foreign corporation,

                    Defendants.
     _____

     CITY AND COUNTY OF HONOLULU,

               Defendant and

               Third-Party Plaintiff,

         vs.

     ENGINEERED SYSTEMS, INC.,

               Third-Party Defendant.
     _____


                 DEPOSITION OF GUY M. INOUYE

                   Taken June 14th, 2005
```

**EXHIBIT 19**

59

1   A.   In the normal course -- excuse me.  In the normal
2 course of business, most of these things are sent directly to
3 the project engineer.  It would not cross my desk.
4   Q.   Well, okay.  I can understand that with regard to
5 the second page, which is a November 23rd, 1999 form, but I
6 guess the reason why I'm asking is because this is close to a
7 month later, and it's being specifically directed to you.  So
8 what I was wondering is whether something had come up and
9 whether perhaps you had asked Mr. Stone to send it to you.
10   A.   Oh, maybe so.
11   Q.   So I think you just said "maybe so"?
12   A.   Maybe so.
13   Q.   And do you recall becoming aware of this whole issue
14 about the prebid approval of UltraTech as an equal having sort
15 of come up around the time of bid opening and there being a
16 lot of controversy about it?
17   A.   Yes.
18   Q.   Okay.  What do you recall about how you became aware
19 of that?
20   A.   It was probably Mr. Dennis Kaneshiro bringing to our
21 attention that a prebid substitution request was approved by
22 our department and that the approval was overruling the
23 recommendation of our design consultant.
24   Q.   Okay.  You recall Mr. Kaneshiro bringing that to
25 your attention?

1   A.   Vague recollection, yes.

2   Q.   And so this -- and prior to that you don't recall
3   having any awareness that this had occurred?

4   A.   Correct.

5   Q.   And what do you recall happened next on that
6   subject, if anything?

7        MR. OGOMORI:  Objection as to the form.

8        THE WITNESS:  After being aware of the, I guess, the
9   overrule on the consultant, basically understanding what
10  happened, it could be that this document was forwarded to me
11  during that phase of trying to understand what happened.
12  BY MR. SCHULMEISTER:

13  Q.   Okay.  Did someone ask you to check into it?

14  A.   I don't know that anybody asked me.  It was probably
15  resultant from the discussion Dennis Kaneshiro had with him.

16  Q.   Was Dennis Kaneshiro -- strike that.
17       Did you gather from your conversation with Dennis
18  Kaneshiro that he was unaware that this had occurred?

19  A.   I believe so, yes.

20  Q.   So he, himself, had learned about it after the fact?

21  A.   Basically.

22  Q.   Okay.  Was he concerned or upset about that?

23  A.   Yes, I would say we were both concerned.

24  Q.   Why?

25  A.   Well, primarily because we had overruled the

```
                                                              61
 1   consultant.
 2        Q.   Is that something that your branch doesn't like to
 3   do?
 4        A.   Correct.
 5        Q.   Is there a policy against overruling the consultant.
 6        A.   There is no written policy; however, we are all
 7   aware that overruling a consultant basically releases the
 8   consultant from liability from much of what happens.
 9        Q.   Was that the reason for the concern?
10        A.   That was a primary concern, yes.
11        Q.   Any other concern besides that one?
12        A.   There was also concern about, I guess, the content
13   of the substitution request.  Basically the design consultant
14   came back to us saying that there was insufficient information
15   to render any kind of judgment as far as its suitability as a
16   substitute.
17        Q.   Typically on a material substitution request where
18   the spec says that it's a certain brand or equal, how much of
19   a review does the City do?
20             MR. OGOMORI:  Objection as to form.
21             THE WITNESS:  How much the City does, for the most
22   part, for the most part the design consultant reviews
23   substitution requests.  The extent of the review, because of
24   the timing of these projects and the bidding process, the
25   substitution requests could come in ten days before a bid
```