# EXHIBIT 31

```
                                                                    1

 1            IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3  _____

 4  BODELL CONSTRUCTION COMPANY,

 5  a Utah corporation,

 6                    Plaintiff,

 7         vs.                      CIVIL NO. 03-00706(HG/LEK)

 8  OHIO PACIFIC TECH, INC., fka GMP   (Contract)

 9  ASSOCIATES, INC., an Ohio

10  corporation; CITY AND COUNTY OF

11  HONOLULU; ULTRA TECH SYSTEMS,

12  INC., a foreign corporation,

13                    Defendants.

14  _____

15              DEPOSITION OF LEE A. MANSFIELD

16                        VOLUME I

17       Taken on behalf of the Plaintiff, BODELL

18  CONSTRUCTION COMPANY, at the office of Cades Schutte, 1000

19  Bishop Street, Suite 1200, Honolulu, Hawai'i, commencing at

20  9:24 a.m. on February 28th, 2005, pursuant to Notice.

21

22

23  BEFORE:     B. KANOELANI COCKETT

24              Certified Shorthand Reporter

25              HI CSR NO. 379, CA CSR NO. 7995
```

1  A.  We may have asked them for comments, questions that were raised in our review of the submittal.

2  Q.  And that was your intention when you asked for the presubmittal from Ultra Tech, right?

3  A.  No, I'm not agreeing to that.

4  Q.  Well, was it your intention to hire a subconsultant?

5  A.  No, it wasn't my intention to hire a subconsultant.

6  Q.  Did you feel you can come up with knowledgeable questions within GMP without going to a subconsultant or Trojan or Mike Elhoff?

7  A.  I do.

8  Q.  Do you think these minutes are inaccurate in terms of what was stated at this meeting?

9  A.  Well, I don't think I understand that last sentence.

10  Q.  But you are certain that GMP at no time had a subconsultant regarding the UV equipment?

11  A.  I don't remember a subconsultant.

12  Q.  And if you had one, you would have remembered, right?

13  A.  Yeah.

MR. BIALEK:  Dave, before you go on, can we take a couple-minute break, do you mind?

MR. SCHULMEISTER:  Okay.

(Brief recess was taken from 2:08 to 2:15 p.m.)

(Plaintiff's Exhibit No. 8

128

Stone has asked the question.

Q. All right. And why do you say it's obviously Jay Stone asked the question?

A. Jay Stone requested this at the bottom.

Q. I'm sorry, what are you referring to?

A. The May 24th on the bottom, it says, "Jay Stone requested this."

Q. Oh, okay. So this doesn't surprise you, does it?

A. No.

Q. I mean that Jay Stone had requested this sort of information from Mike Elhoff?

A. No.

Q. And this was, in effect, the subconsultant, right, Mike Elhoff?

A. No, I don't agree to that.

Q. Well, who was being consulted?

A. Well, I was thinking about that when we took a potty break, and I don't know. Perhaps it's one subconsultant we did have on the job was the structural engineer. Perhaps he was going to review the channel design.

Q. But he wouldn't come up with intelligent questions about dosage and things like that, right, five banks and four banks, number of lamps?

A. Well, let's go back to the exhibit that you asked the question from.

129

Q. Which exhibit?

A. The exhibit that said "subconsultant".

Q. Okay. Did you want to look at that again?

A. Yeah, Exhibit 7.

Q. Okay.

A. I don't -- I don't see any specifics on dosage.

Q. Let me find my exhibits.

A. You can use mine.

Q. That's all right.

What's the date on this, is that April 27th?

A. April 27th.

Q. Oh, here they are.

A. Well, that goes hand in hand -- while you're at it, pull out the minutes.

Q. Does that refer to subconsultants also?

A. Um-hum. No, I don't know if it does. Let's look at it.

Q. Could you -- who did you have in terms of subconsultants; structural?

A. Yeah, we had one guy doing the structural for us.

Q. Anybody else, any other subconsultants?

A. Boy, I don't remember. I don't think we had a -- we had a value engineering done on the outfall, and that wouldn't be a subconsultant to GMP per se, but it would be a subconsultant for the project since their design didn't follow

130

our design, they have offered an alternate design. No UV consultants, as I've said earlier and, as I've said earlier, I don't understand the last question, but I want to point out that as far as the UV system goes, in the minutes of the meeting it says there is also no mention of a subconsultant that I've seen.

Q. Okay. So it may be that you actually referred to Mike Elhoff, and the person just assumed he was a subconsultant? I mean, that's one explanation for the language, right? I mean, you might have said, "I need to" --

A. I don't agree with that. That's one explanation.

Q. Was there some reason you would not have mentioned Mike Elhoff's name? I mean, was it a secret you were consulting with him?

A. I don't -- I'm -- I'm not consulting with Mike. If we have questions we will ask competitors for their take on certain things that we see in a submittal or certain claims that are made.

Q. Okay.

A. That's what we are ultimately responsible for.

Q. Okay. Could you look at -- oh, I got to find it first.

Before we go that far, May 25th, is that what that was?

A. E-mail is May 25th.

299

1    Q.    And the 16 lamps per module?

2    A.    That's correct.

3    Q.    Is there any other place, any other document that
4    you recall receiving from UltraTech that explained how many
5    lamps per module that would be prior to May of 2000?

6    A.    I don't believe so.

7    Q.    Was there any other document you recall receiving
8    from UltraTech regarding how many modules per bank there would
9    be?

10   A.    Boy, not that I recall.

11   Q.    Do you recall receiving any other documents prior to
12   May of 2000 from UltraTech that indicated how many banks per
13   channel there were going to be?

14   A.    Not that I recall.

15   Q.    Okay.  Can you look at page 1 of this document.

16   A.    (Witness complies.)

17   Q.    And specifically I'd like to point you to the
18   paragraph that's under GMP Engineers, Lee Mansfield, P.E., May
19   2000.

     Can you read that paragraph?

21   A.    "Contents and drawings contained in this submittal
22   package relate to proprietary subject matter.  Any party
23   assuming custody does so with the express understanding and
24   agreement that neither" recipient -- "recip or possession
25   thereof confers or transfers any right to use, reproduce or

```
                                                              300
 1   disclose its contents or any part thereof in a manner or for
 2   any other purpose whatsoever."
 3        Q.   And when you received this did you object to that
 4   designation on UltraTech's presubmittal package?
 5             MR. SUTTON:  Object to the form.
 6             THE WITNESS:  I did not object to it.
 7   BY MR. BIALEK:
 8        Q.   Did you have any discussions with either Bodell or
 9   UltraTech regarding UltraTech's designation of this material
10   as being proprietary?
11        A.   No.
12        Q.   Did you have any conversations with anyone at Bodell
13   or UltraTech regarding whether or not you could release any of
14   this information to anyone?
15        A.   No.
16        Q.   Is there a reason that you then released this
17   information to Hawai'i Engineering Services?
18        A.   I haven't admitted to releasing it.  I said I may
19   have released it.
20        Q.   Well, if you may have released it, do you think it
21   would have been appropriate in light of this designation on
22   this document to release that information to Hawai'i
23   Engineering Services?
24             MR. SUTTON:  Object to the form of the question.
25             THE WITNESS:  I don't think it inappropriate.
```