IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign corporation; JOHN DOES 1-50; DOE CORPORATIONS 1-50,<br><br>Defendants. | CIVIL NO. 03-00706 (JMS/LEK)<br><br>DECLARATION OF SIDNEY ELLNER |

### DECLARATION OF SIDNEY ELLNER

I, SIDNEY ELLNER, hereby declare as follows:

1. I reside in Bedford, New York and am currently retired except for occasional consulting relating to my experience and expertise in the field of ultraviolet ("UV") disinfection of water. I have been engaged by Bodell Construction Company ("Bodell") to provide expert opinions in this case pertaining to the UV

imanage108 624595 2

**EXHIBIT "C"**

City in relation to the UV equipment bid by Ultra Tech Systems, Inc. ("UTS") and submitted by Bodell for approval prior to installation, which submittals were rejected by GMP and the City. I have done so, and my opinions regarding the specification and its interpretation are as follows.

13. First, the specification, a copy of which is attached hereto as Exhibit "2," is primarily a "performance" specification, rather than a "design" specification. This is because it does not specify the critical design elements of any UV equipment design -- the number and spacing of the UV lamps. Instead, in section 2.3, it establishes "design criteria" and sets a "performance requirement" but leaves to the manufacturer the responsibility of determining how many lamps in what arrangement it will take to satisfy the performance requirement.

14. Secondly, even though it is a performance specification, it nonetheless contains elements that would normally only be found in a design specification. These are contained in section 2.4, "Design, Construction and Materials." Particularly noteworthy is 2.4 A. 3. which states:

> The system shall be designed for complete

> immersion of the UV lamps including both
> electrodes and the full length of the lamp in
> the effluent. Both lamp electrodes shall
> operate at the same temperature and be cooled
> by the effluent. The major axis of the UV
> lamps shall be horizontal and parallel to flow.
> UV systems that operate with lamps placed
> perpendicular to the flow are unacceptable.

15. The foregoing paragraph is similar to language that Trojan has used in sample specifications it has provided to plant designers since the 1980's to exclude the vertical systems of its competitors. Indeed, I have been provided a copy of the Trojan sample specification supplied to GMP for the Plant, a copy of which is attached hereto as Exhibit "3," and note that the foregoing paragraph (along with most of the rest of the specification) was taken by GMP from the Trojan sample specification.

16. In my opinion, there is no legitimate design, engineering or operational reason — other than the unavailability of adequate channel depth, which was not the case on this project — for a UV disinfection equipment performance specification to exclude vertically configured lamps. What matters is the spacing and the number of lamps – regardless of whether they are configured vertically or horizontally. If a designated UV dosage or microbial kill

rate is desired, a performance specification should simply specify the parameters and leave to the manufacturer design issues such as the orientation, number and spacing of the lamps.

17. While the specification names Trojan's System UV 4000 under the "Products" heading of Part 2, it does not purport to be a "sole source" specification because it states that:

> UV system shall be System UV 4000™, as manufactured by Torjan Technologies, Inc. *or equal.* (Emphasis added).

18. The specification goes on to list, in 2.1 B., the requirements that alternate systems must meet -- essentially the performance requirement of 2.3 and being able fit in the available space on site. The specification does not, however, expressly state that alternate systems need not comply with the "Design, Construction and Materials" requirements of 2.4 although this could be implied from the failure of 2.1 B to reference 2.4 as being among the requirements that alternate systems must meet. In this regard, the specification is poorly written and ambiguous regarding what elements of 2.4, if any, must be satisfied by an alternate system. In my opinion, this stems from GMP's lack of knowledge in UV equipment design and inappropriate inclusion of design