Adam Bialek (Admitted Pro Hac Vice)
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

Adrian Rosehill (3868)
Attorneys for Engineered Systems, Inc.
STUBENBERG & DURRETT
Davies Pacific Center
841 Bishop Street, Suite 2115
Honolulu, Hawaii 96813
(808) 526-0892

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OHIO PACIFIC TECH, INC. f/k/a GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign corporation,<br><br>　　　　Defendants.<br>-------------------------------------------------------<br>　　-AND RELATED ACTIONS-<br>------------------------------------------------------- | Civil No. 03-00706 (JMS/LEK)<br><br>**REPLY MEMORANDUM;<br>OF CROSS-CLAIM DEFENDANT/CROSS-CLAIM PLAINTIFF ULTRATECH SYSTEMS, INC., and THIRD PARTY DEFENDANT/CROSS-CLAIM PLAINTIFF ENGINEERED SYSTEMS, INC.<br>TO CROSS- CLAIM PLAINTIFF/ DEFENDANT CITY AND COUNTY OF HONOLULU'S OPPOSITION PAPERS** |

This Reply Memorandum is respectfully submitted in reply to Defendant Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff City and County of Honolulu's ("City") opposition to Cross-Claim Plaintiff/Defendant UltraTech Systems, Inc. ("UTS") and Third-Party Defendant Counterclaim Plaintiff

1150377.1

Engineered System, Inc.'s ("ESI") motion for summary judgment. The City's arguments have no merit, and as such, UTS/ESI's motion for summary judgment should be granted.

## PRELIMINARY STATEMENT

The City, in opposing UTS/ESI's motion for summary judgment, blandly reiterates its moving papers without any commentary on the voluminous record which UTS/ESI has laid out illustrating the City's intentional acts taken to interfere with UTS' and Bodell's relationship. The City has not explained why it initially sought to re-bid the contract with Bodell with no caveat as to UTS. The City has not explained why it continued to induce Bodell and UTS to expend time and money when it knew it would not accept UTS. The City has not explained why it looked for any provision of the specification, regardless of whether it related to performance, to disqualify UTS. The City has not explained why when no reasonable cause to disqualify UTS existed, it still rejected its submissions. The City cannot explain these issues without admitting they were wrong. The City's silence, however, is deafening.

The crux of the City's defense is that UTS' equipment could not meet the project specifications and thus the City was privileged in its decision to ultimately disqualify the UTS system. The City however, chooses to ignore the record which clearly lays out the following facts: the City approved the UTS equipment for the

1150377.1

bid on the Wahiawa project; the City received complaints from a competing supplier (Trojan) and its local representative (Mike Elhoff) as soon as the bids were opened and it was realized that the winning bid contained the UTS system; the City then decided to procure the U.V. equipment on its own based on its "error"; the City failed to carry out their plan to procure the U.V. equipment, and rather allowed Bodell and UTS to work towards designing and implementing equipment that would meet the contract specifications, all the while knowing that it would insist on the UTS system being replaced in the end by the Trojan system.

The City does not even attempt to address these issues, and rather continues to create red herrings to obfuscate the real issues and misdirect the Court's attention on facts that bear no meaning to the issues at hand.

Response to City's Statement of Undisputed Facts

Oddly, the City offers a statement of undisputed facts, many of which claim facts totally irrelevant to this case. Despite the fact that they have been taken out of context, they have no impact on the issues in this case.

1.   UTS/ESI admits the facts set forth in paragraph 1 and 9 of the City's opposition papers.

1150377.1

2. UTS/ESI disagrees with the facts set forth in paragraph 2. The specification did not necessarily prohibit vertical systems, as evidenced by the correspondence from Cyril Hamada to Greg Ellner annexed hereto at Exhibit "A".

3. UTS/ESI disagrees with paragraph 3. The City is misconstruing Mr. Ellner's testimony and taking it out of context. The specification did not expressly prohibit vertical systems.

4. UTS/ESI disagrees with paragraph 4. At the time the specification was drafted, Title 22 approval was not possible for all U.V. systems as the State of California was not testing U.V. systems at that time.

5. With respect to the allegations contained in paragraphs 5, 6 and 7, UTS/ESI respectfully directs the Court's attention to a true reading of Mr. Ellner's transcript. The fact that the UTS vertical UV system is a non-conforming system is meaningless. "Non-conforming" indicated that the system had not yet been tested by the State of California. This was true of the UTS system in December 1999, although, as expected, UTS was issued approval months later. The Trojan system which ultimately replaced UTS equipment was also "non-conforming".

6. UTS/ESI deny the statements set forth in paragraph 10; Mr. Ellner does not admit that the UTS horizontal system did not meet the experience requirements.

1150377.1

7. The facts alleged in paragraph 8 speak to actions taken by Bodell, and should be responded to by Bodell.

8. With respect to paragraph 9, UTS/ESI disagrees with the opinion offered by Bruce Bell, and furthermore takes issues with the statement that IDI could have provided a horizontal U.V. system that satisfied the experience requirement as the City is now defining it. IDI was itself offering a vertical system. After being solicited by GMP for information about its system, IDI was interestingly shut out of this project. After a concerted effort by Trojan's representatives to remove the "thorn" in its side, GMP refused to respond to IDI's interest. Moreover, the "IDI" experience was rather experience on which UTS could have relied since they were from an Ellner controlled company. See Ellner Affidavit, Exhibit "F".

9. With respect to paragraphs 13 and 14, UTS/ESI disagrees and directs the court to the actual transcript of Mr. Ellner.

10. Paragraph 15 asserts that GMP was not an agent of the City. While UTS/ESI submits that GMP was clearly acting as an agent of the City, this is a legal determination for this Court to make.

11. UTS/ESI disagrees with the facts as alleged in paragraph 16. Greg Ellner and Paul Scott of ESI never made any false representations to Cyril

1150377.1

Hamada. The horizontal system submitted for pre-approval by UTS met the experience requirements, was Title 22 compliant, and would have met the performance specifications had it been installed. Mr. Hamada's recent declaration now seeks to cover–up and misconstrue the facts as they unfolded in 1999. See, Exhibit "B", Memo to the Record from Cyril Hamada, Exhibit "A", and email from Cyril Hamada annexed hereto as Exhibit "C". It must also be noted that the deposition of Cyril Hamada has yet to be concluded and as such defendants have not had the opportunity to question Mr. Hamada with respect to many of these points.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."... Fed. R. Civ. P. 56 (c); see also <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). UTS and ESI have met this burden. As required by the FRCP, the opposing party must produce specific evidence to show that a dispute exists. UTS/ESI note that the City has failed to do this. Instead, the City misconstrues items in evidence and asserts facts that have no bearing on the issues at hand, rather than relying on evidence to show that an actual factual dispute exists.

## **ARGUMENT**

### I. UTS/ESI FILED THEIR MOTION FOR SUMMARY JUDGMENT TIMELY PURSUANT TO THE RULES OF THE COURT

The City requests that UTS/ ESI's motion for summary judgment be stricken due to their failure to comply with the deadline set by the Court, which required all dispositive motions to be filed by February 17, 2006. UTS and ESI were in compliance with the Court's rules, as their motion was filed timely on February 17, 2006.

As evidenced by the attached "transaction log" and "docket sheet", generated by the court's electronic filing system (PACER), UTS/ESI submitted their motion on February 17, 2006. See Exhibit "D". Due to a problem with the labeling of certain exhibits, the court requested that the motion be electronically re-submitted again on February 22, 2006, which was promptly done.

In addition to filing the motion electronically with the Court in a timely matter, two hard copies were mailed to the Clerk of the Court, as required under the Local Rules, and copies of the motion along with all accompanying exhibits and affidavits were served on each party to the action. The City received the motion timely and has not been prejudiced in any regard by the re-filing of UTS/ESI's motion two business days after the motion was originally filed.

1150377.1

## II.  UTS DID NOT RELY ON ITS VERTICAL SYSTEM TO SATISFY THE EXPERIENCE REQUIREMENT

The City again offers a red herring in its attempt to argue that UTS relied on its vertical system to satisfy the experience requirement. This simply is not true. The UTS system submitted by Bodell which was scrutinized by the City and GMP, was a horizontal system. See Exhibit "E". Furthermore, as stated in UTS' prior papers and affidavits, UTS' horizontal system met the experience requirement. See, the 2/17/06 Affidavit of Greg Ellner, the 4/13/06 Affidavit of Greg Ellner, and the 12/11/05 Declaration of Sidney Ellner. Moreover, as UTS was pre-qualified by the City, the experience requirement was moot. The City already determined that UTS was qualified and was not a "fly by night" operation. See email from Cyril Hamada, annexed as Exhibit "C". Thus, this is a red herring that did not impact the decision to use the Trojan system.

### 1.  Vertical Systems Were Not Prohibited

As laid out in detail in UTS' MSJ, vertical systems were not prohibited or if read differently, incorrectly prohibited under the specifications. Documents only recently released by the City speak directly to this issue. In response to a December 21, 2000 letter from Greg Ellner requesting that the City consider substituting the UTS horizontal system with the UTS vertical system as it was economically superior, Cyril Hamada replied:

1150377.1

> *"We have reviewed your request for prior written approval for an after bid opening substitution request and find that your claim of reduced operation costs, and the standardization of parts has merit. **Although the specification contain a provision against a vertical UV disinfection system; we feel that this is not enforceable as California Department of Health Services Title 22 allow for a vertical low pressure UV disinfection system as a non-conforming system. The specified Trojan 4000 system is also a non-conforming system.**
>
> Therefore **we believe that the vertical low pressure UV disinfection system is equal or better than[t] the one specified or prequalified, and thus prior written approval is granted** to submit an after bid opening substitution request."*          See Exhibit "A"

This correspondence clearly demonstrates the City's real opinion that the ambiguous specification as drafted was incorrect, and that vertical systems were allowed by the City, who granted UTS approval to submit their vertical system in December 2000. Thus the City's claim that vertical systems were prohibited is completely false and should be disregarded by this Court.

**2.   UTS' Vertical System, Like its Horizontal System, Was Title 22 Compliant, As Evidenced By Written Confirmation By the State of California and Cyril Hamada's Correspondence**

The City's second argument fails as well. As clearly stated above, the State of California had issued approval to vertical low pressure systems, as explained by Mr. Hamada in his approval letter to Mr. Ellner, and thus Section 1.2(A) of the specification was met.

1150377.1

The City also attempts to argue that UTS' vertical system was not Title 22 compliant at the time the bid was issued in December of 1999. Even if a review of the "vertical" submission was relevant, the City's argument would fail. The specification did not require that the system be Title 22 certified in December 1999, but rather that the system by Title 22 compliant when delivered. Since the Trojan system that was installed was not tested for Title 22 in December 1999, the City's position on this issue is disingenuous.

Furthermore, the pre-bid approval letter issued to UTS stated that the equipment was approved for bidding purposes, but would still have to meet the contract requirements. In an attempt at clarification, Greg Ellner asked Cyril Hamada when the performance requirement had to be met. The response was, "upon installation". See Affidavit of Greg Ellner, annexed as Exhibit "F".

Moreover, when UTS submitted a request to the City to substitute its horizontal system with its vertical system, one year later, the City accepted UTS' approval that was issued for its vertical system in October 2000. The City's arguments make no sense and should be disregarded.

3.   **Greg Ellner Did Not State That He Had No Evidence of Intent On the Part of The City to Interfere with Bodell and UTS' Relationship**

The City argues that Mr. Ellner admitted not having evidence of the City's intent to interfere with Bodell's and UTS' relationship. The City's actions speak for themselves and the documents referring to the City's actions scream intent.

1150377.1

Why else would the City meet with a vendor who was intent on getting UTS disqualified and then even go so far as to work with the vendor to accomplish this task.

### 4. The Release of UTS' Confidential and Proprietary Information Speaks to the Intentional Acts Against UTS Which Interfered with Its Relationship with Bodell

Once again the City tries to obfuscate the issues by asserting that UTS is attempting to somehow assert a trade secret claim after pleadings have been closed. The allegation (and proof) that the City acted with GMP to release UTS' confidential and proprietary information (See Exhibits 17 and 18 of UTS MSJ) goes to UTS/ESI's current claims. While it may not be a separate claim, the action clearly supports elements of UTS' other claims.

The release of this information was a clear violation of the engineering ethics and practice in the industry. This was just another act in a long line of intentional acts obviously undertaken to rid the Wahiawa project of the UTS system and illustrates the City's bad faith, and malicious and intentional acts.

### III. THE CITY RETAINED GMP TO ACT IN CONJUNCTION WITH THE CITY ENGINEERS TO DESIGN, IMPLEMENT AND OVERSEE THE WAHIAWA PROJECT

The City argues that GMP was not the City's agent with respect to this Project and thus any acts attributable to GMP can not be imputed to the City.

1150377.1

Every recommendation made by GMP was reviewed and qualified by the City and their cadre of engineers.

GMP was retained by the City for assistance in drafting the specifications. However, the engineers employed by the City, specifically Cyril Hamada, had significant experience with U.V. disinfection projects, after having recently overseen the projects at the wastewater treatment plants at Honoululi and Kailua. Each and every action recommended by the GMP, was subsequently ratified, or in certain instances, overruled by the City, confirming the City had the final word.

### IV.    THE CITY CANNOT SUSTAIN ITS CLAIM AGAINST UTS AND ESI FOR NEGLIGENT MISREPRESENTATION AS UTS/ESI DID NOT MAKE ANY FALSE STATEMENTS

#### A.    The Pre-Bid Substitution Request Offered To The City Was Made In Good Faith and Was Accurate

The City alleges that they were harmed by relying on the negligent misrepresentations of UTS/ESI, who claimed that they would be able to meet the specification. In particular, the City claims that UTS and ESI represented they could meet the "experience requirement."

As discussed at length above, UTS met the experience requirements. The cover letter submitted by ESI to the City stated, "Ultratech will meet the *intent of the specifications* with respect to the *disinfection requirements*. The Ultratech system will fit into the channel shown on the drawings." In support, ESI/UTS

1150377.1

supplied a list of installations which UTS had supplied in North America disinfecting a peak flow of 5 million gallons per day or greater.

### B. Cyril Hamada Conceded that UTS Met the Experience Requirement

The City's lead engineer Cyril Hamada, has conceded in multiple documents, that UTS met the experience requirements. In support of this contention, UTS/ESI cites:

- The memo to "the record", dated December 1, 1999, (contemporaneous with the UTS/ESI equipment substitution approval) which notes that he is overruling GMP's recommendation. "This is another case of defacto approval since these are the units that are being installed at Kailua WWTP". Exhibit B.

- The pre-approval letter issued to UTS on December 9, 1999.

- The July 7, 2000 email to Greg Ellner from Cyril Hamada where Mr. Hamada explains that the main purpose of the experience clause is to prevent "fly by night operations." Exhibit C.

- The memo to the record prepared by Cyril Hamada in October 2000 outlining the myriad reasons he had for approving the UTS system.

UTS met the experience clause, Cyril Hamada (the City) conceded as much, and most notably, granted UTS approval, thus nullifying the need to even prove that they met the experience requirement again at a later date. Not only did UTS meet

1150377.1

the experience, the City had first hand experience with UTS and its successful installation of its equipment at Kailua.

The City has not met its burden as delineated by the Restatement of Torts and Stanford. See, UCSF-Stanford Health Services vs. Hawaii Management Services 58 F. Supp.2d 1162 (D. Hawaii 1999). See also, Restatement (Second) of Torts (1977) §552. The information provided by ESI and UTS was patently true, and the City did not rely solely on the information provided by cross-claim defendants in arriving at their decision to approve UTS for bidding purposes. As evidenced by Cyril Hamada's documentation, he had good cause to approve UTS based on their experience at Kailua, the superiority of the low-pressure system, the bid materials submitted by UTS, and lastly, due to the fact that the **specification allowed for substitution**. The City's claims are therefore without merit and must be denied.

V.   CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant judgment to cross-claim plaintiffs UTS and ESI and deny the motion of the City in all respects, and for such other, further and different relief as this Court deems just and proper.

Dated:   April 11, 2006

                                Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Adam Bialek
*Attorneys for Cross-Claim Defendant/*
*Cross-Claim Plaintiff*
**ULTRATECH SYSTEMS, INC.**
*And Special Counsel to Third-Party*
*Defendant/Cross-Claim Plaintiff*
*Engineered Systems, Inc.*
*For This Motion*
3 Gannett Drive
White Plains, New York  10604

Of Counsel:

Adrian Rosehill, Esq.
Kirsten Bennett-O'Rourke, Esq.

1150377.1