Adam R. Bialek  (Admitted Pro Hac Vice)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York  10604
(914) 323- 7000

Adrian Rosehill (3868)
Attorneys for Engineered Systems, Inc.
STUBENBERG & DURRETT
Davies Pacific Center
841 Bishop Street, Suite 2115
Honolulu, Hawaii  96813
(808) 526-0892

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ------------------------------------------------------ )<br>BODELL CONSTRUCTION COMPANY, a )<br>Utah corporation, )<br><br>        Plaintiff, )<br><br>    v. )<br><br>OHIO PACIFIC TECH, INC. f/k/a GMP )<br>ASSOCIATES, INC., an Ohio corporation; )<br>CITY AND COUNTY OF HONOLULU; )<br>ULTRA TECH SYSTEMS, INC., a foreign )<br>corporation, )<br><br>        Defendants. )<br><br>------------------------------------------------------ )<br>      -AND RELATED ACTIONS- )<br>            )<br>------------------------------------------------------ | Civil No. 03-00706  (JMS/LEK)<br><br>**REPLY MEMORANDUM<br>BY CROSS-CLAIM DEFENDANT/CROSS-<br>CLAIM PLAINTIFF ULTRATECH<br>SYSTEMS, INC., and THIRD-PARTY<br>DEFENDANT/CROSS-CLAIM PLAINTIFF<br>ENGINEERED SYSTEMS, INC.  TO<br>DEFENDANT/COUNTERCLAIMANT<br>OHIO PACIFIC TECH CORPORATION<br>INC., f/k/a GMP ASSOCIATES'<br>MEMORANDUM IN OPPOSITION** |

This Memorandum is respectfully submitted in reply to Defendant

Counterclaimant Ohio Pacific Tech Corporation, Inc., f/k/a GMP Associates, Inc.'s

("GMP") Memorandum in Opposition to Defendant/Cross-Claim Plaintiff

UltraTech Systems, Inc. ("UTS") and Third-Party Defendant/Cross-Claim Plaintiff Engineered Systems, Inc.'s ("ESI") Motion for Summary Judgment.

## PRELIMINARY STATEMENT[1]

GMP seeks an order denying UTS and ESI's claim for summary judgment as a matter of law. GMP argues that UTS and ESI's claims fail, as there was no contract between Bodell and UTS. This is patently untrue, as the acts undertaken by both Bodell and UTS make clear the intent of the parties and the detrimental reliance which was manifested by the actions of each side.

GMP brazenly claims that there is no evidence that it acted with any intent to interfere with Bodell and UTS/ESI's business relationship, ignoring the abundance of evidence cited to by UTS/ESI in their motion for summary judgment. To the contrary, UTS/ESI's papers are rife with factual support, evidence and detailed accounts of the multitude of actions taken by GMP to deliberately and purposefully erroneously discredit UTS, replace the UTS system with the Trojan system, and ultimately, interfere with UTS/ESI's relationship with Bodell.

## FACTUAL ALLEGATIONS

As discussed at length in UTS/ESI's motion for summary judgment (MSJ), the experience requirement upon which GMP and the City relied on for rejecting UTS, was a fabricated issue that was mooted by the City's pre-qualification of the

---

[1] UTS and ESI respectfully refer to and incorporate its other papers submitted in connection with the motions presently pending.

1148866.2

UTS system. Nevertheless, as explained in the prior papers, the U.V. systems submitted by UTS satisfied the experience requirement under the specification. GMP and the City assert that they did not, based on an unreasonably narrow construction of the experience requirement. The City and GMP's current interpretation is unreasonable and was not what was interpreted by Bodell or UTS. See, Affidavits of Greg Ellner (2/17/06 and 4/13/06) and Sidney Ellner (12/11/05).

Moreover, adopting GMP and the City's interpretation would require one to find that the specification was a de facto sole source specification in violation of the State of Hawaii Procurement Code. Either way, the City and GMP cannot rely upon this provision as their basis of rejecting UTS. Such reliance only highlights the sham that was created to ensure that the City obtain the Trojan system within its budget, thereby requiring the contractor to absorb the difference in cost of the UTS system and the Trojan system.

GMP argues that after each submittal made by UTS, a list of items noting the system's deficiencies was generated, each one citing UTS' failure to meet the experience and testing requirements. However, GMP fails to note that each concern was addressed or proven wrong. In the end, there was no good faith basis to reject the UTS system. GMP's arguments are baseless and without merit. The claims made by GMP should be dismissed, and UTS/ESI's motion for summary judgment should be granted.

3

## ARGUMENT

### I.    A CONTRACT EXISTED BETWEEN BODELL AND UTS

GMP relies on the testimony of Leroy Humke, a Bodell employee, in asserting that there was no contract between Bodell and UTS.  GMP cites to deposition testimony of Mr. Humke wherein he stated that he had no knowledge with respect to whether Bodell received a signed purchase order from UTS.  See, GMP's Aff. in Opp. at page 7.  However, this testimony does not stand for the proposition claimed by GMP.

Moreover, the actions of Bodell and UTS prove there was an agreement. Under Hawaii law, there must be a mutual assent or a meeting of the minds on the essential elements or terms to create a binding contract.  Under Haw. Rev. Stat. § 490:1-201(11), (3), a contract is reached from the bargain of the parties in fact as found in their language *or by implication from their conduct and the surrounding relevant circumstances* (emphasis added).  See, Earl M. Jorgensen Co. v. Mark Constr., 56 Haw. 466 (Haw. 1975).

The UCC is also in agreement.  Under the UCC, an agreement goes beyond the written words on a piece of paper. "'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in §§ 490:1-205 (now see § 490:1-202) and 490:2-208."

Nanakuli Paving & Rock Co. v. Shell Oil Co., 664 F.2d 772, 1981 U.S. App. LEXIS 15022 (9th Cir. 1981).

In the case at bar, there was a meeting of the minds and both Bodell and UTS acted upon the expectation of delivering the UTS system. Bodell and UTS retained engineers and other professionals, worked towards designing and implementing the U.V. system, and spent countless hours and money towards fulfilling the contract. All of the actions taken by both Bodell and UTS from December 1999- January 2001, indicate the reliance that both parties exhibited on the other, and make it clear that an agreement was formed by Bodell and UTS with respect to the Wahiawa project. In sum, UTS and Bodell can show that there was an offer, acceptance (at the very least through detrimental reliance), and consideration. An agreement was in place.

## II.   UTS/ESI HAVE ILLUSTRATED THAT GMP ACTED MALICIOUSLY WITH AN INTENT TO REPLACE THE UTS SYSTEM WITH THE TROJAN SYSTEM

GMP boldly claims that UTS/ESI cannot establish that GMP acted with legal malice. In support of this contention, GMP argues that its intentional and malicious acts against UTS/ESI were justified, as they were trying to protect the interests of the City. However, as the record is clear, there is no excuse for the highly inappropriate and unethical actions taken by GMP against UTS.

1148866.2

1.    **GMP Violated Ethical Codes of Conduct by Sharing UTS Confidential and Proprietary Information**

At the end of April 2000, at a pre-construction meeting, GMP clearly set forth its intent that UTS would never be approved.   It is clearly noted in the minutes of the April 27, 2000 meeting that: "the review of the UTS system revealed that the system would be too large for the space provided and the purchase and high-energy costs [of the Trojan system] would be offset by a better system." See, Exhibits 17 and 18 of UTS/ESI MSJ.

Oddly, this "review" of the UTS system was made before UTS even submitted its first pre-submittal purchase. The review GMP referred to were communications it had with Trojan's representative.   This was an erroneous statement which GMP failed to investigate on its own. See, Exhibits 17 and 18 of MSJ.  GMP then asked that a proposal be sent to them by UTS "so that their sub-consultant [i.e. Mike Elhoff] could come up with knowledgeable questions." See, Exhibit 17 at ¶6.  Nevertheless, GMP induced both Bodell and UTS to continue on their journey to cover up GMP's and the City's intent to use the Trojan system at Bodell's expense.

Upon receiving the pre-submittal package from UTS, GMP immediately shared it with HES, the local representative of UTS' chief competitor, Trojan, despite the fact that the pre-submittal contained a clear and unambiguous notation that the material was confidential and proprietary.  This statement was clear as to

its intent, it was understood by GMP and GMP did not object to this designation.
Nor did GMP ever contact UTS to discuss the contents of the package. However,
GMP apparently disregarded this confidentiality warning and proceeded to share
UTS' confidential information with one of its chief competitors. In the
engineering industry, it is understood that proprietary information, once received,
is never to be released to any outside party, especially a competitor, without the
express consent of the manufacturer. To do so implies collusion and a prior intent
to damage. See, Exhibit 30 of UTS/ESI's Motion for Summary Judgment[2].

The release of UTS' proprietary information was a clear violation of
accepted standards in the engineering industry, and in violation of every canon of
ethics relied on in the industry. The purpose for which the proprietary information
was apparently released, i.e. to allow UTS' competitors to criticize the submittal, is
reprehensible.

Significantly, when GMP evaluated the system proposed by UTS, it
evaluated it improperly. Jay Stone has conceded this in his deposition testimony.
See, Deposition of Jay Stone at pages 633-644, annexed hereto as Exhibit "G."

## 2.    The Testimony of Greg Ellner Has Been Misconstrued

GMP states that Greg Ellner of UTS admitted that the UTS equipment could
not meet the experience requirement of the specification. GMP cites to an email

---

[2] Where not specifically annexed hereto, all references to exhibits found in "UTS/ESI's MSJ", are found in the original motion papers submitted by UTS and ESI in February 2006.

1148866.2

written by Greg Ellner to Cyril Hamada of the City which was taken out of context. Mr. Ellner's email noted that since UTS' vertical and horizontal systems used the same components and were the same "equipment type" the experience clause was more than satisfied. He noted as follows:

> *Regarding the experience clause we do not have the sufficient number of horizontal UV systems of the minimum size specified. We do however have many vertical UV systems. Being that both our horizontal and vertical systems use the same components it can be argued that we do meet the experience clause.*

The argument with respect to the experience criteria turns on the interpretation of the original specification which was ambiguously and poorly drafted by GMP. As UTS/ESI's motion for summary judgment discusses at length, and the Affidavits of Greg Ellner and Sidney Ellner support, the original specification issued by the City and GMP was based on the Trojan 4000 system as supplied by Trojan and stated as follows:

> The manufacturer shall submit at least five (5) permanent wastewater installations using this ***equipment type***, in North America, disinfecting a peak flow of 5 MGD or greater for at least one (1) year. [Emphasis added] (See, Section 1.2A of Specification).

The dispute thus turns on the definition of "equipment type". The City and GMP claim that UTS failed to meet the "experience" requirement because it did not have sufficient systems in operation using the proposed "equipment type." This claim has no merit and the ambiguous Specification must be read to provide any reasonable interpretation, as UTS and Bodell had.

8

a.    **"Equipment type" Should Not Be Read to Limit the Equipment to Horizontal Systems**

We respectfully submit that the term "equipment type" is ambiguous at best, and does not preclude the use of vertical systems. With respect to satisfying the experience requirement, nowhere in the specification does it say that the requirement must be met by relying solely on horizontal systems. The "equipment" used for UTS' vertical and horizontal systems are the same. They use the same lamps, ballasts, logic controllers and other elements. There is no import to the difference in orientation in this regard and GMP and the City were well aware of this. See, Declaration of Sidney Ellner. Perhaps, this is why Mr. Hamada and the City pre-qualified UTS, and later issued an approval letter to UTS directing it to submit its vertical system for consideration. See, Exhibit "A".

b.    **Vertical Systems Were Not Prohibited**

As laid out in detail in UTS' MSJ, vertical systems were not prohibited under the specifications. Documents only recently released by the City speak directly to this issue. In response to a December 21, 2000 letter from Greg Ellner requesting that the City consider substituting the UTS horizontal system with the UTS vertical system due to is economic superiority, Cyril Hamada replied:

> *We have reviewed your request for prior written approval for an after bid opening substitution request and find that your claim of reduced operation costs, and the standardization of parts has merit. **Although the specification contain a provision against a vertical UV disinfection system; we feel that this is not enforceable as California Department of***

9

> *Health Services Title 22 allow for a vertical low pressure UV
> disinfection system as a non-conforming system.  The specified Trojan
> 4000 system is also a non-conforming system.*
>
> *Therefore **we believe that the vertical low pressure UV disinfection
> system is equal or better than[t] the one specified or prequalified, and
> thus prior written approval is granted** to submit an after bid opening
> substitution request.*

This correspondence clearly evinces the City's opinion that the ambiguous Specification as drafted was incorrect, and that vertical systems were expressly allowed by the City, which granted UTS approval to submit their vertical system in December 2000.  Thus GMP's claim that vertical systems were prohibited is completely false and should be disregarded by this Court.

If there was any initial confusion concerning the experience requirement, it was GMP's failure to properly draft a specification that would clearly set forth a reasonable requirement, yet not lead to a sole source specification.  Here, either the specification was unclear, or it was an improper sole source specification.  GMP cannot avoid this issue.  As clearly set forth in earlier papers and in Plaintiff's papers, a reasonable interpretation was permitted.

## 3.    GMP Rejected the UTS System Because GMP Was Intent to Use the Trojan System at Wahiawa

GMP attempts to argue that the basis for rejecting the UTS system was because UTS could not meet the specifications.  Not only did UTS meet the specifications called for, but the actions of GMP from the days after the bid was

10

opened, evinces the obvious intent of GMP and the bad faith with which they acted.

The intent and malice on the part of GMP is evident from every action GMP took from the beginning of its involvement with the Project. From their intentional steps to hide the sole source specification, to the initial and arbitrary rejection of the UTS substitution request, to the egregious act of sharing UTS' proprietary information, to the countless errors committed by GMP in evaluating UTS' submittals, to ultimately January 2001 when GMP was finally successful in ridding the Project of UTS, GMP acted with deliberate intent and the legal malice required.

### III. UTS AND ESI's CLAIMS FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE SHOULD BE GRANTED AS THE BURDEN HAS BEEN MET

GMP again conclusively asserts that UTS and ESI cannot meet its burden of establishing that GMP acted with "intent" and "legal malice" as required to sustain an action for intentional interference with prospective business advantage. The plethora of reasons cited above make out UTS/ESI's strong case against GMP on this point. UTS and ESI have met the requirements called for under the relevant case law. See, Robert's Hawaii School Bus v. Laupahoehoe Transportation Co. Inc., 91 Hawaii 224, 982 P.2d 853 (1999); Locricchio v. Legal Services Corp. 833 F.2d 1352, 1358 (9th Cir. 1987); and Leigh Furniture and Carpet Co. v. Isom, 657 P.2d 293, 308 (Utah 1982).

## V.    CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant judgment to cross-claim plaintiffs UTS and ESI, against counterclaimant Ohio Pacific Tech Corporation, Inc., f/k/a GMP Associates, Inc., and deny GMP's motion, and for such other, further and different relief as this Court deems just and proper.

Dated:        April 20, 2006

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:

Adam Bialek
*Attorneys for Cross-Claim Defendant/*
*Cross-Claim Plaintiff*
ULTRATECH SYSTE**MS, INC.**
*And Special Counsel to Third-Party*
*Defendant/Cross-Claim Plaintiff*
***Engineered Systems, Inc.***
*For This Motion*
3 Gannett Drive
White Plains, New York  10604
(914) 323-7000

Of Counsel:
Kirsten Bennett-O'Rourke

1148866.2