Adam Bialek (Admitted Pro Hac Vice)
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York  10604
(914) 323-7000

Adrian Rosehill (3868)
Attorneys for Engineered Systems, Inc.
STUBENBERG & DURRETT
Davies Pacific Center
841 Bishop Street, Suite 2115
Honolulu, Hawaii  96813

Attorneys for Cross-Claim Defendant/Cross-Claim Plaintiff
ULTRATECH SYSTEMS, INC. and ENGINEERED SYSTEMS, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| OHIO PACIFIC TECH, INC. f/k/a GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRATECH SYSTEMS, INC., a foreign corporation, | )<br>)<br>) AFFIDAVIT OF<br>)<br>) GREG ELLNER |
| Defendants. | )<br>) |
| ------------------------------------- | ) |
| CITY AND COUNTY OF HONOLULU, | )<br>) |
| Defendant/Third-Party Plaintiff,<br>v. | )<br>)<br>) |
| ENGINEERED SYSTEMS, INC., | )<br>) |
| Third-Party Defendant. | )<br>) |
| CITY AND COUNTY OF HONOLULU, | )<br>) |
| Defendant/Cross-Claim Plaintiff, | ) |

2267175.1

Exhibit F

|  |  |
|---|---|
| v. | ) |
| ULTRATECH SYSTEMS, INC., a foreign corporation, | ) ) ) |
| Cross-Claim Defendant/ Cross-Claim Plaintiff. | ) ) ) ) ) |

STATE OF NEW YORK:           )
                                                    ss.:
COUNTY OF WESTECHESTER:    )

GREG ELLNER, being duly sworn, deposes and says:

1. I am a principal and the president of UltraTech Systems Inc. ("UTS"), a New York based corporation.

2. UTS has been in the business of supplying wastewater disinfection equipment for more than ten years.

3. UTS supplied U.V. systems to over 100 installations throughout the United States, including installations in Hawaii, prior to the Wahiawa Project.

4. I have read the opposition papers submitted in response to UTS/ESI's motions for summary judgment. I think that the arguments presented fail to recognize the reality of what happened. The arguments contrived in March and April 2006 cannot rewrite the history that occurred in 1999 and 2000. The City and GMP were clearly aware of UTS' agreement with Bodell to supply the U.V. system for the Wahiawa project. Disregarding any legitimate way to select my competitor's product to the exclusion of other manufacturers, the City and GMP induced me into believing that the UTS product could be used. Bodell was similarly induced by the City and GMP and we worked diligently to ensure that the product could be manufactured

2267175.1

and installed in accordance with the City's timetable. However, the City and GMP acted in bad faith and unethically and interfered with UTS' relationship with Bodell.

5.  In the City's papers, it attempts to refute the allegation that the Specification as drafted was a sole source specification, which I understand is expressly prohibited by the Hawaii Procurement Code. In support of its position, the City cites to the Declaration of Bruce Bell who asserts that another U.V. disinfection company, Infilco Degremont, Inc. ("IDI") could have met the experience requirement based on a list of horizontal U.V. systems it supplied to GMP when GMP was seeking to confirm that another manufacturer could meet their "interpretation" of the experience requirement (notably, this was long after the bid was opened and UTS was learned to have been selected by Bodell).

6.  However, Bruce Bell's Declaration is without merit and should be disregarded. At the time of the Wahiawa project, IDI was primarily manufacturing vertical systems for U.V. disinfection equipment. In fact, I understand that IDI had tried to convince GMP prior to the bid to use its vertical system, but that GMP would not even call IDI back.

7.  The City asserts that IDI met the experience requirement with only horizontal installations. A review of the supposed IDI installations at the time reveals that these installations were not delivered under the IDI name. They in fact were designed and manufactured by an Ellner owned or controlled company. The technology for those systems was sold by the Ellner's company, passed through additional multiple company sales and was finally licensed to IDI. IDI itself had no role in connection with those installations. IDI did not come to be in the UV business until the early 1990s. This date is after most if not all of the installations were built.

8.     Therefore, IDI could not rely upon those installations for its experience requirement. If IDI could rely on the installations designed and installed by the Ellner's company, then certainly UTS can as well especially since there is a continuity of personnel.

9.     Last year, I attended the deposition of Lee Mansfield, an employee and one-time part owner of GMP. I recall he was specifically asked at his deposition whether he would be satisfied that a manufacturer met the experience requirement if they submitted past successful performances which had been installed by a previously held company. Mr. Mansfield's answer was "It wouldn't satisfy me." See, Lee Mansfield deposition transcript at page 19. Thus, the Specification, if construed as the GMP engineer intended, would be a sole source specification.

10.    GMP's own engineer asserted that a company such as IDI, who relied upon equipment installed by a predecessor company, would not meet the experience requirement. Yet, the City now relies upon an "expert" who interprets the Specification differently than the City's own agent who prepared the Specification. This clearly illustrates the ambiguity in the Specification as drafted.

11.    In fact, UTS probably has more right to rely on this experience than IDI. Accordingly, Dr. Bell and the City's contentions lack merit.

12.    The City has also claimed that I made misrepresentations to Cyril Hamada concerning the ability of the UTS equipment to meet the experience requirement. This is untrue. No misrepresentations were made.

13.    With respect to Title 22 compliance, the question was asked of Mr. Hamada, at what point Title 22 compliance was needed. Cyril Hamada's response to me was that the system need only be Title 22 compliant upon delivery.

2267175.1

14. Mr. Hamada was very familiar with UTS' products as of this time. UTS was supplying the City and County of Honolulu with a system at Kailua and the City clearly had a comfort level with our equipment. Notably, the system is still in operation.

15. UTS' equipment was added to the Specification in December 1999 (prior to bid opening), per the City's approval letter. UTS' horizontal system was a conforming system and thus was already Title 22 compliant. UTS' vertical system received verification of Title 22 compliance in October 2000 as expected (California Department of Health Services representatives had previously represented to me in early 2000 that such verification would be issued). After such compliance was verified, UTS applied to the City to substitute its vertical system, as the vertical system was superior and would save the City money. The City granted UTS' request.

16. UTS was fully prepared and capable to provide a horizontal system that met the Specification. In fact, UTS submitted a horizontal system and demonstrated that it met the Specification. Despite comments about our system, UTS supplied the information to the City and GMP which clearly showed UTS complied with the Specification.

17. UTS also submitted a vertical system which was granted approval by the City and, specifically, Cyril Hamada. Once referred to GMP, however, it was flatly rejected by GMP because it was submitted by UTS directly, and not by the general contractor, Bodell. This rationale was baseless, but typical of the irrational reasons GMP continually found to reject UTS' submittals.

18. GMP and the City participated in numerous acts that interfered with UTS' business relationship and UTS' agreement with Bodell. The City's and GMP's inducement to continue the process of submittals, while knowing that they would never approve an UTS

2267175.1

system, caused UTS and ESI great expense and wasted time. As such, I respectfully request that the UTS and ESI motions for summary judgment be granted in their entirety and that the motions for summary judgment submitted by GMP and the City be denied. I respectfully refer to the papers submitted by counsel for more support.

GREG ELLNER

Sworn to me this 20th day of April, 2006

Notary Public

GUY J. LEVASSEUR
Notary Public, State of New York
No. 02LE5036854
Qualified in Suffolk County
Commission Expires December 12, 2006

2267175.1