Document ID: 399356v1_GGU

Of Counsel:
KOBAYASHI, SUGITA & GODA
BERT T. KOBAYASHI, JR.    659-0
RONALD T. OGOMORI        5850-0
GEORGE GUSMAN            6914-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax: (808) 539-8799
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
  CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah Corporation,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign Corporation,<br><br>　　　　Defendant. | ) CIVIL NO. CV03-00706 JMS-LEK<br>) (Contract)<br>)<br>) DEFENDANT, CROSS-CLAIM<br>) PLAINTIFF/DEFENDANT<br>) AND THIRD-PARTY<br>) PLAINTIFF/COUNTERCLAIM<br>) DEFENDANT CITY AND COUNTY<br>) OF HONOLULU'S REPLY IN<br>) SUPPORT OF THE CITY'S MOTION<br>) FOR SUMMARY JUDGMENT AS<br>) TO THE CLAIMS RAISED BY THE<br>) PLAINTIFF BODELL<br>) CONSTRUCTION COMPANY;<br>) DECLARATION OF BRUCE BELL;<br>) DECLARATION OF COUNSEL;<br>) EXHIBITS "A" – "K"; CERTIFICATE<br>) OF SERVICE<br>)<br>)<br>) |

_Caption continued_

Document ID: 399356v1_GGU

| | | |
|---|---|---|
| CITY AND COUNTY OF HONOLULU, | ) | Hearing Date:  May 1, 2006 |
| | ) | Time:  9:00 a.m. |
| Defendant, Third-Party Plaintiff, and Counterclaim Defendant, | ) | Judge:  Honorable J. Michael Seabright |
| | ) | Trial Date: October 17, 2006 |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ENGINEERED SYSTEMS, INC., | ) | |
| | ) | |
| Third-Party Defendant, Counterclaim Plaintiff and Cross-Claim Plaintiff. | ) | |
| | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| | ) | |
| Defendant, Cross-Claim Plaintiff/Cross-Claim Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ULTRA TECH SYSTEMS, INC., a foreign Corporation, | ) | |
| | ) | |
| Defendant, Cross-Claim Defendant/Cross-Claim Plaintiff and Cross-Claim Plaintiff/Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation | ) | |
| | ) | |
| Cross-Claim Defendant/Plaintiff. | ) | |
| | ) | |

2

Document ID: 399356v1_GGU

DEFENDANT, CROSS-CLAIM PLAINTIFF/DEFENDANT
AND THIRD-PARTY PLAINTIFF/COUNTERCLAIM DEFENDANT CITY
AND COUNTY OF HONOLULU'S REPLY IN SUPPORT OF THE CITY'S
MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS RAISED BY
THE PLAINTIFF BODELL CONSTRUCTION COMPANY

## I.    INTRODUCTION

COMES NOW, Defendant, Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff/Counterclaim Defendant City and County of Honolulu ("City") and submits this Reply Memorandum in support of the City's Motion for Summary Judgment ("MSJ") in regard to the claims by the Plaintiff, Bodell Construction Company ("Bodell"). The City asserts that Bodell has failed to prove that there are questions of material fact and, as such, the City respectfully requests that this Court grant the MSJ.

## II.    RELEVANT LAW AND ARGUMENT

### A.    BODELL'S ARGUMENT THAT THE UTS UV SYSTEM SATISFIED THE REQUIREMENTS OF THE PROJECT'S CONTRACT DOCUMENTS IS MISPLACED.

#### 1.    BODELL ADMITS THAT IT WAS SEEKING APPROVAL FOR THE UTS HORIZONTAL SYSTEM, AND THE CITY ASSERTS THAT IT IS UNDISPUTED THAT SUCH SYSTEM COULD NOT SATISFY THE EXPERIENCE REQUIREMENT OF THE UV SYSTEM SPECIFICATIONS.

On page five of Bodell's Memorandum in Opposition ("MIO") to the City's MSJ, Bodell admits that the Ultraviolet Disinfection System ("UV System") for which Bodell was seeking approval was the UltraTech ("UTS") horizontal UV

Document ID: 399356v1_GGU

System.  This admission is fatal to Bodell's claim as sworn testimony of UTS'

president, Greg Ellner ("Ellner"), clearly indicates that the UTS horizontal UV

System could not satisfy the experience requirement of Section 11376 of the

contract documents ("UV System Specifications").  See pp. 66-70 of Exhibit "A",

which are relevant pages from the deposition of Ellner.  In fact, nowhere in the

MIO is there any statement indicating that the UTS horizontal UV System satisfied

the experience requirement of the UV System Specification.  See MIO.

2.     **BODELL'S ATTEMPT TO MIX AND MATCH ATTRIBUTES FROM THE UTS VERTICAL AND HORIZONTAL SYSTEM TO SUPPORT ITS ARGUMENT IS MISPLACED.**

As Bodell has conceded that the UTS horizontal UV System did not satisfy

the experience requirement of the UV System Specifications, Bodell was forced to

argue that the experience from the UTS vertical UV System satisfied this

requirement.  This argument is misplaced as Ellner admitted in his deposition that

the UTS vertical and horizontal systems are different systems with the horizontal

system being a "conforming" UV system while the vertical system was a "non-

conforming" UV system.  See pp. 50-59 to Exhibit "A", which are relevant pages

from the deposition of Ellner.  This fact is significant because non-conforming

systems require approval to confirm that such system conforms with California

Title 22 and/or Hawaii R-1 standards.  Id. However, at the time of Bodell's bid,

UTS' vertical UV System did not have the required approval from the California

2

Document ID: 399356v1_GGU

Department of Health indicating compliance with California Title 22 or Hawaii R-1. See Exhibit "A" pp. 176-180. Bodell and UTS tried to play a shell game to disguise the fact that neither of the UTS UV Systems (horizontal and vertical) satisfied all of the requirements of the contract documents. In other words, the UTS vertical UV System could satisfy the experience requirement, but it could not satisfy the approval requirement of the UV System Specifications. Conversely, the UTS horizontal UV System did not satisfy the experience requirement. Clearly, the fact that the California Department of Health classified one system as conforming and the other as non-conforming indicates that it was not proper for Bodell and/or UTS to attempt to take qualifying attributes from one system and apply it to the other system.

The City would also point out that the affidavits of Ellner submitted in opposition to the MSJ are improper as such affidavits improperly seek to create a sham issue of fact that contradicts Ellner's sworn deposition testimony. Specifically, the general rule is that, when a deponent attempts to alter or contradict sworn testimony, "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262 (9th Cir. 1991). If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit

Document ID: 399356v1_GGU

contradicting his own prior testimony, this would greatly diminish summary

judgment as a procedure for screening out sham issues of fact.  Id.  Here, the City

asserts that Ellner's affidavits contain statements that contradict his sworn

deposition testimony and thus should be disregarded.

In summary, neither the UTS vertical nor horizontal UV System could

satisfy the requirements of the UV System Specifications for different reasons.  It

is undisputed that the UTS horizontal UV System did not satisfy the experience

requirement of the UV System Specifications.  Thus, Bodell's attempt to take

certain qualifying attributes from each UV System in an effort to create a mirage

that the UTS horizontal UV System was compliant should be disregarded.  As

such, UTS' horizontal UV System was properly rejected, and as a result, Bodell's

claim fails as a matter of law.

> 3.    **THE UV SYSTEM SPECIFICATION WAS NOT A "*DE FACTO*" SOLE SOURCE SPECIFICATION.**

Bodell also attempts to argue that even if the UTS horizontal UV System

could not satisfy the experience requirement of the UV System Specification,

Bodell should still prevail since the UV System Specification amounted to a "*de*

*facto*" sole source specification.  The basis of Bodell's argument is the allegation

that no other horizontal UV System could satisfy the experience requirement.

However, this argument is misplaced as another UV System provider by the name

of IDI could have provided a horizontal UV System that satisfied the experience

4

Document ID: 399356v1_GGU

requirement set forth in the UV System Specification.  See Declaration of Bruce

Bell, Exhibit "B" pp. 239-240, which are relevant pages of the deposition of Lee

Mansfield, and Exhibit "C" attached hereto, which was Exhibit 23 to the

deposition of Mansfield and described in Mansfield's testimony on pp. 239-240.  If

a UV System manufactured by another provider could have satisfied the

experience requirement, the UV System Specification cannot be considered a *"de*

*facto"* sole source procurement.  As a result, Bodell's argument that the UV

System Specification was a *"de facto"* sole source specification fails, as does

Bodell's argument in this regard.

> 4.   **TO THE EXTENT THAT BODELL IS ATTEMPTING TO ASSERT THAT THE UTS VERTICAL UV SYSTEM SHOULD HAVE BEEN APPROVED, SUCH ASSERTION IS MISPLACED.**

To the extent that Bodell's is arguing that the post-bid substitution request

submitted by UTS for approval of the UTS vertical UV System should have been

approved, such argument is misplaced.  First, Bodell did not participate in this

post-bid substitution request, and in fact, it appears as though Bodell did not even

know that UTS was making this request to the City.  See Exhibit "D" attached

hereto, which a letter dated February 22, 2001 from Leroy Humke to Ellner.  In

Exhibit "D", even Bodell admits it was "too late" to request approval of the UTS

vertical UV System.  Id.

Document ID: 399356v1_GGU

In any event, the City respectfully asserts that Bodell is barred from

asserting any claim in regard to the post-bid substitution request for the UTS

vertical UV System as Bodell did not raise this issue in its administrative claim

that was submitted to the City. See Exhibit "E", which are copies of the letters

provided by Bodell to the City in support of its administrative claim. In general, an

argument not raised in an administrative proceeding will be barred in subsequent

litigation. See Jacobs v. Xerox Corp. Long Term Disability Income Plan, 356 F.

Supp.2d 877 (N.D. Ill. 2005). Specifically, the court in Jacobs explained the

doctrine of administrative exhaustion as follows:

> The principle of requiring administrative exhaustion of ERISA claims
> with a plan administrator is well known Seventh Circuit precedent.
> See, e.g., Stark v. PPM America, Inc., 354 F.3d 666, 671 (7th
> Cir.2004) (collecting cases); Fritcher v. Health Care Serv. Corp., 301
> F.3d 811, 815 n. 3 (7th Cir.2002) ("This circuit has long recognized
> that district courts have discretion to require administrative
> exhaustion, and that we will overturn a district court's decision only
> for an abuse of discretion.") (collecting cases). The Seventh Circuit
> has instructed that the requirement "promot[es] non-adversarial
> dispute resolution," and promotes the compilation of a complete
> record in preparation for judicial review. Gallegos v. Mt. Sinai
> Medical Ctr., 210 F.3d at 803, 808 (7th Cir.2000); see also Zhou v.
> Guardian Life Ins. Co., 295 F.3d 677, 679 (7th Cir.2002) (explaining
> that the requirement of administrative exhaustion furthers the goals of
> "minimizing the number of frivolous lawsuits" and "enables the
> preparation of a more complete factual record for judicial review,"
> and that a decision to require administrative exhaustion will not be
> reversed unless "downright unreasonable") (internal quotations and
> citations omitted); Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650
> (7th Cir.1996) (explaining various reasons for requiring exhaustion).

Document ID: 399356v1_GGU

> **In this instance, there is no dispute that Plaintiff did not present his estoppel argument to the plan administrator. If presented, the argument might have led to an informal resolution of the matter, as the administrative exhaustion requirement is designed to promote. Furthermore, the estoppel argument depends on factual and interpretive issues that are intertwined with the plan administrator's assessment of the plan documents, and the plan administrator's resolution of those issues would have been entitled to substantial deference.**

Jacobs, 356 F. Supp.2d at 892 (emphasis added).

As Bodell cannot raise any new claims that were not included in its administrative claim, Bodell is barred as a matter of law from asserting any claims in regard to the rejection of the post-bid substitution request for the UTS vertical UV System. Id.  As such, to the extent that Bodell is asserting that rejection of the post-bid substitution request in regard to the UTS vertical UV System was improper, such argument should be disregarded.

B.   **BODELL'S CLAIMS AGAINST THE CITY BASED UPON THE DECEMBER 9, 1999 LETTER FAIL AS A MATTER OF LAW.**

1.   **THE DECEMBER 9, 1999 LETTER WAS MEANINGFUL AS IT ALLOWED BODELL THE ADVANTAGE OF BIDDING A CHEAPER PRODUCT WHILE AT THE SAME TIME BEING PROVIDED WITH THE OPPORTUNITY TO SHOW THAT THE ALTERNATE SATISFIED THE REQUIREMENTS OF THE CONTRACT DOCUMENTS.**

In the MIO, Bodell takes the curious position that the December 9, 1999 letter was "meaningless" if such letter did not guarantee Bodell a contract

7

Document ID: 399356v1_GGU

adjustment in the event that the UTS UV System was rejected for failing to satisfy the requirements of the contract documents. Bodell's position is misplaced.

Specifically, the letter was meaningful because without the letter, the City would not have considered the UTS UV System at all. The bidding approval gave Bodell the opportunity to bid, in its discretion, a product with a lower price. Since this was a competitively bid project, Bodell's ability to undertake the risk of using the UTS UV System resulted in a lower bid being submitted by Bodell and ultimately, Bodell being selected. Without this letter, the UTS UV System would have been immediately rejected without consideration pursuant to Section 1.13 of the General Instructions to Bidders. Thus, the City's letter did in fact have meaning and Bodell cannot ignore its obligation of proving that the UTS UV System was in compliance with the Project requirements. Stated another way, Bodell was provided with the opportunity to use the UTS UV System but said opportunity came with the obligation that the UTS UV System satisfied the requirements of the contract documents.

However, Bodell attempts to give meaning to only half of the letter and ignore the language contained in such letter that the approval was subject to the UTS UV System satisfying the requirements of the contract documents. It is unclear how Bodell can take this position when Humke testified that he understood the City's approval letter to be "conditional" and requiring a showing by Bodell

Document ID: 399356v1_GGU

that the UTS UV System in fact satisfied the requirements of the contract

documents.  See Exhibit "F", pp. 28; 60-63.  The City asserts that this requirement

was a reasonable one in light of the stiff penalties that could be imposed on the

City by the Consent Decree that required the upgrades to the Wahiawa Wastewater

Treatment Plant.

The City respectfully asserts that it has become clear that Bodell has asserted

this claim against the City because Bodell believes that UTS does not have the

ability and/or funds to compensate Bodell.  This fact is supported by Humke's

testimony that based upon Bodell's receipt of Engineered Systems, Inc.'s fax dated

December 13, 1999 ("Exhibit "G" attached hereto) and UTS' representation that

the UTS UV System was in conformance with the Project requirements, Humke

stated that he would hold UTS responsible if the UTS UV System did not satisfy

all of the requirements of the contract documents.  See Exhibit "F" at pp. 64-73.

Humke also testified that he understood that the reason that Bodell was not

pursuing claims against UTS was because UTS did not have any money.  Id. at

169-170.  Thus, the City asserts that Bodell's claim are a misdirected attempt by

Bodell to seek a recovery against the City when Bodell took a risk by utilizing the

UTS UV System in its bid as Bodell knew that the UTS UV System still needed to

satisfy the requirements of the contract documents.  The City should not be held

Document ID: 399356v1_GGU

liable for the false representations of UTS that the UTS UV System could satisfy

all requirements of the contract documents.

 2. **BODELL MISCONSTRUES THE RELEVANCE OF THE CITY'S POST-BID ACTIONS AS SUCH ACTIONS ARE ONLY RELEVANT TO SHOW THAT BODELL WAS PUT ON NOTICE OF A PATENT AMBIGUITY, YET FAILED TO QUESTION THE CITY IN REGARD TO THE EFFECT OF THE DECEMBER 9, 1999 LETTER.**

Alternatively, the City asserts that even if there was an ambiguity with

regard to the December 9, 1999 letter, the ambiguity was patent. In addition to the

facts, law, and arguments set forth in the City's MSJ, the City asserts that Bodell

has misconstrued the significance of the City's post-bid actions. Specifically,

Bodell has asserted that the City's post-bid actions in discussing the elimination of

the UV System from the bid somehow shows that the City intended to give Bodell

a price adjustment if the UTS UV System was rejected for failing to satisfy the

requirements of the contract documents. However, Bodell's argument is

misplaced.

Specifically, the City asserts that its post-bid actions were proper and should

have put Bodell on notice that Bodell may have misconstrued the meaning of the

December 9, 1999 letter. First, the City asserts it had the ability pursuant to

Hawaii Administrative Rule ("HAR") 3-122-8 to adjust the bid to obtain the UV

System separately. Second, at no time did the City ever guarantee a price

adjustment to Bodell in the event that Bodell was required to install the Trojan UV

10

Document ID: 399356v1_GGU

System. <u>See</u> pp. 107-108 of Exhibit "H" attached hereto, which are relevant pages from the deposition of Guy Inouye. Third, Humke stated that he understood these discussions to be only an "inquiry" by the City that was based on a "series of conditions" and that Humke at all times understood that the Project had been awarded to Bodell pursuant to the Project's plans and specifications. <u>See</u> Exhibit "F", pp. 109-110. More importantly, Humke admitted that Bodell signed the contract knowing that the UTS UV System had not been eliminated from the bid and was still part of Bodell's obligations, despite the discussions that had taken place as between the City and Bodell. <u>Id.</u> Based on the above, Bodell's argument that the City acted improperly in any way in regard to these discussions with Bodell is misplaced.

The courts have stated that where a contractor knows or should have known of an alleged ambiguity, "determining whether the ambiguity was patent or latent would be irrelevant since the contractor would have the affirmative duty of directly alerting [the owner] of this fact, regardless of whether the ambiguity was patent or latent." <u>P.R. Burke Corp. v. U.S.</u>, 47 Fed.Cl. 340, 352 n.12 (Fed.Cl. 2000). This affirmative duty to inquire was discussed in <u>James A. Mann, Inc. v. United States</u>, 210 Ct.Cl. 104, 123, 535 F.2d 51, 61 (1976), where the court explained:

> The bidder who is on notice of an incipient problem, but neglects to solve it as he is directed to do by this form of contractual preventive-hygiene, cannot rely on the principle that ambiguities in contracts written by the Government are held against the drafter. Even more,

11

Document ID: 399356v1_GGU

> the bidder in such a case is under an affirmative obligation. He "should call attention to an obvious omission in a specification, and make certain that the omission was deliberate, if he intends to take advantage of it."
>
> * * *
>
> The question of whether an ambiguity is patent is only relevant where the contractor was not aware of it, and the court is called upon, in retrospect, to decide whether or not he *should have been aware* of it. It is clear in this case that the alleged ambiguity was known to the plaintiff before it submitted its bid. * * * Having this knowledge, plaintiff was required to seek clarification from the contracting officer. This it failed to do.

Id. (emphasis in original) (internal citation omitted); see also Industrial Indem. Co. v. U.S., 14 Cl.Ct. 351, 358 (Cl.Ct. 1988) (stating that contractor failed in their duty to inquire as to alleged ambiguity where there was "evidence that the [contractor] not only should have known, but actually knew of any possible ambiguity from their pre-award conversations.")

While Bodell mistakenly argues that the actions set forth above are significant to show that Bodell was entitled to a contract adjustment, the City submits that these actions should have put Bodell on notice that Bodell may have misconstrued the meaning of the December 9, 1999 letter and as a matter of law, required Bodell to question the City as to the meaning of the December 9, 1999 letter. Despite this legal requirement, there is no evidence that Bodell ever questioned the City as to what would occur if the UV System was not removed from Bodell's bid, nor any question as to what would occur if the UTS UV System did not satisfy the requirements of the contract documents. In light of Humke's

12

Document ID: 399356v1_GGU

testimony that he understood that the December 9, 1999 letter was only a

conditional approval and that Bodell was still required to establish that the UTS

UV System satisfied the requirements of the contract documents, it is unclear why

Bodell did not raise an inquiry to the City **before** Bodell signed the contract.  At

the point that Bodell signed the contract, Bodell knew that these discussion had

taken place and most importantly, knew that the UTS UV System had not been

removed from Bodell's bid.

Since Bodell failed to inquire with the City in regard to a patent ambiguity,

Bodell cannot claim that the alleged ambiguity was latent in light of the

discussions with the City set forth above.  Thus, Bodell's claim is barred as a

matter of law.

C.    **THE CITY DID NOT ACT IN BAD FAITH.**

As set forth above, the City did not act in bad faith during this Project.  The

City at no time acted inconsistently with the language of the December 9, 1999

letter, and Bodell at all times understood that: 1) the Project had been awarded

pursuant to plans and specifications, 2) the discussions with the City regarding

removal of the UV System was only an "inquiry" with conditions, and 3) Bodell

signed the contract knowing that the UTS UV System had not been removed from

the bid yet failed to question the City at any time regarding the implications of

such fact.

Document ID: 399356v1_GGU

Moreover, the City would point out that it allowed Bodell the full and fair opportunity to obtain approval for the UTS UV System. Specifically, despite Bodell's numerous failures to make timely submittals, the City instructed GMP to allow Bodell to make two additional submittals (Submittals 30b and 30c) even in light of GMP's refusal to continue any further review and in light of the impending deadline provided by the Consent Decree. See Exhibit "I" attached hereto, which is a May 12, 2003 letter from Timothy Steinberger to David Schulmeister, Esq. setting forth a time line of events. The City would point out that even Bodell believed that the submittal information provided by UTS was untimely and unsatisfactory. See Exhibits "J" and "K" which are fax transmittals dated October 4, 2000 and October 5, 2000 from Tom Swan of Bodell. Thus, Bodell's argument that the City acted in bad faith is misplaced and should be disregarded.

D.  **THERE WERE NO FALSE STATEMENTS MADE BY THE CITY.**

Bodell asserts in the MIO that the City made false statements by way of the December 9, 1999 letter. Bodell's position is misplaced.

Specifically, the December 9, 1999 was clearly conditional and was understood by Humke of Bodell. See Exhibit "F" pp. 28, 60-63. In addition, the City did not prevent Bodell from using the UTS UV System in its bid, nor did the City deny Bodell the full and fair opportunity to prove that the UTS UV System satisfied the requirements of the contract documents. As set forth in more detail

14

Document ID: 399356v1_GGU

above, without the December 9, 1999 letter, Bodell would not have been able to bid the lower priced UV System, nor had the opportunity to prove that the UTS UV System satisfied the requirements of the contract documents. Further, even if the City believed it had made an error in approving the UTS substitution request as asserted by Bodell, the City nonetheless stood by the December 9, 1999 letter and allowed Bodell the full and fair opportunity prove that the UTS UV System satisfied the contract document requirements, even overruling GMP to allow Bodell additional time to make additional Submittals. Without any false statement, Bodell's claim for misrepresentation fails.

## III.    CONCLUSION

In summary, the City respectfully requests that this Honorable Court grant the City's MSJ and deny Bodell's MSJ.

Dated: Honolulu, Hawaii _____ April 20, 2006 _____.


BERT T. KOBAYASHI, JR.
RONALD T. OGOMORI
GEORGE GUSMAN III
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU