1      UNITED STATES DISTRICT COURT
       DISTRICT OF HAWAII

CERTIFIED COPY

2      - - - - - - - - - - - - - - - - - - - - - X

       BODELL CONSTRUCTION COMPANY, a Utah
3      Corporation,

4              Plaintiff,

5          -against-                    Case No.
                                        03-00706
6      OHIO PACIFIC TECH, INC. Fka
       GMP ASSOCIATES, INC., an Ohio HG-LEK
7      corporation; CITY AND COUNTY
       OF HONOLULU; ULTRA TECH
8      SYSTEMS, INC., a foreign
       corporation,

9

10             Defendants.

       - - - - - - - - - - - - - - - - - - - - - X
11

12     HELD AT:     Wilson, Elser, Moskowitz,
                    Edelman & Dicker, LLP
13                  3 Gannett Drive
                    White Plains, New York  10604
14                  September 1st, 2004
                    10:30 a.m.
15

16             VOLUME I

17         Deposition of GREG ELLNER, a

18     non-party witness, held pursuant to Subpoena,

19     held at the above time and place before a

20     Notary Public of the State of New York.

21     ATKINSON-BAKER, INC.
          COURT REPORTERS
22     330 North Brand Boulevard, Suite 250
       Glendale, California 91203
23     (800) 288-3376

24         Lisa M. Prentice, Reporter

25     FILE NO.: 9E06DC4

       Exhibit A

1

1

2   conversation with Bodell Construction.

3          Q.    In your last answer you made a

4   reference to Title 22; is that right?

5          A.    Yes.

6          Q.    I think you were going to explain

7   a little bit about what Title 22 is.  Why don't

8   you just go ahead and give a brief explanation of

9   what Title 22 is in the context of the

10  specification for the Wahiawa wastewater

11  treatment plant.

12         A.    The State of California has criteria

13  that a UV system has to meet to be Title 22

14  compliant, the regulations

15  administered by the California Department of

16  Health services.  Hawaii has a designation R-1,

17  which basically says whatever Title 22 is, that's

18  our 1.

19         Q.    Whatever California's Title 22 is

20  Hawaii's R-1?

21         A.    Correct.

22         Q.    Hawaii doesn't have its own?

23         A.    It has an R-1 that references

24  Title 22.

25         Q.    It incorporated by reference

1

2    California's Title 22?

3        A.    Correct.

4        Q.    If you put Exhibit 5, the

5    specification in front of you again, under 1.2A

6    quality assurance, the last sentence there I'm

7    going to read it out loud, it says, UV

8    disinfection system shall have been tested and

9    certified to meet California Title 22 or Hawaii

10   R-1 quality water; is that correct?

11       A.    That's what it says.

12       Q.    So, therefore, whether or not your

13   product would comply with California Title 22 was

14   obviously relevant?

15       A.    Yes, but this is not correct.

16       Q.    When you say this, what are you

17   referring to?

18       A.    That statement which you read is not

19   correct.

20       Q.    I didn't read it correctly?

21       A.    No.    The specification it refers

22   to systems that have been tested and certified.

23   California does not require testing and the

24   certification of all systems to meet Title 22. We

25   have here documentation indicating that our

1

2    systems have Title 22 compliance, but it is not

3    correct to say that all systems are certified

4    to meet Title 22.

5         Q.    The last one that I marked and handed

6    over, can you give me that one?

7         A.    9?

8         Q.    Yeah.   Exhibit 9 seems to discuss

9    that; is that right?

10        A.    Yes.

11        Q.    Again, Exhibit 9 is dated what?

12        A.    December 16th, 1999.

13        Q.    This is your letter to Mr. Humke; is

14   that right?

15        A.    Correct.

16        Q.    Does this letter sort of explain your

17   understanding of what the situation is

18   with regard to certification or approval of UV

19   systems under California Title 22?

20        A.    Somewhat.

21        Q.    Are there any particular salient

22   paragraphs in there that would succinctly

23   summarize it?

24        A.    Yes.

25        Q.    Do you want to point that out to us?

1

2          A.     Second paragraph, R-1 is Hawaii's

3    designation of California's Title 22 standard.

4    R-1 is based upon Title 22, which is why they are

5    jointly referenced.  The standards based upon the

6    National Water Research Institute guidelines.

7    Years ago it was standard

8    procedure to secure an approval letter from

9    California.  As there have been many low pressure

10   horizontal lamp UV systems which have proven

11   themselves in the field, this type of UV system

12   has been designated a, quote, conforming closed,

13   quote system, and approval letters are not

14   required nor are they being issued.  Ultra Tech

15   makes this type of horizontal UV system. Next

16   paragraph, in addition to conforming systems

17   there are nonconforming systems which can be

18   determined to be acceptable based on system

19   performance.  Both Ultra Tech's vertical and the

20   Trojan 4000 fall in to this

21   designation.  We are aware of some Trojan 4000

22   systems, one of which I believe is Riverside

23   California, where the UV system is installed

24   and not meeting Title 22 performance.  What, if

25   anything, this means in terms of future

1
2   acceptability of Trojan 4000 equipment, I do
3   not know.  As of today their system is accepted
4   by California.
5        Q.   Okay.  Now, earlier you said that the
6   last sentence of 1.2A of the specification was
7   incorrect?
8        A.   Yes.
9        Q.   Did you mean to say it's incorrect
10  because it assumes that UV disinfection systems
11  can be tested and certified to meet California
12  Title 22?
13            MR. SUTTON:  Objection.  Leading.
14            MR. BIALEK:  Objection as to form.
15       A.   It's incorrect in that it requires
16  certification.
17       Q.   In what sense is requiring
18  certification incorrect?
19       A.   Certification means that there's a
20  procedure, a standardized procedure testing,
21  and as a result you are certified, that's not
22  always the case.
23       Q.   So, it's the assumption that's
24  sort of implicit in this that's incorrect?
25       A.   Correct.

1

2          Q.    That assumption, again, is that

3    there's such a thing as a procedure for obtaining

4    a certification under California

5    Title 22?

6          A.    Correct.

7          Q.    So, are you saying there is no

8    such procedure for obtaining a certification

9    under California Title 22 for ultraviolet

10   disinfection systems?

11         A.    Yes, there is a method to

12   determine compliance.

13         Q.    How is that different from being

14   tested and certified?

15         A.    Tested and certified implies that

16   California performs testing and certification.

17         Q.    Does California ever perform testing

18   and certification?

19         A.    No.

20         Q.    On UV systems?

21         A.    No.

22         Q.    So, how does California qualify UV

23   systems for compliance with California Title

24   22?

25         A.    Based on recognized -- two-ways,

1

2  conforming system based on meeting the already

3  published criteria, nonconforming systems by

4  submitting independent data and asking that the

5  data is analyzed to verify compliance.  Instead

6  of me describing it, I believe there are

7  letters here issued from California

8  illustrating compliance of Ultra Tech's

9  horizontal and vertical UV systems.

10         MR. SCHULMEISTER:  Why don't we

11     take a break.

12         MR. BIALEK:  That's fine.

13         (Whereupon, a recess was taken.)

14     Q.   Look at what's been marked Exhibit 9

15  to your deposition again, which talks about this

16  R-1 Title 22 issue.  There's a discussion here

17  about what is a, quote, conforming, closed quote,

18  system for purposes of California's

19  Title 22 standard, correct?

20     A.   Yes.

21     Q.   For the record, what is a conforming

22  system, what does that mean?  You have it here in

23  quotes.  To your understanding what's the

24  definition of a, quote, conforming system, closed

25  quote, for purposes of

1

2   California Title 22?

3       A.    A low pressure UV lamp system with

4   lamps parallel to flow, horizontal, low

5   pressure horizontal system.   Anything else is

6   nonconforming.

7       Q.    Is that all it needs to be to be

8   conforming?

9       A.    There's a series -- those lamps

10  and the basic design criteria in the published

11  NWRI guidelines.

12      Q.    That's the National Water Research

13  Institute guidelines that's referred to in the

14  third paragraph of Exhibit 9?

15      A.    Yes.

16      Q.    In terms of the relevance to the

17  specification for Wahiawa then, Trojan being a

18  medium pressure system would not be a, quote,

19  conforming system, closed quote, as you just

20  defined it?

21      A.    Correct.

22      Q.    And the Ultra Tech vertical

23  configuration would, also, not be, quote,

24  conforming as you've described it?

25      A.    Yes, that is correct.

1

2          Q.    But Ultra Tech's horizontal low

3    pressure system would be a conforming system;

4    is that right?

5          A.    Yes.

6          Q.    That's what you're explaining in this

7    letter?

8          A.    Yes.

9          Q.    We were talking a little bit earlier

10    about the specification to the extent

11    it called for the system to be, quote, tested and

12    certified, closed quote, to meet California Title

13    22.  To your understanding is the Trojan 4000

14    system that the spec was written and, quote,

15    tested and certified, closed quote, to meet

16    California Title 22?

17          A.    Not tested and certified.

18          Q.    What, if anything, did it have in the

19    way of an approval?

20          A.    It may be compliant conditionally.

21          Q.    When you say may be, what do you

22    mean?

23          A.    I believe I saw some documentation

24    from state of California listing the conditions

25    of the approval of that type of system.

1

2          Q.    Getting back to your earlier

3    testimony where you basically described the

4    last sentence of 1.2A of the specification as

5    incorrect, I'm going to try to paraphrase my

6    understanding of what you testified as to the

7    reason for that, you just tell me whether I'm

8    getting it or not.  The reason why you believe

9    it's incorrect is because it assumes that

10   California has a testing and certification

11   procedure that UV systems can be subjected to

12   whereas, in fact, California doesn't have a

13   testing and certification procedure; is that

14   correct?

15         A.    That is correct.

16              MR. BIALEK:   Objection as to form.

17              MR. SUTTON:   Objection to form.

18              MR. BIALEK:   Are you talking about

19         now or are you talking at this time?  You

20         might want to clarify that.

21         Q.    Has there been any change in whether

22   or not California tests and certifies

23   UV systems under Title 22 between 1999 and the

24   present?

25         A.    Yes.

1

2    their ultimately were responses.

3         Q.    Now, with respect to the

4    horizontal system I think you indicated earlier

5    it was already, quote, a conforming system?

6         A.    Yes.

7         Q.    But you were asking Dr. Sakaji to

8    nonetheless confirm that?

9         A.    Yes.

10         Q.    With regard to the vertical system

11    you refer to their being pages that follow that

12    pertain to requested approval of the forty lamp

13    vertical module, so that was additional

14    information that was being provided?

15         A.    Yes.

16         Q.    I'm going to hand you what's been

17    marked Exhibit 23, which purports to be a July

18    27th, 2000 fax transmission cover sheet from

19    you to Gary Jeppson at Bodell.  Could you look at

20    Exhibit 23, please?  Here you appear to be

21    describing a scenario in which you're

22    submitting both the horizontal and the vertical

23    configurations for the Wahiawa project.  With

24    regard to the horizontal you believe that you

25    already have Title 22 approval or compliance

1

2  established, but you're still waiting for

3  approval for the vertical system; is that

4  right?

5          A.   Yes.

6          Q.   So, it was your intention that

7  once the vertical system was approved in

8  California then you wanted to pursue substituting

9  the vertical for the horizontal;

10 is that right?

11          A.   More or less.

12          Q.   Now, the second paragraph of the

13 letter you state, quote, going in to this project

14 it was obvious that submittal approval would be a

15 fight, the sentence goes on, do you see that

16 part?

17          A.   Yes.

18          Q.   What were you referring to there when

19 you said going in to the project it was obvious

20 that submittal approval would be a fight?

21          A.   Dealing with GMP.

22          Q.   What about dealing with GMP made

23 it obvious going in to the project that submittal

24 approval would be a fight?

25          A.   Our representative informed us

67

1

2    that GMP is not very reasonable to deal with

3    and will push their interpretation of the spec to

4    whatever they want as opposed to what it really

5    is.

6          Q.    That would have been Paul Scott?

7          A.    Yes.

8          Q.    Other than Paul Scott telling you

9    that, did you have any other reason to believe

10   that the submittal approval process would be a

11   fight?

12         A.    Some previous dealings with Lee

13   Mansfield.

14         Q.    Lee Mansfield was at that time

15   with GMP?

16         A.    I believe so.

17         Q.    And you had some prior dealings with

18   him which made you think that the

19   submittal approval process would be a fight?

20         A.    Yes.

21         Q.    Could you just briefly explain

22   what those were?

23         A.    Another project which we

24   delivered, Kailua, Lee Mansfield sat as a

25   review board and some of his comments we felt

68

1

2    were very unreasonable.

3         Q.    On the second page of Exhibit 23 the

4    second paragraph you refer apparently to a GMP

5    letter of June 29th, and below that I'm quoting

6    from your letter now, quote, we can provide a

7    list of installations, we assume that GMP will

8    hang their hats on 1.2.A, which requires five

9    installations using equipment of this type and

10   North America treating five MGD for one year, GMP

11   will attempt to shoot us down as not having five

12   horizontal system installations, do you see that

13   part of Exhibit 23?

14        A.    Yes.

15        Q.    Can you explain the context of

16   that comment?

17        A.    Going through the specifications

18   we so clearly met all other areas of the

19   specification, this is where we thought that

20   GMP would take a stand.

21        Q.    What was it that you were

22   anticipating that they would argue, could you tie

23   it back to the specification, explain what you

24   anticipated they would argue?

25        A.    That our installations don't meet

1
2    their interpretation of experience.
3         Q.    Because they weren't horizontal?
4         A.    Yes.
5         Q.    Could you look at what's been marked
6    Exhibit 33, it purports to be an August 31st,
7    2000 letter from you to Richard Sakaji of the
8    California Department of Health Services, have
9    you seen that letter before?
10        A.    Yes.
11        Q.    Is this a copy of a letter that
12   was actually sent by you?
13        A.    Yes.
14        Q.    What was the context and
15   circumstances that led to this letter being sent?
16        A.    After a face-to-face meeting with Dr.
17   Sakaji this was an information which he requested
18   so we could secure compliance
19   approval vis a vis Title 22.
20        Q.    For the vertical?
21        A.    Yes.  I want to clarify one thing,
22   the word interim is used in this because Title 22
23   was changing in the future, and it was
24   common knowledge to us that the Title 22 approval
25   would be for the regulations that were in force

172

1

2                        C E R T I F I C A T E

3

4        STATE OF NEW YORK      )
                               )ss.:
5        COUNTY OF WESTCHESTER)

6

7              I, LISA M. PRENTICE, a Shorthand
   Reporter and Notary Public within and for the
8    State of New York, do hereby certify:

9

10             That GREG ELLNER, the witness
   whose deposition is hereinbefore set forth, was
   duly sworn by me, and that such deposition is a
11   true record of the testimony given by the
   witness.

12

13             I further certify that I am not
   related to any of the parties to this action by
14   blood or marriage, and that I am in no way
   interested in the outcome of this matter.

15

16             IN WITNESS WHEREOF, I have
   hereunto set my hand this 13th day of September,
17   2004.

18

19

20        _____

21             LISA M. PRENTICE
              SHORTHAND REPORTER

22

23

24

25

1    UNITED STATES DISTRICT COURT
     DISTRICT OF HAWAII
2    - - - - - - - - - - - - - - - - - - - X
     BODELL CONSTRUCTION COMPANY, a Utah
3    Corporation,

4          Plaintiff,
                                 Case No.
5        -against-               03-00706
     OHIO PACIFIC TECH, INC. Fka
6    GMP ASSOCIATES, INC., an Ohio
     HG-LEK corporation; CITY AND COUNTY
7    OF HONOLULU; ULTRA TECH
     SYSTEMS, INC., a foreign
8    corporation,

9          Defendants.
     - - - - - - - - - - - - - - - - - - - X
10

11   HELD AT:     Wilson, Elser, Moskowitz,
                  Edelman & Dicker, LLP
12                3 Gannett Drive
                  White Plains, New York  10604
13                September 2nd, 2004
                  10:15 a.m.
14

15                 VOLUME II

16            Continued Deposition of GREG

17   ELLNER, a non-party witness, held pursuant to

18   Subpoena, held at the above time and place before

19   a Notary Public of the State of New York.

20          Lisa M. Prentice, Reporter

21

22   ATKINSON-BAKER, INC.
     COURT REPORTERS
23   330 North Brand Boulevard, Suite 250
     Glendale, California 91203
24   (800) 288-3376

25   FILE NO.: 9E07630

**CERTIFIED COPY**

1

2      the Ultra Tech UV System?

3              A.    I really don't recall.

4              Q.    Take a look at what has been marked

5      as Exhibit 12, that is a memo from you to Bodell

6      Construction dated April 13th, 2000.

7              A.    These aren't in order.  Here's 12.

8              Q.    Do you recognize this memo dated

9      April 13th, 2000?

10             A.    Yes.

11             Q.    It's on Ultra Tech Systems

12     letterhead?

13             A.    Yes.

14             Q.    This was printed off your computer?

15             A.    Yes.

16             Q.    And you drafted this memo?

17             A.    Yes.

18             Q.    Now, in the second paragraph of

19     Exhibit 12 the first line states, the UV System

20     which we bid for Wahiawa at a not too exceed

21     price of $417,500 was a horizontal UV System

22     which will fit in the UV channel with minor

23     modification, do you see that?

24             A.    Yes.

25             Q.    What minor modification were you

1

2   talking about?

3        A.   Slight -- variations in channel depth

4   and width.

5        Q.   When you say a slight variation, are

6   you referring to a variation from the project's

7   plans?

8        A.   Yes.

9        Q.   In this first sentence of the second

10  paragraph of Exhibit 12 you state that UV System

11  which Ultra Tech bid, for Wahiawa project I take

12  it?

13       A.   Yes.

14       Q.   Was the horizontal UV System

15  manufactured by Ultra Tech?

16       A.   We did horizontal and vertical.

17       Q.   But this memorandum is referring to

18  the horizontal UV System, correct?

19            MR. BIALEK:   Objection.

20       A.   This paragraph refers to the

21  horizontal system.

22       Q.   And it provides a price of $417,500?

23       A.   Yes.

24       Q.   Did you ever review Bodell's bid

25  proposal?

1

2          A.    No.

3          Q.    Do you know if Bodell incorporated

4    this $417,500 price in to their bid proposal?

5          A.    I do not.

6          Q.    Now, take a look at Exhibit 12,

7    Paragraph Three, it reads, quote, it has been our

8    intention all along to substitute a vertical UV

9    System for the horizontal system and offer you a

10   substantial savings by doing so, do you see that?

11         A.    I see that.

12         Q.    What were you referring to as far as

13   your intention all along?

14         A.    The vertical product is a better

15   product, which will save the City and County of

16   Honolulu considerable funds while operating,

17   maintaining that product, so it was in the good

18   of public, it's in the good of the customer's

19   interest, which is one of the things we try to do

20   all the time, and at this particular time we did

21   not have the Title 22 approval, it was pending,

22   so once the Title 22 approval was received it's a

23   better situation for all parties to go with the

24   vertical system, that was what our intentions

25   were.

1

2      Q.    Prior to receiving this Title 22

3  certification Ultra Tech had been focusing upon

4  the horizontal UV System?

5      A.    No.

6      Q.    Well, at that point were you

7  focussing on both?

8      A.    Correct.

9      Q.    But you understood that without the

10 Title 22 certification the vertical UV System

11 would not be approved?

12          MR. SCHULMEISTER:  Objection as to

13      form.

14          MR. BIALEK:  I'll join.

15      A.    There is no such thing as a Title 22

16 certification.  What our understanding was was

17 that prior to commissioning of the equipment

18 Title 22 compliance had to be secured,

19 commissioning meaning delivery and start up of

20 the equipment.

21      Q.    You testified yesterday that you had

22 reviewed that Section 11376 of the

23 specifications, correct?

24      A.    Yes.

25      Q.    And in Section 2.4 of that Section

1

2  11376 there's a reference to a requirement that

3  the UV System be the type of horizontal type of a

4  system, correct?

5          MR. BIALEK:   Objection.

6      A.   Specification has alternate

7  provisions in Section 2.1B, which says to be

8  acceptable alternate UV systems must and we are

9  going to interject the word meet the following

10 requirements, capable of meeting the specified

11 performance requirements, operate in an open

12 channel, be of modular design, use lamps with

13 electronic ballasts and incorporate a cleaning

14 system, UV systems shall meet the hydraulic

15 profile shown in the contract drawings, any cost

16 resulting from changes due to the use of an

17 alternate system shall be borne by the

18 contractor, if structures and equipment need to

19 be modified to meet the hydraulic requirements of

20 the plan, all costs shall be borne by the

21 contractor, contractor shall submit design

22 calculations showing that the hydraulic profile

23 shown in the contract drawings will be met, both

24 of the Ultra Tech Systems offered for sale fully

25 comply with all the requirements in 2.1B whether

328

1

2                         C E R T I F I C A T E

3

4        STATE OF NEW YORK      )
                                 )ss.:
5        COUNTY OF WESTCHESTER)

6

7              I, LISA M. PRENTICE, a Shorthand
    Reporter and Notary Public within and for the
8    State of New York, do hereby certify:

9

10             That GREG ELLNER, the witness
    whose deposition is hereinbefore set forth, was
    duly sworn by me, and that such deposition is a
11   true record of the testimony given by the
    witness.

12

13             I further certify that I am not
    related to any of the parties to this action by
14   blood or marriage, and that I am in no way
    interested in the outcome of this matter.

15

16             IN WITNESS WHEREOF, I have
    hereunto set my hand this 13th day of September,
17   2004.

18

19

20   _____

21            LISA M. PRENTICE
            SHORTHAND REPORTER

22

23

24

25