DEPARTMENT OF BUDGET AND FISCAL SERVICES

# CITY AND COUNTY OF HONOLULU
530 SOUTH KING STREET, ROOM 208 • HONOLULU, HAWAII 96813
PHONE: (808) 523-4616 • FAX: (808) 523-4771 • INTERNET: www.co.honolulu.hi.us



JEREMY HARRIS
MAYOR

PURCHASING DIV
BUDGET & FISCAL SVCS
C&C OF HONOLULU

'03  OCT 13  P2:48

IVAN M. LUI-KWAN
DIRECTOR

CHRIS A. DIEBLING
DEPUTY DIRECTOR

WW.C 03-262

October 10, 2003

Mr. David Schulmeister
Cades Schutte
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813

Dear Mr. Schulmeister:

Subject:    Wahiawa Wastewater Treatment Plant
Effluent Reuse and Reservoir Outfall Adjustment
Job No. W10-99, Contract No. F-96349

In regards to your letter dated May 19, 2003 requesting the Contracting Officer's decision on your claim on behalf of Bodell Construction Company for additional compensation due to the City and County of Honolulu's rejection of the Ultra Tech, Inc. Ultraviolet Disinfection system, after reviewing all the documents, I find the claim is without merit because Ultra Tech, Inc. did not submit information that met all the requirements of the contract specifications. Specifically, the Ultra Tech, Inc. Ultraviolet Disinfection system was rejected for the following reasons:

1.  The list of wastewater facilities utilizing the Ultra Tech, Inc. Ultraviolet Disinfection system as submitted did not comply with Specification 11376, Section 1.2A, first paragraph, which states, "To be acceptable, the manufacturer shall be able to demonstrate to the satisfaction of the Engineer successful performance of the proposed system at a minimum of five (5) other wastewater locations in the United States. Of the submitted ten (10) locations listing the performance, only one wastewater location met this requirement.

2.  The Ultra Tech, Inc. Ultraviolet Disinfection system as submitted did not comply with Specification 11376, Section 1.2A, second paragraph which states, "The manufacturer shall submit at least five (5) permanent wastewater installations using this equipment type, in North America, disinfecting a peak flow of 5 MGD or greater for at least one (1) years." Of the submitted ten (10) locations listing the flow rates and service time, no wastewater installation met these requirements.

Exhibit E                                    B00001

Mr. David Schulmeister                    - 2 -                    October 10, 2003

3. The Ultra Tech, Inc. Ultraviolet Disinfection system did not comply with Specification 11376, Section 1.2A, third paragraph which stated, "UV disinfection system shall have been tested and certified to meet California Title 22 or Hawaii R-1 quality water," No certification was submitted.

4. The Ultra Tech, Inc. Ultraviolet Disinfection system did not comply with Specification 11376, Section 2.3B, which states as amended, "The ultraviolet disinfection system shall produce an effluent conforming to the following discharge permit requirements under the operating condition of 3 of the 4 UV banks on-line:

   1. Not to exceed 2.2/100mL FC, based on a 7-day moving median.
   2. Not to exceed 23/100mL FC more than once during any 30-day period.
   3. Not to exceed 200/100mL FC in any sample.
   4. Minimum dose of 140 mW-s/cm$^2$ at maximum flow and 100 mW-s/cm$^2$ at peak flow.  Dosage calculated using the point-source summation method.

      a. UV lamp output of more than 70 percent if nominal (new) output.
      b. Transmittance through quartz sleeve not more than 70 percent.
      c. UV dose is achieved with a minimum of three ultraviolet banks in series."

   No performance data indicating compliance with Specification 11376, Section 2.3B, Items 1 and 4 were submitted by Ultra Tech for any wastewater facilities.

5. The Ultra Tech Ultraviolet Disinfection system did not comply with Specification 11376, Section 2.4A.3, which states, "The major axis of the UV lamps shall be horizontal and parallel to flow.  UV systems that operate with lamps placed perpendicular to the flow are unacceptable."  In Ultra Tech, Inc.'s submittal of the performance of ten wastewater facilities utilizing the Ultra Tech, Inc. Ultraviolet Disinfection system, none of the ten (10) wastewater facilities utilized the horizontal lamp orientation.

The following is a critique of the performance data of ten (10) wastewater facilities utilizing the Ultra Tech, Inc. Ultraviolet Disinfection system as submitted:

   1. **Broomfield, CO**
      a. Exceeded the 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item 2.
      b. Exceeded the 200/100mL FC for any sample, in noncompliance with Specification 11376, Section 2.3B, Item 3.
      c. No other data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

B00002

Mr. David Schulmeister                    - 3 -                    October 10, 2003

2. **Cinco Ranch, TX**
   a. Exceeded the 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item 2.
   b. Exceeded the 200/100mL FC for any sample, in noncompliance with Specification 11376, Section 2.3B, Item 3.
   c. No other data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

3. **Copperas Cove, TX**
   a. Exceeded the 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item 2
   b. Exceeded the 200/100mL FC for any sample, in noncompliance with Specification 11376, Section 2.3B, Item 3.
   c. No other data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

4. **Hollister, MO - Phase II**
   a. Insufficient data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 2 and 3.
   b. No data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

5. **Jackson, WY**
   a. Insufficient data to determine whether the wastewater facility exceeded the 23/100mL FC more than once during any 30-day period and 200/100mL FC for any sample.
   b. No data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

6. **Lawrence, VA**
   a. The wastewater facility performance data indicated that the facility disinfected less than 2 MGD although the facility was listed at 6.20 MGD.
   b. Exceeded 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item2.
   c. Exceeded the 200/100mL FC for any sample, in noncompliance with Specification 11376, Section 2.3B, Item 3.
   d. No other data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

7. **Leavenworth, WA**
   a. Did not meet the requirement of disinfecting a peak flow rate of 5 MGD.
   b. Exceeded 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item 2.
   c. No data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

B00003

Mr. David Schulmeister                    - 4 -                    October 10, 2003

    **8. Meadville, PA**
        a. Exceeded the 200/100mL FC for any sample, in noncompliance with Specification 11376, Section 2.3B, Item 3.
        b. Exceeded 23/100mL FC more than once during any 30-day period, in noncompliance with Specification 11376, Section 2.3B, Item2.
        c. No other data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

    **9. Snowmass, CO**
        a. Did not meet the requirement of disinfecting a peak flow rate of 5 MGD.
        b. No data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

    **10. Tri-Lakes Monument, CO**
        a. Did not meet the requirement of disinfecting a peak flow rate of 5 MGD.
        b. No data was submitted to determine compliance with Specification 11376, Section 2.3B, Items 1 and 4.

The City allowed the bidders to bid on the Ultra Tech in lieu of the specified Trojan disinfection system for bidding purposes only with the condition that the Ultra Tech equipment meets all the requirements of the contract documents as stated. The City has determined that Ultra Tech did not meet all the requirements as previously stated in this letter.

The contractor must strictly adhere to the specifications in regards to substitutions to be fair to the other bidders who bid on the specified Trojan or equal equipment.

If you have any questions, please call Mr. Ted Saito at 523-4345.

Very truly yours,

IVAN M. LUI-KWAN
Director

cc:    GMP (A. Distajo, S. Gergis)
       DDC/PD (C. Hamada)
       COR (M. Chun)

APPROVED AS TO FORM
AND LEGALITY

Deputy Corporation Counsel
MAILE R. CHUN

B00004

# cades·schutte

a limited liability law partnership

May 19, 2003

David Schulmeister
Direct Line: (808) 521-9392
Direct Fax: (808) 540-5022
E-mail: dschulmeister@cades.com

## *VIA HAND DELIVERY*

Ivan Lui-Kwan, Director
Budget and Fiscal Services Department
City and County of Honolulu
530 S. King Street
Honolulu, HI 96813

      RE:    Contract No. F-96349; Job No. W10-99
              Wahiawa Wastewater Treatment Plant – Effluent Reuse and Wahiawa
              Reservoir Outfall Adjustment (the Project")

Dear Mr. Lui-Kwan:

      This firm represents Bodell Construction Company ("Bodell") in connection with the above referenced contract (the "Contract") between Bodell and the City and County of Honolulu (the "City").

      On January 14, 2003, Bodell submitted to Rae M. Loui, PE, in her then capacity as the "Officer in Charge" pursuant to the Contract, Bodell's claim for additional compensation arising out of the City's rejection of the Ultra Tech, Inc. (Ultra Tech") ultraviolet ("UV") disinfection system. Ms. Loui's successor, Tim Steinberger, PE, rejected Bodell's claim under cover of his letter to the undersigned dated May 12, 2003. Copies of Bodell's January 14, 2003 claim letter and Mr. Steinberger's May 12, 2003 rejection letter are enclosed for your convenience.

      It is our understanding that you are the "Contracting Officer" with final decision making authority on this claim. The purpose of this letter is to request a "final decision" from you on this claim in accordance with HAR §3-126-28.

B00005

C S

Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813
Tel: 808.521-9200
Fax: 808.521-9210
www.cades.com

Kona Office
75-170 Hualalai Road, Suite 303
Kailua Kona, Hawaii 96740
Tel: 808.329-5811
Fax: 808.326-1175

IMANAGEDB:476381.1

Ivan Lui-Kwan, Director
May 19, 2003
Page 2


If you have any questions, or would like any additional information, please do not hesitate to contact the undersigned.

Very truly yours,

David Schulmeister
for
CADES SCHUTTE
A Limited Liability Law Partnership


Enclosures

cc:    Mr. Gary Jeppson (w/o encl.)
       Mr. Ted Saito (w/o encl.)
       Mr. Safwat Gergis  (w/o encl.)


B00006

IMANAGEDB:476381.1

# cades · schutte

a limited liability law company

January 14, 2003

**David Schulmeister**
Direct Line: (808) 521-9392
Direct Fax: (808) 540-5022
E-mail: dschulmeister@cades.com

*VIA HAND DELIVERY*

Rae M. Loui, PE, Director
Design and Construction Department
City and County of Honolulu
650 S. King Street
Honolulu, HI 96813

RE: Contract No. F-97110
Wahiawa Wastewater Treatment Plant – Effluent Reuse and Wahiawa
Reservoir Outfall Adjustment (the Project")

Dear Ms. Loui:

This firm represents Bodell Construction Company ("Bodell") in connection with the above referenced contract (the Contract") between Bodell and the City and County of Honolulu (the "City").

The purpose of this letter is to present to you, in your capacity as the "Officer in Charge" pursuant to the Contract, Bodell's claim for additional compensation arising out of the City's rejection of the Ultra Tech, Inc. (Ultra Tech") ultraviolet ("UV") disinfection system. It is our understanding that, if Bodell is unable to reach a mutually agreeable resolution of this claim with you, that it must then be presented to the "Contracting Officer" for a final decision. It is our further understanding that the "Contracting Officer" with final decision making authority on this claim is the Director of the Department of Budget & Fiscal Services. If you have a different understanding, please advice us at once.

In order to assist you in understanding and evaluating this claim, we have included in this letter a synopsis of the basis for the claim and the claim amount. In addition, we have assembled the attached three volume set of binders which include copies of relevant documents in support of the claim.

B00007

C S

Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813
Tel: 808.521-9200
Fax: 808.521-9210
www.cades.com

Kona Office
75-170 Hualalai Road, Suite 303
Kailua Kona, Hawaii 96740
Tel: 808.329-5811
Fax: 808.326-1175

IMANAGEDB:451431.1

Rae M. Loui, PE, Director
January 14, 2003
Page 2

## SYNOPSIS OF BODELL'S UV EQUIPMENT CLAIM

**The Project Specifications called for Trojan UV System, "or equal."**

The Project specifications called for, among other things, an "open channel, gravity flow, ultraviolet (UV) disinfection system complete with a cleaning system, lamps and electronic ballasts." (Section 11376, 1.1 A.). The "Basis of Design" was the "System UV 4000™ medium pressure UV lamp technology manufactured by Trojan Technologies, Inc." This was not a sole source specification, however, as the specifications provided that, "UV system shall be System UV 4000™, as manufactured by Trojan Technologies, Inc. or equal." (Section 11376, 2.1 A.)(emphasis added). The specifications further provided that:

> Any cost resulting from changes due to the use of an alternate system shall
> be borne by the Contractor. The Contractor shall submit design drawings
> to the Engineer for approval, showing proposed changes in the structure,
> piping, equipment, controls philosophy and wiring due to the use of an
> alternate system. (Section 11376, 1.2 B.)

**Prior to the bid submission deadline, the City Reviewed Ultra Tech's technical specifications, and approved the Ultra Tech UV system "for bidding purposes."**

Inasmuch as the UV system specifications were drafted around the Trojan Technologies, Inc. ("Trojan") system, in order to bid to prospective contractors, Ultra Tech's local representative submitted Ultra Tech's technical specifications and product brochures to the City for advance approval as an "equal" to the Trojan system. On December 9, 1999, prior to the bid submission deadline, the City sent a letter to Paul Scott of Engineered Systems, the local representative for Ultra Tech, stating:

> Based on the material submitted your request to . . . [s]ubstitute Ultratech
> UV disinfection system for the specified Trojan is approved for bidding
> purposes only . . . Final Approval is subject to review of the fabrication
> drawings, shop drawings, and meeting all the requirements of the contract
> documents.

**In reasonable reliance on the City's approval of the Ultra Tech system "for bidding purposes," Bodell used Ultra Tech's quote – which was substantially lower than Trojan's quote -- in its Bid Proposal to the City.**

Ultra Tech's entire purpose, of course, for requesting the City to review its product information and technical specifications, was to get the City's blessing, in writing, for

IMANAGEDB:451431.1

Rae M. Loui, PE, Director
January 14, 2003
Page 3

contractors to use price quotations from Ultra Tech in the preparation of their bid proposals to the City. In soliciting contractors, such as Bodell, to use its price, Ultra Tech provided such contractors with not only its price quotation, but also with a copy of the City's December 9, 1999 letter confirming that the Ultra Tech system was approved "for bidding purposes."

Ultra Tech's price for its system was $267,500, as compared with Trojan's price of $1,100,000. Even after adjusting for differences between the systems in terms of items included, the Ultra Tech system was still approximately $700,000 less than the Trojan system. In reliance upon the City's letter stating that the Ultra Tech system was approved "for bidding purposes," Bodell used Ultra Tech's price in its bid proposal. It is apparent that other contractors used Ultra Tech's price as well. For example, Kiewit Pacific's price for the UV equipment fully installed, item 81 of the Bid Form, was $550,000, as compared to Bodell's $487,420. This clearly indicates that Kiewit Pacific used Ultra Tech's quote – which any contractor who wanted to be competitive would have been compelled to use, in view of the City's letter of December 9, 1999.

**After bid opening, but before Executing the Contract, the City asked Bodell how much Bodell would credit the City if the City chose to purchase the Trojan system itself, or to re-bid the UV disinfection equipment to different specifications.**

It appears that someone at the City, or perhaps at the City's design consultant, GMP Associates, Inc. ("GMP"), had a strong desire to insure that the Trojan UV system would be purchased and installed rather than the Ultra Tech System. This became evident almost immediately after bid opening when the City made an unusual request to Bodell, before the Contract was executed, regarding how much Bodell would credit the City if the UV System were removed from its bid. The City (or someone at the City or at GMP), notwithstanding the City's December 9, 1999 letter, was intent upon procuring the Trojan system, even if it ended up costing the City more.

On January 19, 2000, Bodell provided the City with a breakdown of its bid as pertains to the UV system. After seeing this breakdown, and the magnitude of the price difference between the two systems, the City elected not to make any change to the Contract. Bodell subsequently executed the Contract on February 25, 2000.

**Even before any submittals were made, GMP announced at an April 27, 2000 site meeting that the Ultra Tech system could not meet the specifications.**

At a site meeting on April 27, 2000, and before any submittal of the Ultra Tech system, a GMP representative, to Bodell's great dismay, flatly stated that the Ultra Tech system could not meet the specifications. From this point forward, GMP assumed an openly adversarial posture

B00009

Rae M. Loui, PE, Director
January 14, 2003
Page 4

toward Bodell on this issue. It was immediately obvious to Bodell that GMP was intent upon rejecting the Ultra Tech System, regardless of the City's December 9, 1999 letter, and insisting upon the much more expensive Trojan system instead as the only system that could purportedly satisfy the specifications.

**GMP failed to perform an objective, good faith review of Bodell's submittals of the Ultra Tech UV system and, in breach of the Contract, directed Bodell to instead supply the Trojan system.**

Beginning with its review of a pre-submittal package of information regarding the Ultra Tech system distributed at the pre-construction meeting of May 9, 2000, and continuing with its treatment of Bodell's UV system submittals no. 30, 30a, 30b, and 30c, GMP consistently took an unreasonable and biased position against the Ultra Tech system. Submittal no. 30 was sent by Bodell on August 31, 2000 and was rejected by GMP on September 11, 2000. Submittal no. 30a was sent by Bodell on October 4, 2000, and returned by GMP without review on the same day. Submittal no. 30b was sent by Bodell on November 2, 2000, and returned by GMP without review on the same day. It was resubmitted on November 8, 2000, and rejected by GMP on November 28, 2000. Submittal no. 30c was sent by Bodell on December 19, 2000, and rejected by GMP on January 22, 2001.

It was clear, at all times, that GMP did not want to even review the submittals, as evidenced by GMP's return of two of the submittals without review. GMP also indicated to Bodell orally that, regardless of whether Ultra Tech could otherwise satisfy the technical requirements of the specifications, GMP was of the view that Ultra Tech could not satisfy the "experience" requirements of the specifications. This prompted our letter to GMP dated December 20, 2000 in which it was pointed out that GMP would be on shaky legal ground attempting to base its rejection of the Ultra Tech submittal on a strict construction of the experience requirements contained in the specifications. In its final rejection of submittal no. 30c, GMP continued to rely on an overly strict reading of the specifications, rather than on a reasonable interpretation of the engineering intent of the specifications, to justify its preordained result.

Once Bodell ordered and made a submittal in support of the Trojan system, GMP relaxed its strict standard of review. GMP was suddenly very accommodating of shortcomings in the Trojan submittals. This simply confirmed what was already obvious to Bodell since the site meeting of April 27, 2000, that the playing field had never been level with regard to the Ultra Tech versus the Trojan UV systems.

B00010

IMANAGEDB:451431.1

Rae M. Loui, PE, Director
January 14, 2003
Page 5

**Bodell was damaged in the amount of $1,034,111 as a result of being forced to supply the Trojan UV system in lieu of the Ultra Tech system.**

Included in the claim binder is a summary of Bodell's damages. The bulk of the claim amount is represented by the increased cost of the Trojan versus the Ultra Tech equipment. Additionally, there are costs included for the increased time and expense of dealing with the drawn out charade of GMP's excessively strict and uncooperative "review" of the Ultra Tech submittals.

**Request for meeting**

Included in the claim binder are the correspondence back and forth on the alleged shortcomings of the Ultra Tech submittals and the comments of the independent engineers consulted by Bodell. After you have had a chance to review the claim, and to consult with your advisors, Bodell would like the opportunity to meet with you to discuss any questions you may have regarding the claim or any of the supporting materials.

If, however, it does not appear to you that it will be feasible to try to negotiate an agreement on this matter, please advise the undersigned of that fact as soon as possible in order that we can then request a final decision from the "Contracting Officer," whom we understand to be the current Director of the Department of Budget & Fiscal Services, Ivan Lui-Kwan.

I would like to thank you in advance for your prompt and thoughtful consideration of this matter.

Very truly yours,

David Schulmeister
for
CADES SCHUTTE
A Limited Liability Law Company

cc:    Mr. Gary Jeppson (w/enclosures)
       Mr. Ted Saito (w/enclosures)
       Mr. Safwat Gergis (w/enclosures)

B00011

IMANAGEDB:451431.1

# CITY AND COUNTY OF HONOLULU

650 SOUTH KING STREET, 11ᵀᴴ FLOOR
HONOLULU, HAWAII 96813
Phone: (808) 523-4564  •  Fax: (808) 523-4567
Web site: www.co.honolulu.hi.us



JEREMY HARRIS
MAYOR

TIMOTHY E. STEINBERGER, P.E.
DIRECTOR

GEORGE T. TAMASHIRO, P.E.
ASSISTANT DIRECTOR

WW.C 03-108

May 12, 2003

Mr. David Schulmeister
Cades Schutte
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813

Dear Mr. Schulmeister:

Subject:    Wahiawa Wastewater Treatment Plant
            Effluent Reuse and Reservoir Outfall Adjustment
            Job No. W10-99, Contract No. F-96349

In regards to your letter dated January 14, 2003 claiming on behalf of Bodell Construction Company additional compensation due to the City and County of Honolulu's rejection of the Ultra Tech, Inc. ("Ultra Tech") ultraviolet ("UV") disinfection system, the claim is rejected based upon the following analysis:

## A. Background

The following time line regarding the submittal and review of the Ultra Tech system (extracted from the project documents) illustrates GMP's determination was one of fair and dedication to enforcing the specifications and protecting the City's interests:

March 2, 1998          Consent Decree between State of Hawaii and City and County of Honolulu requiring treated effluent from Wahiawa Wastewater Treatment Plant to meet R-1 or R-2 Water Guidelines in compliance with the Clean Water Act within three years or be subject to substantial penalties.

November 15, 1999      Contract Document Section 11376 - ULTRAVIOLET DISINFECTION EQUIPMENT Part 1.2 A-Qualification Requirements-successful performances at five other wastewater locations with peak flow of 5 MGD and meet Hawaii R-1 Quality Water 2.3 A & B Performance and Design Criteria Performance Requirement Addendum 2.

B00012

Mr. David Schulmeister                    - 2 -                          May 12, 2003

November 18,1999    Material Substitution Request for Ultratech Systems-not considered equal
                    as insufficient information submitted was only supplied sales brochure

December 9,1999     Letter from James Honke to Engineered Systems re Substitution Request
                    "Substitute Ultratech UV disinfection system for the specified Trojan is
                    approved for bidding purposes only...Final approval is subject to review of
                    the fabrication drawings, shop drawings, and meeting all the Requirements
                    of the contract documents."

December 16, 1999   Bid opening

April 28,2000       Letter from Bodell Construction to Ultratech requiring data including
                    "Proof that you meet or exceed the performance and design requirements
                    per spec. section 11376, 2.3 A & B (see also addendum #2)

May 10, 2000        Notice to Proceed date

June 8, 2000        Bodell advised GMP during the weekly meeting that Ultra Tech will make
                    formal submittal.  No date was provided.

June 22, 2000       No date for submittal was provided. During the weekly meeting Bodell
                    indicated that Ultra Tech will abide by the design drawings and will
                    request no changes.

June 29, 2000       Bodell advised GMP during the weekly meeting that formal submittal
                    from Ultra Tech will be made by July 21, 2000.

July 6, 2000        During the weekly meeting Bodell stated that they are proceeding with
                    constructing the UV channel in accordance with the contract drawings.

July 20. 2000       During the weekly meeting Bodell indicated that the UV submittal would
                    not be available by July 21, 2000 as previously stated.

July 27, 2000       During the weekly meeting Bodell stated that there is no date for Ultra
                    Tech submittal.

August 3, 2000      During the weekly meeting Bodell still could not provide a new date for
                    the submittal.  Stated that they will send letter to Ultra Tech explaining
                    how critical the submittal is.

August 10, 2000     Still no submittal.  During the weekly meeting GMP advised Bodell to
                    give Ultra Tech a deadline to make the submittal.

B00013

Mr. David Schulmeister                    - 3 -                         May 12, 2003

| | |
|---|---|
| August 11, 2000 | GMP sent a letter to Bodell advising the seriousness of the UV submittal issue and its impact on the completion date of the contract. |
| August 17, 2000 | During the weekly meeting Bodell told GMP that the Ultra tech submittal will be made by August 31, 2000. |
| August 31, 2000 | The Ultra Tech submittal (submittal No. 30) was provided. According to the construction schedule by Bodell, submittal review and approval should have begun by the third week of May 2000 and completed by the first week of August 2000. This equipment was on Bodell's construction critical path. |
| September 7, 2000 | Submittal No. 30 was rejected by GMP and returned to Bodell. Eighteen comments were identified as reasons for the rejection. |
| October 4, 2000 | GMP, conscious of the completion date for the UV facility to be tested, accepted and in operation by April 24, 2001 and realizing that the UV facility installation is 7 weeks behind schedule, issued a letter to Bodell advising that Ultra Tech submittal will no longer be considered. |
| October 6, 2000 | Bodell attempted to deliver Ultra Tech Submittal No.30b for review by GMP. That submittal was rejected without review citing the letter dated October 4, 2000. Bodell realizing the critical time issue advised that a proposal from Trojan would be forthcoming and will be submitted as soon as possible. |
| | Bodell sent a letter to GMP stating that Bodell will be procuring the Trojan System |
| October 25, 2000 | GMP receives a letter from Bodell's attorney requesting a meeting with the City and GMP to request a review of the Ultra Tech submittal. |
| November 2, 2000 | Bodell attempted to deliver Ultra Tech Submittal No.30b, despite the fact they indicated (October 6, 2000) that a proposal from Trojan was forthcoming. GMP declined to accept the submittal 30b citing their letter dated October 4, 2000. |
| November 8, 2000 | The City instructed GMP to request Bodell to resubmit the Ultra Tech submittal. Bodell delivered the Ultra Tech submittal No.30b. |

B00014

Mr. David Schulmeister                      - 4 -                           May 12, 2003

The City sent a letter advising Bodell that the UV disinfection system is behind schedule but in the interest of fairness the City will review the Ultra Tech submittal 30b.

November 22, 2000    City's review comments on the Ultra Tech Submittal 30b

November 28, 2000    GMP rejected submittal No. 30b citing noncompliance with specification 11376 on two issues. One issue related to performance on similar projects, and the second related to testing requirements. Bodell indicated that he will attempt to make another submittal, which would comply with the two items cited in the rejection.

December 15, 2000    Bodell delivered Ultra Tech's Submittal No. 30c.

December 19, 2000    GMP reviewed submittal No. 30c and concluded that it was not different from submittal No. 30b and thus was rejected.

## B. Response to Mr. Schulmeister's Synopsis of Claim

*"The Project Specifications called for Trojan UV System, "or equal." and "Prior to the bid submission deadline, the City reviewed Ultra Tech's technical specifications, and approved the Ultra Tech UV system "'for bidding purposes.'"*

The City's letter dated December 9, 1999 indicated that "Final Approval is subject to review of the fabrication drawings, shop drawings, and MEETING ALL THE REQUIREMENTS OF THE CONTRACT DOCUMENTS."

The requirements of the contract documents included the Quality Assurance and Performance and Design Requirements of Section 11376. At the time of the bid submission, Bodell and Ultra Tech had not submitted the required information. Bodell alleged that they urged Ultra Tech to promptly supply the information, but after repeated attempts, Ultra Tech was unable to meet the requirements.

*"In reasonable reliance on the City's approval of the Ultra Tech system 'for bidding purposes,' Bodell used Ultra Tech's quote— which was substantially lower than Trojan's quote—in its Bid Proposal to the City."*

The Contractor has the ultimate responsibility to comply with the contract documents including all the specifications. The contractor had the option to base his bid on the specified equipment or offer an acceptable substitute. Bodell chose to base his bid on the Ultra Tech equipment with the full knowledge that Ultra Tech still had to meet all the requirements of the contract documents.

Mr. David Schulmeister                    - 5 -                    May 12, 2003

> *"After bid opening, but before executing the Contract, the City asked Bodell how much Bodell would credit the City if the City chose to purchase the Trojan system itself, or to rebid the UV disinfection equipment to different specifications."*

When the City verbally requested the amount of credit if the UV system was to be removed from the Bid, the City was exercising its contract right to request information and documentation prior to executing the contract. Requesting information did not alter or change the contract documents.

> *"Even before any submittals were made, GMP announced at an April 27, 2000 site meeting that the Ultra—Tech system could not meet the specifications."*

Bodell's letter to Ultra Tech of April 28,2000 refutes this assertion. Concerning the meeting, Bodell stated..."It was stated at the meeting that the Trojan system is preferred and that they do not think the Ultra Tech system can conform to the channel and meet the delivered dose requirements of this project as specified."

Bodell then required Ultra Tech to provide seven categories of information including: 2. "Proof that you meet or exceed the performance and design requirements..."and noted: "...we do not have the luxury of time..." and "This data is required prior to May 9th..."and concluded; "Without the above, the Ultra Tech system will not be considered."

This letter expresses the concern of all parties that Ultra Tech had not provided the information to comply with the contract requirements.

> *"GMP failed to perform an objective, good faith review of Bodell's submittals of the Ultra Tech UV system and, in breach of the Contract, directed Bodell to instead supply the Trojan System."*

GMP strongly objects to this statement. We refer you to the aforementioned timeline which indicates the review process was conducted to ensure compliance with the contract requirements. The reason for the strict adherence was based on achieving the required performance and completion date of April 24, 2001 thus protecting the City from a large fine resulting from not complying with the date imposed by a consent decree.

The issue of experience was critical to meeting the quality assurance requirements in specifications 11376.

B00016

Mr. David Schulmeister                - 6 -                    May 12, 2003

**C. Conclusion**

In summary, GMP fails to see any merit for Bodell's claim for damages. Bodell failed to obtain a satisfactory alternative prior to bidding and had the option of bidding based on the specified Trojan equipment and offering the Ultra Tech as a substitute after the bidding. We recommend that Bodell pursue a claim against Ultra Tech for not meeting all the requirements of the contract documents.

If you have any questions, please call Mr. Ted Saito at 523-4345.

                                    Very truly yours,

                                    TIMOTHY E. STEINBERGER, P.E.
                                    Director

cc:    GMP (A. Distajo, S. Gergis)
       DDC/IDE (C. Hamada)
       COR (M. Chun)

B00017

PARTMENT OF DESIGN AND CONSTRUCTION

# CITY AND COUNTY OF HONOLULU

650 SOUTH KING STREET, 11TH FLOOR
HONOLULU, HAWAII 96813
Phone: (808) 523-4564 • Fax: (808) 523-4567
Web site: www.co.honolulu.hi.us

JEREMY HARRIS
MAYOR



TIMOTHY E. STEINBERGER, P.E.
DIRECTOR

GEORGE T. TAMASHIRO, P.E.
ASSISTANT DIRECTOR

**WW.C 03-108**

May 12, 2003

Mr. David Schulmeister
Cades Schutte
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813

Dear Mr. Schulmeister:

Subject:     Wahiawa Wastewater Treatment Plant
             Effluent Reuse and Reservoir Outfall Adjustment
             Job No. W10-99, Contract No. F-96349

In regards to your letter dated January 14, 2003 claiming on behalf of Bodell Construction Company additional compensation due to the City and County of Honolulu's rejection of the Ultra Tech, Inc. ("Ultra Tech") ultraviolet ("UV") disinfection system, the claim is rejected based upon the following analysis:

## A. Background

The following time line regarding the submittal and review of the Ultra Tech system (extracted from the project documents) illustrates GMP's determination was one of fair and dedication to enforcing the specifications and protecting the City's interests:

March 2, 1998          Consent Decree between State of Hawaii and City and County of
                       Honolulu requiring treated effluent from Wahiawa Wastewater Treatment
                       Plant to meet R-1 or R-2 Water Guidelines in compliance with the Clean
                       Water Act within three years or be subject to substantial penalties.

November 15,1999       Contract Document Section 11376 - ULTRAVIOLET DISINFECTION
                       EQUIPMENT Part 1.2 A-Qualification Requirements-successful
                       performances at five other wastewater locations with peak flow of 5 MGD
                       and meet Hawaii R-1 Quality Water 2.3 A & B Performance and Design
                       Criteria Performance Requirement Addendum 2.

B00018

Mr. David Schulmeister                    - 2 -                    May 12, 2003

November 18,1999     Material Substitution Request for Ultratech Systems-not considered equal as insufficient information submitted was only supplied sales brochure

December 9,1999     Letter from James Honke to Engineered Systems re Substitution Request "Substitute Ultratech UV disinfection system for the specified Trojan is approved for bidding purposes only...Final approval is subject to review of the fabrication drawings, shop drawings, and meeting all the Requirements of the contract documents."

December 16, 1999     Bid opening

April 28,2000     Letter from Bodell Construction to Ultratech requiring data including "Proof that you meet or exceed the performance and design requirements per spec. section 11376, 2.3 A & B (see also addendum #2)

May 10, 2000     Notice to Proceed date

June 8, 2000     Bodell advised GMP during the weekly meeting that Ultra Tech will make formal submittal.  No date was provided.

June 22, 2000     No date for submittal was provided. During the weekly meeting Bodell indicated that Ultra Tech will abide by the design drawings and will request no changes.

June 29, 2000     Bodell advised GMP during the weekly meeting that formal submittal from Ultra Tech will be made by July 21, 2000.

July 6, 2000     During the weekly meeting Bodell stated that they are proceeding with constructing the UV channel in accordance with the contract drawings.

July 20. 2000     During the weekly meeting Bodell indicated that the UV submittal would not be available by July 21, 2000 as previously stated.

July 27, 2000     During the weekly meeting Bodell stated that there is no date for Ultra Tech submittal.

August 3, 2000     During the weekly meeting Bodell still could not provide a new date for the submittal.  Stated that they will send letter to Ultra Tech explaining how critical the submittal is.

August 10, 2000     Still no submittal.  During the weekly meeting GMP advised Bodell to give Ultra Tech a deadline to make the submittal.

B00019

Mr. David Schulmeister                    - 3 -                          May 12, 2003

| | |
|---|---|
| August 11, 2000 | GMP sent a letter to Bodell advising the seriousness of the UV submittal issue and its impact on the completion date of the contract. |
| August 17, 2000 | During the weekly meeting Bodell told GMP that the Ultra tech submittal will be made by August 31, 2000. |
| August 31, 2000 | The Ultra Tech submittal (submittal No. 30) was provided. According to the construction schedule by Bodell, submittal review and approval should have begun by the third week of May 2000 and completed by the first week of August 2000. This equipment was on Bodell's construction critical path. |
| September 7, 2000 | Submittal No. 30 was rejected by GMP and returned to Bodell. Eighteen comments were identified as reasons for the rejection. |
| October 4, 2000 | GMP, conscious of the completion date for the UV facility to be tested, accepted and in operation by April 24, 2001 and realizing that the UV facility installation is 7 weeks behind schedule, issued a letter to Bodell advising that Ultra Tech submittal will no longer be considered. |
| October 6, 2000 | Bodell attempted to deliver Ultra Tech Submittal No.30b for review by GMP. That submittal was rejected without review citing the letter dated October 4, 2000. Bodell realizing the critical time issue advised that a proposal from Trojan would be forthcoming and will be submitted as soon as possible. |
| | Bodell sent a letter to GMP stating that Bodell will be procuring the Trojan System |
| October 25, 2000 | GMP receives a letter from Bodell's attorney requesting a meeting with the City and GMP to request a review of the Ultra Tech submittal. |
| November 2, 2000 | Bodell attempted to deliver Ultra Tech Submittal No.30b, despite the fact they indicated (October 6, 2000) that a proposal from Trojan was forthcoming. GMP declined to accept the submittal 30b citing their letter dated October 4, 2000. |
| November 8, 2000 | The City instructed GMP to request Bodell to resubmit the Ultra Tech submittal. Bodell delivered the Ultra Tech submittal No.30b. |

B00020

Mr. David Schulmeister                  - 4 -                     May 12, 2003

|  | The City sent a letter advising Bodell that the UV disinfection system is behind schedule but in the interest of fairness the City will review the Ultra Tech submittal 30b. |
|---|---|
| November 22, 2000 | City's review comments on the Ultra Tech Submittal 30b |
| November 28, 2000 | GMP rejected submittal No. 30b citing noncompliance with specification 11376 on two issues.  One issue related to performance on similar projects, and the second related to testing requirements.  Bodell indicated that he will attempt to make another submittal, which would comply with the two items cited in the rejection. |
| December 15, 2000 | Bodell delivered Ultra Tech's Submittal No. 30c. |
| December 19, 2000 | GMP reviewed submittal No. 30c and concluded that it was not different from submittal No. 30b and thus was rejected. |

## B. Response to Mr. Schulmeister's Synopsis of Claim

*"The Project Specifications called for Trojan UV System, "or equal." and "Prior to the bid submission deadline, the City reviewed Ultra Tech's technical specifications, and approved the Ultra Tech UV system "'for bidding purposes.'"*

The City's letter dated December 9, 1999 indicated that "Final Approval is subject to review of the fabrication drawings, shop drawings, and MEETING ALL THE REQUIREMENTS OF THE CONTRACT DOCUMENTS."

The requirements of the contract documents included the Quality Assurance and Performance and Design Requirements of Section 11376. At the time of the bid submission, Bodell and Ultra Tech had not submitted the required information. Bodell alleged that they urged Ultra Tech to promptly supply the information, but after repeated attempts, Ultra Tech was unable to meet the requirements.

*"In reasonable reliance on the City's approval of the Ultra Tech system 'for bidding purposes,' Bodell used Ultra Tech's quote— which was substantially lower than Trojan's quote—in its Bid Proposal to the City."*

The Contractor has the ultimate responsibility to comply with the contract documents including all the specifications.  The contractor had the option to base his bid on the specified equipment or offer an acceptable substitute.  Bodell chose to base his bid on the Ultra Tech equipment with the full knowledge that Ultra Tech still had to meet all the requirements of the contract documents.

B00021

Mr. David Schulmeister                    - 5 -                    May 12, 2003

*"After bid opening, but before executing the Contract, the City asked Bodell how much Bodell would credit the City if the City chose to purchase the Trojan system itself, or to rebid the UV disinfection equipment to different specifications."*

When the City verbally requested the amount of credit if the UV system was to be removed from the Bid, the City was exercising its contract right to request information and documentation prior to executing the contract. Requesting information did not alter or change the contract documents.

*"Even before any submittals were made, GMP announced at an April 27, 2000 site meeting that the Ultra—Tech system could not meet the specifications."*

Bodell's letter to Ultra Tech of April 28,2000 refutes this assertion. Concerning the meeting, Bodell stated..."It was stated at the meeting that the Trojan system is preferred and that they do not think the Ultra Tech system can conform to the channel and meet the delivered dose requirements of this project as specified."

Bodell then required Ultra Tech to provide seven categories of information including: 2. "Proof that you meet or exceed the performance and design requirements..."and noted: "...we do not have the luxury of time..." and "This data is required prior to May 9[th]..."and concluded; "Without the above, the Ultra Tech system will not be considered."

This letter expresses the concern of all parties that Ultra Tech had not provided the information to comply with the contract requirements.

*"GMP failed to perform an objective, good faith review of Bodell's submittals of the Ultra Tech UV system and, in breach of the Contract, directed Bodell to instead supply the Trojan System."*

GMP strongly objects to this statement. We refer you to the aforementioned timeline which indicates the review process was conducted to ensure compliance with the contract requirements. The reason for the strict adherence was based on achieving the required performance and completion date of April 24, 2001 thus protecting the City from a large fine resulting from not complying with the date imposed by a consent decree.

The issue of experience was critical to meeting the quality assurance requirements in specifications 11376.

B00022

Mr. David Schulmeister                              - 6 -                              May 12, 2003

## C. Conclusion

In summary, GMP fails to see any merit for Bodell's claim for damages.  Bodell failed to obtain a satisfactory alternative prior to bidding and had the option of bidding based on the specified Trojan equipment and offering the Ultra Tech as a substitute after the bidding.  We recommend that Bodell pursue a claim against Ultra Tech for not meeting all the requirements of the contract documents.

If you have any questions, please call Mr. Ted Saito at 523-4345.

Very truly yours,

TIMOTHY E. STEINBERGER, P.E.
Director

cc:     GMP (A. Distajo, S. Gergis)
        DDC/IDE (C. Hamada)
        COR (M. Chun)

B00023

# cades · schutte

a limited liability law company

January 14, 2003

David Schulmeister
Direct Line: (808) 521-9392
Direct Fax: (808) 540-5022
E-mail: dschulmeister@cades.com

***VIA HAND DELIVERY***

Rae M. Loui, PE, Director
Design and Construction Department
City and County of Honolulu
650 S. King Street
Honolulu, HI 96813

RE:    Contract No. F-97110
       Wahiawa Wastewater Treatment Plant – Effluent Reuse and Wahiawa
       Reservoir Outfall Adjustment (the Project")

Dear Ms. Loui:

This firm represents Bodell Construction Company ("Bodell") in connection with the above referenced contract (the Contract") between Bodell and the City and County of Honolulu (the "City").

The purpose of this letter is to present to you, in your capacity as the "Officer in Charge" pursuant to the Contract, Bodell's claim for additional compensation arising out of the City's rejection of the Ultra Tech, Inc. (Ultra Tech") ultraviolet ("UV") disinfection system. It is our understanding that, if Bodell is unable to reach a mutually agreeable resolution of this claim with you, that it must then be presented to the "Contracting Officer" for a final decision. It is our further understanding that the "Contracting Officer" with final decision making authority on this claim is the Director of the Department of Budget & Fiscal Services. If you have a different understanding, please advice us at once.

In order to assist you in understanding and evaluating this claim, we have included in this letter a synopsis of the basis for the claim and the claim amount. In addition, we have assembled the attached three volume set of binders which include copies of relevant documents in support of the claim.

B00024

C S

IMANAGEDB:451431.1

Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, Hawaii 96813
Tel: 808.521-9200
Fax: 808.521-9210
www.cades.com

Kona Office
75-170 Hualalai Road, Suite 303
Kailua Kona, Hawaii 96740
Tel: 808.329-5811
Fax: 808.326-1175

Rae M. Loui, PE, Director
January 14, 2003
Page 2

## SYNOPSIS OF BODELL'S UV EQUIPMENT CLAIM

**The Project Specifications called for Trojan UV System, "or equal."**

The Project specifications called for, among other things, an "open channel, gravity flow, ultraviolet (UV) disinfection system complete with a cleaning system, lamps and electronic ballasts." (Section 11376, 1.1 A.). The "Basis of Design" was the "System UV 4000™ medium pressure UV lamp technology manufactured by Trojan Technologies, Inc." This was not a sole source specification, however, as the specifications provided that, "UV system shall be System UV 4000™, as manufactured by Trojan Technologies, Inc. or equal." (Section 11376, 2.1 A.)(emphasis added). The specifications further provided that:

> Any cost resulting from changes due to the use of an alternate system shall be borne by the Contractor. The Contractor shall submit design drawings to the Engineer for approval, showing proposed changes in the structure, piping, equipment, controls philosophy and wiring due to the use of an alternate system. (Section 11376, 1.2 B.)

**Prior to the bid submission deadline, the City Reviewed Ultra Tech's technical specifications, and approved the Ultra Tech UV system "for bidding purposes."**

Inasmuch as the UV system specifications were drafted around the Trojan Technologies, Inc. ("Trojan") system, in order to bid to prospective contractors, Ultra Tech's local representative submitted Ultra Tech's technical specifications and product brochures to the City for advance approval as an "equal" to the Trojan system. On December 9, 1999, prior to the bid submission deadline, the City sent a letter to Paul Scott of Engineered Systems, the local representative for Ultra Tech, stating:

> Based on the material submitted your request to . . . [s]ubstitute Ultratech UV disinfection system for the specified Trojan is approved for bidding purposes only . . . Final Approval is subject to review of the fabrication drawings, shop drawings, and meeting all the requirements of the contract documents.

**In reasonable reliance on the City's approval of the Ultra Tech system "for bidding purposes," Bodell used Ultra Tech's quote – which was substantially lower than Trojan's quote -- in its Bid Proposal to the City.**

Ultra Tech's entire purpose, of course, for requesting the City to review its product information and technical specifications, was to get the City's blessing, in writing, for

B00025

Rae M. Loui, PE, Director
January 14, 2003
Page 3

contractors to use price quotations from Ultra Tech in the preparation of their bid proposals to the City. In soliciting contractors, such as Bodell, to use its price, Ultra Tech provided such contractors with not only its price quotation, but also with a copy of the City's December 9, 1999 letter confirming that the Ultra Tech system was approved "for bidding purposes."

Ultra Tech's price for its system was $267,500, as compared with Trojan's price of $1,100,000. Even after adjusting for differences between the systems in terms of items included, the Ultra Tech system was still approximately $700,000 less than the Trojan system. In reliance upon the City's letter stating that the Ultra Tech system was approved "for bidding purposes," Bodell used Ultra Tech's price in its bid proposal. It is apparent that other contractors used Ultra Tech's price as well. For example, Kiewit Pacific's price for the UV equipment fully installed, item 81 of the Bid Form, was $550,000, as compared to Bodell's $487,420. This clearly indicates that Kiewit Pacific used Ultra Tech's quote – which any contractor who wanted to be competitive would have been compelled to use, in view of the City's letter of December 9, 1999.

**After bid opening, but before Executing the Contract, the City asked Bodell how much Bodell would credit the City if the City chose to purchase the Trojan system itself, or to re-bid the UV disinfection equipment to different specifications.**

It appears that someone at the City, or perhaps at the City's design consultant, GMP Associates, Inc. ("GMP"), had a strong desire to insure that the Trojan UV system would be purchased and installed rather than the Ultra Tech System. This became evident almost immediately after bid opening when the City made an unusual request to Bodell, before the Contract was executed, regarding how much Bodell would credit the City if the UV System were removed from its bid. The City (or someone at the City or at GMP), notwithstanding the City's December 9, 1999 letter, was intent upon procuring the Trojan system, even if it ended up costing the City more.

On January 19, 2000, Bodell provided the City with a breakdown of its bid as pertains to the UV system. After seeing this breakdown, and the magnitude of the price difference between the two systems, the City elected not to make any change to the Contract. Bodell subsequently executed the Contract on February 25, 2000.

**Even before any submittals were made, GMP announced at an April 27, 2000 site meeting that the Ultra Tech system could not meet the specifications.**

At a site meeting on April 27, 2000, and before any submittal of the Ultra Tech system, a GMP representative, to Bodell's great dismay, flatly stated that the Ultra Tech system could not meet the specifications. From this point forward, GMP assumed an openly adversarial posture

B00026

Rae M. Loui, PE, Director
January 14, 2003
Page 4

toward Bodell on this issue. It was immediately obvious to Bodell that GMP was intent upon rejecting the Ultra Tech System, regardless of the City's December 9, 1999 letter, and insisting upon the much more expensive Trojan system instead as the only system that could purportedly satisfy the specifications.

**GMP failed to perform an objective, good faith review of Bodell's submittals of the Ultra Tech UV system and, in breach of the Contract, directed Bodell to instead supply the Trojan system.**

Beginning with its review of a pre-submittal package of information regarding the Ultra Tech system distributed at the pre-construction meeting of May 9, 2000, and continuing with its treatment of Bodell's UV system submittals no. 30, 30a, 30b, and 30c, GMP consistently took an unreasonable and biased position against the Ultra Tech system. Submittal no. 30 was sent by Bodell on August 31, 2000 and was rejected by GMP on September 11, 2000. Submittal no. 30a was sent by Bodell on October 4, 2000, and returned by GMP without review on the same day. Submittal no. 30b was sent by Bodell on November 2, 2000, and returned by GMP without review on the same day. It was resubmitted on November 8, 2000, and rejected by GMP on November 28, 2000. Submittal no. 30c was sent by Bodell on December 19, 2000, and rejected by GMP on January 22, 2001.

It was clear, at all times, that GMP did not want to even <u>review</u> the submittals, as evidenced by GMP's return of two of the submittals <u>without</u> review. GMP also indicated to Bodell orally that, regardless of whether Ultra Tech could otherwise satisfy the technical requirements of the specifications, GMP was of the view that Ultra Tech could not satisfy the "experience" requirements of the specifications. This prompted our letter to GMP dated December 20, 2000 in which it was pointed out that GMP would be on shaky legal ground attempting to base its rejection of the Ultra Tech submittal on a strict construction of the experience requirements contained in the specifications. In its final rejection of submittal no. 30c, GMP continued to rely on an overly strict reading of the specifications, rather than on a reasonable interpretation of the engineering intent of the specifications, to justify its preordained result.

Once Bodell ordered and made a submittal in support of the Trojan system, GMP relaxed its strict standard of review. GMP was suddenly very accommodating of shortcomings in the Trojan submittals. This simply confirmed what was already obvious to Bodell since the site meeting of April 27, 2000, that the playing field had never been level with regard to the Ultra Tech versus the Trojan UV systems.

B00027

IMANAGEDB:451431.1

Rae M. Loui, PE, Director
January 14, 2003
Page 5

**Bodell was damaged in the amount of $1,034,111 as a result of being forced to supply the Trojan UV system in lieu of the Ultra Tech system.**

Included in the claim binder is a summary of Bodell's damages. The bulk of the claim amount is represented by the increased cost of the Trojan versus the Ultra Tech equipment. Additionally, there are costs included for the increased time and expense of dealing with the drawn out charade of GMP's excessively strict and uncooperative "review" of the Ultra Tech submittals.

**Request for meeting**

Included in the claim binder are the correspondence back and forth on the alleged shortcomings of the Ultra Tech submittals and the comments of the independent engineers consulted by Bodell. After you have had a chance to review the claim, and to consult with your advisors, Bodell would like the opportunity to meet with you to discuss any questions you may have regarding the claim or any of the supporting materials.

If, however, it does not appear to you that it will be feasible to try to negotiate an agreement on this matter, please advise the undersigned of that fact as soon as possible in order that we can then request a final decision from the "Contracting Officer," whom we understand to be the current Director of the Department of Budget & Fiscal Services, Ivan Lui-Kwan.

I would like to thank you in advance for your prompt and thoughtful consideration of this matter.

Very truly yours,

David Schulmeister
for
CADES SCHUTTE
A Limited Liability Law Company

cc:    Mr. Gary Jeppson (w/enclosures)
       Mr. Ted Saito (w/enclosures)
       Mr. Safwat Gergis (w/enclosures)

B00028

IMANAGEDB:451431.1