Of Counsel:
KOBAYASHI, SUGITA & GODA
BERT T. KOBAYASHI, JR.    659-0
RONALD T. OGOMORI         5850-0
GEORGE GUSMAN             6914-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax: (808) 539-8799
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah Corporation,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign Corporation,<br><br>　　　　　Defendant. | CIVIL NO. CV03-00706 HG-LEK<br>(Contract)<br><br>DEFENDANT, CROSS-CLAIM PLAINTIFF/DEFENDANT AND THIRD-PARTY PLAINTIFF/COUNTERCLAIM DEFENDANT CITY AND COUNTY OF HONOLULU'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS RAISED BY CROSS-CLAIM PLAINTIFF/DEFENDANT ULTRA TECH SYSTEMS, INC. AND THIRD PARTY DEFENDANT/ COUNTERCLAIM PLAINTIFF ENGINEERED SYSTEM, INC.; DECLARATION OF COUNSEL; EXHIBITS "A" – " F"; CERTIFICATE OF SERVICE |

*Caption continued*

Document ID: 399484v1_GGU

| | |
|---|---|
| CITY AND COUNTY OF HONOLULU,<br><br>    Defendant, Third-Party Plaintiff, and Counterclaim Defendant,<br><br>vs.<br><br>ENGINEERED SYSTEMS, INC.,<br><br>    Third-Party Defendant, Counterclaim Plaintiff and Cross-Claim Plaintiff. | Hearing Date: May 1, 2006<br>Time: 9:00 a.m.<br>Judge: Honorable J. Michael Seabright<br>Trial Date: October 17, 2006 |
| CITY AND COUNTY OF HONOLULU,<br><br>    Defendant, Cross-Claim Plaintiff/Cross-Claim Defendant,<br><br>vs.<br><br>ULTRA TECH SYSTEMS, INC., a foreign Corporation,<br><br>    Defendant, Cross-Claim Defendant/Cross-Claim Plaintiff and Cross-Claim Plaintiff/Defendant,<br><br>vs.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation<br><br>    Cross-Claim Defendant/Plaintiff. | |

2

Case 1:03-cv-00706-JMS-LEK   Document 164   Filed 04/20/2006   Page 3 of 17
Document ID: 399484v1_GGU

DEFENDANT, CROSS-CLAIM PLAINTIFF/DEFENDANT
AND THIRD-PARTY PLAINTIFF/COUNTERCLAIM DEFENDANT
CITY AND COUNTY OF HONOLULU'S REPLY IN SUPPORT
OF THE CITY'S MOTION FOR SUMMARY JUDGMENT
AS TO THE CLAIMS RAISED BY CROSS-CLAIM PLAINTIFF/DEFENDANT
ULTRA TECH SYSTEMS, INC. AND THIRD PARTY
DEFENDANT/COUNTERCLAIM PLAINTIFF ENGINEERED SYSTEM, INC.

I.  **INTRODUCTION**

COMES NOW, Defendant, Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff/Counterclaim Defendant City and County of Honolulu ("City") and submits this Reply Memorandum in support of the City's Motion for Summary Judgment ("City's MSJ") in regard to the claims by the Cross-Claim Plaintiff/Defendant UltraTech Systems, Inc. ("UTS") and Third-Party Defendant/Counterclaim Plaintiff Engineered Systems, Inc. ("ESI"). The City asserts that UTS/ESI have failed to prove that there are questions of material fact and as such, the City respectfully requests that this Court grant the City's MSJ.

II.  **RELEVANT LAW AND ARGUMENT**
   A.  **UTS/ESI LACK STANDING TO ASSERT CLAIMS AGAINST THE CITY AND/OR HAS FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES.**

UTS/ESI attempt to argue that because no claim for breach of contract is asserted, that the exclusive remedy provision of Hawaii Revised Statutes ("HRS") § 103D-704 does not apply. The argument by UTS/ESI misses the point as the standing/failure to exhaust administrative defense is not limited to a breach of contract action. Specifically, as set forth in the MSJ, HRS § 103D-704 provides

the exclusive remedy for any "**persons aggrieved** in connection with the solicitation or award of a contract, a suspension or debarment proceeding, **or in connection with a contract controversy**, to resolve their claims or differences." (Emphasis added). This Section must be read in conjunction with HRS § 103D-703, which provides that a contract controversy includes "controversies between a governmental body and a **contractor** which arise under, or by virtue of, a contract between them, **including, without limitation**, controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission." Thus, when these Sections are read together, it becomes clear that only a contractor[1] (in this case Bodell) had standing to assert claims against the City arising from a procurement contract.

    Moreover, nowhere in UTS/ESI's opposition papers is there any law or argument in response to the argument raised in the City's MSJ that even if UTS/ESI had standing to assert claims arising from the procurement contract, UTS/ESI failed to exhaust their administrative remedies and as a result, such claims are barred as a matter of law. As such, the claims asserted by UTS/ESI that arise from or are related to the procurement contract are barred as a matter of law.

---

[1] HRS § 103D-304 defines a contactor as "any person having a contract with a governmental body." Here, it is undisputed that neither UTS or ESI had a contract with the City.

2

Document ID: 399484v1_GGU

> B.  **ASSUMING *ARGUENDO* THAT UTS/ESI HAD STANDING TO ASSERT CLAIMS AGAINST THE CITY, UTS/ESI'S INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW.**
>
>> 1.  **UTS/ESI CANNOT ASSERT THAT THE CITY INTERFERED WITH A CONTRACT WHEN THERE WAS IN FACT NO CONTRACT BETWEEN UTS AND BODELL.**

UTS/ESI do not contest and therefore concede that they cannot produce a purchase order or any other document that was signed and is therefore binding upon both Bodell and UTS. However, the argument that a contract nonetheless existed is contradicted by the sworn testimony of Leroy Humke ("Humke") of Bodell. More specifically, Humke testified that, in his opinion, only a fully executed purchase order or a purchase order signed by both parties would constitute a contract between Bodell and UTS. See Exhibit "A", pp. 149-150. It is undisputed that a fully executed purchase order does not exist in regards to UTS' horizontal and vertical UV systems. Accordingly, there could not be a meeting of the minds since a fully executed purchase order did not exist and Bodell believed that a contract could not exist until such point that both parties signed the purchase order. If there was no contract, UTS/ESI's interference with contractual relations claim fails as a matter of law. As such, the City respectfully requests that the MSJ be granted as to the interference with contractual relations claim.

Document ID: 399484v1_GGU

> 2. **UTS/ESI'S INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM FAILS AS A MATTER OF LAW.**
>> a. **UTS/ESI'S ARGUMENT THAT THE UTS SYSTEM SATISFIED THE REQUIREMENTS OF THE PROJECT'S CONTRACT DOCUMENTS IS MISPLACED.**
>>> (i) **THE UTS HORIZONTAL UV SYSTEM FAILED TO SATISFY THE EXPERIENCE REQUIREMENT OF THE UV SYSTEM SPECIFICATIONS.**

As provided in the City's Motion, the sworn testimony of Ellner clearly indicates that the UTS horizontal UTS System could not satisfy the experience requirement of Section 11376 of the contract documents ("UV System Specifications"). See pp. 66-70 of Exhibit "B", which are relevant pages from the deposition of Ellner. In fact, nowhere in the UTS/ESI's opposition papers is there any statement indicating that the UTS horizontal UV System satisfied the experience requirement of the UV System Specification. UTS/ESI attempt to argue that the sworn deposition testimony of Ellner does not support the City's argument that the UTS UV System failed to satisfy the requirements of the contract documents. However, the affidavits of Ellner submitted in opposition to the MSJ are improper as such affidavits improperly seek to create a sham issue of fact that contradicts Ellner's sworn deposition testimony. See Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262 (9th Cir. 1991). If a party who has been examined at length on deposition could raise

an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish summary judgment as a procedure for screening out sham issues of fact. Id. Here, the City asserts that Ellner's affidavits containing statements that contradict his sworn deposition testimony and thus should be disregarded.

    (ii) **UTS/ESI'S ATTEMPT TO MIX AND MATCH ATTRIBUTES FROM THE UTS VERTICAL AND HORIZONTAL SYSTEM TO SUPPORT ITS ARGUMENT IS MISPLACED.**

As UTS/ESI have conceded that the UTS horizontal UV System could not satisfy the experience requirement of the UV System Specifications, UTS/ESI are forced to argue that the experience from the UTS vertical UV System satisfied this requirement. This argument is misplaced as Ellner admitted in his deposition that the UTS vertical and horizontal systems are different systems with the horizontal system being a "conforming" UV system while the vertical system is a "non-conforming" UV system. See pp. 50-59 to Exhibit "B", which are relevant pages from the deposition of Ellner. This fact is significant because non-conforming systems require approval to confirm that such system conforms with California Title 22 and/or Hawaii R-1 standards. Id. However, at the time of Bodell's bid, UTS' vertical UV System did not have the required approval from the California Department of Health indicating compliance with California Title 22 or Hawaii R-1. See Exhibit "B" pp. 176-180. Bodell and UTS tried to play a shell game to

5

Document ID: 399484v1_GGU

disguise the fact that neither of the UTS Systems (horizontal and vertical) satisfied all of the requirements of the contract documents. In other words, the UTS vertical UV System could satisfy the experience requirement, but it could not satisfy the approval requirement of the UV System Specifications. Conversely, the UTS horizontal UV System could not satisfy the experience requirement. Clearly, the fact that the California Department of Health classified one system as conforming and the other as non-conforming indicates that it was not proper for Bodell and/or UTS to attempt to take qualifying attributes from one system and apply it to the other system.

In summary, neither the UTS vertical nor horizontal UV System could satisfy the requirements of the UV System Specifications for different reasons. Thus, UTS/ESI's attempt to take certain qualifying attributes from each UV System in an effort to create a mirage that the UTS horizontal UV System was compliant should be disregarded. UTS' horizontal UV System was properly rejected, and as a result, UTS/ESI's claim fails as a matter of law.

      b.    **THE CITY DID NOT ACT IMPROPERLY.**

UTS/ESI do not contest and therefore concede that they have the burden to establish that the City acted with a purposeful intent to interfere with their prospective economic advantage and that such interference must be "improper." See UTS/ESI's MIO, page 8. Instead, UTS/ESI argue only that the City acted

6

"improperly." As discussed more fully below, this argument is misplaced as the evidence establishes that the City acted properly and with justification at all times.

First, UTS/ESI argue that the City's alleged improper actions/motives in interfering with UTS/ESI's prospective economic advantage are demonstrated by the City's plan to eliminate the UTS UV System from Bodell's bid shortly after the bid was awarded to Bodell. This argument fails as UTS/ESI have not submitted any evidence that the City came up with this proposal for the specific purpose of interfering with UTS/ESI's prospective economic advantage. Moreover, UTS/ESI ignore the fact that the City was completely within its rights to take this action pursuant to Hawaii Administrative Rule ("HAR") § 3-122-8, which gave the City the right to adjust the bid to obtain the UV System separately. In any event, this argument is a mere "red herring" as it is undisputed that the UTS UV System was not removed from Bodell's bid and that Bodell understood (as provided in Leroy Humke's deposition testimony) that the UTS UV System needed to satisfy the contract requirements. See Exhibit "A", pp. 60-63.

Second, UTS/ESI argue through unsupported speculation and innuendo that the City's meeting with officials from Hawaii Engineering Services ("HES") provide evidence of the City's improper conduct. UTS/ESI's allegation is misplaced. Specifically, there was nothing improper with the City meeting with suppliers as not only were meetings conducted between the City and HES, but Guy

Inouye testified that the City also had a meeting and communications with Paul Scott of ESI regarding this Project. See Exhibit "C", pp. 114-116. In addition, Ellner's testimony clearly indicates Cyril Hamada and Ellner communicated frequently in regard to the Project. See Exhibit "B", pp. 359-379. In any event, Guy Inouye testified that Mike Elhoff of HES did not have any particular credibility with the City and, in fact, when the City met with Elhoff, Inouye stated that the City's position was to take Elhoff's statements with some skepticism, and the City would independently investigate the positions being asserted by Elhoff. See Exhibit "C", pp. 107-108. Thus, UTS/ESI's argument that the City's actions were improper are clearly contradicted by the sworn testimony cited above. Moreover, it is clear that Paul Scott of ESI and Ellner of UTS also had meetings and/or discussions with the City in regard to the UV System.

Third, based upon the undisputed evidence, the City provided Bodell, UTS and ESI with a full and fair opportunity to show that the UTS UV System satisfied the requirements of the Project's contract documents. In fact, the City bent over backwards and allowed Bodell, UTS and ESI to issue its equipment submittals in regards to the UTS UV System despite numerous failures to make meet the deadlines for the submittals established by Bodell[2]. More specifically, the City

---

[2] In fact, even employees of Bodell believed that the submittal information provided by UTS was untimely and unsatisfactory. See Exhibits "D" and "E"

8

instructed GMP to allow Bodell to make two additional submittals (Submittals 30b and 30c) even in light of GMP's refusal to continue any further review and in light of the impending deadline provided by the Consent Decree[3]. See Exhibit "F" attached hereto, which is a May 12, 2003 letter from Timothy Steinberger to David Schulmeister, Esq. setting forth a time line of events.

Fourth, despite being provided with the full and fair opportunity to show that the UTS UV System satisfied the requirements of the contract documents, Bodell, UTS and ESI failed to do so as set forth above.

Fifth, UTS/ESI's argument that the City acted improperly by releasing confidential UTS information to a competitor of UTS is lacks support and should be disregarded. Aside from the unsupported statements of counsel, there is absolutely no evidence that the City released any confidential information to Mike Elhoff or HES. Unsupported arguments set forth in legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid MSJ. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979), reh'g denied, 441 U.S. 968 (1979). Moreover, Ellner

---

which are fax transmittals dated October 4, 2000 and October 5, 2000 from Tom Swan of Bodell.

[3] As noted by UTS/ESI on page 4 of its MIO, the City was strictly required to comply with a Consent Decree that imposed stipulated fines to be assessed against the City if the City did not install upgrades to the Wahiawa WWTP by the specified deadlines. Thus, all actions undertaken by the City must be examined in this context.

testified that he had no evidence of any improper or bad faith actions on the part of the City. See Exhibit "B", pp. 473-474.

Based on these facts, UTS/ESI's attempt to distinguish the decision in Wyatt, supra is misplaced. Specifically, here, the City was required to ensure that the UV System complied with the requirements of the Consent Decree. Like the Wyatt case, GMP concluded that the proposed substitute equipment did not satisfy the requirements of the contract documents. In light of the Consent Decree and the express recommendation from GMP, it is clear that the City acted properly and with justification at all times. There is no evidence of an intent to interfere. For the reasons set forth above, the City respectfully submits that it acted properly at all relevant times herein and requests that UTS/ESI's interference claims be dismissed.

    c.    **UTS/ESI HAVE PROVIDED NOTHING BUT UNSUPPORTED INFERENCE, INNUENDO, AND MISAPPLICATION OF THE FACTS TO DISPUTE THE CITY'S ARGUMENT THAT ITS ACTIONS WERE PRIVILEGED.**

    (i)    **THE PERFORMANCE BOND DID NOT GUARANTEE SATISFACTION OF THE CONSENT DECREE REQUIREMENTS.**

UTS/ESI argue that privilege is inapplicable because Bodell's performance bond guaranteed compliance with the Consent Decree. This argument shows a fundamental misunderstanding of the purpose and effect of performance bonds. Specifically, Bodell's performance bond ensured that Bodell completed its work

pursuant to the Project's plans and specifications. However, the performance bond did not in any way ensure that the UV System would perform in a way that satisfied the requirements of the Consent Decree. In other words, the performance bond would not provide any indemnity to the City if Bodell properly installed the UV System, but such UV System failed to perform pursuant to the Consent Decree requirements[4]. This is the reason that the City provided conditional approval for the UTS UV System, and subsequently required GMP's review and evaluation of the UTS UV System. When it was determined by GMP that the UTS UV System failed to satisfy the requirements of the contract documents, the UTS UV System was rejected. The City respectfully asserts that privilege in fact applied here because the City's actions in rejecting the UTS UV System was intended to protect the City's interests under the Consent Decree. See Wyatt v. Ruck Construction, Inc., 571 P.2d 683, 117 Ariz. 186 (Ariz. App. 1977). As such, the City respectfully asserts that its actions in rejecting the UTS UV System were privileged and accordingly, UTS/ESI's interference claim fails as a matter of law.

---

[4] The City asserts that it is likely that Bodell would also argue that its performance bond did not ensure compliance with the Consent Decree as a contrary position by Bodell would allow the City to seek from Bodell any damages arising from any failures by the Trojan UV System that violated the terms of the Consent Decree.

11

      d.    **THERE IS ABSOLUTELY NO EVIDENCE THAT THE CITY RELEASED ANY CONFIDENTIAL UTS INFORMATION TO ANYONE.**

UTS/ESI argue that the City's privilege claim should be rejected because the allegedly City released confidential UTS information to a competitor of UTS. The City respectfully asserts that UTS/ESI have offered **absolutely no evidence** to support this false allegation. As such, this assertion should be disregarded. In addition, UTS/ESI assert that the City had direct communications with Hawaii Engineering Services ("HES") regarding the rejection of the UTS UV System. Again, UTS/ESI offer **absolutely no evidence** to support this allegation. Finally, the City would point out that even Ellner testified that he had no evidence of any improper or bad faith actions on the part of the City. See Exhibit "B", pp. 473-474. Without any evidence of improper action on the part of the City, UTS/ESI's assertion in this regard should be disregarded.

    C.    **UTS/ESI'S MISREPRESENTATION CLAIMS AGAINST THE CITY BASED UPON THE DECEMBER 9, 1999 LETTER FAIL AS A MATTER OF LAW.**

UTS/ESI takes the curious position that the December 9, 1999 letter was "meaningless." This argument is misplaced as the letter was meaningful because without the letter, the City would not have considered the UTS System at all. The bidding approval gave Bodell the opportunity to bid, in its discretion, a product with a lower price. Since this was a competitively bid project, the ability by Bodell to be able to bid an alternate provided an advantage to Bodell. Without this letter,

the UTS System would have been immediately rejected without consideration pursuant to Section 1.13 of the General Instructions to Bidders. As such, UTS/ESI cannot claim that anything contained in the December 9, 1999 letter was meaningless and false. As a result, UTS/ESI's misrepresentation claim fails as a matter of law.

    D.    **GMP WAS NOT THE CITY'S AGENT.**

A principal/agency relationship exists when "there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent so to act." State Farm Fire and Casualty Company v. Pacific Rent-All, Inc., 90 Hawaii 315, 325, 978 P.2d 753, 763 (1999). Here, it is clear that pursuant to Section 4.1.1 of the contract between GMP and the City, that there was no agency relationship. Moreover, at no time did the City hold GMP out as having any authority to act on behalf of the City. Based on the above, any attempt by UTS/ESI to impute GMP's actions to the City should be disregarded.

    E.    **THERE IS NO "INDEPENDENT LIABILITY" ATTRIBUTABLE TO THE CITY BASED ON ITS ACTIONS IN REGARD TO UTS/ESI'S REQUEST FOR PRE-APPROVAL OF THE UTS UV SYSTEM.**

UTS/ESI make the unsupported allegation that the City brought independent liability upon itself by rejecting GMP's recommendation in regard to UTS/ESI's pre-bid request in regard to the UTS UV System. As support for this allegation, UTS/ESI point to a statement in a City e-mail stating that approving the UTS UV

System for bidding purposes was "our error." UTS/ESI's argument is unsupported and misplaced. Specifically, UTS/ESI cites absolutely no authority for its assertion that the City imposed independent liability upon itself by rejecting GMP's recommendation in regard to the pre-approval request by UTS/ESI. Moreover, at no time has anyone from the City made any statement to this effect. As such, UTS/ESI's argument in this regard should be disregarded.

   F.   **UTS/ESI'S RELIANCE UPON CYRIL HAMADA IS MISPLACED.**

UTS/ESI attempt to rely on statements by City engineer Cyril Hamada ("Hamada") to support its claims. However, Hamada does not hold any position of authority with the City and as such, does not speak for the City. In fact, Hamada was required to obtain the signature of a superior on the December 9, 1999 letter. Moreover, UTS/ESI attempts to ignore the fact that the December 9, 1999 letter contained language which required any contractor bidding the price for the UTS UV System to be able to prove the such UV System satisfied the requirements of the contract documents. Thus, despite the statements made by Hamada in his memorandum, the fact remains that the letter drafted by Hamada (and signed by his superior, James Honke) still conditioned the bidding approval upon proof that the UTS UV System satisfied the requirements of the contract documents, which it failed to do.

Document ID: 399484v1_GGU

## III. CONCLUSION

The City respectfully requests that this Honorable Court grant the City's MSJ and deny UTS/ESI's MSJ.

Dated: Honolulu, Hawaii     April 20, 2006     .

_____
BERT T. KOBAYASHI, JR.
RONALD T. OGOMORI
GEORGE GUSMAN III
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU