COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)

```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII

                              ---:---

BODELL CONSTRUCTION COMPANY, )   CIVIL NO. CV03-00706 HG-LEK
a Utah Corporation,          )   (Contract)
                             )
              Plaintiff,     )
                             )           COPY
       vs.                   )
                             )
OHIO PACIFIC TECH, INC., fka )
GMP ASSOCIATES, INC., an Ohio)
Corporation; CITY AND COUNTY )
OF HONOLULU; ULTRA TECH      )
SYSTEMS, INC., a foreign     )
Corporation,                 )
                             )
              Defendant.     )
                             )
CITY AND COUNTY OF HONOLULU, )
                             )
     Defendant, Third-Party  )
     Plaintiff, and          )
     Counterclaim Defendant, )
                             )
       vs.                   )
                             )
ENGINEERED SYSTEMS, INC.,    )
                             )
     Third-Party Defendant   )
     and Counterclaim        )
     Plaintiff.              )
                             )
```

**VOLUME I**

DEPOSITION OF LEROY HUMKE

Taken on behalf of the Defendant, Cross-Claim Plaintiff/Defendant and Third-Party Plaintiff/Counterclaim Defendant City and County of Honolulu, at the Law Offices of Kobayashi Sugita & Goda, Suite 2600 First Hawaiian Center, 999 Bishop Street, Honolulu, Hawaii, commencing at 10:35 a.m., on Wednesday, June 22, 2005, pursuant to Notice.

1    before you?

2    A    I do.

3    Q    Okay. Have you seen this document prior to Bodell

4    preparing its bid proposal for the project?

5    A    I did see this document.

6    Q    Okay. And in the letter, which is dated

7    December 9th 1999, it states, "Based on the materials

8    submitted your request to" -- it looks like, Number 1,

9    "Substitute UltraTech UV disinfection system for the

10   specified Trojan is approved for bidding purposes only."

11        Do you see that?

12   A    I do.

13   Q    Did you understand what "bidding purposes only"

14   was?

15            MR. BIALEK:  Objection.

16            THE WITNESS:  Well, I read it for what

17   it says, "bidding purposes."

18   Q    (By Mr. Ogomori) What is your understanding of

19   what "bidding purposes only" means?

20            MR. BIALEK:  Objection.

21            THE WITNESS:  They would submit

22   proposals to the contractors to include their product in

23   our proposals.

24   Q    (By Mr. Ogomori) Okay, so that you could use

25   UltraTech's price for bidding purposes only?

1   A     I could use their -- for bidding purposes.
2   Q     Okay. Now, going down to the next line it says,
3   "Final approval is subject to review of the fabrication
4   drawings, shop drawings, and meeting all the
5   requirements of the contract documents."
6         Do you see that?
7   A     I do.
8   Q     And you reviewed this document prior to Bodell
9   submitting its bid proposal for the project, correct?
10  A     I would have read it, yes.
11  Q     Okay, how did you interpret that line to mean?
12  A     The same as I interpret all proposals I get from
13  vendors or submittals.
14  Q     That the approval is subject to the vendor
15  establishing that the equipment meets all the
16  requirements for the contract documents?
17  A     That it complies with the contract documents, yes.
18  Q     And satisfies all the requirements?
19  A     Yes. Yeah.
20  Q     All right. So did you understand that this letter
21  provided a conditional approval that was subject to the
22  vendor, in this case, UltraTech, meeting all the
23  requirements of the contract documents?
24  A     Meeting the requirements. You know, not all the
25  time do they meet all. Not everybody meets all.

1   There's things in there that change -- equipment's been
2   outdated, things like that.  So, to meet the contract
3   requirements -- that's what I read that as, as far as
4   certain language in the contract.
5   Q    Okay. After getting this letter -- or let me ask
6   you this.  Who did you receive this letter from?
7   A    Oh, I don't recall that, if the City sent it to
8   Paul Scott, I --
9   Q    After getting this letter and reviewing it, did
10  you ever seek clarification from the City in regards to
11  the contents of this letter?
12              MR. SCHULMEISTER:  You mean, before bid,
13  right?
14              MR. OGOMORI:  Before bid.
15              THE WITNESS:  Not that I recall.
16  Q    (By Mr. Ogomori) Okay, did you ever seek
17  clarification from UltraTech prior to bid?
18  A    Other than we would expect their scope of work to
19  comply with the contract documents.
20  Q    Okay, what about from GMP?  Did you ever seek
21  clarification prior to submitting the bid on the
22  project?
23              MR. SCHULMEISTER:  Classification
24  regarding what?
25              MR. OGOMORI:  Regarding this document.

```
 1            THE WITNESS:  Not that I recall.
 2   Q    (By Mr. Ogomori) Okay, so you mentioned the scope
 3   of supply that you were requesting from UltraTech.  Did
 4   I state what you just referred to before?
 5   A    Well, that would be a standard from all -- that we
 6   would ask for.
 7   Q    Okay, so after getting word that UltraTech's
 8   equipment was approved for bidding purposes only, did
 9   Bodell request a scope of supply from UltraTech?
10   A    I would have thought that that would be asked for,
11   yes.
12   Q    Who would have been the person at Bodell to ask
13   for this information?
14   A    I don't know.
15   Q    Would it have been Roger Green?
16   A    Sure.
17   Q    Okay, what about Gary Jeppson?  Would he have been
18   the one?
19   A    Any of the parties.
20   Q    So somebody from the team that was responsible for
21   preparing Bodell's bid proposal would have sought
22   information from UltraTech?
23   A    Correct.
24   Q    And what you had said, this information would be
25   included in a scope of supply?
```

1  supply you with, and comply with the requirements they
2  said they would. Did you ever have a feeling that they
3  were not, you know, following through on their promises?
4  　　　　　　　MR. BIALEK: Objection as to form.
5  　　　　　　　MR. SCHULMEISTER: I join.
6  　　　　　　　THE WITNESS: Well, we had a contractual
7  relationship, in my eyes, per the plans and specs and
8  their proposal. Um, our efforts were to try to achieve
9  that. Frustrations, not playing fair, one thing or the
10 other, I can't use any of those terminologies.
11 Q     (By Mr. Sutton) Well, did you feel that they
12 didn't live up to what you felt was their contractual
13 objection?
14 　　　　　　　MR. BIALEK: Objection as to form.
15 　　　　　　　MR. SCHULMEISTER: Objection as to form.
16 　　　　　　　THE WITNESS: At the end of the day,
17 they did not comply with their package because they did
18 not get approved.
19 Q     (By Mr. Sutton) Did you have an understanding that
20 they at some point tried to request approval for a
21 vertical system?
22 A     To my knowledge, we never submitted on a vertical
23 system.
24 Q     Okay, now, as far as -- go back to that purchase
25 order, which was Exhibit 84 of Ellner's deposition,

1  which was referred to in Mr. Ogomori's questioning.
2       Do you have that in front of you now?
3  A    I do.
4  Q    Okay, what does a Purchase Order do, to your
5  understanding?
6  A    It forms an agreement.
7  Q    For the purchase of a particular item?
8  A    Yes, sir.
9  Q    And is it Bodell's practice to issue purchase
10 orders for items that they're purchasing provided by
11 supplier on a contract?
12 A    Yes, sir.
13 Q    And now, this purchase order was prepared by
14 Bodell and signed by a representative by Bodell, is that
15 what's shown on this document?
16 A    By two of them.
17 Q    On this document, was there a place provided for
18 the signature of a representative of UltraTech?
19 A    There is.
20 Q    And on this particular exhibit, is there a
21 signature by UltraTech?
22 A    Not the one in front of me.
23 Q    Did you ever get a signed one from UltraTech?
24 A    I have no knowledge of that.
25 Q    Do you recall yourself getting involved at any

```
1    STATE OF HAWAII              )
                                  )SS.
2                                 )

3

4        I, CASSIE UYEKUBO, C.S.R., a Notary Public in and
     for the State of Hawaii, do hereby certify:
5

6        That on June 22, 2005, appeared before me LEROY
     HUMKE, the witness whose testimony is contained herein;
7    that prior to being examined, the witness was by me duly
     sworn or affirmed; that the proceedings were taken in
8    computerized machine shorthand by me and were thereafter
     reduced to print under my supervision; that the
9    foregoing represents, to the best of my ability, a
     correct transcript of the proceedings had in the
10   foregoing matter;

11
         That the witness, if applicable, was notified
12   through counsel, by mail or by telephone to appear and
     sign; that if the transcript is not signed, either the
13   reading and signing were waived by the witness and all
     parties, or the witness has failed to appear and the
14   original is therefore kept on file without signature
     pursuant to Court rules.
15

16       I further certify that I am not counsel for any of
     the parties hereto, nor in any way interested in the
17   outcome of the cause named in the caption.

18

19                                    JUL 0 5 2005
20       Dated: _____

21
                      [signature]
22       _____
         Cassie Uyekubo, C.S.R. #293
23       Notary Public, State of Hawaii
         My Commission Expires: November 8, 2005
24

25
```

[Notary Public seal: CASSIE UYEKUBO, NOTARY PUBLIC, STATE OF HAWAII]