```
                                                                    1
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3    _____

 4   BODELL CONSTRUCTION COMPANY,

 5   a Utah corporation,

 6                    Plaintiff,

 7         vs.                        CIVIL NO. 03-00706(HG/LEK)

 8   OHIO PACIFIC TECH, INC., fka GMP   (Contract)

 9   ASSOCIATES, INC., an Ohio

10   corporation; CITY AND COUNTY OF

11   HONOLULU; ULTRA TECH SYSTEMS,

12   INC., a foreign corporation,

13                    Defendants.

14    _____

15              DEPOSITION OF LEE A. MANSFIELD

16                         VOLUME I

17        Taken on behalf of the Plaintiff, BODELL

18   CONSTRUCTION COMPANY, at the office of Cades Schutte, 1000

19   Bishop Street, Suite 1200, Honolulu, Hawai'i, commencing at

20   9:24 a.m. on February 28th, 2005, pursuant to Notice.

21

22

23   BEFORE:    B. KANOELANI COCKETT

24              Certified Shorthand Reporter

25              HI CSR NO. 379, CA CSR NO. 7995
```

**EXHIBIT 74**

```
                                                              113
 1                       was marked for identification.)
 2           (The document was examined.)
 3           THE WITNESS:  All set.
 4   BY MR. SCHULMEISTER:
 5       Q.  All right.  Have you had a chance to look at what's
 6   been marked as Exhibit 8 to your deposition?
 7       A.  I have.
 8       Q.  Okay.  This purports to be a transmittal dated May
 9   2nd, 2000 from GMP to the Department of Design and
10   Construction at the City of minutes of an April 27th, 2000
11   meeting.
12           Is that correct?
13       A.  Yes.
14       Q.  And then on the second page of the exhibit is the
15   minutes, right?
16       A.  Yes.
17       Q.  And the minutes indicate that both you and Jay Stone
18   were present?
19       A.  Yes.
20       Q.  Along with Wahib Guirguis on behalf of GMP, right?
21       A.  Oh, yeah, that's correct.
22       Q.  Do you know who actually prepared these minutes?
23       A.  Jay Stone would have prepared the minutes.
24       Q.  Okay.  That's just as a matter of procedure, the
25   three --
```

163

1    A.    I don't recall.

2    Q.    But that doesn't -- you don't recall any reasons why
3  it would have been hung up that long?

4    A.    No.

5    Q.    Okay.  I mean, wasn't this kind of a critical path
6  item that the City was very concerned about complying with the
7  consent decree?

8    A.    (Witness nods head.)

9    Q.    I mean, that was true, right?

10   A.    That's true.

11   Q.    So it should have been turned around promptly,
12  right?

13   A.    Yeah.

14   Q.    But -- okay.

15         All right.  Anyway, go on to the second page.  The
16  second page has a list of 18 items.  These items correspond to
17  comments that have been made on the original submittal of
18  which, if you look -- well, anyway, you recall that the first
19  formal submittal that Ultra Tech made was returned with a list
20  of 18 comments by GMP?

21   A.    I do.

22   Q.    And that on subsequent submittals, including this
23  last one, 30C, that the same 18 items refer to the same
24  comments, right?

25   A.    On submittals, you're almost entirely right.  There

```
                                                          164
 1  is a submittal after 30 that was not reviewed, submittals 30
 2  and what we labeled 30B and 30C were reviewed, and the 18
 3  original comments followed along in those reviews.
 4       Q.   Okay.  I would like to focus your attention on
 5  comment No. 3, which on the 30C rejection says, "List of
 6  installation sites provided does not meet the requirements of
 7  Specification Section 11376, paragraph 2.3.B."
 8            Do you see that?
 9       A.   Um-hum.
10       Q.   If you've got your Exhibit 2 handy, that's the
11  specification.
12       A.   I do.
13       Q.   I just want to direct your attention to 2.3.B.
14            Could you explain to me where in the specification
15  it requires the supplier or the manufacturer to demonstrate
16  that the prior installation sites had a performance
17  requirement equivalent to 2.3.B?
18       A.   I think I'm looking at a typographical error in the
19  review.  Let me have a minute to look at this.
20       Q.   Okay.
21       A.   I've referenced the wrong section.
22       Q.   Okay.  What section were you intending to reference?
23       A.   I was intending to reference 1.2.A because that's
24  the only section that requires a list of installation sites.
25       Q.   Okay.  And the only specifics referred to are that
```

165

1  it have a peak flow of 5 MGD or greater for at least one year?
2       A.    And be of the same equipment type that the system
3  being proposed.
4       Q.    Right.  Is there any requirement in the
5  specification, as you understand it, that the equipment
6  manufacturer be able to demonstrate a prior installation of
7  the proposed system in a plant that has the same performance
8  requirements that are listed in 2.3.B?
9       A.    No.  Again that's a typo --
10      Q.    Okay.
11      A.    -- on my part.  The comment refers to 1.1.A.
12            MR. SCHULMEISTER:  Well, that was my one question.
13                              EXAMINATION
14            MR. BIALEK:  Okay.
15      Q.    Can you hear me?
16      A.    I can, Adam.  Go ahead.  Now you have to hear me.
17      Q.    Good afternoon, Mr. Mansfield.  My name is Adam
18 Bialek.  I'm with the law firm Wilson, Elser, Moskowitz,
19 Edelman & Dicker, LLP.  We represent a defendant, cross-claim
20 defendant and cross-claim plaintiff, Ultra Tech Systems, in
21 this matter.
22            If at any time you cannot hear me, please ask me to
23 speak up.  If at any time you cannot understand my question or
24 part of my question, please ask me to stop and rephrase it or
25 explain it.