CADES SCHUTTE
A Limited Liability Law Partnership

DAVID SCHULMEISTER     2781-0
KRISTIN S. SHIGEMURA   6957-0
1000 Bishop Street, Suite 1200
Honolulu, Hawaii  96813-4216
Telephone:  (808) 521-9200
Facsimile:  (808) 521-9210
Email:      dschulmeister@cades.com
Attorneys for Plaintiff
BODELL CONSTRUCTION COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BODELL CONSTRUCTION COMPANY, a Utah corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign corporation,<br><br>   Defendants. | CIVIL NO. 03-00706 (JMS/LEK)<br>(Contract)<br><br>PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE MOTIONS FOR SUMMARY JUDGMENT; DECLARATION OF COUNSEL; EXHIBITS "76"; CERTIFICATE OF SERVICE<br><br><br>**Hearing:**<br>Date:   May 1, 2006<br>Time:   9:00 a.m.<br>Judge:  Honorable J. Michael Seabright |
|---|---|

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
RE MOTIONS FOR SUMMARY JUDGMENT**

ImanageDB:649106.1

I. **RESPONSE TO COUNSEL FOR THE CITY'S MAY 1, 2006 LETTER**

   A. **Paragraph 1 of the Contract expressly makes the parties' intent, i.e., their "objects and purposes," relevant – it is not an integration clause**

The City's last stated position at oral argument was that the actual intent of the parties is "irrelevant." The point of the May 1, 2006 letter is presumably to support that by proving that the Contract is "integrated" and must therefore be strictly construed without regard to the parties' actual intent. But the quoted portion of Paragraph 1 provides that the Contract "shall be *liberally* construed to effect the *objects and purposes of the parties* hereto under any *provision of law, statute or ordinance* applicable thereto." (Emphasis added). This provision makes the parties' intent relevant for several reasons.

First, it explicitly requires "liberal" rather than "strict" construction with specific reference to the parties' "objects and purposes," i.e., their actual intent.

Second, this "liberal" construction is required to consider applicable law, statutes and ordinances. The most obviously applicable "statute" is Haw. Rev. Stat. § 103D-101 which provides: "All parties involved in the negotiation, performance, or administration of state contracts shall act in good faith." Good faith cannot be measured, however, without consideration of the parties' intent:

> Good faith performance "emphasizes faithfulness to an agreed *common purpose* and consistency with the

> *justified expectations of the other party*." <u>Hawaii Leasing v. Klein</u>, 5 Haw. App. 450, 456; 698 P.2d 309, 313-314 (1985)(citing Restatement (Second) of Contracts §205 (1981) comment a.)(emphasis added).

Judicial evaluation of the "purposes" and "justified expectations" of the parties necessarily entails consideration of their intent. This is consistent with basic contract law. "The cardinal rule with which all interpretation begins is that the purpose of interpretation is to ascertain the intention of the parties."[1]

It is unsurprising that the principle of liberal construction to achieve the "purposes" and "justified expectations" of the parties has been expressly woven into the fabric of the Contract. Hawaii long ago relaxed its strict application of the parol evidence rule. In <u>Walker-Moody</u>, a construction contract dispute, the Hawaii Intermediate Court of Appeals noted the Hawaii Supreme Court's agreement with Professor Corbin's view of the parol evidence rule,[2] and adopted "a consistent and enlightened approach" by applying the Uniform Commercial Code's (UCC) parol evidence rule (codified at Haw. Rev. Stat. 490:2-202) even though that case was not specifically under UCC coverage. <u>Association of Apartment Owners v. Walker-Moody Construction Co., Ltd.</u>, 2 Haw. App. 285, 288-89, 630 P.2d 652, 654-55 (Ct. App. 1981). The Ninth Circuit recognized this in <u>Nanakuli Paving and</u>

---

[1] 5 <u>Corbin On Contracts</u> (Rev. 1998) § 24.7, p. 37. <u>See</u> § 24.2 for Professor Corbin's explanation of how this differs from the interpretation of statutes.

[2] Citing 3 Arthur L. Corbin, *Corbin on Contracts* § 578 at 402-403 (1960) and <u>Hokama v. Relinc. Corp.</u>, 57 Haw. 470, 559 P.2d 279 (1977).

Rock Company v. Shell Oil Co., Inc., 664 F.2d 772, 794-95 (9th Cir., 1981)(discussing history of courts' consideration of extrinsic evidence, trade usage, course of performance, and course of dealing in contract interpretation, and reversing trial court's grant of JNOV and reinstating jury verdict for plaintiff in breach of contract action).

### B. The Contractor's warranty re pre-bid representations is not an integration clause

An agreement is integrated if "the parties thereto adopt the writing or writings as the final and complete expression of the agreement and an 'integration' is the writing or writings so adopted." Pancakes of Hawaii, Inc. v. Pomare Properties, Corp., 85 Haw. 300, 310, n. 6, 944 P.2d 97, 107, n. 6 (Ct. App. 1997) (citing BLACK'S LAW DICTIONARY 809 (6th Ed. 1990)).  A "garden variety" integration clause is express as to its completeness and might read as follows:

> It is understood that there are no oral or written agreement or representations between the parties hereto affecting this [agreement] and this [agreement] supersedes and cancels any and all previous negotiations, arrangements, representation, brochures, agreements, applications and understandings, if any, between the parties hereto or displayed by Landlord to Tenant with respect to the subject matter hereof, and none thereof shall be used to interpret or construe this Lease.

See id. at 311, 944 P.2d at 108 (citing footnote 3 of the opinion).

Section 1.6 of the General Instructions to Bidders and Section 2.2 of the General Conditions of Construction Contracts of the City and County of

Honolulu are not integration clauses. They are specific warranties relating to the Contractor's non-reliance on informal oral and written representations by City employees in the preparation of its *bid* submission. The only *pre bid* representation Bodell relied upon is the approval letter, which the City does not dispute was "properly issued" in accordance with the General Instructions to Bidders. The Contractor's warranties re prebid representations do not address *post bid* statements or negotiations before the Contract is signed. If the Contract did contain an integration clause, the City would have been precluded from relying, for example, on the letter (Ex. 16) it solicited from Bodell re the credit the City would receive if Bid item 81 were deleted and rebid. Nothing in the Contract precludes such post bid negotiations or communications or either party's reasonable reliance thereupon.

Where the agreement is not integrated, the parol evidence rule does not apply and extrinsic evidence as to what the terms of the agreement are may freely be admitted. Id. at 311, 944 P.2d at 108.

Even if the Contract were integrated, however, this would not preclude the use of extrinsic evidence to supplement or explain its meaning. It is important to note the distinction between the use of extrinsic evidence to *supplement* the terms of a non-integrated agreement as opposed to the use of extrinsic evidence to *interpret* the parties' agreement regardless of whether or not

the contract is integrated. The parol evidence rule only excludes extrinsic evidence offered *to vary or contradict* the terms of a completely integrated contract (see Walker-Moody Construction Co., Ltd., 2 Haw. App. at 289, 630 P.2d at 655; Restatement (Second) Contracts §§ 215, 216); it does not bar extrinsic evidence that is offered to assist in *interpretation and explanation of the meaning of contract terms* as this evidence is <u>always relevant</u>. "Because 'no contract should ever be interpreted and enforced with a meaning that neither party gave it,' parol evidence may be introduced to show the meaning of the express terms of the written contract." Brinderson-Newberg Joint Venture v. Pac. Erectors, 971 F.2d 272, 277 (9th Cir. 1992) (internally citing 3 Arthur L. Corbin, *Corbin on Contracts* § 572B (rule no. 2) (West Supp. 1991)).

        Finally, it should be noted that even if the Contract were integrated, the parol evidence rule would not preclude consideration of evidence of misrepresentations or a breach of a party's **duty to disclose** facts within its knowledge that would be material to the other party's decision to proceed with the contract. Pancakes of Hawaii, Inc., 85 Haw. at 310-311, 317-319, 944 P.2d at 107-108, 115. Here, the City did not disclose to Bodell that it concluded immediately upon bid opening that the UTS approval letter had been issued in "error." This is germane both to the City's express duty to act in good faith towards Bodell under

the Contract and to the City's duty of care under tort law to make disclosures required by Section 551 of the Restatement (Second) of Torts.  Id.

## II. HAMADA'S RECENTLY PRODUCED EMAIL REINFORCES THE DIFFERENCE BETWEEN APPROVAL FOR BIDDING PURPOSES AND APPROVAL FOR INSTALLATION

One of the recently produced emails from Cyril Hamada's computer is his May 5, 2003 email commenting on a draft of a letter prepared by GMP in response to Bodell's claim for the additional cost of supplying the Trojan system in lieu of the UTS system that Bodell's bid was based upon.  His very first point is that, regardless of the reasons advanced by GMP for having rejected UTS, GMP fails to explain why Bodell was not nonetheless entitled to base its bid on UTS in reliance on the City's approval of UTS for bidding purposes:

> GMP has recommended that Bodell's claims be rejected. In my opinion, if this claim is rejected a lawsuit will be forthcoming.  Based on what I understand of this situation, the City and GMP will almost certainly lose the lawsuit.  ***Nowhere in their letter did GMP claim that the original substitution request was not*** [sic] ***illegal and that Bodell had a right to use the substitution request.***

See Ex. 76 (emphasis added).

Bodell's claim was not that the City was obligated to approve the *installation* of UTS.  Bodell has always acknowledged that final approval for purposes of installation was the City's prerogative since the pre bid approval was "for bidding purposes only."  Bodell could not have reasonably relied upon the

approval letter to, for example, *purchase or ship* the UTS system prior to having approved submittal drawings. This would exceed the level of reliance that Bodell was entitled to under the letter, which is limited to reliance "for bidding purposes only."

Bodell was, however, entitled to use the approval letter in the preparation of its *bid price*. That is what "bidding purposes" means – assembling a bid price. This benefits the City by giving the City the option of saving money if the UTS system is approved for installation. While the Contractor still needs to obtain approved submittal drawings prior to installation, the approval letter provides the Contractor with the City's assurance that the Contractor will not be *penalized* for having used UTS's price in its bid. The letter does not state that the approval given for "bidding purposes" will be *retroactively nullified* if the City does not later give final approval to the UTS submittals. Nor does it state that it will be retroactively nullified if the City later decides that the issuance of the letter was the City's "error." If the letter did so provide, it would dissuade contractors from relying upon it and the City would never get the increased competition, and lower prices, that are the intended benefit of issuing the letter. The reason the pre bid approval was given was to afford the City the option of installing a lower priced system. If the City declines that option, then it stands to reason that the City needs to pay for the more expensive system that would have been bid had the

approval letter *not* been issued. Otherwise, the approval for "bidding purposes" merely serves to trick the Contractor into unwittingly agreeing to provide the more expensive Trojan equipment for the price of the less expensive UTS system.

Mr. Hamada's email and the City's post bid conduct are all consistent with this meaning of "bidding purposes only" and there is nothing in the approval letter that contradicts this meaning. Bodell respectfully submits that it is, indeed, the only reasonable way to interpret the approval letter. The City's current interpretation is unreasonable because the City's own *erroneous* issuance of the approval letter creates a windfall to the City, i.e., the Trojan system for the price of the UTS system, at the *Contractor's expense* – even though the Contractor had *nothing to do* with either the prebid substitution request or the City's review and approval thereof. Under the City's interpretation, approval "for bidding purposes only" essentially means that the approval is written in disappearing ink.

DATED: Honolulu, Hawaii, May 8, 2006.

        CADES SCHUTTE
        A Limited Liability Law Partnership

        /s/ Kristin S. Shigemura
        DAVID SCHULMEISTER
        KRISTIN S. SHIGEMURA
        Attorneys for Plaintiff
        BODELL CONSTRUCTION COMPANY