Document ID: 402747v1_skh

Of Counsel:
KOBAYASHI, SUGITA & GODA
BERT T. KOBAYASHI, JR.    659-0
RONALD T. OGOMORI        5850-0
GEORGE GUSMAN            6914-0
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone: (808) 539-8700
Fax: (808) 539-8799
Attorneys for Defendant,
  Cross-Claim Plaintiff/Defendant and
  Third-Party Plaintiff/Counterclaim Defendant
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION COMPANY, a Utah Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OHIO PACIFIC TECH, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRA TECH SYSTEMS, INC., a foreign Corporation,<br><br>Defendant. | ) CIVIL NO. CV03-00706 JMS-LEK<br>) (Contract)<br>)<br>) DEFENDANT, CROSS-CLAIM<br>) PLAINTIFF/DEFENDANT<br>) AND THIRD-PARTY<br>) PLAINTIFF/COUNTERCLAIM<br>) DEFENDANT CITY AND COUNTY<br>) OF HONOLULU'S<br>) SUPPLEMENTAL BRIEFING IN<br>) SUPPORT OF THE CITY'S MOTION<br>) FOR SUMMARY JUDGMENT AND<br>) IN OPPOSITION TO PLAINTIFF<br>) BODELL CONSTRUCTION<br>) COMPANY'S MOTION FOR<br>) SUMMARY JUDGMENT;<br>) DECLARATION OF GUY INOUYE;<br>) EXHIBIT 1; CERTIFICATE OF<br>) SERVICE<br>)<br>) Trial Date: October 17, 2006 |

*Caption continued*

Document ID: 402747v1_skh

CITY AND COUNTY OF HONOLULU,                )
                                            )
        Defendant, Third-Party             )
        Plaintiff, and Counterclaim        )
        Defendant,                         )
    vs.                                     )
                                            )
ENGINEERED SYSTEMS, INC.,                   )
                                            )
        Third-Party Defendant,             )
        Counterclaim Plaintiff and         )
        Cross-Claim Plaintiff.             )

CITY AND COUNTY OF HONOLULU,                )
                                            )
        Defendant, Cross-Claim             )
        Plaintiff/Cross-Claim              )
        Defendant,                         )
    vs.                                     )
                                            )
ULTRA TECH SYSTEMS, INC., a                 )
foreign Corporation,                        )
                                            )
        Defendant, Cross-Claim             )
        Defendant/Cross-Claim              )
        Plaintiff and Cross-Claim          )
        Plaintiff/Defendant,               )
    vs.                                     )
                                            )
OHIO PACIFIC TECH, INC., fka                )
GMP ASSOCIATES, INC., an Ohio               )
Corporation                                 )
                                            )
        Cross-Claim                        )
        Defendant/Plaintiff.               )

DEFENDANT, CROSS-CLAIM PLAINTIFF/DEFENDANT
AND THIRD-PARTY PLAINTIFF/COUNTERCLAIM DEFENDANT
CITY AND COUNTY OF HONOLULU'S SUPPLEMENTAL BRIEFING
IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF BODELL CONSTRUCTION
COMPANY'S MOTION FOR SUMMARY JUDGMENT

Document ID: 402747v1_skh

## I.    INTRODUCTION

COMES NOW, Defendant City and County of Honolulu ("City"), hereby

submits its Supplemental Brief pursuant to the Court's Order filed on 6/19/2006.

## II.    ARGUMENT

### A.    THE EXPRESS TERMS OF THE SUBJECT CONTRACT ESTABLISH THAT IT WAS FULLY INTEGRATED.

In Pancakes of Hawaii v. Pomare Properties, 85 Haw. 300 (1997), the Court

defined an integrated contract as follows:

> [A]n agreement is integrated where the parties thereto adopt the writing or writings as the final and complete expression of the agreement and an 'integration' is the writing or writings so adopted.

Id. at 310, fn 6.  Restatement (Second) of Contracts § 216, comment e (1981)

further provides that the existence of an integration clause is "likely to conclude

the issue whether the agreement is completely integrated."

In TLT Construction Corp. v. U.S., 60 Fed. Cl. 187, 194 (2004), the Court

held that a competitively bid government construction contract was "integrated."

In so doing, the Court specifically found that the contract included a "standard

integration clause," which provided as follows:

> **This award consummates the contract, which consists of (1) the Government's solicitation and your offer, and (b) this contract award**. No further contractual documents [are] necessary.

Id. (Emphasis added).

Similarly, in the present case, Sections I.2[1] and III.1 of the Subject Contract

contain express integration clauses.  In addition, both Section 1.6 of the General

1

Document ID: 402747v1_skh

Instructions to Bidders ("Instructions to Bidders")[2] and Section 2.2 of the General

Conditions of Construction Contracts of the City and County of Honolulu, July

1999 ("General Conditions")[3] provide an express warranty that the contractor's bid

was not based on any verbal representation from the City.  Section 1.2 of the

Instructions to Bidders[4] also provided a process for the contractor to seek

clarification from the City **prior** to bid opening.  Moreover, Section 2.1(c) of the

Instructions to Bidders[5] provided that Bodell's bid could not be altered or

modified, except as provided in the limited circumstances stated therein.  Based

upon the express terms of the Subject Contract, it is clear that the Subject Contract

was "fully integrated."  Accordingly, evidence regarding the parties' interpretation

of the City's December 19, 1999 letter and all other extrinsic evidence should be

disregarded pursuant to the parol evidence rule. Akamine and Sons, Ltd. v.

American Sec. Bank, 50 Haw. 304, 310, 440 P.2d 262, 266 (1968)("Once the

parties execute an instrument which contains their whole agreement, their previous

negotiations and agreements are legally ineffective and evidence relating to those

---

[1] More specifically, Section I.2 of the Subject Contract provides that the work would be subject to the written contract itself and the "invitation for bids and any and all alterations, amendments, additions and deductions in connection therewith being specifically referred to and incorporated herein by reference and made a part hereof as though fully set forth herein."  See Exhibit "K" to the City's MSJ.
[2] See Exhibit "D" to the City's MSJ.
[3] See Exhibit "1" attached hereto.
[4] See Exhibit "D" to the City's MSJ.
[5] See Exhibit "D" to the City's MSJ.

Document ID: 402747v1_skh

previous negotiations or agreements are irrelevant regardless of who offers it.”).

**B.    THE CIRCUMSTANCES SURROUNDING THE CREATION OF THE SUBJECT CONTRACT INDICATE THAT THE CONTRACT WAS IN FACT FULLY INTEGRATED.**

Even if a contract does not contain an integration clause, courts in Hawaii will look to the circumstances surrounding the creation of the contract to determine if the contract is integrated.  MPM Hawaiian, Inc. v. World Square, 4 Haw. App. 341, 348 (1983), rev'd on other grounds, 66 Haw. 675 (1983).

In the present case, the circumstances surrounding the formation of the contract indicate that the contract was fully integrated.  As discussed above, Bodell warranted that its bid proposal was not based on any verbal representations from anyone associated with the City.  Second, the Subject Contract was awarded pursuant to a competitive bid process that is based upon the bidders having an equal understanding of the contract requirements.  Third, Leroy Humke of Bodell understood that the post-bid discussions between the City and Bodell about a proposal to delete the UTS UV System from Bodell's bid (“Deletion Proposal”) were only preliminary “inquiries” and that the Project had been awarded to Bodell pursuant to the Project's “original” plans and specifications.  See Exhibit “L” to the City's MSJ, pp. 109-110.  More importantly, Humke admitted that Bodell signed the Subject Contract knowing that the UTS UV System had not been eliminated and was still part of Bodell's obligations, despite the discussions that

3

Document ID: 402747v1_skh

had taken place between the City and Bodell.  Id.

Based on all of the above, the City respectfully asserts that Bodell

understood that the contract represented the final agreement between the parties.

Thus, the circumstances surrounding Bodell's execution of the Subject Contract

likewise demonstrate that the Subject Contract was "fully integrated."

### C.   THE CITY'S CONDITIONAL APPROVAL LETTER WAS NOT AMBIGUOUS AND WAS UNDERSTOOD BY BODELL.

In this case, Bodell has argued that the City's conditional approval letter was

ambiguous.  However, Bodell's argument fails as it not supported by the applicable

case law or the sworn testimony of Bodell's Leroy Humke ("Humke").

In Dooley v. Dun & Bradstreet Software Services, 483 S.E.2d 308, 310 (Ga.

App. 1997), the Court held that the plaintiff could not claim that the contract terms

were ambiguous since the plaintiff's own testimony established that he was

completely aware of and understood the contract's terms and conditions.

Similarly, in the present case, Humke's sworn testimony establishes that

Bodell understood that the City's December 19, 1999 letter constituted a

conditional approval and that the UTS UV System still needed to satisfy the

contract requirements before the City would grant final approval of the UTS UV

System.  See Exhibit "L" to the City's MSJ, pp. 28; 60-63.  In addition, Humke

conceded that if the UTS UV System did not satisfy all of the contract

requirements, UTS (and not the City) should be held liable for Bodell's damages.

4

Document ID: 402747v1_skh

See Exhibit "L" to the City's MSJ, pp. 64-73. Based upon Humke's admissions, Bodell cannot argue that the City's conditional approval letter was somehow ambiguous. Accordingly, any evidence related to the "intent" of the parties must be barred by the parol evidence rule.

### D.  BODELL HAD A DUTY TO INQUIRE AS TO THE EFFECT OF THE CITY'S CONDITIONAL APPROVAL LETTER.

Even if the City's conditional approval letter was in fact ambiguous, Bodell's claims should still be barred due to its failure to seek clarification as to the meaning of the City's Conditional Approval Letter as the discussions about the Deletion Proposal should have placed Bodell on notice that there was a possibility that the UTS UV System would be rejected. James A. Mann, Inc. v. United States, 210 Ct.Cl. 104, 123, 535 F.2d 51, 61 (1976); Industrial Indem. Co. v. U.S., 14 Cl.Ct. 351, 358 (Cl.Ct. 1988); Pettinaro Construction Co., Inc., 83-1 BCA ¶ 16,536 (1983); Peter Kiewit Sons Co., 83-2 BCA ¶ 16,778 (1983); Beacon Construction Co. of Mass. v. U.S., 314 F.2d 501, 504 (Ct. Cl. 1963); Perry and Wallis, Inc. v. U.S., 427 F.2d 722, 725 (1970)(contractor that failed to seek clarification or issue a protest "acquiesced in and is bound by the meaning of the clause as intended by the government"). The line of cases referenced above is based upon the patent ambiguity doctrine, which was explained in George E. Newsom v. U.S., 676 F.2d 647 (Ct. Cl. 1982), as follows:

Document ID: 402747v1_skh

> If a patent ambiguity is found in a contract, the contractor has a duty to inquire of the contracting [procurement] officer the true meaning of the contract before submitting a bid. [citations omitted]. This prevents contractors from taking advantage of the Government; it protects other bidders by ensuring that all bidders bid on the same specifications; and it materially aids the administration of Government by requiring that ambiguities be raised before the contract is bid on, thus avoiding costly litigation after the fact.

Conversely, the Court in <u>S.O.G. of Arkansas v. U.S.</u>, 546 F.2d 367, 371 (Ct. Cl. 1976), added:

> In addition to its role in obviating unnecessary disputes, the patent-ambiguity principle advances the goal of informed bidding and works toward putting all the bidders on an equal plane of understanding so that the bids are more likely to be truly comparable. Conversely, the principle also tends to deter a bidder, who knows (or should know) of a serious problem in interpretation, from consciously taking the award with a lower bid (based on the less costly reading) with the expectation that he will then be able to cry "change" or "extra" if the procuring officials take the other view after the contract is made.

In the present case, Bodell did not seek any clarification **before** it executed the Subject Contract. Moreover, Bodell executed the Subject Contract with full knowledge that the Deletion Proposal had not been adopted. <u>See</u> Exhibit "L" to the City's MSJ, pp. 109-110. While Bodell has argued that the parties' post-bid discussions supports its claim for additional compensation, the City submits that these actions should have identified a patent ambiguity (if any) and created a duty for Bodell to seek clarification as to: (1) the meaning of the City's Conditional Approval Letter; (2) why the Deletion Proposal was not incorporated into the Subject Contract despite the parties' discussions; (3) what would happen if the

6

Document ID: 402747v1_skh

UTS UV System did not satisfy the requirements of the Subject Contract; and (4)

whether Bodell would be entitled to a contract modification if the UTS UV System

was rejected. Due to Bodell's failure to seek any type of clarification, Bodell's

claims are barred as a matter of law.

E.    **THE CONTRACT THAT BODELL SIGNED MUST BE ENFORCED ACCORDING TO ITS EXPRESS TERMS.**

Parties are free to contract between one another and it is the role of the court

to enforce those contracts as they are written without passing on their substance.

City Express, Inc. v. Express Partners, 87 Haw. 466, 470, 959 P.2d 836, 840

(1998). In City Express, supra, the Court stated that:

> In general, parties may contract as they wish, and courts will enforce their agreements without passing on their substance … the principles of freedom of contract is itself rooted in the notion that it is in the public interest to recognize that individuals have broad powers to order their affairs by making legally enforceable promises.

Id. at 470, n. 4, 959 P.2d at 840, n. 4. Hawaii courts have further commented on

the particular sensitivity of this rule when **enforcing the specific terms of a**

**competitively bid governmental contract**. Brewer Environmental Industries, Inc.

v. A.A.T. Chemical, Inc., 73 Haw. 344, 349, 832 P.2d 276, 279 (1991)

("[M]odifying the contract specifications obtained privately are improper precisely

because bidders will receive unequal information creating competitive

disadvantages among the bidders.").

In the present case, Bodell has argued that the City's approval of the UTS

7

Document ID: 402747v1_skh

UV System "for bidding purposes only" and the subsequent discussions about the

Deletion Proposal to support Bodell's argument that it is entitled to a contract

modification.  However, Bodell's claims lack merit and are not supported by the

undisputed evidence.  First, Bodell knew that the City's approval of the UTS UV

System for "bidding purposes only" was merely conditional and subject to Bodell

demonstrating that the UTS UV System satisfied all of the contract requirements

before "final" approval would be secured ("City's Conditional Approval Letter").

Second, the City's Conditional Approval Letter did not include any language that

assured Bodell of a contract modification in the event that the UTS UV System

was rejected.  Third, despite having post-bid discussions with the City regarding

the Deletion Proposal, Humke of Bodell understood that these discussions were

only preliminary "inquiries" and that the Project had been awarded to Bodell

pursuant to the Project's "original" plans and specifications.  See Exhibit "L" to

the City's MSJ, pp. 109-110.  More importantly, Humke admitted that Bodell

signed the contract knowing that the UTS UV System had not been eliminated

from the bid and was still part of Bodell's obligations.  Id.

Based upon the express terms of the Subject Contract and Bodell's

recognition of said terms, Bodell's argument that it is now entitled to a contract

modification should be disregarded based upon the holding in City Express, supra,

that parties are free to contract as they wish and that courts should "enforce their

Document ID: 402747v1_skh

agreements without passing on their substance."

Finally, the City respectfully asserts that allowing Bodell to now re-write the contract in its favor would be contrary to public policy. Specifically, when a procurement contract is at issue, there is a strong public policy to enforce a contract according to the plain language of the contract documents or specification. See Philadelphia Warehousing and Cold Storage v. Hallowell, 490A.2d 955, 957 (Pa. 1985)(court held that the explicit purpose of public bidding is to serve the public interest, and as such, modifications to the contract adopted as a result of private negotiations between the awarding agency and the successful bidder contravene that purpose); American Totalistator Company, Inc. v. Seligman, 414 A.2d 1037, 1041 (Pa. 1977)(court held that all bidders must be treated equally in the bidding process and that the principles underlying competitive bidding were violated when a bidder was allowed to clarify its bid after bid opening); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768, 772 (La. 1972)(court held that all bidders are bound by the published specifications and, thus, post-bid changes to the bid specifications were prohibited); Brewer Environmental Industries, Inc. v. A.A.T. Chemical, Inc., 73 Haw. 344, 349 (1991)(court held that modifying the specifications for a competitively bid contract would render the bidding process illegal and invalid).

9

Document ID: 402747v1_skh

In <u>Aldrich v. Gravity Draining District Number 1 of Rapides Parish</u>, 114 So.

2d 860, 863 (La. 1959), the court addressed this very issue and held that the

specifications to a competitively bid contract could not be lawfully altered after the

bids were opened.  In so doing, the court recognized that:

> Specifications cannot lawfully be altered after the bids have been made
> without a new advertisement giving all bidders an opportunity to bid under
> the new conditions.  Public officers cannot enter into a contract with the
> lowest bidder containing substantial provisions beneficial to him, not
> included in or contemplated in the terms and specifications upon which bids
> are invited.  The contract must be the contract offered to the lowest
> responsible bidder by advertisement.  To permit a material departure in the
> contract from the terms and specifications upon which the bidding is had
> would open wide the door to favoritism and defeat the purpose of the law in
> requiring contracts to be let upon bids made upon advertised specifications.

<u>Id.</u> at 863 (citations omitted).

Clearly, the procurement contracts should not be allowed to be re-written by

the contractor, due to Bodell's failure to seek clarification prior to the opening of

the bids and the prohibition against post-bid modifications.

III.    **CONCLUSION**

Based on the above, the City respectfully requests that the City's MSJ be

granted and that the cross-motions filed by Bodell, UTS and ESI be denied.

Dated: Honolulu, Hawaii _____ June 23, 2006 _____.

_____
RONALD T. OGOMORI
Attorney for Defendant
CITY AND COUNTY OF HONOLULU

10