(7/99)

# GENERAL CONDITIONS
# OF CONSTRUCTION CONTRACTS
# CITY AND COUNTY OF HONOLULU

## TABLE OF CONTENTS

CHAPTER 1 - DEFINITIONS; REFERENCES

1.1     Definitions

1.2     References

CHAPTER 2 - REPRESENTATIONS AND WARRANTIES

2.1     Representations by the City

2.2     Contractor's representations

CHAPTER 3 - SCOPE OF CONTRACT

3.1     Scope of contract

3.2     Contractor to report errors or discrepancies

3.3     Modifications

3.4     Claims based on oral directives

3.5     Value engineering incentive

3.6     Contract not binding unless funds available

3.7     Fiscal responsibility

3.8     Assignment of contract; change of name

CHAPTER 4 - PERFORMANCE

4.1     Decisions of the officer-in-charge

4.2     Professional work

4.3     Commencement requirements

4.4     Contract, plans and specifications to be kept on site

4.5     Construction methods and equipment

4.6     Access and inspection

4.7     Quality of materials and equipment

GENERAL CONDITIONS (7/99)                1                TABLE OF CONTENTS

Exhibit 1

4.8     Character of workers, methods and equipment

4.9     Other contracts

4.10    Remedies

4.11    Wages and hours

4.12    Safety and health

4.13    Protection of pedestrians and vehicular traffic; access to property

4.14    Discovery of hazardous materials

4.15    Environmental pollution and hazardous materials control

4.16    Noise control

4.17    Rubbish disposal

4.18    Restoration and precautions

4.19    Historical and archaeological finds

4.20    Maintenance of site and final cleanup

4.21    Laws, regulations

4.22    Partial acceptance of project

4.23    Responsibility of the contractor prior to acceptance

4.24    Final inspection

4.25    Guarantee

4.26    Joint contractor, subcontractor

CHAPTER 5 - TIME AND DELAYS

5.1     Time

5.2     Overtime work

5.3     Delay; time extensions

CHAPTER 6 - PAYMENT

6.1     Force account

6.2     Payment

6.3     Payments during performance of work

RCI/Headworks
A03572

6.4     Payment for delivered materials or equipment

6.5     Final payment

6.6     Prompt payment by contractors to subcontractors

6.7     Payment in bonds

6.8     Assignment of money

CHAPTER 7 - INSURANCE; PERFORMANCE AND PAYMENT BONDS

7.1     Insurance

7.2     Indemnification

7.3     Payment guarantee

7.4     Contract performance and payment bonds

CHAPTER 8 - DISPUTES AND REMEDIES

8.1     Suspension of work

8.2     Termination for default for nonperformance or delay; damages for delay

8.3     Termination for convenience

8.4     Liquidated damages

8.5     Authority to withhold money due or payable

8.6     Authority to resolve contract and breach of contract controversies

CHAPTER 9 - SEXUAL HARASSMENT

9.1     General

9.2     Applicability

9.3     Policy term

9.4     Pledge and acceptance

CHAPTER 10 - MISCELLANEOUS

10.1    Use of materials

10.2    Assignment of antitrust claims for overcharges for goods and materials purchased

EXHIBITS

"A"     Surety Bid Bond
"B"     Performance Bond (Surety)
"C"     Labor and Material Payment Bond (Surety)

RCI/Headworks
A03573

| | |
|---|---|
| "D" | Performance Bond |
| "E" | Labor and Material Payment Bond |
| "F" | Estimate for Change Order Work |
| "G" | Force Account Worksheet |
| "H" | Certificate of Current Cost or Pricing Data |
| "I" | Agreement (Name Change) |
| "J" | Value Engineering Change Proposal |
| "K" | DF-P-65, Acknowledgment of Third Party Liability |

RCI/Headworks
A03574

(7/99)

# GENERAL CONDITIONS
# OF CONSTRUCTION CONTRACTS
# CITY AND COUNTY OF HONOLULU

The General Conditions of Construction Contracts of the City and County of Honolulu, incorporated by reference in the invitation for bids and referred to as the "General Conditions", represent the City's policy relating to construction projects as authorized by the Hawaii Revised Statutes, Chapter 103D, and the Hawaii Administrative Rules (HAR), Title 3, Department of Accounting and General Services. Related provisions from the Hawaii Administrative Rules (HAR), Title 3, Department of Accounting and General Services, are presented for convenience only and may not be complete. Where provisions are taken from the HAR, reference is made to the applicable chapter or section. Should any provision herein be inconsistent with the HAR, the HAR shall govern. Bidders and contractors should familiarize themselves with the HAR.

Wherever "chief procurement officer" appears in the HAR, it shall mean the "Contracting Officer"; wherever "head of the purchasing agency" or "procurement officer" appears in the HAR, both shall mean the "Officer-in-Charge".

The General Conditions is available upon request at the Division of Purchasing, City Hall, 530 South King Street, Room 115, Honolulu, Hawaii, 96813.

The separate parts of the invitation for bids, as defined below, including the plans and specifications, are intended to complement each other. Unless it is apparent that a different order of precedence is intended, addenda shall govern over all other previously issued addenda, and other contract documents; plans shall govern over the City's standards and specifications and these general conditions; special provisions shall govern over plans, the City's standards and specifications, and these general conditions. Where there is a discrepancy between the bid proposal and other parts of the invitation for bids, the bid proposal shall govern.

## CHAPTER 1 - DEFINITIONS; REFERENCES

### 1.1    Definitions

"**Addendum**" means a written document issued by the Contracting Officer or, for informal bids, the Officer-in-Charge during the bidding period, involving changes to the invitation for bids which shall be considered and made a part of the invitation for bids and contract.

"**Bid**" means the executed document submitted by a bidder in response to an invitation for bids. [HAR 3-120-2]

"**Bidder**" means any individual, partnership, firm, corporation, joint venture, or other entity submitting directly or through a duly authorized representative or agent, a bid for the construction contemplated. [HAR 3-120-2]

"**Change order**" means a written order signed by the Contracting Officer or, when delegated by the Contracting Officer, by the Officer-in-Charge directing the Contractor to make changes with or without the consent of the Contractor. [HAR 3-120-2]

"**City**" means the City and County of Honolulu, State of Hawaii.

"**Construction**" means the process of building, altering, repairing, improving, or demolishing any public structure or building, or other public improvements of any kind to any public real property. The term includes the routine operation, routine repair, or routine maintenance of existing structures, buildings, or real property. [HRS 103D-104]

"**Contract**" means all documents covering the construction of the project and services in connection therewith for which award is made to the Contractor, including the furnishing of labor, materials and equipment in connection therewith. It shall include the notice to contractors, proposal, the list of subcontractors, the wage schedule, general instructions to bidders, special provisions, special notice to bidder or special instructions to bidder, the bonds, the bid specifications, the plans, the general conditions, and any documents or publications, addenda, amendments and change orders, whether attached to or incorporated by reference.

RCI/Headworks
A03575

"**Contracting Officer**" means:
(1) For improvement district projects, the City Council Chair or any official of the City so designated by the City Council Chair;
(2) For the Board of Water Supply, the Manager and Chief Engineer of the Board of Water Supply or the Manager and Chief Engineer's delegated designee; and
(3) For all other projects, the Director of the Department of Budget and Fiscal Services of the City and County of Honolulu, or the Director's delegated designee.

"**Contractor**" means any individual, partnership, firm, corporation, joint venture, or other legal entity undertaking the execution of the work under the terms of the contract with the City, and acting directly or through its agents or employees.

"**Days**" means consecutive calendar days unless otherwise specified. [HAR 3-120-2]

"**Designee**" means a person appointed by the Contracting Officer or the Officer-in-Charge to act on its behalf with delegated authority.

"**Guarantee**" means a written agreement or assurance of the quality of or of the length of use to be expected from equipment, material, device, or system offered, or work performed.

"**Hazardous materials**" mean and include any and all radioactive materials, asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, hazardous wastes, toxic substances, and any and all other substances or materials defined as "hazardous materials," "extremely hazardous materials," "hazardous wastes" or "toxic substances" under or for the purposes of hazardous materials laws.

"**Hazardous materials laws**" mean and include all federal, state or local laws, ordinances, rules, regulations or codes, now or hereafter in effect, relating to environmental conditions, human health or industrial hygiene, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. section 9601, et. seq., the Resource Conservation and Recovery Act, 42, U.S.C. section 6901, et. seq., the Hazardous Materials Transportation Act, 42 U.S.C. section 1801, et. seq., the Clean Water Act, 33 U.S.C. section 1251 et. seq., the Clean Air Act, 42 U.S.C. 7401 et. seq., the Toxic Substances Control Act, 15 U.S.C. section 2601 - 2629, the Safe Drinking Water Act, 42, U.S.C. sections 300f - 300j, HRS Chapter 128D, Environmental Response Law, HRS Chapter 342B, Air Pollution Control, HRS Chapter 342D, Water Pollution, HRS Chapter 342H, Solid Waste Pollution, HRS Chapter 342J, Hazardous Waste, HRS Chapter 342L, Underground Storage Tanks, Chapter 342P, Asbestos, and any similar state or local laws or ordinances and the regulations now in effect or hereafter adopted, published or promulgated thereto.

"**Improvement district project**" means a project constructed pursuant to chapter 14, Revised Ordinances of Honolulu (ROH), titled "Public Works Infrastructure Requirements Including Fees and Services."

"**Informal bid**" means small purchase construction estimated at less than $25,000 and procured by telephone quotations or written bids and award is by purchase order.

"**Invitation for bids**" shall have the same meaning as contract.

"**Notice to contractors**" or "**notice to bidders**" means the publication or the notice of a solicitation for bids.

"**Notice to proceed**" means the document issued to the Contractor designating the official commencement date of the performance under the contract.

"**Officer-in-Charge**" means the department head of the agency with delegated authority for which construction is being procured, or the Officer-in-Charge's delegated designee.

"**Procurement**" means buying, purchasing, renting, leasing, or otherwise acquiring any good, service, or construction. The term also includes all functions that pertain to the obtaining of any good, service, or construction, including description of requirements, selection and solicitation of sources, preparation and award of contracts, and all phases of contract administration. [HRS 103D-104]

"**Proposal**" shall have the same meaning as bid.

"**Purchasing agency**" means the agency requesting the construction for the using agency. "**Purchasing Division**" means the Division of Purchasing, Department of Budget and Fiscal Services, with delegated authority to solicit bids and award contracts.

"**Quotation**" means a statement of price, terms of sale, and description of construction offered by a prospective bidder, usually for informal bids.

"**A responsible bidder**" means a person who has the capability in all respects to perform fully the contract requirements, and the integrity and reliability which will assure good faith performance. [Had 3-120-2]

"**Responsive bidder**" means a person who has submitted a bid which conforms in all material respects to the invitation for bids. [HAR 3-120-2]

"**Solicitation**" means an invitation for bids or a request for quotation issued by the City for the purpose of soliciting bids to perform construction.

"**Specifications**" mean any description of the physical or functional characteristics, or of the nature of a good, service, or construction item. The term includes descriptions or any requirement for inspecting, testing, or preparing a good, service, or construction item for delivery. [HRS 103D-104]

"**State**" means State of Hawaii.

"**Subcontractor**" means any person who enters into an agreement with the contractor to perform a portion of the work for the contractor. [HAR 3-120-2]

"**Warranty**" shall have the same meaning as guarantee.

"**Working day**" means any day on the calendar, exclusive of holidays, Saturdays, and Sundays. Unless another meaning is intended, "working days" shall mean consecutive working days.

**1.2    References.** (a) When reference is made to known standards and specifications, the most recently adopted and published edition of such standards and specifications on the date of the notice to contractors is contemplated, unless otherwise specified.

(b) Abbreviations. The following abbreviations shall refer to the technical society, organization, body, code, rules, or standards, listed opposite each abbreviation:

| | |
|---|---|
| AASHTO | American Association of State Highway and Transportation Officials |
| ACI | American Concrete Institute |
| ADAAG | Americans with Disabilities Accessibility Act Guidelines |
| AISC | American Institute of Steel Construction |
| AITC | American Institute of Timber Construction |
| ANSI | American National Standard Institute |
| ASTM | American Society for Testing and Materials |
| AWWA | American Water Works Association |
| AWS | American Welding Society |
| FHWA | Federal Highway Administration, U.S. Department of Transportation |
| FS | Federal Specifications |
| G06 | General Order No. 6 of the Public Utilities Commission, Rules for Overhead Electric Line Construction |
| GRJP | General Rules for Joint Use of Poles |
| HAR | Hawaii Administrative Rules |
| HRS | Hawaii Revised Statutes |
| IES | Illuminating Engineering Society |
| NEC | National Electric Code |
| UBC | Uniform Building Code |
| UL | Underwriters' Laboratories, Inc. |
| UPC | Uniform Plumbing Code |
| WCLA | West Coast Lumberman's Association |

(c) City and County of Honolulu standards and specifications. The following are commonly referred to standards and specifications of the City and County of Honolulu which are available for purchase at the City's Municipal Store:

(1) Standard Details for Public Works Construction, September 1984, commonly referred to as standard details;

(2) Standard Specifications for Public Works Construction, September 1986, commonly referred to as standard specifications;

(3) Standard Details for Parks and Recreation Construction, May 1990; and

(4) Water System Standards, Volume I, Approved Material List and Standard Details for Water System Construction, Volume II, dated 1985, and Water System External Corrosion Control Standards, Volume III, dated 1991, of the Board of Water Supply, commonly referred to as water system standards.

RCI/Headworks
A03577

# CHAPTER 2 - REPRESENTATIONS AND WARRANTIES

2.1    **Representations by the City**. (a)   Surface and subsurface conditions.  Where investigation of subsurface conditions has been made by the City in respect to foundation or other design, the Contractor may inspect the records of the City as to such investigation and examine any sample that may be available.  Where such information is shown in the plans, said information represents only the statement by the City as to the character of material which has been actually encountered by the City in its investigation and is included only for the convenience of Contractor and other bidders.

Any subsurface information or hydrographic survey data furnished are for the Contractor and other bidders' convenience only.  The information and data furnished are the product of the Officer-in-Charge's interpretation of the facts gathered in investigations made at the specific locations indicated to aid in the design of the project, and the City assumes no responsibility whatever in respect to the sufficiency or accuracy of borings or of the log of test borings or other preliminary investigations, or of the interpretation thereof, and there is no guaranty, either expressed or implied, that the conditions indicated are representative of those existing throughout the work.  In addition, no assurance is given that conditions found at the time of the subsurface explorations, such as the presence or absence of water, will be the conditions that prevail at the time of construction.  The Contractor shall be solely responsible for all assumptions, deductions, or conclusions the Contractor may make or derive from the subsurface information or data furnished.

Making information concerning subsurface conditions available to Contractor and other bidders is not to be construed in any way as a waiver of the Contractor's responsibility to examine the invitation for bids and site. Contractor must satisfy itself through its own investigation as to conditions to be encountered.

(b)  Utilities, underground.  All underground water, gas, oil, telephone, electric, storm drain, sewer, and other pipes or conduits, shown on the plans, are only approximate in their locations.  The Contractor shall make a personal investigation and inspection of the records and drawings possessed by owners of the utilities.  The Contractor shall make satisfactory arrangements with the owners of the utilities for the relocation, maintenance and protection of existing utilities.

(c)  Materials and equipment.  The City does not assume any responsibility for the availability of any materials or equipment required under this contract.  Unless otherwise specified in the invitation for bids, the bidder shall be considered as having taken into account when submitting a bid the availability of materials or equipment required under the contract, except as provided for in section 5.3, Delay; time extensions.

(d)  Estimated quantities.  All quantities appearing in the invitation for bids are approximate, and those indicated in the proposal are prepared for the comparison of bids only.  The City does not, expressly or by implication, warrant that the actual quantities will correspond therewith.  Contractor understands and has included in its bid prices, the entire cost of the performance of the contract, and it is understood and agreed that there is included in each lump sum or unit priced bid item, the entire cost of any and all items incidental to the performance of the contract covered by such lump sum or unit priced bid item.  By submittal of its bid, the Contractor certifies that it has verified these quantities in a manner deemed necessary or expedient.

2.2    **Contractor's Representations**. (a)   License.  Contractor represents that Contractor is a business entity which is experienced and skilled in the construction of projects of the type described in the contract and that Contractor is licensed by the State of Hawaii to engage in the type of construction required by the contract and is in compliance with all applicable laws and regulations precedent thereto.

(b)  Contractor's warranty.  By the act of submitting its bid for the proposed contract, the Contractor warrants that:
(1) The Contractor and all subcontractors intended to be used by the Contractor have carefully and thoroughly reviewed the invitation for bids and have found them complete and free from ambiguities and sufficient for the purpose intended;

RCI/Headworks
A03578

(2) The Contractor has investigated and examined carefully the site and the invitation for bids and understands the nature, location and character of the project and the site;

(3) The Contractor and all workers, employees and subcontractors intended to be used are skilled and experienced in the type of construction represented by the construction contract documents bid upon;

(4) Neither the Contractor nor any of the Contractor's employees, agents, suppliers or subcontractors have relied upon any verbal representations from the City, its employees or agents, including architects, engineers or consultants, in assembling the bid figure; and that

(5) The Contractor's bid price is based solely upon the invitation for bids and properly issued written addenda and not upon any other written or verbal representation, and based upon the Contractor's own examination and investigation of surface and subsurface conditions and availability of materials and equipment. Where quantities of any bid item differ from those specified in the bid proposal, for comparison of bids only, the quantities in the bid proposal shall govern.

(c) Independent price determination. By submitting a bid, the bidder certifies that the price submitted was independently arrived at without collusion. [HAR 3-122-192]

(d) Contractor's representations. The Contractor represents that:

(1) Contractor has no obligations, commitments or impediments of any kind that will limit or prevent performance of work as required by the contract; and

(2) To the best of its knowledge, there are no obligations, commitments or impediments of any kind that will limit or prevent performance of work as required by the contract.

## CHAPTER 3 - SCOPE OF CONTRACT

**3.1    Scope of contract.** (a) The scope of the contract encompasses the construction of the project described in the invitation for bids and related services and the furnishing of, and the payment for, all materials, tools, equipment, labor and incidentals necessary for the performance of such construction and services by the Contractor.

(b) Additional plans and specifications to be furnished by Officer-in-Charge. The Officer-in-Charge may furnish by written order such additional plans and specifications, during the performance of the contract, as may be necessary to clarify the contract or define it in greater detail, and the Contractor shall comply with such additional plans and specifications. Such additional plans and specifications shall become a part of the contract.

(c) Omission in contract. Work incidental to the contract although not specifically referred to in the contract shall be furnished and performed by the Contractor without change in the contract price. Labor, materials and equipment directly or indirectly necessary to complete the construction of the project, whether or not the same may have been expressly provided for in the contract, shall be furnished and performed by the Contractor without change in the contract price.

**3.2    Contractor to report errors or discrepancies.** (a) The Contractor shall notify the Officer-in-Charge in writing immediately upon discovery of any error, omission or discrepancy: (1) In the layout given by stakes;

(2) In points or instructions furnished by the Officer-in-Charge;

(3) Within the contract or any part thereof; or

(4) Between the plans and conditions on the site.

(b) Differing site conditions. The Contractor shall immediately, before such conditions are disturbed, notify the Officer-in-Charge of:

(1) Subsurface or latent physical conditions at the site differing materially from those indicated in the contract; or

(2) Unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the contract. [HAR 3-125-11]

RCI/Headworks
A03579

(c)  Utilities.  In the event the utilities are damaged or disturbed by the Contractor, the Contractor shall be held liable for the damaged or disturbed utilities under the following conditions:
(1)  Utilities were shown on the plan;
(2)  Utilities were located and exposed on the job as it progressed;
(3)  Utilities were pointed out to the Contractor in the field;
(4)  The Contractor should have been made aware of through the Contractor's diligent personal investigation and inspection of the records and drawings of owners of the utilities, supplemented by probing, actual digging, or by other means in the field if necessary, to have determined the actual locations of utilities with all their branch and services lines.
(5)  The Contractor's failure to exercise reasonable care in the performance of the work, whether or not shown on the plans.

The Contractor shall immediately notify the Officer-in-Charge of any disturbance or damage to a utility.

The Contractor shall, upon receiving instructions from the Officer-in-Charge, repair and restore the damaged or disturbed utilities to the preexisting condition at no cost to the City or the project.  Any damage claims due to the disruption of service caused by the utilities being damaged shall be paid by the Contractor, who shall save harmless the City from all suits, actions or claims of any character brought on account of such damage.

In the event utilities, which were not shown on the plans, not located or exposed on the job as the work progressed, not pointed out in the field, or not discovered through the Contractor's investigation and inspection of the records and drawings of owners of the utilities, supplemented by probing, actual digging, or by other means in the field if necessary, are damaged or disturbed by the Contractor, the Contractor shall not be held liable but shall notify the Officer-in-Charge immediately.  Upon instructions from the Officer-in-Charge, the Contractor shall repair all damages which shall be considered to be extra work.

Utilities which must be relocated due to construction and not so indicated in the invitation for bids shall be considered extra work.

(d)  Proceeding with performance.  After discovery of an error, omission, discrepancy or differing site condition as described in this section, the Contractor shall provide written notice of same in the manner and time prescribed above to the Officer-in-Charge.  The Contractor shall proceed with the performance of the contract only after receiving written approval or instructions from the Officer-in-Charge.

(e)  Adjustments of price or time for performance.  After receipt of such notice, the Officer-in-Charge shall promptly investigate the site, and if it is found that the conditions do materially so differ and cause an increase in the Contractor's cost of, or the time required for, performance of any part of the work under the contract, whether or not changed as a result of the conditions, an adjustment shall be made and the contract modified in writing accordingly.  Any adjustment in contract price made pursuant to this section shall be determined in accordance with section 3.3(c), Price adjustment.  [HAR 3-125-11]

(f)  Timeliness of claim.  No claim of the Contractor shall be allowed unless the Contractor has given the notice required in subsection (b) or subsection (c); provided, however, that the time prescribed therefore may be extended by the Officer-in-Charge in writing.  No claim shall be allowed if asserted after final payment under the contract.  [HAR 3-125-11]

(g)  Knowledge.  Nothing contained in this section shall be grounds for an adjustment in compensation if the Contractor had actual knowledge or should have had knowledge of the existence of such conditions prior to the submission of bids.  [HAR 3-125-11]

**3.3    Modifications.**  (a)  Authority.  Modifications that exceed ten per cent of the original contract price or are $25,000 or more shall be issued by the Officer-in-Charge only after approval of the Corporation Counsel and the Contracting Officer.

RCI/Headworks
A03580

For informal awards, the Officer-in-Charge shall authorize and approve all change orders, provided that the total of the original award plus any contingency fund and all change orders shall be under $25,000.

The limits specified herein refer to each work item and not the total of the change order. For the purpose herein, "work item" means the item or incidental items required to accomplish the work.

(b) Change orders. The Officer-in-Charge may at any time, without notice to any surety, issue a change order to make changes in the work within the scope of the contract as may be found to be necessary or desirable. Such changes shall not invalidate the contract or release the sureties, and the Contractor will perform the work as changed, as though it had been part of the original contract. Minor changes in the work may be directed by the Officer-in-Charge at no change in contract price or time.

Any change will be set forth in a change order or written order. Where such additional work is ordered in a written order other than a change order, the Officer-in-Charge will as soon as practicable issue a change order, provided that the Officer-in-Charge promptly and duly makes such provisional adjustments in payments or time for the direct costs of the work as changed as the Officer-in-Charge deems reasonable. In the absence of a change order or written order, the Contractor will not be entitled to payment for any such extra work.

Adjustments of price or time for performance. If any change order increases or decreases the Contractor's cost of, or the time required for performance of any part of the work under the contract, whether or not changed by the order, an adjustment may be made and the contract modified in writing accordingly. Any adjustment in contract price made pursuant to this section shall be determined in accordance with section 3.3(c), Price adjustment. [HAR 3-125-4]

On any price adjustment, Contractor shall submit detailed cost breakdowns in the format attached herein as Exhibit "F", for material, equipment and labor including additional or reduction in time, for the Officer-in-Charge's approval, **within ten working days** or within such further time as the Officer-in-Charge may allow, from the time the Contractor is informed of the work to be performed or of any changes. The substantiation shall include the Contractor's and subcontractor's cost breakdown to a level of detail acceptable to the Officer-in-Charge.

Should the Contractor delay or refuse to submit detailed cost breakdown for the changed work, the Officer-in-Charge may pay the Contractor in accordance with subsection (c).

(c) Price adjustment. Any adjustment in contract price made pursuant to the contract shall be determined in one or more of the following ways:
(1) By agreement on a fixed price adjustment before recommencement of the pertinent performance or as soon thereafter as practicable;
(2) By unit prices specified in the contract or subsequently agreed upon;
(3) Whenever there is a variation in quantity for any work covered by a line item in breakdown costs provided by the Contractor pursuant to contractual pre-work submittal requirements, by the Officer-in-Charge, at the Officer-in-Charge's discretion, adjusting the lump sum price proportionately;
(4) In such other manner as the parties may mutually agree; or
(5) At the sole option of the Officer-in-Charge, by the costs attributable to the event or situation covered by the change, plus appropriate profit or fee;
(6) In the absence of agreement between the parties, by a unilateral determination by the Officer-in-Charge of the costs attributable to the event or situation covered by the change, plus appropriate profit or fee, all as computed by the Officer-in-Charge in accordance with generally accepted accounting principles and applicable sections of chapters 3-123 and 3-126, HAR; or (7) By force account under section 6.1.

In determining the cost or credit to the City resulting from a change, the allowances for all overhead, extended overhead resulting from adjustments to contract time (including home office and field overhead) and profit combined, shall not exceed the percentages set forth below:

RCI/Headworks
A03581

(1) For the Contractor, for any work performed by its own labor forces, fifteen percent of the cost;
(2) For each subcontractor involved, for any work performed by its own forces, fifteen percent of the cost;
(3) For the Contractor or any subcontractor, for work performed by their subcontractors, seven percent of the amount due the performing subcontractor.
(4) Percentages for fee and overhead. Not more than three line item percentages for fee and overhead, not to exceed the maximum percentages shown above, will be allowed regardless of the number of tier subcontractors. [HAR 3-125-13]

(d) Variations in estimated quantities. Where the quantity of a pay item in the contract is an estimated quantity and where the actual quantity of such pay item varies more than fifteen per cent above or below the estimated quantity stated in the contract, an adjustment in the contract price shall be made upon demand of either party. The adjustment shall be based upon any increase or decrease in costs due solely to the variation above one hundred fifteen per cent or below eighty-five per cent of the estimated quantity. If the quantity variation is such as to cause an increase in the time necessary for completion, the Officer-in-Charge shall, upon receipt of a timely written request for an extension of time, prior to final payment of the contract, ascertain the facts and make such adjustment for extending the completion date as in the judgment of the Officer-in-Charge the findings justify. Any adjustment in the contract price shall be in accordance with section 3.3(c). [HAR 3-125-10]

(e) Cost or pricing data
(1) Application. For any adjustment exceeding $100,000, the Contractor shall submit cost or pricing data and certification of that data except as provided for in paragraph (3). Certification shall be in the form attached herein as Exhibit "H". For adjustments less than $100,000, the Officer-in-Charge may, upon written determination that the circumstances warrant submission of cost or pricing data, require cost or pricing data.

(2) Cost or pricing data defined. Cost or pricing data mean all facts as of the date of price agreement that prudent buyers and sellers would reasonably expect to affect price negotiations significantly. Such data are factual, not judgmental, and are therefore verifiable. They are facts that can reasonably be expected to contribute to the soundness of estimates of future costs and to the validity of determinations of costs already incurred including such factors as:
    (A) Vendor quotations;
    (B) Nonrecurring costs;
    (C) Information on changes in production methods and in production or purchasing volume;
    (D) Data supporting projections of business prospects and objectives and related operations costs;
    (E) Unit cost trends such as those associated with labor efficiency;
    (F) Make or buy decisions;
    (G) Labor union contract negotiations; and
    (H) Information on management decisions that could have a significant bearing on costs.
(3) Exceptions. Cost or pricing data are not required if the price is based on contract unit prices; adequate competition, as in receiving bids or quotations from various subcontractors or suppliers for changed work; established catalogue prices or market prices; or prices set by law or regulation. However, the Officer-in-Charge may request cost or pricing data if the Officer-in-Charge considers that such price is not reasonable.
(4) Submission of cost or pricing data and certification. Cost or pricing data shall be submitted to the Officer-in-Charge prior to beginning price negotiations. The Contractor shall submit certification of that data in the form attached herein as Exhibit "H", as soon as practicable after agreement is reached on price that the cost or pricing data submitted are accurate, complete, and current as of the date of reaching agreement on price. Certification constitutes a representation as to the accuracy of the data upon which the Contractor's judgement is based. A certificate of current cost or pricing data shall not substitute for examination and analysis of the Contractor's proposal.
(5) Defective cost or pricing data. If certified cost or pricing data are subsequently found to have been inaccurate, incomplete, or not current as of the date stated in the certificate, the City is entitled to an adjustment of the contract price, including profit or fee, to exclude any significant sum by which the price, including profit or fee, was increased because of the defective data.

RCI/Headworks
A03582

If the Contractor and the Officer-in-Charge cannot agree as to the existence of defective cost or pricing data or amount of adjustment due to defective cost or pricing data, the Officer-in-Charge shall set an amount in accordance with the provisions of subchapter 15, chapter 3-122, HAR, and the Contractor may appeal this decision as a contract controversy under chapter 3-126, HAR. [Subchapter 15, chapter 3-122, HAR]

(f)  Claims.  Upon receipt of a written order or change order, the Contractor shall proceed with the work.  Failure of the parties to agree to an adjustment shall not excuse a Contractor from proceeding with the contract as changed.  The right of the Contractor to dispute the contract price or time or both shall not be waived by its performing the work, provided however, that the Contractor follows the notice requirements for disputes and claims established by these general conditions.

If the Contractor does not agree with any of the terms or cost of the change order work, the Contractor shall, **within thirty days** after receipt of a written change order, unless such period is extended by the Officer-in-Charge in writing, file notice of intent to assert a claim for an adjustment.  The requirement for timely written notice cannot be waived and shall be a condition precedent to the assertion of a claim for change order work. No claim by the Contractor for an adjustment hereunder shall be allowed if written notice is not given prior to final payment under the contract, provided that in the absence of a change order, nothing herein shall restrict the Contractor's right to pursue a claim arising under the contract or for breach of contract.  [HAR 3-125-4]

No claim shall be made by the Contractor for any loss of anticipated profits because of any alterations, or by reason of any variation between the approximate quantities and the quantities of work as done.

3.4.    **Claims based on oral directives**.  (a)    Oral directives.  Any oral order, direction, instruction, interpretation or determination from the Officer-in-Charge which, in the opinion of the Contractor, causes any change, can be considered as a change only if the Contractor gives the Officer-in-Charge written notice of its intent to treat the oral order, direction, instruction, interpretation or determination as a change directive.  The written notice must be delivered to the Officer-in-Charge before the Contractor acts in conformity with the oral order, direction, instruction, interpretation or determination, but **not more than five days after** delivery of the oral order to the Contractor.  The written notice shall state the date, circumstances, whether a time extension will be requested, and source of the order that the Contractor regards as a change.  The written notice may not be waived and shall be a condition precedent to the filing of a claim by the Contractor.  Unless the Contractor acts in accordance with this procedure, any oral order shall not be treated as a change and the Contractor waives any claim for an increase in the contract time or contract price related to the work.  [HAR 3-125-16]

(b)  Acknowledgment of oral directive.  **Not more than five days after** receipt of the written notice from the Contractor, the Officer-in-Charge shall issue a change order for the subject work if the Officer-in-Charge agrees that it constitutes a change.  If no change order is issued in the time established, it shall be deemed a rejection of Contractor's claim for a change.  If the Contractor objects to the Officer-in-Charge's refusal to issue a change order, it shall file a written protest with the Officer-in-Charge **within thirty days after** delivery to the Officer-in-Charge of the Contractor's written notice of its intention to treat the oral order as a change.  In all cases the Contractor shall proceed with the work.  The protest shall be determined in accordance with the disputes provisions under section 8.6, of these general conditions.  [HAR 3-125-16]

3.5    **Value engineering incentive**.  (a)  Definitions.  As used herein:
"**Net savings**" means those savings in project costs realized by the City as the result of a value engineering change proposal after deducting the contractor's share of the cost savings.
"**Single contract**" means the single construction for which the cost savings is proposed.
"**Value engineering**" means an analysis of the requirements for the systems, equipment and supplies of the single contract for the purpose of achieving a net savings by providing less costly items than those specified without impairing any essential functions and characteristics as service life, reliability, substitutability, economy of operations, ease of maintenance, and necessary standing functions.
"**Value engineering change proposal**" means a cost reduction proposal based on value engineering submitted by the contractor pursuant to this section and particularly identified as such.

(b)  Applicability.  The provisions of this section shall apply to any City construction contract in excess of $100,000.  The application of value engineering incentives shall not be construed to have an effect on the solicitation or the selection of a Contractor.

The contractor may develop and submit value engineering change proposals for drawings, designs, specifications, or other requirements of the contract.  If any proposal is accepted and approved, in whole or in part, by the Officer-in-Charge, the contract shall be modified and shall include an equitable adjustment of the contract price in accordance with this section.

This section shall not apply to any cost reduction proposal that is not identified as a value engineering change proposal by the contractor at the time of its submission to the Officer-in-Charge.

(c)  General provisions
(1)  The processing of a value engineering change proposal shall be similar to that for any proposed contract change order and shall be considered only after the construction contract is awarded.
(2)  Nothing herein shall be construed to mean that the City must accept or approve any or all value engineering change proposals submitted in accordance with this section.  The Officer-in-Charge's interpretation and findings relative to the impairment of the functions or characteristics of the item or items covered by the value engineering change proposal shall be final.
(3)  Adjustment in contract prices and allowances for implementation costs shall be in accordance with this section and shall only be considered if and when the value engineering change proposal is approved by the Officer-in-Charge and Contracting Officer.  The receipt of the value engineering change proposal by the City or a verbal acceptance of a value engineering change proposal by any employee of the City will not obligate the City to accept the value engineering change proposal.
(4)  The Officer-in-Charge may impose, as a condition of acceptance of any value engineering change proposal, a requirement that the Contractor warrant the statements, claims and other information contained in the value engineering change proposal.  In addition, the contractor's responsibility under any such warranty shall be in addition to the liability imposed by the "guarantee of work" requirement as included in the contract.
(5)  The contractor shall be responsible for the new design of the facility or a portion of the facility submitted as a value engineering change proposal, including errors and omissions and, if the value engineering change proposal is for a portion of the facility, for any adverse impacts the new design may have on the unchanged portions of the facility.
(6)  Exhibit "J" titled "Value Engineering Change Proposal" may be used to initiate a value engineering change proposal.

(d)  Conditions for a value engineering change proposal.  A value engineering change proposal to a contract shall:
(1)  Result in an estimated net savings to the City in the project cost of at least four thousand dollars by providing less costly items than or using different construction methods from those specified in the contract without impairing any essential functions and characteristics as service life, reliability, substitutability, economy of operation, ease of maintenance, and necessary standardized features of the completed work;
(2)  Require, in order to be applied to the contract, a change order to the contract; and
(3)  Not adversely impact on the performance schedule or the contract completion date.

As a minimum, provide the following information:
(1)  A description of the difference between the existing contract requirements and the value engineering change proposal and the comparative advantages and disadvantages of each including durability, service life, reliability, substitutability, economy of operation, ease of maintenance, desired appearance, design, safety standards, impacts due to construction, and other essential or desirable functions and characteristics as appropriate;
(2)  An itemization of the requirements of the contract which must be changed if the value engineering change proposal is adopted and a recommendation as to how to make each change;

RCI/Headworks
A03584

(3)  An itemized estimate of the reduction in performance costs that will result from adoption of the value engineering change proposal or parts thereof taking into account the costs of implementation by the contractor, including any amounts attributable to subcontractors, and the basis for the estimate;

(4)  A prediction of any effects and impacts the value engineering change proposal would have on:  other costs to the City as the costs of City-furnished property, related items, and maintenance and operation over the anticipated life of the material, equipment, or facilities as appropriate; the construction schedule, sequence and time; and bid item totals used for evaluation and payment purposes;

(5)  A statement of the time by which a change order adopting the value engineering change proposal must be issued so as to obtain the maximum cost reduction during the remainder of the contract, noting any effect on the contract time; and

(6)  If previously submitted, the dates of any previous submissions, the contract numbers of those contracts for which it was submitted and the previous actions by the City, if known.

When in the judgment of the Officer-in-Charge, a value engineering change proposal alters the design prepared by a registered professional architect or engineer, the contractor shall ensure the changes to be prepared are by or under the supervision of a registered professional architect or engineer, and stamped and so certified.

A value engineering change proposal will be processed expeditiously and in the same manner as prescribed for any other proposal which would likewise necessitate issuance of a contract change order.  Unless and until a change order applies a value engineering proposal to a contract, the contractor shall remain obligated to perform in accordance with the terms of the contract and the City shall not be liable for delays incurred by the contractor resulting from the time required for the City's determination of the acceptability of the value engineering change proposal.  The determination of the Officer-in-Charge as to the acceptance of any value engineering change proposal under a contract shall be final.

The Officer-in-Charge may accept in whole or in part any value engineering change proposal submitted pursuant to this section by issuing a change order to the contract.  Prior to issuance of the change order to the contract, the contractor shall submit complete final contract documents similar to those of the original contract showing the accepted changes and the new design and features as well as the following:

(1)  Design calculations;

(2)  The design criteria used; and

(3)  A detailed breakdown of costs and expenses to construct or implement such revisions.

The change order will identify the final value engineering change proposal on which it is based.

When a value engineering change proposal submitted pursuant to this section is accepted under a contract, an equitable adjustment in the contract price and in any other affected provisions of the contract shall be made in accordance with this section and section 3.3, Modifications.  The equitable adjustment shall first be established by determining the effect on the Contractor's cost of implementing the change, including any amount attributable to subcontractors and to the City's charges to the Contractor for architectural, engineering, or other consultant services and the staff time required to examine and review the proposal.  The contract price shall then be reduced by fifty per cent of the net estimated decrease in the cost of performance.

The Contractor may restrict the City's right to use the data or information or both on any sheet of a value engineering change proposal or of the supporting data, submitted pursuant to this subsection, if it is stated on that sheet as follows:  "This data or information or both shall not be disclosed outside the City, or be duplicated, used, or disclosed, in whole or in part, for any purpose other than to evaluate this value engineering change proposal.  This restriction does not limit the City's right to use this data or information or both if obtained from another source, or is otherwise available, without limitations.  If this proposal is accepted by the City by issuance of a change order to the contract after the use of this data or information or both in such an evaluation, the City shall have the right to duplicate, use and disclose any data or information or both pertinent to the proposal as accepted, in any manner and for any purpose whatsoever, and have others so do."

GENERAL CONDITIONS (7/99)                              11                              RCI/Headworks
                                                                                      A03585

In the event of acceptance of a value engineering proposal, the City shall have all rights to use, duplicate, or disclose in whole or in part, in any manner and for any purpose whatsoever, and to have or permit others to do so, any data or information or both reasonably necessary to fully utilize such proposal.

Notwithstanding the provisions of this section, for any construction contract, the contractor shall not be precluded from making substitution requests in accordance with section 1.13, Brand name, model; substitutions, of the General Instructions. The Officer-in-Charge shall be the sole judge of whether a proposal is a value engineering change proposal or a substitution request.

(e) Preparation, evaluation and acceptance of value engineering change proposal. The contractor shall submit with each value engineering change proposal the information as required by this section and provide all additional information as may be required by the Officer-in-Charge to evaluate and implement the value engineering change proposal. The cost for preparing the value engineering change proposal shall be the contractor's responsibility, and will be part of the contractor's cost for implementing the change, and compensation shall be made only when the proposal is accepted by the City and the adjustment in contract price is made as provided for in this section.

If the services of the City's architect, engineer, or consultant is necessary to review and evaluate a value engineering change proposal, the cost therefor shall be paid for by the Contractor.

The evaluation and acceptance of all value engineering change proposals shall be in accordance with the requirements as listed in this section.

Each value engineering change proposal shall be evaluated as applicable to the particular project, and past acceptance on another City project for a similar item shall not be automatic grounds for approval.

(f) Value engineering sharing method. The method by which the Contractor will share a portion of the cost savings from an accepted value engineering change proposal shall be in accordance with subsection (d) and the following:
(1) The Contractor's share in cost savings shall be for the single contract only, and no consideration shall be made for future acquisition, royalty type payment, or collateral savings.
(2) The City may accept the proposed value engineering change proposal, in whole or in part. The Officer-in-Charge shall issue a contract change order or modify the contract to identify and describe the accepted value engineering change proposal. [Chapter 3-132, HAR]

**3.6    Contract not binding unless funds available.**  (a) No contract shall be binding or of any force and effect without an endorsement by the Director of the Department of Budget and Fiscal Services that there is an appropriation or balance of an appropriation over and above all outstanding contracts sufficient to cover the amount required by the contract. [HAR 3-122-102]

(b) Certification of a portion of funds. Notwithstanding the requirement for endorsement above, certification of a portion of the total funds required for a contract may be permitted when an immediate solicitation will result in significantly more favorable contract terms and conditions to the City than a solicitation made at a later date; provided that certification for partial funding shall be permitted only if the Director of the Department of Budget and Fiscal Services states in the certificate that the availability of funds in excess of the amount certified as available shall be contingent upon future appropriations or special fund revenues. All contracts partially funded shall be enforceable only to the extent to which funds have been certified as available. [HAR 3-122-102]

(c) Contracts involving Federal funds
(1) In any contract involving not only State or City funds but supplemental funds from the Federal government, or involving one hundred per cent Federal funds, this section shall be applicable only to that portion of the contract amount obligated and payable out of State or City funds; however, this shall be liberally construed so

as not to hinder or impede the City in contracting for any project involving financial aid from the Federal government.

(2) Unless otherwise specified, the Contractor, by submittal of a bid and acceptance of an award, agrees that payment of that portion of the contract amount that is supplemented or funded entirely by Federal funds shall be payable upon receipt of those Federal funds.  [HAR 3-122-103]

**3.7    Fiscal responsibility.** (a) Every contract modification, change order, or contract price adjustment under a contract shall be subject to prior written certification by the fiscal officer for funding the project or the contract, as to the effect of the contract modifications, change order or adjustment in contract price on the total project budget or the total contract budget.

(b) In the event that any contract modification, change order, or adjustment results in an increase in the total project budget or total contract budget, the Officer-in-Charge shall not execute or make any contract modification, change order, or adjustment in contract price unless sufficient funds are made available therefor, or the scope of the project or contract is adjusted so as to permit the degree of completion that is feasible within the existing project budget or contract project; provided, that with respect to the validity, as to the contractor, of any executed contract modification, or adjustment in contract price which the contractor has reasonably relied upon, it shall be presumed that there has been compliance with the section. [HAR 3-122-241]

**3.8    Assignment of contract; change of name.** (a) Assignment of contract. When in the best interest of the City and upon written consent by the Contracting Officer, a successor in interest may be recognized in an assignment agreement in which the transferor, the transferee and the City agree that:

(1) The transferee assumes all of the transferor's obligations;

(2) The transferor remains liable for all obligations under the contract but waives all rights under the contract as against the City; and

(3) The transferor shall continue to furnish, and the transferee, shall also furnish all required bonds. [HAR 3-125-14]

(b) Change of name. When a Contractor requests to change the name in which it holds a contract with the City, the Contracting Officer shall, upon receipt of a document indicating such change of name (for example an amendment to the articles of incorporation of the corporation), enter into an agreement with the requesting Contractor to effect such a change of name. The agreement changing the name shall be in the form attached hereto as Exhibit "I" and shall specifically indicate that no other terms and conditions of the contract are thereby changed. [HAR 3-125-14]

## CHAPTER 4 - PERFORMANCE

**4.1    Decisions of the officer-in-charge.** (a) Formal contracts. Any question or dispute concerning any provision of the contract which may arise during its performance shall be decided by the Officer-in-Charge; provided, that decisions on questions or disputes relating to default or termination of the contract, extra cost to the City where the cost is more than ten per cent of the original contract price or $25,000 or more, and payment, shall be made only with the approval of the Contracting Officer.

(b) Informal awards. The Officer-in-Charge shall decide on any question or dispute concerning awards made under small purchase procurement.

**4.2    Professional work.** The contract shall be performed in an orderly and professional manner in accordance with currently acceptable practice in Hawaii and shall be of the best quality, except as clearly specified otherwise.

**4.3    Commencement requirements.** (a)    Notice to proceed. Upon execution of the contract by the Contracting Officer, the Officer-in-Charge may schedule a preconstruction conference or issue a notice to proceed to the Contractor designating the official commencement date for performance of the contract.

GENERAL CONDITIONS (7/99)                    13                    RCI/Headworks
A03587

Unless otherwise specified in the invitation for bids, the notice to proceed shall be issued **within 60 days** after execution of the contract by the Director of the Department of Budget and Fiscal Services unless a later date is agreed to by mutual agreement. In the event that the notice to proceed is delayed beyond the 60 days or the time mutually agreed to, the contract amount may be adjusted in accordance with section 8.1, Suspension of work, or the Contracting Officer may, upon recommendation by the Officer-in-Charge, terminate the contract for convenience.

(b) Commencement of work. Unless otherwise specified by the Officer-in-Charge, the Contractor shall begin work **within ten working days** from the official commencement date and shall diligently prosecute the same to completion within the contract time allowed. The Contractor shall notify the Officer-in-Charge at least **three working days before** beginning work. At any subsequent suspension and resumption of work, the Contractor shall notify the Officer-in-Charge at least **twenty-four hours before** beginning actual operations.

Unless otherwise specified in the contract or in any written order, the Contractor shall not proceed with any part of the contract such as ordering of any equipment or materials, or performing any work prior to the official commencement date.

Unless otherwise provided for in these provisions or in the invitation for bids, the requirements in this section shall be considered incidental to the Contractor's performance of the contract.

(c) Shop drawings and other submittals
(1) Shop drawings. After receipt of the notice to proceed or other written order, the Contractor shall prepare and submit for acceptance in writing by the Officer-in-Charge, six prints of the shop drawings required by the contract, including fabricated materials, in the manner directed by the Officer-in-Charge. Shop drawings shall be finished plans, and shall be neat, legible and drawn to scale. Delays caused by the failure of the Contractor to submit shop drawings in a timely manner will not be considered as justifiable cause for extension of time. The Officer-in-Charge shall respond in writing **within thirty days** after receipt of any submittal, or resubmittal if corrections are required.

It shall be expressly understood that acceptance or approval by the Officer-in-Charge of the Contractor's shop drawings does not relieve the Contractor of any responsibility for accuracy of dimensions and details and for agreement and conformity of the shop drawings with the contract plans and specifications and that acceptance by the Officer-in-Charge is a general acceptance relating only to their sufficiency and compliance with the intention of the contract. The Contractor shall clearly identify and inform the Officer-in-Charge of any deviations from the contract documents at the time of submission and shall obtain the Officer-in-Charge's written acceptance of the specified deviation prior to proceeding with any work.
(2) The Contractor shall screen, stamp and sign all submittals before submitting them to the Officer-in-Charge for acceptance in writing. Submittals shall be identified by project title and appropriate specification section numbers or construction plan sheet numbers or both, and shall indicate all data necessary for evaluation. All nonapplicable data shall be blocked out and deviations from specifications shall be clearly marked and justified.
(3) Unless otherwise specified, the Contractor shall submit six prints of working or shop drawings to the Officer-in-Charge for acceptance as to method of construction and design prior to the commencement of the work under contract or the delivery to the project site of any equipment or material covered by the drawings, whichever is later. The Officer-in-Charge may require the drawings to be resubmitted as often as necessary to render them complete, legible and free from extensive corrections. If a resubmittal is required, the Officer-in-Charge shall return one print to the Contractor who shall make all the corrections or additions shown thereon. The Contractor shall then resubmit six prints of the corrected drawings for written acceptance by the Officer-in-Charge.
(4) No working or shop drawings that have been approved shall be changed without the written approval of the Officer-in-Charge. After acceptance, the Contractor may proceed with the parts of the project called for in such drawings.
(5) The Contractor shall submit for the acceptance of the Officer-in-Charge, other submittals as required by the contract.

RCI/Headworks
A03588

(d) Payment and performance schedules. **Within seven days** of the official commencement date or within such further time as the Officer-in-Charge may allow, the Contractor shall submit for acceptance in writing of the Officer-in-Charge:

(1) The performance schedule, unless otherwise specified in the specification, shall be of the critical path method (CPM) type or approved equal, in the form of a network diagram and activity listing. The schedule shall show in sufficient detail and in orderly sequence all activities, their description, duration, relationship and dependencies necessary to the completion of the contract. It shall contain, but not be limited to, the sequence of all operations including procurement and mobilization of equipment, plant and materials to complete the work within the contract period. If the schedule is not accepted, it shall be revised as directed by the Officer-in-Charge. Changes in the schedule shall be made only with the written acceptance of the Officer-in-Charge. The schedule shall be used as a basis for establishing major construction operations and as a check on the progress of the work performed under the contract. Claims by the Contractor for delays including related time extensions may be considered only if the initial performance schedule has been accepted by the Officer-in-Charge.

**Within seven days** after receipt of recommended revisions to the performance schedule, the Contractor shall submit a revised schedule to the Officer-in-Charge for acceptance. Progress payments will be withheld until final approval of the schedule. At all times the schedule shall represent the Contractor's plan for orderly completion of the work. Any changes to the schedule shall require the written acceptance of the Officer-in-Charge. The Contractor shall update the schedule within 15 days of acceptance of any change to the schedule or deviation of 30 days between the Contractor's performance and the accepted schedule.

(2) The Contractor's work week schedule, in days and hours that the Contractor intends to work. Changes to the schedule shall not be made without written acceptance by the Officer-in-Charge.

(3) Payment schedule. Together with the performance schedule, the Contractor shall submit for the Officer-in-Charge's acceptance, an estimated payment schedule which coincides with the performance schedule. The schedule shall include an itemized breakdown of lump sum items. The schedule shall list the anticipated monthly payment and shall be used by the City for project budgeting purposes: Revised payment schedules shall be submitted for acceptance by the Officer-in-Charge immediately on acceptance of revised performance schedules.

(e) Personal supervision. The Contractor, at all times, shall be present in person, or be represented by the Contractor's superintendent with authority to act for the Contractor in connection with the contract during the performance of the contract. The Contractor shall submit to the Officer-in-Charge prior to start of work, the name of the person charged with the responsibility of all work. Pursuant to section 8.1, Suspension of work, failure of the Contractor or its superintendent to be present at the job site may result in suspension of the work by the Officer-in-Charge.

(f) Contractor's place of business. The Contractor shall maintain, for the duration of the contract, a permanent place of business within the State where the Contractor may be served notice and legal process. Written notice may also be served on the Contractor or its superintendent on the project site personally, or via facsimile machine if the Contractor has one, or via mail to the local post office address or post office box. [HRS 444-14]

(g) Field office, field telephone

(1) Field office. If required in the invitation for bids, the Contractor shall provide a field office for the Officer-in-Charge at a location approved by the Officer-in-Charge. It shall be available **within seven days after** the commencement of the work under the contract. Unless otherwise specified in the invitation for bids, the field office shall be weatherproof and not less than one hundred twenty square feet in gross floor area. The aggregate window areas of the office shall not be less than ten per cent of the floor area, and one exterior door shall be provided with a keyed cylinder-type lock. The office shall be furnished with one drafting table having a dimension of not less than 3' x 6' and a stool, adequate plan racks and hangers, one desk, two chairs, shelves, a broom, telephone service, electric outlets, electric lighting, paper towels, paper cups, soap, toilet paper, and potable water and shall be maintained in good repair and in a clean and sanitary condition by the Contractor. If the office is not equipped with a water closet and lavatory, the Contractor shall make

RCI/Headworks
A03589

other arrangements to provide such facilities for the Officer-in-Charge. The Contractor shall comply with the requirements of the Land Use Ordinance of the City and County of Honolulu, relating to Special Permit Use and ADAAG. Payment for the field office shall be as specified in the invitation for bids.

(2) Field telephone. If required in the invitation for bids, the Contractor shall provide a field telephone for the Officer-in-Charge. Such field telephone shall be placed at a convenient and accessible location and housed in a box provided with a door which may be secured by a keyed cylinder-type lock. Payment for field telephone shall be as specified in the invitation for bids.

(h) Project sign. If required in the invitation for bids, the Contractor shall provide signs to identify the project. The signs shall be erected at locations approved by the Officer-in-Charge at the site of the project **upon commencement** of the work under the contract. Signs shall be properly erected and kept clean and legible. After completion of the work under the contract and final acceptance thereof, the Contractor shall remove the signs as the Contractor's property. Payment for the project signs will be as specified in the invitation for bids.

(i) Permits, licenses. The Contractor shall obtain all permits and licenses, pay all charges, fees, and taxes, give all notices and comply with all laws, ordinances, rules and regulations bearing on the conduct of the work as drawn and specified. These may include but not be limited to demolition permit, building permit, dumping charges, grading permit, excavation permit, traffic permit, community noise permit, City park right-of-entry permit, National Pollutant Discharge Elimination System (NPDES) permit and compliance with Rodent Control Requirements on Demolition of Structures and Clearing of Sites and Vacant Lots. All City building and grading permit fees are waived for the contract. All cost and work under this subsection shall not be paid for directly but shall be considered incidental and included in the bidder's bid prices for the various items of work.

(j) Surveys and construction stakes, lines and grades
(1) For projects of Design and Engineering Group and Mechanical/Electrical Design and Engineering, of the Department of Design and Construction:
(A) All lines, levels and elevations are to be laid out and checked by a surveyor or civil engineer licensed in the State at the Contractor's expense. The Contractor shall furnish a certificate or document signed by the surveyor or civil engineer certifying that the completed lines, levels, and elevations are in conformity with the contract. The Contractor shall verify all lines, levels, and elevations indicated in the contract before any excavation or construction begins.
(B) Any discrepancy shall be immediately brought to the attention of the Officer-in-Charge and any change shall be made in accordance with the Officer-in-Charge's instruction. The Contractor shall not be entitled to any additional payment if the Contractor fails to report the discrepancies before proceeding with work within the area affected by the discrepancies.
(2) For projects of Infrastructure Design and Engineering of the Department of Design and Construction:
(A) The Officer-in-Charge shall set bench marks and control points for the Contractor's guidance. The Contractor shall furnish all other land surveys and construction stakeout necessary for the completion and acceptance of the project. All survey work shall be laid out and checked by a surveyor or civil engineer licensed in the State at the Contractor's own expense. The Contractor shall furnish a certificate or document signed by the surveyor or civil engineer certifying that the completed lines, levels and elevations are in conformity with the contract.
(B) The Contractor shall verify all lines, levels and elevations indicated in the contract before any excavation or construction begins. Any discrepancy shall be immediately brought to the attention of the Officer-in-Charge and any change shall be made in accordance with his instruction. The Contractor shall not be entitled to any additional payment if the Contractor fails to report the discrepancies before proceeding with work within the area affected by the discrepancies.
(3) For projects of other agencies, the Officer-in-Charge shall furnish all land surveys, base lines and stakes for locating the principal parts of the project together with a suitable number of bench marks adjacent to the project site except when otherwise noted in the special provisions. Except when otherwise noted in the specifications, the Officer-in-Charge shall set construction stakes establishing lines and grades and bench marks for the Contractor's guidance. The Contractor shall notify the Officer-in-Charge **not less than two working days before** a need for stakes arises. Stakes which have been set at the project site shall not be disturbed without the approval of the Officer-in-Charge.

GENERAL CONDITIONS (7/99)                16                RCI/Headworks
                                                          A03590

(k) Water removal. The Contractor shall examine the site of the project and make all necessary arrangements with affected property owners for removal of water from the site. The Contractor shall provide a bridge or other means to prevent water, flowing into adjacent streets as a result of the Contractor's activities, from interfering with the traffic on such streets. The Contractor shall be responsible for all permits which may be required for removal of water from the site, including but not limited to the National Pollutant Discharge Elimination System (NPDES) permit. All costs under this subsection shall be considered incidental and shall be included in the bidder's bid prices for the various items of work.

(l) Electrical and water services. Unless otherwise specified in the invitation for bids, the Contractor, at its own expense, shall make arrangements for electrical and water services required for the performance of the contract.

(m) Traffic control
(1) The Contractor shall obtain the necessary permits from the City's Department of Transportation Services **prior to commencing operations.** The Contractor shall notify the Honolulu Police Department and the Honolulu Fire Department of the construction work in progress and the blocking of any street during construction. Warning signs of adequate size, wording, and construction shall be located and installed as directed by the City's Department of Transportation Services, and the Contractor shall abide by other directives which may be issued by the City's Department of Transportation Services to eliminate other traffic problems and hazards.
(2) Work on any City street or in any area adjacent to a City street where traffic is impeded shall be performed between the hours of 8:30 a.m. to 3:30 p.m., unless otherwise permitted by the City's Department of Transportation Services.
(3) Whenever possible, the Contractor shall maintain roadways suitable for two lanes of traffic while construction is in progress. Adequate traffic control as required by the approved permit shall be provided by the Contractor during working hours.
(4) When material excavated for substructure construction is placed adjacent to the trench or excavation, it shall be placed in such a manner as to economize space and minimize interference with traffic. If necessary, such material shall be confined by suitable bulkheads or other devices. If the street is not of sufficient width to hold excavated material without using part of an adjacent walkway, a passageway in compliance with the requirements of the ADA shall be provided and kept open at all times.
(5) When substructure excavations cross street intersections, safe crossings for vehicles and pedestrians shall be provided and maintained. Pedestrian crossings shall be of a safe nonslip material, be separate from vehicle crossing and be provided with handrails except in areas opened for vehicular traffic.
(6) During nonworking hours, all excavations on the roadway shall be covered with a safe nonskid bridging material and all excavations in the sidewalk area shall be covered with a safe, nonslip surface.
(7) The Contractor shall provide paved detours as necessary.
(8) A roadway may be closed only with the express permission of the City's Department of Transportation Services.
(9) The Contractor shall cooperate with the Officer-in-Charge, the City's Department of Transportation Services and other authorized persons in locating all warning signs, lights, walkways and detours required under this subsection. If the Contractor fails to promptly provide adequate warning signs, lights, walkways and detours, the Officer-in-Charge may provide them at the Contractor's expense. The Contractor shall pay the cost of such work to the City, or the City may deduct the cost from any moneys due the Contractor from the City.
(10) All costs under this subsection shall be considered incidental and shall be included in the bidder's bid prices for the various items of work.

(n) Locate and protect utilities. The Contractor shall make a personal investigation and inspection of the records and drawings possessed by owners of the utilities, and supplement such information by probing, actual digging, or by other means in the field if necessary to determine the actual locations of underground utilities and all branch and service lines. The Contractor shall make satisfactory arrangements with the owners of the utilities for the relocation, maintenance and protection of existing utilities and shall furnish the

RCI/Headworks
A03591

Officer-in-Charge with evidence in writing that satisfactory arrangements have been made, **not less than ten days** before the commencement of the parts of the project under the contract affecting such utilities.

**4.4**     <u>Contract, plans and specifications to be kept on site</u>. The Contractor shall keep a copy of the most current plans and specifications, contract and accepted shop drawings on the site of the project readily accessible for reference.

**4.5**     <u>Construction methods and equipment</u>. The Contractor shall use proper and efficient methods and equipment for the performance of the contract. All equipment furnished by the Contractor and used on the work shall be of such size and of such mechanical condition that the work can be prosecuted in an acceptable manner at a satisfactory rate of progress and the quality of work produced will be satisfactory.

**4.6**     <u>Access and Inspection</u>. (a)  Circumstances under which the City may perform inspections include but are not limited to, inspections of the Contractor's, its subcontractor's, or supplier's plant, or site of the project in order to determine:
(1)  Whether the standards set forth in section 1.1 of the General Instructions have been met or are capable of being met;
(2)  If the contract is being performed in accordance within its terms;
(3)  Whether the goods or services are acceptable by inspection of the goods or services;
(4)  The accuracy of cost or pricing data by audit of its books and records pursuant to section 3-122-175, HAR; or
(5)  Whether or not to debar or suspend a person from consideration for award of contracts pursuant to sections 3-126-11 through 3-126-18, HAR.  [HAR 3-122-166]

(b)  During the performance of the contract, the Contractor shall provide the Officer-in-Charge with proper and safe facilities for access to the site of the project and the shops of the Contractor, its subcontractors or suppliers. The Contractor, its subcontractor, or supplier shall provide without charge, all reasonable facilities and assistance for the safety and convenience of the person performing the inspection or testing. Such assistance may include but not be limited to installation of hoists and ladders necessary to inspect the plant or site of project.

(c)  The presence or absence of an inspector shall not result in the waiver of any requirements of the contract, nor shall any act, statement or omission by an inspector constitute or be deemed a change unless the procedure for changes is followed.

(d)  Other contractors of the City shall be permitted access to the site of the project when it is required for performance of their respective contracts.

(e)  Covered work
(1)  If a portion of the work is covered contrary to the request of the Officer-in-Charge or to requirements specifically expressed in the contract, it must, if required in writing by the Officer-in-Charge, be uncovered for the inspection and be replaced at the Contractor's expense without change in the contract time.
(2)  If a portion of the work has been covered which the Officer-in-Charge has not specifically requested to inspect prior to its being covered or is not expressly required by the contract to remain uncovered for inspection, the Officer-in-Charge may request to see such work and it shall be uncovered by the Contractor. If such work is in accordance with the contract, costs of uncovering and replacement shall, by appropriate change order, be charged to the City. If such work is not in accordance with the contract, the Contractor shall pay such costs unless the condition was caused by the City or a separate contractor in which event the City shall be responsible for payment of such costs.
(3)  The Contractor shall promptly correct work rejected by the Officer-in-Charge or failing to conform to the requirements of the contract, whether or not fabricated, installed or completed. The Contractor shall bear all costs of correcting such rejected work, including additional testing and inspections and compensation for any consultant services and expenses incurred by the City made necessary thereby.

RCI/Headworks
A03592

(4)  The Contractor shall remove from the site portions of the work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

(5)  If the Contractor fails to correct nonconforming work **within seven days**, or within the time specified in the written notice, the Officer-in-Charge may correct it in accordance with section 8.2.  If the Contractor does not proceed with correction of such nonconforming work within the  time fixed by written notice from the Officer-in-Charge, the City may remove it and store the salvable materials or equipment at the Contractor's expense.  If the Contractor does not pay the costs of such removal and storage **within ten days after** written notice, the City may upon ten additional days' written notice sell such materials and equipment at auction or at private sale and shall account for the proceeds thereof, after deducting costs and damages that should have been borne by the Contractor, including compensation for the any consultant services and expenses made necessary thereby.  If such proceeds of sale do not cover costs which the Contractor should have borne, the contract shall be reduced by the deficiency.  If payments then or thereafter due the Contractor are not sufficient to cover such amount, the Contractor shall pay the difference to the City.

(6)  The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the City or other contractors caused by the Contractor's correction or removal of work which is not in accordance with the requirements of the contract.

(7)  Nothing contained in this subsection shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the contract.  Establishment of the time period of one year as described in section 4.25, Guarantee, relates only to the specific obligation of the Contractor to correct work, and has no relationship to the time within which the obligation to comply with the contract may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct work.

4.7    Quality of materials and equipment.  (a)  Materials and equipment installed as part of any permanent construction shall be new, unless otherwise specified.  The contract contemplates the use of first-class materials and equipment throughout the performance of the contract, and it is agreed that any material for which no particular specification is given shall be of the highest quality of its class or kind.  For the purpose of this subsection, "new" shall mean purchased specifically for the project for which award was made.

(b)  Samples.  Whenever requested by the Officer-in-Charge, the Contractor shall furnish samples of materials to be used in the performance of the contract.  Said samples, if accepted, will be retained by the Officer-in-Charge and shall be used as the standard with which all alike materials furnished under the contract must conform.  The acceptance of any sample tested by the Officer-in-Charge or the failure of the Officer-in-Charge to require the furnishing of samples shall not relieve the Contractor from performing the work in accordance with the contract.

(c)  Samples and test specimens.  When required by the Officer-in-Charge, test specimens or samples of materials, appliances and fittings to be used or offered for use in the performance of the contract shall be prepared and furnished by the Contractor in such quantities and sizes as may be required for proper examination and tests, with information as to their sources.  The Contractor shall furnish additional test specimens and samples as directed.  Unless otherwise specified in the invitation for bids, samples, test specimens, and tests, shall be considered incidental to the Contractor's performance of the contract.

(1)  Test specimens and samples shall be submitted in ample time to enable the Officer-in-Charge to make such tests or examinations as may be necessary.  Laboratory tests and examinations made in a laboratory other than that of the City shall be at the expense of the Contractor.

(2)  Tests.  Tests specified by the contract, statute, regulation or ordinance shall be made and the costs thereof shall be borne by the Contractor unless otherwise provided for in such contract, statute, regulation or ordinance.  Such tests shall be conducted under the direction of the Officer-in-Charge and the Contractor shall repair any damage resulting therefrom.

(3)  In addition, the Officer-in-Charge may require such tests as deemed necessary to carry out the Officer-in-Charge's duties during the performance of the work under the contract.  When a test is required by the Officer-in-Charge, the Contractor under the direction of the Officer-in-Charge shall conduct such test and shall bear all of the costs, including the cost of tools, labor and materials necessary therefor.

RCI/Headworks
A03593