**4.8    Character of workers, methods and equipment**. (a) Skilled workers. The Contractor shall employ persons who possess the skill required to properly perform the work under the contract. When required by the Officer-in-Charge, whose decision shall be final, the Contractor shall replace any employee who lacks the skill to perform the work assigned to the employee or is discourteous or disorderly while performing such work. If acceptable to the Officer-in-Charge, a person who has been so replaced may be assigned other work on the project. Any such acceptance by the Officer-in-Charge shall not relieve the Contractor from performing the work in accordance with the contract.

(1) All workers must have sufficient skill and experience to perform properly the work assigned to them. All workers engaged in special work or skilled work such as bituminous courses of mixtures, concrete pavement or structures, electrical installation, plumbing installation, or in any trade shall have sufficient experience in such work and in the operation of the equipment required to properly and satisfactorily perform all work. All workers shall make due and proper effort to execute the work in the manner prescribed in the invitation for bids.

(2) Insufficient workers. Should the Officer-in-Charge find that the work is being performed with an insufficient number of workers, the Contractor shall be required to increase the number of workers on the project.

**4.9    Other contracts**. The Contractor shall coordinate its operations with those of other contractors who may be employed on adjacent or related projects of the City, shall avoid interference therewith, and shall cooperate with the other contractors so as to avoid unnecessary delay or hindrance in the performance of their respective contracts. Any difference or conflict which may arise between the Contractor and the other contractors of the City in regard to their projects shall be resolved by the Officer-in-Charge, whose decision shall be final and binding.

**4.10    Remedies**. The Officer-in-Charge, with the approval of the Contracting Officer, may take any action under section 8, Disputes and Remedies, deemed appropriate for failure of the Contractor to comply with the requirements of sections 4.3 through 4.9.

**4.11    Wages and hours**. (a) Contractors shall observe and comply with all the provisions of Chapter 104, HRS, relating to wages and hours of employees on public works. The Contractor shall pay all employees on any contract with the City, the minimum basic wage rate in conformance with applicable Federal and State laws.

(b) Minimum wages. The minimum wage shall be periodically increased during the performance of the contract in an amount equal to the increase in the prevailing wages for those kinds of work as periodically determined by the State Director of Labor and Industrial Relations. Notwithstanding the provisions of the original contract entered into, if the Director of Labor and Industrial Relations determines that the prevailing wage has increased, the rate of pay of laborers and mechanics on the contract shall be raised accordingly. No additional compensation shall be made to the Contractor for failing to consider increases of the minimum wage during the duration of the contract.

(c) Overtime work. No laborer or mechanic employed on the job site shall be permitted or required to work on a Saturday, Sunday, or a legal holiday of the State or in excess of eight hours on any other day unless the laborer or mechanic receives overtime compensation for all hours worked on a Saturday, Sunday, and a legal holiday of the State or in excess of eight hours on any other day. For purposes of determining overtime compensation under this subsection, the basic hourly rate of any laborer or mechanic shall not be less than the basic hourly rate determined by the Director of Labor and Industrial Relations to be the prevailing basic hourly rate for corresponding classes of laborer and mechanics on projects of similar character in the State.

(d) Certified payrolls. Two (2) certified copies of all payrolls shall be submitted weekly to the Officer-in-Charge. The Contractor shall be responsible for the submission of certified copies of the payrolls of all subcontractors. The certification shall affirm that the payrolls are correct and complete, that the wage rates contained therein are not less than the applicable rates contained in the wage determination decision of the Director of Labor and Industrial Relations attached to the contract, and that the classifications set forth for each laborer or mechanic conform with the work the laborer or mechanic performed.

(e)  Maintain payroll records.  Payroll records for all laborers and mechanics working at the site of the work shall be maintained by the Contractor and its subcontractors, during the course of the work and preserved for a period of three years thereafter.  The records shall contain the name of each employee, the employee's correct classification, rate of pay, daily and weekly numbers of hours worked, deductions made and actual wages paid.

(f)  Availability of Payrolls.  The Contractor shall make payroll records available for examination within ten (10) days from the date of a written request by a governmental agency or any authorized representative thereof. Any Contractor who: (1) fails to make payroll records accessible within ten days; (2) fails to provide information requested for the proper enforcement of this chapter within ten (10) days; or fails to keep or falsifies any record required under this chapter; shall be assessed a penalty as provided in section 104-22(b) of the HRS.

(g)  Violations.  If the Officer-in-Charge finds that any laborer or mechanic employed on the job site by the Contractor or any subcontractor has been or is being paid wages at a rate less than the required rate, or has not received the laborer's or mechanic's full overtime compensation, the Officer-in-Charge may take appropriate action in accordance with HRS 104-21, or the Contracting Officer may, upon recommendation of the Officer-in-Charge, by written notice to the Contractor, terminate the Contractor's right, or the right of any subcontractor, to proceed with the work or with the part of the work in which the required wages or overtime compensation have not been paid and may complete such or part by contract or otherwise, and the Contractor and its sureties shall be liable to the City for any excess costs occasioned thereby.

(h)  Post wage schedule.  The Contractor is required to post the applicable wage schedule in a prominent and easily accessible place at the job site.  The Contractor shall give to each laborer and mechanic employed under the contract a copy of the rates of wages required to be posted.

(i)  Federally funded or federally assisted projects.  On federally funded or federally assisted projects, the current federal wage rate determination in effect at the time of advertising for bids is incorporated as part of the contract, and both Federal and State wage rates shall apply.  Where rates for any class of laborers and mechanics differ, the higher rates shall prevail.  The minimum federal wage rates shall be those in the U. S. Department of Labor Wage Determination Decision and Modifications in effect ten days prior to the bid opening date.

 A copy of the wage rate determination, (including any additional classification and wage rate conformed under 29 CFR 5.5a(1)(ii) and Davis-Bacon poster (WH-1321) shall be posted at all times at the site of work in a prominent and accessible place where it can be easily seen by the workers.

Employee Interviews.  The Officer-in-Charge and the State of Hawaii Department of Labor and Industrial Relations may interview employees during working hours on the job.  Failure to allow employees to be interviewed may be assess penalties described under section 104-22(b) of the HRS.

(j)  Failure to comply.  Failure to comply with the requirements of this section may result in disqualification from bidding on future projects.

(k)  Inclusion in subcontract.  The Contractor shall include this section in every subcontract for work under this Contract.

4.12   **Safety and health**.  (a)  The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

(b)  Safety program.  The Contractor shall comply with chapter 396, HRS, relating to the standards of occupational safety and health and all applicable Federal, State and City laws and regulations, including but not limited to section 396-18, HRS, relating to safety and health programs for contractors for City construction projects where the bid amount is in excess of $100,000.

RCI/Headworks
A03595

(c) Responsibility. The Contractor shall designate a responsible member of its organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Officer-in-Charge.

(d) Safeguards, signs. The Contractor shall erect and maintain, as required by existing conditions and performance of the contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

(e) No loading. The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

(f) Emergency. In an emergency affecting safety of persons or property, the Contractor shall act, at its discretion, to prevent threatened damage, injury or loss. The Contractor shall notify the Officer-in-Charge in writing of such emergency and remedial steps taken as soon as reasonably feasible. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in section 3.3(c), Price adjustment and section 5.3, Delay; time extensions.

**4.13 Protection of pedestrians and vehicular traffic; access to property.** (a) Unless otherwise specified in the invitation for bids, the requirements in this section shall be considered incidental to the Contractor's performance of the contract.

(b) Safe passage and access to site. The Contractor shall employ such methods in the performance of the contract and provide such barriers, guards, temporary bridges, detours, notices, lights, warnings, and other safeguards as may be necessary to prevent injury to persons and property, and to provide safe access to property. The Contractor shall define the line of safe passage with suitable lights, wherever the public may have access to the site of the project, during the hours from one-half hour before sunset to one-half hour after sunrise. All passages and accesses shall be in conformance with the Americans with Disabilities Act and related regulations and guidelines. All traffic controls shall conform to the requirements of the Administrative Rules of Hawaii Governing the Use of Traffic Control Devices at Work Sites On or Adjacent to Public Streets and Highways adopted by the City Director of Transportation Services, Manual of Uniform Traffic Control Devices, U.S. Department of Transportation, Federal Highway Administration, and the current Traffic Code of the City.

(c) Traffic bridges. The Contractor shall provide proper traffic bridges where necessary so that all streets, roads, lanes, alleys, driveways, and garages will be accessible to traffic at all times. These bridges shall be constructed so that their decks are flush with the pavement, and maintained free from projecting nails, splinters, or rough edges. In lieu of the traffic bridges, the Contractor may use suitable steel plates. The bridges or steel plates shall be able to support all legal highway loads permitted by law and shall have a non-skid surface. Any steel plate edges shall be in conformance with accessibility requirements pursuant to the Americans with Disabilities Act and related regulations and guidelines.

(d) Public and private right-of-way. The Contractor shall provide safe access to property abutting the site of the project when the usual means of access are obstructed by the performance of the contract. The Contractor shall provide free access to water meters, water valves, and abutting public and private property. No material or obstruction of any sort shall be placed within twenty-five feet of any fire hydrant. Fire hydrants must be readily accessible to the fire department at all times. Special attention is called to private and public rights-of-way. Driveways shall be kept open unless the owners of the property using these rights-of-way are otherwise provided for satisfactorily. During the construction of driveways and driveway ramps, satisfactory access shall be provided by the Contractor for each driveway and driveway ramp. The accesses provided by Contractor shall conform with any and all accessibility requirements pursuant to the Americans with Disabilities Act and related regulations and guidelines.

RCI/Headworks
A03596

**4.14    Discovery of hazardous materials**. (a) Responsibility. The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the contract.

(b) Stop work. In the event the Contractor encounters on the site material or substances reasonably believed to be hazardous materials which have not been rendered harmless, the Contractor shall immediately stop work in the area affected and report the condition to the Officer-in-Charge in writing. The work in the affected area shall not thereafter be resumed except by written agreement of the City and the Contractor if in fact the material is a hazardous material and has not been rendered harmless. The work in the affected area shall be resumed in the absence of any hazardous materials, or when it has been rendered harmless, by written agreement of the City and the Contractor.

(c) Notice. The Contractor shall give any notices bearing on safety of persons or property or their protection from damage, injury or loss and any other required notices or reports and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities .

(d) Safeguards, signs. The Contractor shall erect and maintain, as required by existing conditions and performance of the contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent site and utilities.

(e) Dispute resolution. Subject to resolution by the dispute resolution procedures under section 8.6, the Contractor shall not be required pursuant to section 3.3(f) to perform without consent any work relating to hazardous materials.

**4.15    Environmental pollution and hazardous materials control**. (a) Environmental pollution prevention and hazardous materials control shall consist of the protection of humans and the environment from pollution during and as a result of construction operations under the contract. The control of environmental pollution and hazardous materials requires the consideration of air, water and land and involves noise, dust, and solid waste management as well as other pollutants. It is the responsibility of the Contractor to investigate and comply with all applicable hazardous materials laws, including but not limited to those relating to control and abatement. Unless otherwise specified in the invitation for bids, the requirements in this section shall be considered incidental to and part of the Contractor's performance of the contract.

(b) Explosives, hazardous materials. When use or storage of explosives or hazardous materials or equipment or unusual methods are necessary to perform work, before doing so, the Contractor shall notify the Officer-in-Charge in writing of the nature of the hazardous material, its intended use, intended duration of its presence on the premises and method of maintenance on the premises. The Contractor shall exercise utmost care in maintaining and using the explosive or hazardous material and carry on such activities under supervision of properly qualified personnel.

(c) Protection of land resources. Land resources within the project area and outside the limits of permanent work performed under the contract shall be preserved in their present condition or be restored to a natural condition that will not detract from the appearance of the surrounding area. Except in areas marked on the drawings to be cleared, the Contractor shall maintain and water trees in the construction area. Except in areas marked on the drawings to be cleared, the Contractor shall not deface, injure or destroy trees or shrubs nor remove or cut them without approval. Any tree or other landscape features scarred or damaged by the Contractor's equipment or operations shall be restored as nearly as possible to its original condition at the Contractor's expense.

(d) Water pollution. The Contractor shall comply with the provisions of Chapter 54, Water Quality Standards and Chapter 55, Water Pollution Control, of Title 11, Administrative Rules of the State Department of Health during all phases of work. The Contractor shall not pollute water resources including streams and drainage systems with fuel, oils, bituminous materials, calcium chloride, acids, construction wastes, wash waters, or

RCI/Headworks
A03597

other harmful materials. Surface drainage from cuts and fills whether or not completed and from borrow and waste disposal areas shall, if turbidity producing materials are present, be held in suitable sedimentation ponds or shall be graded to control erosion to meet acceptable limits. Objectionable construction discharges shall be processed, filtered, ponded or otherwise treated prior to their discharge into a waterway or drainage system. Disposal of any material, garbage, oil, grease, chemicals, trash, and other similar materials on areas adjacent to streams or drainage systems shall be subject to the acceptance of the Officer-in-Charge. Such acceptance shall not relieve the Contractor from obtaining permits and meeting any requirements under applicable statutes, ordinances, rules, regulations or guidelines.

(e)  Protection of fish and wildlife. The Contractor shall at all times perform all work in such a manner as to prevent any interference or disturbance to fish and wildlife.

(f)  Dust control. The Contractor shall maintain all excavation, embankment, stockpile and all other work within or adjoining the project site free from dust which would cause a hazard or nuisance. Sprinkling, chemical treatment, bituminous treatment, or similar methods will be permitted to control dust upon acceptance by the Officer-in-Charge. Sprinkling must be repeated at such intervals as to keep all pavements and disturbed areas at least damp enough to prevent dust nuisance at all times, and the Contractor shall have sufficient sprinkling equipment on the job. Wet cutting shall be required for cement masonry blocks, concrete and asphaltic concrete pavements unless attachments are used with dry cutting equipment to capture the dust created thereby. All grinding work shall be wet. No dry powder brooming will be permitted in unconfined areas-- vacuuming, wet mopping, wet sweeping, or wet power brooming may be used upon acceptance by the Officer-in-Charge.

(g)  Damages and loss. The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the contract) to property caused in whole or in part by the Contractor, a subcontractor, a sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under this section, except damage or loss attributable to acts or omissions of the City or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under section 7.2.

**4.16    Noise control.** (a) The Contractor shall comply with the provisions of Chapter 46, Community Noise Control for Oahu, of the State Department of Health, Administrative Rules. when required, the Contractor shall obtain a community noise permit.

(b)  Construction activities shall not create "excessive noise" when measured at or beyond the property line of the construction site for the hours before 7:00 a.m and after 6:00 p.m. of the same day.

(c)  Construction activities which emit noise in excess of 95 dBA at or beyond the property line of the construction site shall be restricted to the hours between 9:00 a.m. and 5:30 p.m. of the same day.

(d)  Construction activities which exceed 95 dBA at or beyond the property line of the construction site shall be prohibited on Saturdays.

(e)  Construction activities which exceed the "allowable noise levels" at or beyond the property line of the construction site shall be prohibited on Sundays and on the following holidays: New Year's Day, Dr. Martin Luther King, Jr. Day, President's Day, Memorial Day, Kamehameha Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, and Christmas Day.

**4.17    Rubbish disposal.** All unusable debris and waste materials shall be hauled away to an appropriate off-site dump area. However, with prior approval of the State Department of Health, burning may be permitted.

**4.18  Restoration and precautions**.  (a)  The Contractor shall protect property adjacent to the site of the project from damage and shall immediately restore property damaged by the Contractor to the condition it was in prior to the damage.  Unless otherwise specified in the invitation to bids, the requirements in this section shall be considered incidental to the Contractor's performance of the contract.

(b)  Buildings and other structures.  If the site of the project passes close to or under buildings and other structures, the Contractor shall protect all such buildings and structures by suitable means from any and all damages.

(c)  Dewatering
(1)  The Contractor shall be responsible for the water and its control and disposal during the construction of all work covered by the contract.  Dewatering shall be accomplished by suitable means.  The Contractor shall repair any and all damages to property including buildings, retaining walls, etc., resulting from such dewatering operation to the satisfaction of the owners of such property.  Dewatering shall be prohibited in areas subject to substantial damages to adjacent buildings and properties resulting from settlement due to dewatering.
(2)  All concrete pours shall be dewatered in accordance with applicable sections of the standard specifications.
(3)  The Contractor shall construct and maintain all cofferdams, drains, sumps, temporary diversions and protective works; and shall furnish, install, maintain and operate all necessary pumping and other equipment for dewatering the various parts of the work, regardless of the source of water.  The Contractor shall maintain a water-free foundation to properly perform the items of work and as directed by the Officer-in-Charge.  The Contractor shall maintain the work free from water for at least six hours following the placement of each unit of concrete, concrete unit masonry or concrete rubble masonry.  All temporary protective works shall be removed in a manner satisfactory to the Officer-in-Charge.

(d)  Pavement, curb and gutter.  The Contractor shall replace, restore and repair pavements, gutters, and curbings damaged or removed by the Contractor.

(e)  Fences.  The Contractor shall replace fences removed by the Contractor.  Precautions shall be taken to prevent livestock from escaping when fences enclosing them are removed.

(f)  Grass.  When lawns are disturbed by trenching, the area over the trench shall be carefully graded and replanted with similar grass spaced over the trench substantially similar to the condition it was in prior to the excavation.

(g)  Trees and shrubbery.  Trees and shrubbery which must be disturbed shall be transplanted under the direction of the owner or lessee of the property to some other site and, upon completion of the backfill, shall be replanted on the original site, to the satisfaction of the said owner or lessee.

(h)  Property marks.  The Contractor shall reference and replace marks, stakes, pipes, monuments of the property line, and similar objects which may be disturbed by the Contractor while performing the contract.  Any such replacements shall be certified by a surveyor licensed by the State of Hawaii.

(I)  Sidewalks, patios, driveways and other like concrete construction.  When trenches are to be made across concrete sidewalks, patios, driveways, and other like concrete construction, the Contractor shall make neat cuts in the concrete with pavement saws, or other means acceptable to the Officer-in-Charge, and shall thoroughly compact the backfill and reconstruct such construction with concrete similar to the existing construction.

(j)  Topsoil.  Where private land under cultivation is disturbed, the Contractor shall place the upper twelve inches of topsoil to one side, which shall not be mixed with the general excavated material.  After backfill has been made to within twelve inches of the surface, the topsoil shall be replaced.

RCI/Headworks
A03599

(k) Excavated material. Unless other specified, all excavated material shall become the property of the Contractor and shall be hauled from the jobsite to a disposal site acceptable to the Officer-in-Charge. Hauling of wet, dripping material over public streets is not be permitted.

(l) Walls, rock, and masonry. The Contractor shall replace rock and masonry walls removed by the Contractor.

**4.19    Historical and archaeological finds**. All items having any apparent historical or archaeological interest discovered in the course of construction activities shall be preserved. The Contractor shall leave the archaeological find undisturbed and immediately report the find to the Officer-in-Charge so that the proper authorities may be notified.

**4.20    Maintenance of site and final cleanup.** (a) The requirements in this section shall be considered incidental to the Contractor's performance of the contract.

(b) Maintenance of site. The Contractor shall maintain the site of the project in an orderly and clean condition, and shall at suitable intervals and upon completion of each phase of the project, remove accumulations of rubbish or refuse materials, surplus concrete, mortar and excavated materials not required or suitable for backfill. Washings from concrete mixers or mixing boxes shall not be deposited in the drainage or sewer system of the City or on paved streets. The Contractor shall keep the project and surrounding area neat and free of dirt and dust by periodic blading, power brooming, watering or other approved means.

(c) Removal. Upon completion and before final acceptance by the Officer-in-Charge of the work performed under the contract, the Contractor shall remove rubbish, surplus or discarded materials, falsework, forms, temporary structures, field offices, project signs, signs not a part of the project, and Contractor's equipment and machinery, and shall leave the site and ground occupied by the Contractor in connection with the performance of the contract in an orderly and clean condition. Buildings constructed, altered, or worked in by the Contractor in the performance of the contract shall be left "broom clean," and stains and other blemishes resulting from the Contractor's operations, such as dropped or splattered concrete or mortar and paint, shall be removed from floors, walls, ceilings, windows, and all other exposed surfaces.

**4.21    Laws, regulations**. The Contractor shall be fully informed of all present and new laws, regulations, and ordinances which affect the contract and the performance thereof, including but not limited to:
(1) Chapter 103, HRS, relating to expenditure of public money;
(2) Chapter 103D, HRS, relating to Hawaii procurement code;
(3) Chapter 104, HRS, relating to wages and hours of employees on public works;
(4) Chapter 378, HRS, relating to fair employment practices;
(5) Chapter 386, HRS, relating to worker's compensation;
(6) Chapter 396, HRS, relating to occupational safety and health; and
(7) Chapter 444, HRS, relating to licensing of contractors.

The Contractor shall comply with all such present and new laws, regulations and ordinances, including the giving of all notices necessary and incident to the performance of the contract. If any discrepancy or inconsistency is discovered between the contract and any such law, regulation, or ordinance, the Contractor shall forthwith report the same in writing to the Contracting Officer or the Officer-in-Charge.

**4.22    Partial acceptance of project**. The Officer-in-Charge may accept and place parts of the project in service as completed and the Contractor shall give proper access to such portions for this purpose.
Use by the public without permission of the Officer-in-Charge shall not in any way be construed as an acceptance of the work under the contract and shall not in any way relieve the Contractor from the Contractor's obligation under the contract.

**4.23    Responsibility of the contractor prior to acceptance**. (a) The Contractor shall repair, reconstruct, restore, and replace the work or any part thereof which is injured, damaged or vandalized prior to acceptance



of the work by the Officer-in-Charge, by any cause whatsoever, except damage to the work due to unforeseeable causes beyond the control of and without the fault or negligence of the Contractor, including but not restricted to acts of God, such as earthquakes, tsunamis, lava flows, and acts of the public enemy or governmental authorities.

(b) Occupancy prior to acceptance. The City may occupy or use any completed or partially completed portion of the work at any stage prior to acceptance when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the Contractor's insurer. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the City and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage if any, security, maintenance, air conditioning, utilities, damage to the project and insurance, and have agreed in writing concerning the period for correction of work and commencement of the guarantee required by the contract. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld.

(c) Inspection. Immediately prior to such partial occupancy or use, the Officer-in-Charge and Contractor shall jointly inspect the area to be occupied or used in order to determine and record the condition of the area.

(d) No acceptance of non-complying work. Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the project shall not constitute acceptance of work not complying with the requirements of the contract.

**4.24    Final inspection.** (a) Before notifying the Officer-in-Charge that the project is substantially complete including compliance with section 4.20, Maintenance of site and final cleanup, the Contractor shall inspect the project and test all equipment with all of its subcontractors. The Contractor shall also proceed to obtain the documents required under the Contract such as but not limited to:
(1) All written guarantees;
(2) All "as-built" drawings;
(3) All certified payroll affidavits if not submitted earlier;
(4) Certificate of plumbing and electrical inspection;
(5) Certificate of building occupancy;
(6) Certificate of soil and wood treatments;
(7) Certificate of water system chlorination;
(8) Maintenance service contract;
(9) Two (2) copies of a list of all equipment installed; or
(10) All operating and maintenance manuals for equipment installed.

(b) "Substantially complete" means:
(1) All utilities are connected and in working condition;
(2) All air conditioning and other major equipment are in acceptable working condition; and/or
(3) The building, structure, improvement, or site can be used for its intended purpose.

(c) After finding everything in order, the Contractor shall notify the Officer-in-Charge in writing that the project is substantially complete and ready for inspection.

(d) The Officer-in-Charge shall then make a determination as to whether or not the project is ready for inspection. If the Officer-in-Charge is not satisfied, the Contractor will be notified in writing of the items that require completion prior to inspection. After the Contractor complies with the Officer-in-Charge's instructions, the Contractor will again submit, in writing, a request for inspection.

(e) When the Officer-in-Charge determines that the project is substantially complete, a pre-final inspection will be conducted by the Officer-in-Charge along with representatives of other City agencies interested in the project, within seven days of receipt of the request from the Contractor.

RCI/Headworks
A03601

(f) If the pre-final inspection discloses only minor discrepancies, the Officer-in-Charge shall accept the project as substantially complete and issue in writing, a list of the discrepancies that need to be corrected including all documents required by the Contract, hereinafter referred to as the "punch list", **and the time** in which the Contractor must complete the punch list. The date of acceptance of the project as substantially complete shall signify the end of the contract completion time.

(g) The Contractor shall, **within seven days** after receipt of the punch list, proceed to complete the items on the punch list. Upon completion, the Contractor shall submit a written request for a final inspection, after which, if the Officer-in-Charge finds that all discrepancies are satisfactorily corrected, the Officer-in-Charge will accept the project as completed, hereinafter referred to as "final acceptance".

(h) Noncompliance. If the Contractor fails to proceed or complete the punch list within the specified times, the Officer-in-Charge may proceed to have such work performed at the Contractor's expense, and the Contractor's sureties will be liable therefor. The City shall be entitled to reasonable attorneys' fees, consultants' fees and costs necessarily incurred by the Contractor's refusal to complete the contract and to pay such costs of corrective work.

(I) Upon final acceptance, the Contractor shall be relieved of its responsibility in maintaining and protecting the work and site and for injury to persons or property. Release of final payment shall be as specified in section 6.6.

(j) Prior to release of final payment, the Contractor shall submit, **within thirty days after** final acceptance, or within such time as the Officer-in-Charge may allow, all remaining documents required by the Contract.

**4.25    Guarantee.** (a) This guarantee shall be deemed supplemented to guarantee provisions provided in other sections of the specifications for the individual units and systems of units so specified.

(b) Performance. The Contractor guarantees its performance and the performance of its subcontractors under the contract.

(c) Materials and equipment. The Contractor also guarantees all materials and equipment furnished or installed under the contract against defects and poor workmanship and to be in operable condition upon final acceptance of the work or portions of the work, and that all such materials and equipment conform to the requirements of this contract and be fit for the use intended.

(d) Design. When the Contractor is responsible for the design, the Contractor guarantees the design to meet the criteria and operating requirements specified and against failure to perform in accordance with such criteria and operating requirements.

(e) Guarantee period. Unless otherwise specifically stated in the invitation for bids that a longer period is intended, the guarantee shall commence upon final acceptance of the work by the Officer-in-Charge, and shall extend for a period of one year. The Officer-in-Charge may also determine the guarantee period to commence upon acceptance of the material or equipment installed, or work performed. Furthermore, this period shall be extended from the time of correction of any defect or failure, corrected under the terms of this guarantee, for a like period of one year. The Contractor shall provide a new certificate of guarantee for the extended one-year period.

(f) Correction. The Contractor shall correct all defects or failures discovered within the guarantee period. The City will give the Contractor prompt written notice of such defects or failures following their discovery. The Contractor shall commence corrective work **within seven days** following notification and shall diligently prosecute such work to completion. The Contractor shall bear all costs of corrective work, which shall include necessary disassembly, transportation, reassembly and retesting, as well as repair or replacement of the defective materials or equipment and any necessary disassembly and reassembly of adjacent work.

RCI/Headworks
A03602

(g) Noncompliance. If the Contractor fails to perform corrective work in the manner and within the time stated, the City may proceed to have such work performed at the Contractor's expense, and the Contractor's sureties will be liable therefor. The City shall be entitled to reasonable attorneys' fees, consultants' fees and costs necessarily incurred by the Contractor's refusal to complete the contract and to pay such costs of corrective work.

(h) Performance bond. Unless otherwise specifically stated in the invitation for bids that a longer period is intended, the performance bond shall be in full force and effect for the duration of the contract and for a period of one year after final acceptance of the contract by the Officer-in-Charge.

(I) Rights and remedies. The rights and remedies of the City under this provision do not preclude the exercise of any other rights or remedies provided by this contract or by law with respect to unsatisfactory work performed by the Contractor.

**4.26    Joint contractor, subcontractor.** (a)   The Contractor shall comply with HRS 103D-302, relating to the listing of joint contractors or subcontractors. [HAR 3-122-21]

(b) Specialty work. Joint contractors and subcontractors may perform only the specialty work for which they are listed.

(c) Changes. The Contracting Officer, upon recommendation by the Officer-in-Charge, or for informal bids, the Officer-in-Charge alone, may allow changes to the original listing of joint contractors and subcontractors only if justified by the Contractor for reasons such as the joint contractor or subcontractor:
(1) Files a petition in bankruptcy or is the subject of an involuntary petition in bankruptcy which is not dismissed within ten (10) days of filing;
(2) Is not performing in accordance with the subject contract;
(3) Is to perform additional work for which a joint contractor or subcontractor was not required to be listed in the bid proposal; or
(4) For any other reason that the Contracting Officer or the Officer-in-Charge may consider justified.

(d) Subcontractual relations. The Contractor shall be responsible under the contract for the acts and omissions of the its subcontractors, suppliers, and persons either directly or indirectly employed by them, as fully as the Contractor is for acts and omissions of its own employees. Nothing in the contract shall create any contractual relation between any subcontractor or supplier and the City, or any obligation on the part of the City to pay any money to, or cause to be paid any money from any subcontractor or supplier.

## CHAPTER 5 - TIME AND DELAYS

**5.1    Time.** Time is of the essence of the contract. Performance of the contract shall be commenced on the commencement date designated in the notice to proceed and shall be completed within the number of days specified in the contract.

**5.2    Overtime work.** (a) Written request. If the Contractor wishes to work at such time of the day which is during the period other than the regular business hours of the City, or on a Saturday, Sunday, or legal State holiday, the Contractor shall make a written request for inspection services during such period.

(b) Notice. If such a request is made and granted, the Contractor shall notify the Officer-in-Charge **not less than twenty-four hours in advance** of the time when such inspection services are required. The Contractor shall pay the City in accordance with section 41-19.1, ROH, at the rate for the current fiscal year set by the Director, Department of Budget and Fiscal Services, or in the event that the City has retained a private construction manager, the Contractor shall pay the rate established by the private construction manager.

RCI/Headworks
A03603

(c) Invoice
(1) City inspector. The City shall invoice the Contractor for overtime inspection services rendered by City inspectors.
(2) Private construction manager. The private construction manager will invoice the Contractor at the construction manager's established rate for overtime inspection.

**5.3    Delay; time extensions.** (a) Permits. For delays in obtaining the necessary building and/or grading permits which are extraordinary and beyond the control of the Contractor and will result in a delay of the commencement of work, the Contractor may be granted an extension of time for the performance of the contract corresponding to the delay, provided the Contractor notifies the Officer-in-Charge **immediately** upon first encountering the delay. The Contractor shall keep the Officer-in-Charge informed as to the estimated length of the requested delay.

(b) Increases in scope of work. For increases in the scope of work caused by alterations and additional work under section 3.3, Modifications, the Contractor will be granted an extension of time only if the changes are on the critical path and affect the final completion date of the contract. If the Contractor feels that an extension of time is justified, the Contractor must request it in writing when submitting the detailed cost breakdown for the change order. The Contractor must show how the final completion date will be affected based on the progress of the project and must also support the claim with schedules and statements from its subcontractors, suppliers, and/or manufacturers as to the extent of the delay.

(c) Delivery of materials and equipment.
(1) For delays in delivery of materials and equipment which occur as a result of unforeseeable causes beyond the control and without fault or negligence of both the Contractor and subcontractors or suppliers, the Contractor may be granted an extension of time provided that the Contractor complies with the procedures herein. No extension of time will be considered unless the material and equipment were ordered at the earliest possible date.
(2) No extension of time shall be granted for a delay caused by a shortage of materials unless the Contractor, **within ten days** from the beginning of the delay (unless the Officer-in-Charge grants a further period of time before the date of final payment under the contract), notifies the Officer-in-Charge in writing of the delay and submits proof that the Contractor has diligently made every effort to obtain the materials from all known sources, and further proof that the inability to obtain the materials when originally planned did in fact cause a delay in final completion of the entire work which could not be compensated for by revising the sequence of the Contractor's operations. [HAR 3-125-18]
(3) The extent of delay must be substantiated as follows:
    (A) State specifically the reason or reasons for the delay. Also, explain as necessary, the effect of this delay to the other trades and to the specified completion date of the project.
    (B) List the pertinent chronological events and their dates, for the project such as the following:
    (I)    Notice to proceed
    (ii)   Sample or shop drawing  submittal
    (iii)  Sample or shop drawing return
    (iv)   Purchase order
    (v)    Factory shipment
    (vi)   Arrival of ship
    (vii)  Delivery to job site
    (viii) Material installation
    (ix)   Specified completion of project
    (x)    Actual completion of project
    (xi)   Pertinent correspondence, telegrams, meetings and  telephone conversations.
    (C) Submit copies of purchase order, factory invoice, bill of lading, shipping manifest, delivery tag and any other pertinent correspondence as evidence to support the delay.
    (D) Cite the period of delay and the number of days requested therefore. The period of delay shall not exceed the difference between the originally scheduled delivery date at the job site versus the actual delivery date.

GENERAL CONDITIONS (7/99)                    30

(d)  Other unforeseeable delays.  If any delay in the completion of the work arises from causes such as acts of God; acts of the public enemy; acts of the City and any other governmental entity in either a sovereign or contractual capacity; acts of another contractor (but not the Contractor's subcontractor) in the performance of a contract with the City; fires; floods; epidemics; quarantine restrictions; strikes or other labor disputes; freight embargoes; unusually severe weather; or delays of subcontractors due to causes similar to those set forth above, then the Contractor shall be granted an extension of time provided that:

(1)  The Contractor shall notify the Officer-in-Charge in writing, **within ten days** from the commencement of the delay (unless the Officer-in-Charge grants a further period of time before the date of final payment under the contract), of the causes of the delay and, if possible, the possible effects such circumstances may have on the completion date of the contract.  Upon becoming aware of the extent of any such delay, the Contractor shall immediately inform the Officer-in-Charge in writing.  [HAR 3-125-18]

(2)  The extent of any delay must be substantiated as follows:

(A)  State specifically the reason or reasons for the delay.  Also, explain as necessary, the effect of this delay to other trades and to the specified completion date of the project.

(B)  List the pertinent chronological events for the project and their dates, such as the following:
(i)    Notice to proceed
(ii)   Samples or shop drawing submittal
(iii)  Sample or shop drawing return
(iv)  Purchase order
(v)   Delivery to job site
(vi)  Material installation
(vii)  Specified completion of project
(viii) Actual completion of project
(ix)  Pertinent correspondence, telegrams, meetings and telephone conversations.

(C)  Submit copies of purchase orders, delivery tags, and any other pertinent correspondence as evidence to support claim.

(D)  Cite the period of delay and the number of days requested therefore.

(E)  A statement either that the above circumstances have been cleared and normal working conditions restored as of a certain day or that the above circumstances will continue to prevent completion of the project.

(e)  Other work.  For subsections (b), (c), and (d), the Officer-in-Charge shall have the option of extending the contract time for only that portion of the work affected by the delay.  If the Officer-in-Charge exercises this option, the Contractor shall defer work in the areas approved by the Officer-in-Charge and complete the remaining work within the time specified in the contract.

(f)  Suspension.

(1)  When the performance of work is totally suspended by the Officer-in-Charge for one or more days in accordance with paragraphs (1), (2), (3), or (5), of section 8.1, the contract completion date shall be revised accordingly.

(2)  During periods of partial suspensions of the work, the Contractor will be granted an extension only if the partial suspension affects the final completion date of the contract.  If the Contractor feels that an extension of time is justified, the Contractor must request it in writing **at least five working days before** the partial suspension will affect the critical operations in progress.  The Contractor must show how the final completion date will be affected based on the progress of the project and must also support his claim with statements from his subcontractors.

(3)  Evaluation.  The Officer-in-Charge shall evaluate all time extension requests and shall ascertain the facts and extent of the time involved and the Officer-in-Charge's findings of the facts thereof shall be final and conclusive.

(4)  No time extension will be considered for the following:

(A)  Delays or suspension of work due to the fault of the Contractor, including the causes listed in paragraph (2) of section 8.1(a).

(B)  Delays in arrival of materials and equipment due to the fault of the Contractor, its subcontractor or supplier in ordering, fabricating, delivery, etc.

RCI/Headworks
A03605

(C) Delays caused by changes which the Officer-in-Charge determines unjustifiable due to the lack of supporting evidence or because the change is of such nature that the final completion date will not be affected.

(D) Delays caused by the failure of the Contractor to submit, on a timely basis, for approval by the Officer-in-Charge, shop drawings descriptive sheets, material samples, color samples, etc. except as covered in sections 5.3(c) and 5.3(d).

(E) Failure to submit requests for clarification on a timely basis to avoid impacting the project schedule.

(F) Delays of weather unless unusually severe weather, or unless determined by the Officer-in-Charge to be justified.

(g) Additional rights and remedies. The rights and remedies of the City provided in the contract are in addition to any other rights and remedies provided by law. [HAR 3-125-18]

## CHAPTER 6 - PAYMENT

**6.1    Force account.** (a) When the Contractor and the Officer-in-Charge cannot agree to the price adjustment of any change in work, the Officer-in-Charge may, in accordance with section 3.3(c), Price adjustment, require that the work be performed under force account until such time that an equitable adjustment can be agreed to by both parties, provided that the Officer-in-Charge promptly and duly makes such provisional adjustments in payment or time for performance as may be reasonable.  Payment for work under force account shall be as follows: [HAR 3-125-4, 3-125-13]

(b) Allowable costs. In force account, cost shall be the sum of the costs of the following:

(1) Labor. The Contractor shall receive the current wage rate including subsistence, travel allowance, and fringe benefits for actual work engaged by the hourly worker and foreman in charge of the specific force account work. Subsistence, travel allowance, and fringe benefits are the required amounts established by the State Department of Labor and Industrial Relations, any collective bargaining agreement and other employment contract generally applicable to the classes of labor employed. The Contractor shall submit the subsistence, travel allowance, and fringe benefits for each class in writing to the Officer-in-Charge for acceptance before the force account work begins. The wages for labor shall not exceed the rate of wages paid for similar labor performed under the contract, as evidenced by the record of the Contractor's payroll on file with the Officer-in-Charge.

For salaried workers, the Officer-in-Charge will determine the hourly wage rate by dividing the monthly salary plus benefits by one hundred seventy-six hours. The Officer-in-Charge shall authorize salary workers to perform the work.

An amount not to exceed fifteen per cent of the actual labor cost will be paid the Contractor. [HAR 3-125-13]

For overtime work, payment will be for one and a half times the hourly wage rate plus the actual hours of overtime for fringe benefits, and/or as required by any collective bargaining agreement. For authorized salaried workers, payment will be for the hourly wage rate times the actual hours of overtime.

(2) Insurance and tax. The Contractor will receive the projected average rate for the required insurance including property damage (excluding builder's risk), liability, workers compensation insurance premiums, State unemployment contributions, Federal unemployment taxes, social security and medicare taxes to which six per cent may be added.

The Contractor shall submit the projected average rate for taxes and insurance premium for the applicable current year for acceptance by the Officer-in-Charge.

(3) Materials. The Contractor will receive the actual cost of materials accepted by the Officer-in-Charge and entering permanently into the work under the contract including transportation charges as shown by the invoices submitted to the Officer-in-Charge.

For stock materials, used and incorporated into the work, the Contractor shall receive the actual cost as certified by the Contractor to the cost paid by the Contractor. The Officer-in-Charge will include transportation charges and taxes paid by the Contractor.

An amount not to exceed fifteen per cent of the total cost of materials will be paid the Contractor. [HAR 3-125-13]

(4) Machinery and equipment, other than small tools and minor equipment, which may be necessary or desirable to perform the work. The Officer-in-Charge may reject any machinery or equipment which the Officer-in-Charge deems unnecessary, inefficient or inadequate for the work to be performed. The term "small tools and minor equipment" shall include individual equipment or tools having a replacement value of two hundred fifty dollars or less, whether or not they are consumed in the use thereof.

(A) The rate shall be the per-hour rental rate based on the monthly rate established for said machinery or equipment in the then-current edition of the Rental Blue Book for Construction Equipment including the estimated operating cost per hour, and regional correction provided therein.

The hourly rate will be determined by dividing the monthly rate by one hundred and seventy-six. The rate includes the estimated operating cost per hour and the regional correction factor.

If no rate is listed for a particular kind, type or size of machinery or equipment, then the monthly, hourly rate shall be as agreed upon in writing by the Contractor and the Officer-in-Charge prior to the use of said machinery or equipment. The Contractor shall provide proof of the rental rates charged.

(B) For trucks not owned by the Contractor, rental rates as those established under the Hawaii State Public Utilities Commission will be used to determine the cost and will be paid for as a material item under paragraph (3).

(C) For Contractor-owned trucks not listed in the Rental Rate Blue Book, the rates shall be as agreed upon in writing by the Contractor and the Officer-in-Charge prior to the use of said trucks.

(D) Rental rates which are higher than those specified in the Rental Rate Blue Book may be allowed where such higher rate can be justified by job conditions such as work in water, on lava, etc. Request for higher rate shall be submitted in writing to the Officer-in-Charge for approval prior to the use of the machinery or equipment in question.

(E) All rental rates for machinery and equipment shall include the cost of fuel, oil, lubricants, supplies, small tools, necessary attachments, repairs, maintenance, tire wear, depreciation, storage, and all other incidentals.

(F) Transportation and/or mobilization

(i) The location from which the equipment is to be moved or transported shall be approved by the Officer-in-Charge.

(ii) Payment will be made for mobilizing and transporting the equipment or machinery to the force account work site, including loading and unloading, and back to its original location or other site, whichever cost is less. The cost of transportation shall not exceed the rates established by the Hawaii State Public Utilities Commission. If rates are nonexistent, then the rates will be determined by the Officer-in-Charge based upon the prevailing rates charged by established haulers within the locale.

(iii) Payment for self-propelled equipment or machinery will be for the cost of moving the equipment by its own power to the force account work site and back to the original location or other site, whichever cost is less.

(iv) When transporting equipment or machinery by other than its own power, payment shall be made for the transporter, if owned by the Contractor, at the hourly rate including the estimated operational rate and the applicable regional correction factor. Payment for the transporter, if not owned by the Contractor, shall be by invoice cost and paid for as a material item. Payment for the equipment or machinery shall be at the rate of "idle time" under (G).

(v) Payment for mobilization and transportation will not be made if the equipment or machinery is used on the work in any other way than upon extra work paid for under force account.

(G) Rental period

(i) Idle time. Idle time herein means the period in which the machinery or equipment designated for the specific force account work is not in use for the work. The time period shall be for a working day (8 hours). Payment shall be fifty per cent of the hourly rate excluding the estimated operational cost per hour per working day.

(ii)  Standby time.  Standby time herein means the period in which the machinery or equipment are standing by for the specific force account work day.  A work day shall not exceed eight hours (standby time plus the operating time) unless the Officer-in-Charge authorizes the overtime.  Payment shall be at the hourly rate including the estimated operational cost per hour per working day.

(iii)  The rental period shall begin at the time equipment reaches the site of work, shall include each day that the machinery or equipment is at the site of the work and shall terminate at the end of the day on which the Officer-in-Charge directs the discontinuance of the use of the machinery or equipment.

(iv)  Less than thirty minutes of operation will be considered a half hour of operation.

(v)  Rental time will not be allowed or credited for any day on which machinery or equipment is inoperative due to its breakdown.  On such days, the Contractor will be paid only for the actual hours that the machinery or equipment was in operation.

(vi)  When force account work is completed within less than 8 hours, payment shall be for 8 hours.

(vii)  For the purpose of determining the rental period, the continuous and consecutive days shall be the normal 8-hour shift work day, Monday through Friday excluding Saturday, Sunday, and legal holidays.  Any work day to be paid less than 8 hours shall not be considered as continuous, except for equipment removed from rental for fuel and lubrication.

(viii)  Overtime shall be paid for each hour in excess of the normal 8-hour shift work day at the corresponding hourly rate for daily, weekly, and monthly rates.

(5)  Bond.  A bond allowance up to one per cent will be added to the total sum of paragraphs (1) through (4).

(6)  State excise tax.  State excise tax not to exceed 4.166% will be added to the total sum of paragraphs (1) through (5).

(7)  When work is performed by a subcontractor who has been approved pursuant to section 1.18 of the General Instructions or 4.26 of these General Conditions, the Contractor will receive an additional amount equal to seven per cent of the total cost of paragraphs (1) through (5), to which there shall be added the State excise tax.

(8)  Percentages for fee and overhead.  Not more than three line item percentages for fee and overhead, not to exceed the maximum percentages shown in subsection 3.3(c), will be allowed regardless of the number of tier subcontractors. [HAR 3-15-13]

(9)  Payment for the above shall be deemed payment in full for work done under force account including superintendence, overhead, use of tools, machinery and equipment for which no rental is allowed, profit, taxes, subcontracting and other costs in connection therewith which are not provided for herein.  **No payment will be made until itemized records along with receipted invoices and appropriate documents have been submitted and approved.**

(c)  Records.  The Contractor shall submit records of the above to the Officer-in-Charge at the end of each day on Daily Force Account Report sheets (Form DF-49), Exhibit "G", issued by the Officer-in-Charge.  Such records submitted shall be subject to the approval of the Officer-in-Charge as evidenced by the Officer-in-Charge's signature thereon.  The Contractor shall submit a statement covering the cost of all of the above items not later than the tenth day of the month following the month in which the costs were incurred.

**6.2    Payment.**  (a)  The Contractor shall be paid the contract price as full compensation for the performance of the contract.  Should there be a discrepancy between the basis of payment outlined in the standard specifications and that called for in the Contract, the Contract shall govern.  If an error, omission or misstatement shall be discovered in the quantities or measurements stated in the Contract, the same shall not vitiate the contract, or release the Contractor or his surety or sureties from performing the contract, or affect the price agreed to under the contract, or excuse the Contractor from any of the obligations or liabilities under the contract, or entitle him to damages or compensation, except as provided herein.

(b)  Lump sum contracts.  For lump sum contracts, the contract price shall be the result obtained by first reducing the amount designated as the total sum bid in the award by the amount included therein for allowances and contingencies, and adding thereto or deducting therefrom any extra cost or any reduction in cost, respectively to the City as a result of supplemental agreements in writing and written orders.

RCI/Headworks
A03608

(c) Unit priced items. Payment shall be made for the actual quantities of units incorporated into the contract multiplied by the unit prices of the contract items, provided that where the quantity of any item varies more than fifteen per cent above or below the estimated quantity stated in the contract, payment shall be made at the adjusted unit price in accordance with section 3.3(d), Variations in estimated quantities.

(d) Allowance items. Payment for allowance items shall be included in the monthly estimate for progress payment upon submittal of paid invoices. Unless otherwise specified in the invitation for bids, the Contractor shall be reimbursed from the allowance items as follows:
(1) For utility allowance, no markup of any kind will be allowed.
(2) For off-duty police officers, the reimbursement shall also include the administrative fees charged by the Honolulu Police Department, plus twenty per cent inclusive of any administrative costs, overhead/profit, bond fee, and applicable taxes.

(e) Mobilization. Mobilization will be paid for on a lump sum basis. Partial payments will be made as follows:
(1) When five per cent of the total sum bid is earned, fifty per cent of the amount bid for mobilization will be paid;
(2) When ten per cent of the total sum bid is earned, seventy-five per cent of the amount bid for mobilization will be paid; and
(3) When twenty per cent of the total sum bid is earned, one hundred per cent of the amount bid for mobilization will be paid.

Nothing herein shall be construed to limit or preclude partial payments otherwise provided for by the contract.

**6.3    Payments during performance of work.** (a) Monthly estimate and payment. The Officer-in-Charge shall, not later than the fifteenth day of each month during the performance of the contract, make an estimate of the amount of work completed in accordance with the contract during the immediately preceding month for the construction items listed in the performance schedule described in section 4.3(d). In arriving at an estimate of work completed during the month, the Officer-in-Charge shall deduct sufficient allowance for any incomplete or unprotected work or to provide for any contingencies for remedy of defects or damage to said work or for the necessity of performing any part of the work over again to cure defects or damage.

(b) Retention for satisfactory progress. Pursuant to section 103-32.1, HRS, If the Officer-in-Charge finds that satisfactory progress is being made:
(1) Progress payments to the Contractor for the work completed for the month shall be for a sum equal to ninety-five per cent of the above estimate (after accounting for any deductions and contingencies), less previous payments and sums withheld by the City pursuant to subsection (a).
(2) After the first fifty per cent of the work to be performed under the contract has been completed and progress is satisfactory, progress payments will be for one hundred per cent of the above estimate less:
          (A) Five per cent withheld from the previous payments to the Contractor during the performance of the first fifty per cent of work required under the contract;
          (B) Other sums withheld by the City pursuant to the contract; and
          (C) Previous payments.

(c) Unsatisfactory progress. The Officer-in-Charge may continue to make progress payments to the Contractor for a sum equal to ninety-five per cent of the above estimates, less previous payments and sums withheld by the City pursuant to the contract until such time that satisfactory progress is achieved by the Contractor.

(d) Delay in completion of work. Upon written request from the Contractor, if the completion of the work under the contract is being delayed through no fault of the Contractor, the Contractor may request for the release of all or part of the amount withheld. The Contracting Officer, upon recommendation of the Officer-in-Charge, may make additional payments from the amount withheld to the extent that such amount withheld is not required for the protection of the City. The Contracting Officer may require the Contractor to submit tax

clearances from the State and Internal Revenue Service and surety clearance as a condition to the release of any retention.

(e) Substitution with general obligation bonds. Pursuant to HRS 103-32.2, the Contractor may request, and the Contracting Officer, upon recommendation of the Officer-in-Charge, may enter into an agreement to allow the Contractor to withdraw from time to time the whole or any portion of the sums retained as set forth above upon depositing with the Contracting Officer any general obligation bond of the State or its political subdivisions with a market value not less than one hundred ten per cent of the sum to be withdrawn.

**6.4    Payment for delivered materials or equipment.** (a) No payment for any material or equipment delivered to the site of the work under the contract will be made until said material or equipment is incorporated into the parts of the project required to be constructed under the contract.

(b) Specialized or special ordered materials, equipment. The Officer-in-Charge may, to the extent provided for in the contract, include in the monthly estimate for progress payment the delivered cost of specialized materials, special ordered materials or equipment usable only for the contract. Such inclusion in the monthly estimate will be allowed only if all costs are substantiated by evidence of delivery and payment, and only for such materials or equipment as are specifically described or referred to in the contract as being the subject matter for such inclusion in the monthly estimate for progress payment. Payment to the Contractor shall not terminate the Contractor's responsibility or ownership of such materials or equipment until incorporated in place and accepted by the Officer-in-Charge. The Contractor shall be responsible for the safekeeping of such specialized materials or equipment until incorporated into the work and accepted by the Officer-in-Charge. The amount included for payment under this subsection shall be subject to the retention requirement.

**6.5    Final payment.** (a) Final payment. After final acceptance by the Officer-in-Charge, the Contractor will be paid the balance due in accordance with the Officer-in-Charge's final estimate of the construction actually performed and approved by the Contractor, provided that final payment will be made only with the approval of the Contracting Officer or, for improvement districts, the City Council and upon submittal of the following to the Contracting Officer:
(1) Two copies of the list of equipment installed or provided under the contract, listing the description, make, model, serial number, cost, and location of the equipment of room number in which it is located ;
(2) Written consent of the surety or sureties on the Contractor's bonds;
(3) Tax clearances from the director of taxation of the State and the Internal Revenue Service; and
(4) Completed form DF-P-65 (Exhibit "K"), acknowledging any outstanding claims arising out of the performance of the Contractor's work.
(5) Evidence of continuing insurance as required in section 7.1.

(b) Equipment. Equipment as specified in subsection (a) is defined as any item such as a water heater that can be removed with a hand tool, or like an air conditioner, is capable of being moved or transferred to another location, and is accessible to tagging with an identification number such as a generator.

(c) Failure to comply. If the Contractor delays or fails to comply with the requirements of this section, the Contracting Officer, upon recommendation of the Officer-in-Charge and without further obligation to the Contractor, may take any or all of the following actions:
(1) Upon notice from the State Department of Taxation or Internal Revenue Service, assign payment to the appropriate tax agency.
(2) Unilaterally, use the final payment estimate of the Officer-in-Charge as the final payment to the Contractor.
(3) Determine the Contractor to be nonresponsible which may jeopardize the Contractor's future status as a qualified bidder.

**6.6    Prompt payment by Contractors to subcontractors.** Any money, other than retainage, paid to a Contractor shall be dispersed to subcontractors within ten days after receipt of the money in accordance with the terms of the subcontract; provided that the subcontractor has met all the terms and conditions of the subcontract and there are no bona fide disputes; and upon final payment to the Contractor, full payment to

RCI/Headworks
A03610

the subcontractor, including retainage, shall be made within ten days after receipt of the money; provided that there are no bona fide disputes over the subcontractor's performance under the subcontract. [HAR 3-125-23]

6.7    **Payment in bonds.**  When the contract is for an improvement district project, payment to the Contractor may be made in either cash or improvement district bonds.

6.8    **Assignment of money.**  No money receivable under the contract is transferable, or otherwise assignable, without the written consent of the Contracting Officer. The rights of the assignee to monies due or to become due to the Contractor shall be subject to section 8.5, Authority to withhold money due or payable. [HAR 3-125-14]

## CHAPTER 7 - INSURANCE; PERFORMANCE AND PAYMENT BONDS

7.1    **Insurance.**  (a)  Required coverages. The Contractor shall procure or cause to be procured and maintain (as provided herein), at no cost to the City, during the life of this contract and any extensions thereof, or until such time as action against the Contractor or subcontractor for death, injuries, losses and damages is barred by the provisions of Chapter 657, HRS, the following types of insurance to cover the operations under the contract, and all other insurance that may be required under the laws, ordinances or regulations of any governmental authority:

(1)  Workers Compensation and Employers Liability Insurance.  The Contractor shall maintain workers compensation and employers liability insurance. Workers compensation coverage shall be in accordance with State statutes. Employers liability and/or commercial umbrella limits shall be not less than $1,000,000 each accident or otherwise as set forth in the Special Provisions. The alternate employer endorsement (WC 00 03 01A) shall be attached showing the City in the schedule as the alternate employer.

(2)  Commercial General and Umbrella Liability Insurance.

(A)  Contractor shall maintain commercial general liability (CGL) and if necessary commercial umbrella insurance with limits of not less than $1,000,000 per occurrence, or otherwise as set forth in the Special Provisions. If such CGL insurance contains a general aggregate limit, it shall apply separately to this location or project. CGL insurance shall be written on ISO occurrence form, CG 00 01 (or a substitute form providing equivalent coverage), and shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal injury and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). There shall be no endorsement or modification of the CGL limiting the scope of coverage for liability arising from pollution, explosion, collapse, underground property damage or employment-related practices. The City shall be included as an insured under the CGL, using ISO additional insured endorsement CG 20 10 (or equivalent), and under the commercial umbrella, if any. The City's Design Engineers, Architects and/or Surveyors, and Construction Manager shall be included as insureds, using ISO additional insured endorsement CG 20 32 (or equivalent), and under the commercial umbrella, if any.

(B)  Continuing Completed Operations Liability Insurance.  Contractor shall maintain commercial general liability (CGL) and if necessary, commercial umbrella liability insurance with limits of not less than $1,000,000 each occurrence or otherwise as set forth in the Special Provisions for at least 5 years following final acceptance of the work, or for such other period as specified in the Special Provisions. Continuing CGL insurance shall be written on ISO occurrence form CG 00 01 10 93 (or equivalent form) and shall, at minimum, cover liability arising from products-completed operations and liability assumed under an insured contract. Continuing CGL insurance shall have a products-completed operations aggregate of at least two times its each occurrence limit. Continuing commercial umbrella coverage, if any, shall include liability coverage for damage to the insured's completed work, equivalent to that provided under ISO form CG 00 01.

(3)  Business Auto and Umbrella Liability Insurance.  Contractor shall maintain business auto liability (including no-fault coverage) and if necessary, commercial umbrella liability insurance with limits of not less than $1,000,000 per accident, or otherwise as set forth in the Special Provisions. Such insurance shall cover liability arising out of any auto (including owned, hired, and non-owned autos) used in the performance of this contract. Business auto coverage shall be written on ISO form CA 00 01, CA 00 05, CA 00 12, CA 00 20, with appropriate Hawaii endorsements, or a substitute form providing equivalent liability coverage. If necessary,

the policy shall be endorsed to provide contractual liability coverage equivalent to that provided in the 1990 and later editions of CA 00 01.

(4) Professional Liability Insurance.  If Contractor is required to perform professional design and/or engineering services, Contractor shall provide professional liability insurance, covering the Contractor, any design professionals hired by Contractor, and or any subcontractors, and their respective employees and agents for liability arising out of errors, omissions, or negligence in the performance of professional services under the contract.  Limits shall be not less than $1,000,000 per claim, or otherwise as set forth in the Special Provisions. Such insurance shall remain in full force and effect continuously for the period of design and construction of the work, and for an additional period following substantial completion of construction, as set forth in the Special Provisions,  provided that such coverage is reasonably available at commercially affordable premiums, as mutually determined and agreed.

(5)  Property Insurance.

(A)  Contractor shall purchase and maintain in force property insurance on the entire work at the site, in an amount equal to the full replacement cost of the work, or the initial contract sum (including any subsequent modifications thereto), whichever is greater.  Limits applicable to earthquake, flood and/or windstorm, if required herein,  shall be as close to the above amounts as is reasonably available, and subject to the review and approval of the City.  Such property insurance shall be maintained in effect as required in the Contract documents or otherwise as mutually agreed in writing by all parties.  This insurance shall name as insured the City, the Contractor, and all subcontractors in the work.

The insurance required shall  be written to cover all risks of physical loss and shall insure against the perils of fire and extended coverage, including theft, vandalism, malicious mischief, collapse  and, unless otherwise set forth in the contract documents,  earthquake, flood and windstorm,  and shall cover reasonable compensation for architects' services and expenses made necessary by an insured loss, and the cost of removing debris, including demolition as may be made legally necessary by the operation of any law, ordinance or regulation.  Such insurance shall cover the entire work at the site,  portions of the work located away from the site but intended for use at the site, and  portions of the work in transit.  The policy shall include as insured property buildings or structures, and all fixtures, materials, supplies, machinery and equipment to be used in or incidental to the work, scaffolding, falsework, fences and temporary buildings located at the site.        (B) The contractor shall purchase and maintain Boiler and Machinery insurance required by the contract documents or by law, covering insured objects during installation and testing and until final acceptance .  This insurance shall name as insured the City the Contractor and all subcontractors in the work.

(C)  Partial occupancy or use of the work shall not commence until the insurance company or companies providing insurance as required have consented to such partial occupancy or use.  Contractor shall take reasonable steps to obtain consent of the insurer(s) and Contractor and City agree to take no action, other than upon mutual written consent, with respect to occupancy for use of the work that could lead to cancellation, lapse, or reduction of insurance.

(D)  Contractor shall be responsible for any and all loss or damage to Contractor's equipment, tools and other personal property, and may at its option purchase insurance to cover such property and equipment.

(b)  GENERAL CONDITIONS, applicable to all insurance herein required, unless otherwise specified above:

(1)  As used herein, "City" shall mean the City and County of Honolulu, its elected and appointed officials, employees, agents and servants.

(2)  Except for Professional Liability insurance required in 7.1(a)(4) above, Contractor waives all rights against the City for recovery of damages to the extent such damages are covered by the insurance required herein.

(3)  All insurance required herein shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to the City.

(4)  Subcontractors Insurance.  Contractor shall either:

(A)  Include all subcontractors as insureds under all insurance set forth in paragraphs 7.1(a), above; OR

(B)  Cause each subcontractor employed by Contractor to purchase and maintain in insurance of the types specified above.  Contractor shall obtain and maintain evidence of subcontractors' insurance, and if

GENERAL CONDITIONS (7/99)                    38

requested by City, Contractor shall furnish copies of certificates of insurance evidencing coverage for each subcontractor.

(5) Cross-Liability coverage. If Contractor's liability policies do not contain the standard ISO separation of insures provision, or a substantially similar clause, they shall be endorsed to provide cross-liability coverage.

(6) The Contractor is responsible for paying any portion of any loss not covered because of the operation of any deductible applicable to the insurance required herein. If the City is damaged by the failure of the contractor to maintain insurance as required in this paragraph, then the Contractor shall bear all reasonable costs properly attributable to that failure.

(7) Evidence of Insurance.

(A) Upon execution of the contract by Contractor, Contractor shall furnish City with a certificate(s) of insurance, executed by a duly authorized representative of each insurer, showing compliance with insurance requirements set forth in paragraphs 7.1(a)(1), (2) and (3) above.

(B) Prior to commencing the work, Contractor shall furnish City with a certificate(s) of insurance, executed by a duly authorized representative of each insurer, showing compliance with the insurance required under paragraphs 7.1(a)(4) and (5) above.

(C) With respect to continuing insurance as required under section 7.1(a)(2)(B) and 7.1(a)(4) above, Contractor shall provide certificate(s) of insurance evidencing such coverage at the time of final payment, and thereafter whenever requested by the City.

(D) All certificates shall provide for 60 days written notice to City prior to the cancellation or material change of any insurance referred to herein. The words "endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" shall be deleted from the certificate form's cancellation provision.

(E) Contractor shall provide certified copies of all insurance policies required above within 10 days of the City's written request for said copies.

(F) Failure of the City to demand such certificate or other evidence of full compliance with these insurance requirements or failure of City to identify a deficiency from evidence that is provided shall not be construed as a waiver of Contractor's obligations to maintain such insurance.

(G) Endorsements; other requirements.

(i) Commercial General and Umbrella Liability Insurance and Business Auto and Umbrella Liability Insurance shall name the City as additional insured.

(ii) Show the certificate holder as the Director of the Department of Budget and Fiscal Services, 530 South King Street, Honolulu, Hawaii, 96813; and

(iii) Include the contract and project numbers, and name of the project.

(8) Failure to Maintain Required Insurance

(A) Failure to maintain the required insurance may result in suspension or termination of this contract at City's option.

(B) The City shall have the right, but not the obligation, of prohibiting Contractor or any of its subcontractors from entering the project site until Contractor has provided certificates or other evidence that insurance has been placed in complete compliance with these requirements and such certificates have been approved by the City.

(C) If the Contractor fails to maintain the insurance as set forth herein, the City shall have the right, but not the obligation, to purchase said insurance at Contractor's expense.

(9) No representation of coverage adequacy. By requiring insurance herein, the City does not represent that coverage and limits will necessarily be adequate to protect Contract, and such coverage and limits shall not be deemed as a limitation on Contractors' liability under the indemnities granted to the City under this contract.

(10) The City reserves the right to require additional kinds or amounts of insurance, as may be mutually agreed from time to time.

**7.2    Indemnification.** (a) The Contractor shall be responsible for all damages to persons or property, including work of other contractors, arising from or relating to its operations, the prosecution of the assigned work or the use of the subject premises by Contractor, its employees, agents, representatives, or subcontractors; provided, however, that the Contractor shall not be responsible for such portion of damages, if any, proximately caused by the negligence or intentional misconduct of the City. Contractor shall indemnify and save the City and all of its elected and appointed officials, volunteers, agents and employees harmless

GENERAL CONDITIONS (7/99)              39

RCI/Headworks
A03613

against any liability, claims, demands or causes of action of any nature whatsoever for damages of any kind as above set forth, and agrees at Contractor's expense to defend any legal or other action brought against the City, its elected and appointed officials, agents and employees founded upon any such liability, claim, demand or cause of action, and pay any attorneys' fees incurred by the City, its elected officials, volunteers, agents and employees in connection therewith.

(b) Worker's compensation law.  The Contractor shall save harmless the City its departments, and all of their officers, consultants, representatives, employees or agents, and the construction manager from all suits, actions or claims of any character brought on account of any claims or amounts arising or recovered under the Workers' Compensation Law or any other law, by-law, ordinance, order or decree.

(c) Copyright or patent.  If the Contractor is required or desires to use any design, device, material or process covered by letters of patent or copyright, the right for such use shall be procured by the Contractor from the patentee or owner.  The Contractor shall indemnify and hold harmless the City and its departments, the State of Hawaii, the construction manager, the architect-engineer, and affected third party, from any and all claims for infringement by reason of the use of any such patented design, device, material or process, or any trademark or copyright in connection with the work to be performed under the contract, and shall indemnify the City and its departments, the State of Hawaii, the construction manager, and the architect-engineer, for any costs, expenses and damages which it my be obliged to pay by reason of any such infringement at any time during the prosecution or after the completion of the work.

**7.3**     **Payment guarantee**.  The Contractor guarantees the payment of all just claims for materials, supplies, tools, labor and other just claims against the Contractor or any subcontractor in connection with this Contract, and shall deliver the project free and clear of any liens.  Contractor's bond, if required, will not be released by final acceptance and payment by the City unless all such claims are paid or released, or so much of the monies due or to become due the Contractor under the contract as shall be considered necessary by the Contracting Officer upon recommendation by the Officer-in-Charge may be retained by the City.  Should any suit or claim be filed against the Contractor, the City upon consultation with its Corporation Counsel may retain, from any monies due to the Contractor, such amount or amounts as may be deemed necessary by the City until such suits or claims have been finally settled and determined and upon satisfactory evidence of such settlement of such suits or claims the money retained shall be paid to the Contractor.

**7.4**     **Contract performance and payment bonds**.  (a)  Acceptable contract performance and payment bonds.  The Contractor shall provide, at no cost to the City, contract performance and payment bonds. Acceptable contract performance and payment bonds shall be limited to:
(1)  Surety bond underwritten by a company licensed to issue bonds in this State;
(2)  Legal tender; or
(3)  A certificate of deposit; credit union share certificate; or cashier's, treasurer's, teller's, or official check drawn by, or a certified check accepted by a bank, a savings institution, or credit union insured by the Federal Deposit Insurance Corporation or the National Credit Union Administration, and payable at sight or unconditionally assigned to the Director of the Department of Budget and Fiscal Services, City and County of Honolulu.
     (A)  These instruments may be utilized only to a maximum of $100,000.
     (B)  If the required security amount totals over $100,000, more than one instrument not exceeding $100,000 each and issued by different financial institutions shall be accepted. [HAR 3-122-222]

(b)  When required.  Performance and payment bonds shall be required when the price of the contract is $25,000 or more and each shall be in an amount equal to one hundred per cent of the amount of the contract price.  The performance and payment bonds shall be delivered by the Contractor to the City along with the executed contract.  If the Contractor fails to deliver the required performance and payment bonds, the Contractor's award shall be canceled, its bid security enforced, and the Contracting Officer may award the contract to the next lowest bidder.  [HAR 3-122-224]

A03614

(c) Bond forms. The Contractor shall execute the surety performance and payment bond forms provided with the Contract.

If the Contractor intends to submit other than surety bonds, the Contractor may request of the Contracting Officer, the bond form to be submitted with security other than surety bond, or the Contractor may submit the performance and payment security along with its own bond form which shall be in conformance with the form attached hereto as Exhibits "D" and "E". [HAR 3-122-228]

(d) Payment claims against the bond
(1) Every person who has furnished labor or material to the Contractor for the work provided in the contract for which a payment bond or a performance and payment bond is furnished under this section, and who has not been paid amounts due before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished or supplied, for which a claim is made, may institute an action for the amount, or balance thereof, unpaid at the time of the institution of the action against the Contractor or Contractor and its sureties, on the payment bond and have their rights and claims adjudicated in the action, and judgment rendered thereon; subject to the City's priority on the bond.

As a condition precedent to any such suit, written notice shall be given by registered or certified mail to Contractor and surety, **within ninety days** from the date on which the person did or performed the last labor or furnished or supplied the last of the material for which claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.
(2). Every suit instituted upon a payment bond shall be brought in the circuit court of the circuit in which the project is located, but no suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied for the work provided in the contract. The obligee named in the bond need not be joined as a party in any suit.
(3) If the full amount of the liability of the Contractor or the Contractor and its sureties on the security is insufficient to pay the full amount of the claims, then, after paying the full amount due the City, the remainder shall be distributed pro rata among the claimants. [HAR 3-122-227]
(4) Certified copies of bonds may be requested and obtained by any person upon payment of the costs of reproduction and certification of the bonds, and postage. A certified copy of a bond shall be prima facie evidence of the contents, execution, and delivery of the original. [HAR 3-122-228]

(e) Contracts with Federal funds. In addition to the requirements of this section, whenever a contract is partially or fully funded with Federal funds, the surety companies shall be those listed in the latest issue of the U. S. Treasury Circular 570.

## CHAPTER 8 - DISPUTES AND REMEDIES

8.1    <u>Suspension of work</u>. (a) The Officer-in-Charge may, by written order, suspend the work, either in whole or in part for periods as the Officer-in-Charge may deem necessary for any cause, including but not limited to:
(1) Weather or soil conditions considered unsuitable for prosecution of the work;
(2) Failure on the part of the Contractor to:
    (A) Correct conditions unsafe for the general public or for the workers;
    (B) Carry out orders given by the Officer-in-Charge;
    (C) Perform the work in strict compliance with the provisions of the contract;
    (D) Provide adequate supervision on the jobsite; or
    (E) Maintain current liability insurance coverages.
(3) Whenever a redesign that may affect the work is deemed necessary by the Officer-in-Charge;
(4) Unacceptable noise or dust arising from the construction even if it does not violate any law or regulation; or
(5) The convenience of the City. [HAR 3-125-7]

A03615

(b) Partial and total suspension. Suspension of work on some but not all items of work shall be considered a "partial suspension". Suspension of work on all items shall be considered "total suspension". The period of suspension shall be computed from the date set out in the written order for work to cease until the date of the order for work to resume. [HAR 3-125-7]

(c) Reimbursement to Contractor. In the event that the Contractor is ordered by the Officer-in-Charge in writing as provided herein to suspend all or part of the work under the contract in accordance with subsections (a)(3), (a)(4), or (a)(5), the Contractor may be reimbursed for actual money expended towards the project during the period of suspension. No allowance will be made for anticipated profits. [HAR 3-125-7]

(d) Cost adjustment. If the performance of all or part of the work is suspended for reasons beyond the control of the Contractor, an adjustment shall be made for any increase in the cost of performance of the contract (excluding profit) necessarily caused by such suspension, and the contract modified in writing accordingly. However, no adjustment under this section shall be made for any suspension:
(1) To the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor; or
(2) For which an adjustment is provided for or excluded under any other provision of the contract. [HAR 3-125-7]

(e) Claims for adjustment. Any adjustment in contract price made pursuant to this section shall be determined in accordance with the provisions on changes and claims for adjustment. Claims for compensation shall be filed in writing with the Officer-in-Charge **within thirty days** after the date of the order to resume work or the claims will not be considered. Together with the claim, the Contractor shall submit substantiating documents covering the entire amount shown on the claim. The Officer-in-Charge shall take the claim under consideration and may make such investigations as are deemed necessary and shall be the sole judge as to the equitability of the claim and the Officer-in-Charge's decision shall be final. [HAR 3-125-7]

(f) No adjustment. No provision of this section shall entitle the Contractor to any adjustments for delays due to failure of surety, for suspensions made at the request of the Contractor, for any delay required under the contract, for suspensions, either partial or whole, made by the Officer-in-Charge under the provisions in subsection (a)(2). [HAR 3-125-7]

(g) Contractor's responsibilities. In case of suspension in the performance of the work under the contract from any cause whatsoever, the Contractor in addition to being responsible for performing the work under the contract shall:
(1) Indemnify and save the City and its officers and employees harmless from liability for any injury or damage occurring during the period that the performance of the contract is suspended;
(2) Be responsible for all materials and equipment delivered to the site of the project, including materials and equipment for which Contractor has received partial payment;
(3) Properly store the materials and equipment which have been partially paid for by the City or which have been furnished by the City;
(4) Remove immediately as directed by the Officer-in-Charge all surplus materials, equipment, and rubbish;
(5) Neatly and compactly store all materials and equipment on the site of projects within public highways or streets so as not to impede traffic or interfere with the use of public utilities or facilities;
(6) Provide suitable drainage and erect such temporary structures as are necessary to protect the project or parts of the project from damage;
(7) Properly and continuously maintain in an acceptable growing condition all living material in newly established plantings, seedlings, and sodding furnished under this contract; and
(8) Continue to maintain liability insurance coverages. [HAR 3-125-7]

**8.2    Termination for default for nonperformance or delay; damages for delay.** (a) Default. If the Contractor refuses or fails to perform the work, or any separable part thereof, with such diligence as will assure its completion within the time specified in the contract, or any agreed upon extension thereof, fails to complete said work within such time, or commits any other substantial breach of the contract, and further fails

RCI/Headworks
A03616

**within seven days** after receipt of written notice from the Officer-in-Charge to commence and continue correction of the refusal or failure with diligence and promptness, the Contracting Officer may, upon recommendation by the Officer-in-Charge, by written notice to the Contractor, declare the Contractor in breach and terminate the Contractor's right to proceed with the work or the part of the work as to which there has been delay or other breach of contract. In this event the City may take over the work and perform the same to completion, by contract or otherwise, and may take possession of, and utilize in completing the work, the materials, appliances, and plant as may be on the site of the work and necessary therefor. Whether or not the Contractor's right to proceed with the work is terminated, the Contractor and the Contractor's sureties shall be liable for any damage to the City resulting from the Contractor's refusal or failure to complete the work within the time specified. [HAR 3-125-18]

Any of the following causes may be deemed by the City to be a default and result in Contractor's termination under the contract:
(1)  Failure to commence work within the time specified in the notice to proceed;
(2)  Failure to perform the work with sufficient workers and equipment or with sufficient materials to assure the prompt completion of said work;
(3)  Failure to comply with orders of the Officer-in-Charge;
(4)  Discontinuation of the prosecution of the work;
(5)  Failure to resume work which has been discontinued within a reasonable time after notice to resume;
(6)  Insolvency or is declared bankrupt, or commits any act of insolvency or bankruptcy;
(7)  Allows any final judgment to stand against the Contractor unsatisfied for a period of ten days;
(8)  Assignment for the benefit of creditors;
(9)  Unauthorized changes in the subcontractor listing submitted with the Contractor's bid; or
(10)  Failure to correct deficiencies or to complete the contract.

(b)  Liquidated damages
(1)  Upon termination. If fixed and agreed liquidated damages are provided in the contract, and if the City so terminates the Contractor's right to proceed, the resulting damage will consist of the liquidated damages for the time as may be required for final completion of the work.
(2)  In absence of termination. If fixed and liquidated damages are provided in the contract, and if the City does not terminate the Contractor's right to proceed, the resulting damage will consist of liquidated damages until the work is completed or accepted. [HAR 3-125-18]

(c)  Time extension. The Contractor's right to proceed shall not be so terminated nor shall the Contractor be charged with resulting damage if the delay in the completion of the work was not the fault of the Contractor as in section 5.3, Delay; time extensions. [HAR 3-125-18]

(d)  Additional rights and remedies. The rights and remedies of the City provided in this section are in addition to any other rights and remedies provided by law or under this contract. [HAR 3-125-18]

**8.3**    **Termination for convenience**. (a) Termination. The Contracting Officer may, when the interests of the City so require, terminate the contract in whole or in part, for the convenience of the City. The Contracting Officer, upon recommendation by the Officer-in-Charge, shall give written notice of the termination to the Contractor specifying the part of the contract terminated and when termination becomes effective. [HAR 3-125-22]

(b)  Contractor's obligations. The Contractor shall incur no further obligations in connection with the terminated work, and on the date set in the notice of termination the Contractor will stop work to the extent specified. The Contractor shall also terminate outstanding orders and subcontracts as they relate to the terminated work. The Contractor shall settle the liabilities and claims arising out of the termination of subcontracts and orders connected with the terminated work subject to the City's approval. The Officer-in-Charge may direct the Contractor to assign the Contractor's right, title, and interest under terminated orders or subcontracts to the City. The Contractor must still complete the work not terminated by the notice of termination and may incur obligations as necessary to do so. [HAR 3-125-22]

RCI/Headworks
A03617

(c) Right to construction and goods. The Officer-in-Charge may require the Contractor to transfer title and deliver to the City in the manner and to the extent directed by the Officer-in-Charge:
(1) Any completed constructions; and
(2) The partially completed construction, goods, materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (hereinafter called "construction material") as the Contractor has specifically produced or specially acquired for the performance of the terminated part of the contract.

The Contractor shall protect and preserve property in the possession of the Contractor in which the City has an interest. If the Officer-in-Charge does not exercise this right, the Contractor shall use its best efforts to sell the construction, goods, and construction materials in accordance with the standards of section 490:2-706, HRS. This in no way implies that the City has breached the contract by exercise of the termination for convenience clause. [HAR 3-125-22]

(d) Compensation
(1) The Contractor shall submit a termination claim specifying the amounts due because of the termination for convenience together with cost or pricing data, submitted to the extent required by subchapter 15, chapter 3-122, HAR, bearing on such claim. If the Contractor fails to file a termination claim **within one year** from the effective date of termination, the Contracting Officer may, upon recommendation of the Officer-in-Charge, pay the Contractor, if at all, an amount set in accordance paragraph (3)(B).
(2) The Officer-in-Charge and the Contractor may agree to a settlement provided the Contractor has filed a termination claim supported by cost or pricing data submitted as required and that the settlement does not exceed the total contract price plus settlement costs reduced by payments previously made by the City, the proceeds of any sales of construction, goods, and construction materials under paragraph (3)(C), and the contract price of the work not terminated.
(3) Absent complete agreement under paragraph (2), the Contracting Officer shall pay the Contractor the following amounts, provided payments under paragraph (2) shall not duplicate payments under this subsection for the total (without duplication of any items) of:
    (A) The cost of all contract work performed prior to the effective date of the notice of termination plus a five per cent markup on actual direct costs on the portion of the work (the markup shall not include anticipatory profit or consequential damages) less amounts paid or to be paid for completed portions of the work; provided, however, that if it appears that the Contractor would have sustained a loss if the entire contract would have been completed, no markup shall be allowed or included and the amount of compensation shall be reduced to reflect the anticipated rate of loss;
    (B) Subject to the prior approval of the Contracting Officer, the costs of settling and paying claims arising out of the termination of subcontracts or orders pursuant to subsection (b). Subcontractors shall be entitled to a markup of no more than ten per cent on direct costs incurred to the date of termination. These costs must not include costs paid in accordance with subparagraph (A);
    (C) The total sum to be paid the Contractor under this subsection shall not exceed the total contract price reduced by the amount of any sales of construction, goods, and construction materials under subsection (c), and the contract price of work not terminated.
    (D) Cost claimed, agreed to, or established under paragraphs (2) and (3) of this subsection shall be in accordance with chapter 3-123, HAR, Cost principles. [HAR 3-125-22]

**8.4**    <u>**Liquidated damages**</u>. Liquidated damages. It is mutually understood and agreed by and between the parties to the contract that time shall be essence of the contract and that in case of failure on the part of the Contractor to complete the work under contract within the time fixed or agreed upon, the City will be damaged thereby, and the amount of said damages, inclusive of expenses for inspection, superintendence, and necessary traveling expenses, being difficult if not impossible of definite ascertainment and proof, it is hereby agreed that the amount of such damages shall be the amount set forth in the Contract as liquidated damages for each and every calendar day, including weekends and holidays, that the Contractor delays in finishing the work beyond the completion deadline established in the contract; and the Contractor hereby agrees to pay the said sum as liquidated damages, and not by way of penalty, to the City and further authorizes the City to deduct the amount of the damages from monies due the Contractor under the contract, computed as aforesaid. If the monies due the Contractor are insufficient or no monies are due the Contractor,



the Contractor shall pay the City the difference or the entire amount, whichever may be the case, upon demand by the Contracting Officer.

8.5    **Authority to withhold money due or payable.** (a) Withholding money due or payable. The City may withhold such amounts from the money due or to become payable under the contract to the Contractor, or any assignee under section 6.8, Assignment of money, as may be necessary to:
(1) Protect the City from any liability resulting from the work performed under this contract;
(2) Satisfy any obligation of the Contractor to the City, State Department of Taxation or Internal Revenue Service, including obligations not relating to the contract as required by law, and the obligation of the Contractor to the workers, subcontractors, and suppliers who have performed labor or furnished material and equipment under the contract as the Contracting Officer deems necessary, but only with the concurrence of or instructions from the Contractor's surety; or
(3) Repair, restore, or compensate for, any real or personal property located within the project site or in the vicinity thereof which was damaged as a result of the fault or negligence of the Contractor while performing the work under this contract.

(b) Making payment from money withheld. The City may make such payments from such amounts withheld for reasons specified in subsection (a); provided, that before making any payment for damages to property prescribed in subsection (a)(3), the Officer-in-Charge shall request the Contractor in writing to undertake the repair or restoration of the damaged property or make compensation therefor. If the Contractor fails or refuses to make such repair, restoration, or compensation to the satisfaction of the Officer-in-Charge **within seven days** after notification by the Officer-in-Charge, the Contracting Officer, upon recommendation of the Officer-in-Charge and upon the Contracting Officer's own findings that such recommendation is justified, may make the necessary payments.

8.6    **Authority to resolve contract and breach of contract controversies.** (a) Controversies between the City and contractor. All controversies between the Officer-in-Charge and the Contractor which arise under, or are by virtue of, the contract and which are not resolved by mutual agreement between the Officer-in-Charge and the Contractor, shall be decided by the Contracting Officer in writing, within the time limitations below, after receipt of a written request from the Contractor for a final decision:
(1) For controversies or for claims not exceeding fifty thousand dollars: **ninety calendar days** after receipt of the claim.
(2) For claims exceeding fifty thousand dollars: **ninety calendar days** after receipt of the claim; provided that if a decision is not issued within ninety calendar days, the Contracting Officer shall notify the Contractor of the time within which the Contracting Officer will make the decision. The reasonableness of this time period will depend on the size and complexity of the claim and the adequacy of the Contractor's supporting data and other relevant factors.

If a decision on a controversy or a claim not exceeding fifty thousand dollars is not made within ninety calendar days after receipt, or if a decision is not made within the time promised for a claim in excess of fifty thousand dollars, the Contractor may proceed as if an adverse decision has been received.

The amount determined payable pursuant to the decision, less any portion already paid, normally should be paid without awaiting Contractor action concerning appeal. Such payments shall be without prejudice to the rights of either party and where such payments are required to be returned by a subsequent decision, interest on such payments shall be paid at the statutory rate from the date of payment. [HAR 3-126-28]

(b) Controversies involving City claims against the Contractor. All controversies involving claims asserted by the City against a Contractor which cannot be resolved by mutual agreement shall be the subject of a decision by the Contracting Officer or the Officer-in-Charge as applicable. [HAR 3-126-29]

(c) Interest. Interest on amounts ultimately determined to be due to a Contractor or the City shall be payable at the statutory rate applicable to judgments against the City under chapter 662, HRS, from the date the claim arose through the date of decision or judgment, whichever is later. [HAR 3-126-30]

GENERAL CONDITIONS (7/99)                45                RCI/Headworks
                                                          A03619

(d) Cost of dispute. The Contractor shall pay to the City the amount of the City's costs to enforce the contract, including but not limited to amounts for attorneys' fees, consultants' fees and expenses.

(e) Governing law. The contract shall be construed under the laws of the State of Hawaii and Contractor consents to the exercise of personal jurisdiction over Contractor by the courts of the State of Hawaii.

(f) Severability. If any term or provision of the contract is found to be illegal, unenforceable or in violation of law, then, notwithstanding such term or provision, all other terms or provisions of the contract shall remain in full force and effect. When possible, however, the contract shall be interpreted so as to reflect the intentions of the parties as indicated by the provision or term in question.

(g) Decision. The Contracting Officer shall immediately furnish a copy of the decision to the Contractor, by certified mail, return receipt requested, or by any other method that provides evidence of receipt. Any such decision shall be final and conclusive, unless fraudulent, or unless the Contractor brings an action seeking judicial review of the decision in a circuit court of this State **within the six months** from the date of receipt of the decision.

The Contractor shall comply with any decision of the Contracting Officer and proceed diligently with performance of the contract pending final resolution by a circuit court of this State of any controversy arising under, or by virtue of, the contract, except where there has been a material breach of contract by the City; provided that in any event the Contractor shall proceed diligently with the performance of the contract where the Contracting Officer has made a written determination that continuation of work under the contract is essential to the public health and safety. [Chapter 3-126, subchapter 3, HAR]

## CHAPTER 9 - SEXUAL HARASSMENT

**9.1    General.** The Contractor must comply with Revised Ordinances of Honolulu (ROH) section 1-18, on sexual harassment. The Contractor shall have and enforce a policy prohibiting sexual harassment. The Contractor's sexual harassment policy must set forth the same or greater protection than those contained or required by the ordinance. Section 1-18, ROH is on file and available for viewing in the Purchasing Division. Contractors needing a copy must pick up the copy from the Office of the City Clerk, Room 203, City Hall, 530 South King Street, Honolulu, Hawaii.

**9.2    Applicability.** The ordinance is applicable to the employer's business and includes:
(1) Prohibitions against an officer's or employee's sexual harassment of the following:
      (A) Another officer or employee of the employer;
      (B) An individual under consideration for employment with the employer; or
      (C) An individual doing business with the employer;
(2) A provision prohibiting a management or supervisory officer or employee from knowingly permitting a subordinate officer or employee to engage in the sexual harassment prohibited under paragraph (1) above;
(3) A prohibition against retaliation towards an officer, employee, or individual who has complained of sexual harassment, conducted an investigation of a complaint, or acted as a witness during an investigation of a complaint;
(4) A prohibition against a malicious false complaint of sexual harassment by an officer, employee, or individual;
(5) Provisions allowing an officer, employee, or individual to make a sexual harassment complaint to an appropriate management, supervisory, or personnel officer or employee;
(6) Procedures for investigating a sexual harassment complaint in an unbiased, fair, and discreet manner with appropriate safeguards to maintain confidentiality and protection from embarrassment;
(7) A provision requiring the use of the "reasonable person of the same gender standard," to determine if sexual harassment has occurred. Under the standard, sexual harassment shall be deemed to have occurred if the alleged offender's conduct would be considered sexual harassment from the perspective of a reasonable

RCI/Headworks
A03620



person of the same gender as the alleged victim. If the alleged victim is a woman, the "reasonable person of the same gender standard" shall be equivalent to and may be called the "reasonable woman standard;"
(8) Disciplinary actions which may be imposed on an officer or employee who committed a prohibited act; and
(9) For an employer with at least five employees, a provision requiring the annual viewing of a video on the sexual harassment policy by each management or supervisory officer or employee.

**9.3**    <u>Policy term</u>. The policy required under this section shall be in effect for at least the duration of the Contractor's contract with the City.

**9.4**    <u>Pledge and acceptance</u>. The action of the Contractor signing the contract shall constitute the Contractor's pledge and acceptance of the provisions for the sexual harassment policy as required by section 1-18, HRS.

## CHAPTER 10 - MISCELLANEOUS

**10.1**    <u>Use of materials</u>. The City shall have an unrestricted, royalty-free, nonexclusive and irrevocable license to reproduce, publish, translate or otherwise use and to authorize others to publish and use all materials obtained or produced in connection with the work hereunder which may be copyrighted by the Contractor prior to the completion of the contract.

**10.2**    <u>Assignment of antitrust claims for overcharges for goods and materials purchased</u>. Contractor and owner (City) recognize that in actual economic practice, overcharges resulting from antitrust violations are in fact usually borne by the owner. Therefore, Contractor hereby assigns to City any and all claims for such overcharges as to goods and materials purchased in connection with the order or contract, except as to overcharges which result from antitrust violations commencing after the price is established under this contract or any change order and which are not passed on to the City under an escalation clause. In addition, Contractor warrants and represents that each of its first tier suppliers and subcontractors shall assign any and all such claims to the City, subject to the same exception.

**10.3**    <u>Managed Competition Review</u>
All contracts executed on or after July 20, 1998 which will extend beyond June 30, 2001 (including contracts which have initial terms ending before June 30, 2001, but options to extend beyond June 30, 2001) will be subject to the Managed Competition Review.

During its term, this contract shall be subject to a single review by the City pursuant to the managed process for public-private competition to be developed under Part III, Section 6 of Act 230, Session Laws of Hawaii 1998. It is the understanding of the parties that, as a result of the managed process review, this Contract may be terminated by the City, renegotiated by mutual agreement of the parties, or continued in its current form. Any termination pursuant to this Section shall be deemed a termination for convenience.

RCI/Headworks
A03621