Adrian Rosehill (AR 3868)
STUBENBERG & DURRETT
Davies Pacific Center
841 Bishop Street, Suite 2115
Honolulu, Hawaii 96813
Telephone: (808) 526-0892
arosehill@stubenbergdurrett.com

Attorneys for Third-Party Defendant/Cross- Claim Plaintiff
ENGINEERED SYSTEMS, INC.,

Adam R. Bialek (Admitted Pro Hac Vice – N.Y. Bar AB-6268)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York 10604
Telephone: (914) 323-7000
Facsimile: (914) 323-7001
Adam.Bialek@wilsonelser.com

Attorneys for Cross-Claim Defendant/Cross-Claim Plaintiff
ULTRATECH SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

BODELL CONSTRUCTION COMPANY, a Utah corporation,

   Plaintiff,

  v.

OHIO PACIFIC TECH, INC. f/k/a GMP ASSOCIATES, INC., an Ohio corporation; CITY AND COUNTY OF HONOLULU; ULTRATECH SYSTEMS, INC., a foreign corporation,

   Defendants.

---------------------------------------------

CITY AND COUNTY OF HONOLULU,

   Defendant/Third-Party Plaintiff,

  v.

ENGINEERED SYSTEMS, INC.,

   Third-Party Defendant/Cross-Claim Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 03-00706 (JMS/LEK)
(Contract)

CROSS-DEFENDANT/CROSS-CLAIM PLAINTIFF ULTRATECH SYSTEMS, INC., AND THIRD-PARTY DEFENDANT/CROSS-CLAIM PLAINTIFF ENGINEERED SYSTEMS, INC.'S PRETRIAL STATEMENT; CERTIFICATE OF SERVICE

**Trial Date:**

**Date: October 17, 2006**
**Time: 9:00 A.M.**
**Judge:  J. Michael Seabright**

CITY AND COUNTY OF HONOLULU,        )
                                     )
    Defendant/Cross-Claim Plaintiff,  )
                                     )
    v.                               )
                                     )
ULTRATECH SYSTEMS, INC., a foreign   )
corporation,                         )
                                     )
    Cross-Claim Defendant/          )
      Cross-Claim Plaintiff.       )
                                     )

## CROSS-DEFENDANT/CROSS-CLAIM PLAINTIFF ULTRATECH SYSTEMS, INC., AND THIRD-PARTY DEFENDANT/CROSS-CLAIM PLAINTIFF ENGINEERED SYSTEMS, INC.'S PRETRIAL STATEMENT

Cross-Defendant/Cross-Claim Plaintiff UltraTech Systems, Inc., and Third-Party Defendant/Cross-Claim Plaintiff Engineered Systems, Inc. by and through their counsel, submit the following pretrial statement pursuant to LR16.6 of the Local Rules of Practice for the United States District Court for the District of Hawaii, as amended.

(A) Parties:

This joint Pretrial Statement is filed on behalf of Cross-Defendant/Cross-Claim Plaintiff UltraTech Systems, Inc., and Third-Party Defendant/Cross-Claim Plaintiff Engineered Systems, Inc.

It is our understanding that the only other remaining parties are Cross-Claim Defendant Ohio Pacific Tech, Inc. f/k/a GMP Associates, Inc. ("GMP") and The City and County of Honolulu as assignee of certain claims made by Plaintiff Bodell Construction Company.

(B) Jurisdiction and Venue:

This is a civil action between citizens of different states. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Subject matter jurisdiction, therefore, is conferred upon this court by 28 U.S.C. Section 1132.

Venue is this court is proper under 28 U.S.C. Section 1391(a) because Defendants do business within this judicial district and are subject to the personal jurisdiction of this court.

(C) Substance of Action:

This action was initially commenced by Bodell Construction Company, ("Bodell") for damages arising out of a breach of its Contract with the City and County of Honolulu, ("City") relative to the Wahiawa Wastewater Treatment Plant - Effluent Reuse & Wahiawa Reservoir Outfall Adjustment, Job No. W10-99 (the "Contract"). The Contract included the construction and installation of an ultraviolet ("UV") disinfection system at the Wahiawa Wastewater Treatment Plant ("WWTP") located in the City and County of Honolulu, State of Hawaii (the "Project").

Pursuant to an agreement with the State of Hawaii, the City and County of Honolulu were required to upgrade their waste water treatment program at the WWTP. The City retained the services of Ohio Pacific Tech, Inc., f/k/a GMP Associates, Inc. ("GMP"), to advise the City as how to best proceed. GMP was ultimately retained by the City and served as the Design Engineer for the Project while additionally being retained as the Construction Manager.

The "Bid" for this public project was mishandled from its inception. GMP drafted a specification for open bidding around a proprietary product, knowing that the vendor named in the specification would not bid if others were permitted to bid.

In essence, the specification was an impermissible sole source specification. Nevertheless, UltraTech Systems, Inc. ("UTS") was convinced it could bid on the equipment and it received an approval from the City to allow others to rely on UTS' quote in bidding the project. Not knowing that GMP would reject UTS, UTS through its authorized representative, Engineered Systems, Inc. ("ESI") approached contractors offering its product.

The UTS product was cheaper than the specified system and offered operation savings for the user. Bodell, relying upon the City's approval, used the quotation from UTS to bid the project. As the low bidder, (irrespective of whether the UTS or specified system was used), Bodell won the contract. The City and GMP were aware that Bodell was intending to use UTS' equipment.

3

Without ever advising UTS that the City and GMP had concerns about UTS' product meeting the specification, the City and GMP allowed UTS to expend resources in providing information about a system that GMP would never approve. Despite advising the City in April 2000 that UTS would never be approved (since only Trojan would be deemed acceptable), neither GMP nor the City told UTS about this intent. Instead, they solicited a package of information that would then be improperly used to justify the rejection of UTS without a further payment to Bodell.

In May 2000, UTS provided proprietary and confidential information to the City (through Bodell), clearly marked that said information was not to be disclosed. Nevertheless, GMP used the "pre-submittal" to work with UTS' competitor, Trojan Technologies ("Trojan) and its local representative, Hawaii Engineering Services ("HES") to disqualify UTS. This release of UTS' confidential information to its chief competitor was a violation of GMP's ethical obligations as well as Hawaii's statute concerning trade secrets. *See*, The Uniform Trade Secrets Act, Chapter 482B of the Hawaii Revised Statutes.

The City/GMP continued to induce UTS to expend money and resources in preparing submittals it never was going to consider. GMP continued to release confidential information to HES, GMP interfered with UTS' business relations with Bodell using improper and tortious means.

(D) Undisputed Facts:

1.    The City retained GMP to design specifications for the project.

2.    GMP designed specifications around Trojan Technologies 4000.

3.    The City and County of Honolulu published specifications for public bidding for the construction of an ultraviolet disinfection system at the Wahiawa Wastewater Treatment Plant ("WWTP" or the "Project").

4.    The specifications for the Project called for, among other things, the construction of "an open channel, gravity flow, UV disinfection system complete with a cleaning system, lamps, and electronic ballasts."

5.   The Specifications were to ensure that the wastewater that was discharged into Lake Wilson was properly disinfected for re-use purposes.

6.   Although this was not to be a sole source specification, the bid documents included a section in the specifications which provided that the "Basis of Design" for the Project was the "System UV 4000™" medium pressure UV lamp technology manufactured by Trojan Technologies, Inc. (the "Trojan System"). The Trojan System had numerous proprietary and patented features.

7.   GMP obtained and relied on a copy of Trojan's sample specifications when drafting the specifications for the WWTP.

8.   Prior to the day bids were due to the City, UTS, through its local representative submitted a proposal to the City for UTS' equipment to be considered for the U.V. system that was identified in the City's specifications. The City approved UTS for the project.

9.   Upon receiving this written approval/prequalification from the City, UTS, through ESI, distributed a letter to contractors bidding on the Project, including Bodell, noting that UTS could supply the UV equipment for the Project, including the City's approval letter.

10.  UTS' price was substantially lower than the Trojan 4000 and, consequently, contractors used UTS' system in their bid calculations. Bodell included the UTS equipment in its bid and was the lowest bidder for the Project with a total bid price of $11,285,933.90. The second largest bidder also used the quote from UTS. Regardless of whether Bodell used the UTS quote or the Trojan quote it would have been the lowest bidder.

11.  When the bids were opened, the City, GMP and Trojan's local representative, Hawaii Engineering Services, Inc. ("HES") learned that Bodell was the low bidder, and that Bodell used UTS' equipment in its bid. Ultimately, Bodell Construction Co. was awarded the Wahiawa contract, utilizing the bid submitted by UTS and relying upon the City's approval.

1242375.2

12.     Following bid opening, Guy Inouye of the City of Honolulu was contacted by Mike Elhoff of HES, who complained about UTS being allowed to supply the system. Mr. Inouye in turn contacted Jay Stone of GMP and requested that he fax the pre-bid material received from UTS. GMP was aware that HES was disturbed by the inclusion of UTS in the winning bid.

13.     The City held a meeting with Bodell to discuss removing UTS from the bid. The City laid out their plan to exclude UTS and delete the UV disinfection units from the Basic Bid, and to procure the systems separately as "Government Furnished Equipment".

14.     The contract was executed by the City and Bodell on February 25, 2000. At this time, the City knew that Bodell was proceeding with the UTS system and executed the agreement without change or conditions. The City was still considering an offer to Bodell to remove the UTS equipment from the bid and to furnish the UV equipment separately. Ultimately, the City did not proceed in this manner. Thus the contracts awarded contemplated the use of UTS equipment.

15.     A site meeting was held amongst the City, GMP, and Bodell on April 27, 2000. At the meeting, GMP took the position that UTS would not be approved. This position stated by GMP was made before GMP even reviewed UTS' proposed system or its specifications.

16.     Thereafter, GMP requested that UTS provide information about its system. In response to this request for information by GMP, UTS submitted a package containing highly confidential and proprietary information regarding its UV system. The "pre-submittal" package clearly noted in bold, capitalized letters that the information was proprietary and confidential and should not be disclosed.

17.     GMP shared this confidential and proprietary information with HES and Trojan, UTS' competitor, without UTS" consent or knowledge.

18.     Multiple meetings were had at the request of HES between the City, GMP, and HES regarding the rejection of the UTS system.

6

19.  Despite UTS and ESI's repeated submissions illustrating that the UTS equipment more than met the experience requirements, the City and GMP insisted on using the Trojan equipment.

20.  After repeated unsuccessful attempts to have the UTS system approved, Bodell eventually was forced to purchase the Trojan System reportedly to stay on course with the timeline of the Project.

21.  Trojan had since redesigned its system, and was marketing a new version called "The New Trojan System UV 4000™". While the new Trojan system required a shallower effluent channel and had never been used before (thus arguably not meeting the specifications which The City and GMP claimed UTS could not meet), the City and GMP approved the use of this system without hesitation.

22.  UTS lost profits, as well as the cost of its expended labor, time and effort and related expenses. UTS also lost the value of the sales of replacement bulbs and equipment. ESI lost the commission it would have received. In addition, UTS' reputation has been harmed.

(E) Disputed Factual Issues:

1.  Whether the specification was a de facto sole source specification.

2.  Whether any other vendor could have met the specification as ultimately interpreted by the City and GMP.

3.  Whether GMP improperly prepared the specification.

4.  Whether GMP improperly applied a set of standards to UTS that it did not apply to Trojan.

(F) Relief Prayed:

UTS and ESI lost the sale of the UTS system that would have resulted in either a $267,500 sale (vertical system) or a $417,000 sale (horizontal system) and a commission for ESI. The sale of the system would have provided UTS and ESI the opportunity to sell replacement bulbs and parts on a perpetual basis. In addition, UTS spent tens of thousands of dollars in costs to respond to

7

GMP's/City's request and UTS and ESI spent hundreds of man hours in work for this project, none of which has been reimbursed.

Following the Project and the resulting debacle, word was spread through Hawaii that UTS was no longer in business which precluded additional sales. Significantly, UTS also lost the ability to supply the City with replacement lamps and parts for this system, (and arguably others) which would have totaled at least tens of thousands of dollars ever year.

(G) Points of Law:

    (1)   Intentional Interference with Prospective Business Relations (Against City and GMP - Counts I and II of UTI and ESI's Cross-Claim)

UTS and ESI meet the test to establish a claim of intentional interference with prospective business relations. To establish such a claim, the claimant must be able to prove that an agreement existed, the defendant knew of this relationship, the defendant intentionally interfered with the relationship, the defendant had no justification, the interference caused the third party to not consummate the contract, and the defendant's interference caused the plaintiff damage. *Kutcher v. Zimmerman, 87 Haw. 394 (Haw. Ct. App. 1998).*

    a.   A contractual relationship existed between UTS and Bodell

    b.   GMP knew that Bodell had relied on the UTS U.V. system and yet continued to interfere with Bodell and UTS' relationship by putting roadblocks in UTS' path.

        GMP released UTS' confidential and proprietary information to HES without UTS' consent.

        GMP relied on and used false information in preparing its recommendations to the City to reject UTS.

    c.   GMP allowed UTS and Engineered Systems Inc. to continue to expend time and money, explaining its system, allowing GMP to bill the City for review time, while knowing that it would never approve the UTS system.

8

d.   The City and GMP intentionally interfered with the relationship between UTS and Bodell.

e.   The City and GMP have no justification for intentionally interfering with UTS and Bodell's business relationship.

    (i)   The State of Hawaii's Procurement Policy Board has established rules that regulate the preparation and use of bid specifications

        *- Haw. Admin. R. §3-122-10*

    (ii)   The intent of this rule is to avoid the purchase by the government of unproven, "fly-by-night" products for state projects.

        - *CCTW&M v. United States*, 452 F. Supp. 69, 78, (D. N.J. 1978) (affirming EPA Administrator finding that "[t]he experience requirement is `to protect the user from untried equipment'", and affirming the EPA decision to rewrite the specification because as written it was anticompetitive and in violation of the spirit of the EPA because only one manufacturer could meet it).

f.   The City and GMP's interference caused damage to UTI and ESI. UTS and ESI lost the sale of the UTS system that would have resulted in either a $267,500 sale (vertical system) or a $417,000 sale (horizontal system) and a significant commission for ESI. In addition, UTS spent tens of thousands of dollars, and UTS and ESI spent hundreds of man hours in work for this project, none of which has been reimbursed.

9

(H) Previous Motions:

| Date Filed | Motion |
|---|---|
| 1/22/04 | Motion by defendant, GMP Hawaii, Inc. to dismiss the plaintiff's complaint filed December 24, 2003. |
| 9/10/04 | Motion by defendant, City and County of Honolulu for leave to file an amended answer to assert cross claims against defendant, UltraTech Systems, Inc. and leave to file a third party complaint against Engineered Systems, Inc. *(Motion granted October 6, 2004)* |
| 4/6/05 | Motion by third party defendant, Engineered Systems, Inc. for leave to file an amended answer to assert a cross claim against City and County of Honolulu and defendant Ohio Pacific Tech, Inc. *(Motion granted May 12, 2005)* |
| 1/9/06 | Motion by Plaintiff, Bodell Construction Company for summary judgment against defendant City and County of Honolulu *(Decision Pending)* |
| 1/18/06 | Motion by UltraTech Systems, Inc. for Extension of time to Complete Discovery and to Extend Deadline for Dispositive Motions |
| 2/17/06 | Motion by defendant, Cross-Claim Plaintiff/Defendant and Third Party Plaintiff/Counterclaim Defendant City and County of Honolulu for Summary Judgment against Cross Claim Plaintiff/Defendant UltraTech Systems, Inc. and Third Party Defendant/Counterclaim Plaintiff, Engineered Systems, Inc. *(Decision Pending)* |

| 2/17/06 | Motion by Defendant, Cross-Claim Plaintiff/Defendant and Third Party Counterclaim Defendant City and County of Honolulu for Summary Judgment against Bodell Construction Company<br>*(Decision Pending)* |
| --- | --- |

(I) Witnesses to be called:

Cross-Claim Defendant/Cross-Claim Plaintiff UltraTech Systems, Inc., and Third-Party Defendant/Cross-Claim Plaintiff Engineered Systems, Inc. may call the following witnesses at trial:

      1. Greg Ellner:

Mr. Ellner will testify in support of UTS' and ESI's claims including the UTS system, the approval of the system by the City for bidding purposes, UTS and Bodell's efforts to get the UTS system approved by the City and GMP, the problems and deficiencies with the specifications prepared by GMP as well as GMP's improper review, and GMP and the City's interference with its prospective business which caused UTS and ESI significant out-of-pocket losses, and loss of business. Mr. Ellner will testify as to the damages incurred by UTS and ESI.

      2. Paul Scott:

Mr. Scott will testify as UTS' local representative with Engineered Systems, Inc., the facts and circumstances regarding the City's pre-bid approval of UTS, the efforts undertaken to get the UTS system approved by the City and GMP and the ultimate improper rejection of UTS. He will also testify concerning the improper conduct of GMP. Mr. Scott will also testify about the damages sustained by UTS and ESI.

      3. Cyril Hamada:

Mr. Hamada will testify regarding the City's pre-bid approval of UTS, GMP's failure to draft of an appropriate specification, the fact that the specification was drafted around the Trojan 4000 was akin to a sole source specification and the

1242375.2

City's release of confidential and proprietary information. Mr. Hamada will also testify about GMP's bias against UTS, the rejection of UTS and improper position taken by GMP relative to UTS.

### 4. Guy Inouye:

Mr. Inouye will testify regarding the City's pre-bid approval of UTS, the failure to draft an appropriate specification, the fact that the specification was drafted around the Trojan 4000 was akin to a sole source specification, the interaction between the City, GMP and HES, and the impropriety of the release of confidential and proprietary information.

### 5. Dennis Kaneshiro:

Mr. Kaneshiro has yet to be deposed and the substance of his testimony has yet to be confirmed.

### 6. Eldon Franklin:

Mr. Franklin's deposition has yet to be completed. However, it is expected that he will testify about the City's retention of GMP and GMP's role and obligations, GMP's knowledge that the Trojan 4000 was proprietary, GMP's efforts to get UTS rejected and the rejection process.

### 7. Jay Stone:

Mr. Stone will testify regarding GMP's failure to draft an appropriate specification, the fact that GMP knew that the specification drafted around the Trojan 4000 was akin to a sole source specification, the release of UTS' confidential and proprietary information to HES, and the fact that GMP allowed UTS to expend resources in providing information about a system that GMP would never approve. Mr. Stone will also testify about his interaction with HES and his use of false and incorrect information in reporting on UTS' ability to meet the specification.

### 8. Lee Mansfield:

Mr. Mansfield will testify regarding GMP's failure to draft an appropriate specification, the fact that GMP knew that the specification drafted around the Trojan 4000 was akin to a sole source specification, the release of UTS'

1242375.2

confidential and proprietary information to HES, and the fact that GMP allowed UTS to expend resources in providing information about a system that GMP would never approve. Mr. Mansfield will also testify that he knew HES would not bid the Trojan system if others were involved in the bid. Mr. Mansfield will also testify about GMP's improper actions relative to reporting on UTS' ability to meet the specification.

9. Mr. Honke:

Mr. Honke will testify regarding the City's pre-bid approval of UTS, the failure to draft an appropriate specification, the fact that the specification was drafted around the Trojan 4000 was akin to a sole source specification, the interaction between the City, GMP and HES, and the impropriety of the release of confidential and proprietary information.

10. Safwat Gergis:

Mr. Gergis has yet to be deposed. This will be supplemented.

11. Theodore Saito:

Mr. Saito has yet to be deposed. This will be supplemented.

12. Leroy Humke:

Mr. Humke will testify that Bodell entered into an agreement with UTS to purchase a UTS system, the bidding process, Bodell's reliance on UTS' bid, discussions had with the City and GMP, the submittal process, and the rejection of UTS.

13. Michael Elhoff:

Mr. Elhoff will testify about his contact with GMP pre-bid and post-bid, his communications with GMP and the City, his communications with Trojan, GMP's provision of information contained in UTS' communications with Bodell, the City and GMP, his efforts to get UTS rejected, and GMP's tortious interference with UTS' business relations.

14. Sidney Ellner:

Mr. Ellner will provide expert testimony as an expert in the field of ultraviolet disinfection of water, and will further testify, among other things, as to the Project specifications being a "performance" specification, rather than a "design" specification, that the specifications were poorly written and ambiguous, that GMP lacked sufficient knowledge in UV equipment design, and that it was unreasonable for the City and GMP to exclude vertical UV systems from its evaluation of UTS' experience.

15. Armand Cote:

Mr. Cote will testify in accordance with his expert report and that there was sufficient time for the installation of the UTS system after UTS proved it met the specifications.

(J) Exhibits, Schedules, and Summaries:

| Exhibit No. | Date and Document Description | Summary of Substance/Purpose | Identity of Sponsoring Witness |
|---|---|---|---|
| 1 | Spring 92 – Infilco Degremont Newsletter: "IDI Now Offers Ultraviolet Treatment" | IDI first acquires rights to market Katadyn Systems | Sid Ellner Greg Ellner |
| 2 | 6/13/97 -- Letter from GMP Associates, Inc. to James Honke (City & County of Honolulu) | Analysis of low pressure v. medium pressure systems and bidding | Lee Mansfield |
| 3 | 7/10/97 – Letter from Floyd Mitchell (M&E Pacific) to Mr. Po Chan (City & County of Honolulu) | Comments made by Mansfield; low pressure v. medium pressure | James Honke |
| 4 | 5/26/98 – Letter from Floyd Mitchell (M&E Pacific) to James Honke (City & County of Honolulu) | Trojan's refusal to bid unless sole sourced; statements of Mike Elhoff | James Honke |
| 5 | 10/23/98 – Memorandum from Stephen T.C. Ching to | City's position discouraging | James Honke |

14

|   | James Honke (City & County of Honolulu) | proprietary equipment; prior protests | |
|---|---|---|---|
| 6 | 5/8/99 – Word processing request with vendor specifications attached | GMP's receipt of Trojan's specifications | Jay Stone |
| 7 | 5/19/99 – Fax from Jay Stone (GMP) Associates to Mike Elhoff (HES) | Preparation of specification | Jay Stone Mike Elhoff |
| 8 | 6/7/99 – Letter from Greg Ellner (UltraTech) to Paul Scott at Engineered Systems | Information provided to City | Greg Ellner Paul Scott |
| 9 | 6/14/99 – Fax from Greg Ellner (UltraTech)Cyril Harmada (City & County of Honolulu) | Information provided to City | Greg Ellner |
| 10 | 8/18/99 – Email from Jay Stone (GMP) to HES | Preparation of specification | Jay Stone Mike Elhoff |
| 11 | 8/20/99 – Email from HES to Jay Stone (GMP) | Preparation of specification | Jay Stone Mike Elhoff |
| 12 | 8/23/99 – Letter from Chris Tabor (Infilco Degremont) to Jay Stone (GMP) | Preparation of specification | Jay Stone |
| 13 | 9/1/99 – Record of Telephone Conversation between Michael Elhoff (HES) and Jay Stone (GMP) | Preparation of specification, reliance on Trojan for information about vertical systems | Jay Stone |
| 14 | 9/23/99 – Letter from Art Shapiro (Infilco Degremont) to Jay Stone (GMP) | Disregard of low-pressure system | Jay Stone |
| 15 | 9/30/99 – Fax from Mike Elhoff (HES)to Kathleen Ganiko-Orlowski (GMP) | Relationship with GMP concerning specification | Mike Elhoff |
| 16 | 1999 – Ultraviolet Disinfection Equipment Specification | Specification | Jay Stone Cyril Hamada |

1242375.2

| 17 | 1999 – General Instructions for Construction Contract Bidding | Instructions to Bidders | Cyril Hamada Guy Inouye |
|---|---|---|---|
| 18 | 11/18/99 – Letter from Engineered Systems to City & County of Honolulu | Substitution request | Paul Scott |
| 19 | 11/23/99 Material Substitution Request from Engineered Systems | Rejection of UTS substitution request | Lee Mansfield |
| 20 | 12/1/99 – Memorandum from Cyril to "The Record" | Approval of UTS system | Cyril Hamada |
| 21 | 12/9/99 – Letter from James Honke to Paul Scott | Approval of UTS system | Cyril Hamada Paul Scott James Honke |
| 22 | 12/9/99 – Letter from James Honke to Paul Scott | Approval of UTS system | Cyril Hamada |
| 23 | 12/10/99 – Letter from UltraTech Systems to Bidding Contractors | Proposal to contractors | Greg Ellner |
| 24 | 12/16/99 – Fax from Greg Ellner to Leroy Humpkey | Cost of system | Greg Ellner |
| 25 | 12/16/99 – Fax from Greg Ellner (UltraTech) to Leroy Humpkey & Gary Jeppson (Bodell) | UTS system; cost of system; Title 22 | Greg Ellner |
| 26 | 12/17/99 – Fax from Jay Stone (GMP) to Guy Inouye (Department of Design & Construction) | Request for information on UTS substitution request | Jay Stone Guy Inouye |
| 27 | 12/30/99 – Email from Guy to Myron Fujimoto, Barry Fukinaga, Cyril Hamada, Mike Hiu, James Honke, Tim Houghton, Dennis Kaneshiro, and Cynthia Nojima | Knowledge of UTS in Bodell's bid and potential actions | Guy Inouye Cyril Hamada Eldon Franklin |
| 28 | 1/10/00 – Management team Meeting Notes of C&C/Bodell | Intent to proceed with Trojan | Cyril Hamada Dennis Kaneshiro James Honke |

| 29 | 2/25/00 – Contract between City and County of Honolulu and Bodell Construction Co. | Contract | James Honke Cyril Hamada |
| 30 | 4/11/00 – Memorandum from City and County of Honolulu to Gary Yee | Notice to Proceed | City Witness |
| 31 | 4/11/00 – Email from Franklin Eldon to Bodell employees | Intent regarding UV system | Eldon Franklin |
| 32 | 4/13/00 – Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22 for UV system | Greg Ellner |
| 33 | 4/13/00 – Letter from Gregg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22; Cost of system | Greg Ellner |
| 34 | 4/13/00 – Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22; Vertical system | Greg Ellner |
| 35 | 4/27/00 – Project Meeting Minutes from Bodell | GMP's stated opinion on UTS system before reviewing info; GMP's request for info from UTS | City Witness |
| 36 | 4/28/00 – Letter from Gary Jeppson (Bodell) to Greg Ellner (UltraTech) | Info requested of UTS; GMP's position on UTS | Greg Ellner James Honke |
| 37 | 5/1/00 – Fax from Eldon Franklin (City and County of Honolulu) to Jay Stone (GMP) | Evaluation of UTS system | Jay Stone Eldon Franklin |
| 38 | 5/2/00 – Minutes of Meeting | GMP's efforts to evaluate UTS; request for information | Jay Stone Lee Mansfield |
| 39 | 5/4/00 – Fax from Greg Ellner (UltraTech) to Cyril Hamada (City and County of Honlulu) | Title 22 confirmation | Greg Ellner |
| 40 | 5/8/00 – Fax from Greg | UTS provision of | Greg Ellner |

| | | | |
|---|---|---|---|
| | Ellner (UltraTech to Gary Jeppson (Bodell) | information requested | |
| 41 | 05/9/00 – Ultraviolet Disinfection equipment Pre Submittal Package from UltraTech | Pre-submittal package, UTS confidential information | Greg Ellner |
| 42 | 5/8/00 – Fax from Greg Ellner (UltraTech) to Leroy Humke (Bodell) and Paul Scott (Engineered Systems) | Proposed system | Greg Ellner |
| 43 | 5/24/00 – Fax from Robert Clay (Trojan Tech.) to Mike Elhoff (HES) | Trojan's efforts to develop information about UTS | Michael Elhoff |
| 44 | 5/25/00 – Email from Robert Clay (Trojan Tech.) to Mike | Efforts to get UTS rejected. Requests by GMP to HES | Michael Elhoff |
| 45 | 5/27/00 – Email from Dave Bos (Trojan Tech.) to Mike | Trojan's development of info regarding UTS | Michael Elhoff |
| 46 | 5/30/00 – Fax from Robert Clay (Trojan Tech.) to Mike Elhoff | Trojan's development of info regarding low pressure system | Michael Elhoff |
| 47 | 5/31/00 – Email from Mike to Robert Clay (Trojan Tech.) | Meeting between HES and GMP | Michael Elhoff |
| 48 | 6/1/00 – Fax from Nathen Myers (Trojan Tech.) to Mike Elhoff (HES) | Relationship between HES and GMP and conduct concerning UTS | Michael Elhoff Jay Stone |
| 49 | 6/2/00 – Fax from Mike Elhoff (HES) to Jay Stone (GMP | HES/GMP work on UTS evaluation | Michael Elhoff Jay Stone |
| 50 | 6/4/00 – Memorandum from JMKS to LAM | GMP's improper report concerning UTS | Michael Elhoff Jay Stone |
| 51 | 6/5/00 – Email from Guy Inouye to Dennis Kenshiro, Cyril Hamada and James Honke | Meeting with HES | Guy Inouye James Honke Michael Elhoff Eldon Franklin |
| 52 | 6/5/00 – Fax from Mike | HES work with GMP | Michael Elhoff |

| | | | |
|---|---|---|---|
| | Elhoff (HES) to Lee Mansfield (GMP) | evaluation | Lee Mansfield |
| 53 | 6/5/00 – Fax from Jay Stone (GMP) to Mike Elhoff (HES) | GMP requests of HES | Jay Stone |
| 54 | 6/16/00 – Fax from Tom Swan (Bodell) to Eric Gulak and Greg Ellner (UltraTech) | Requests for work of UTS | Greg Ellner |
| 55 | 6/27/00 – Memorandum from JMKS to LAM | Erroneous calculations; evaluation of UTS | Jay Stone Lee Mansfield |
| 56 | 6/28/00 – Letter from Greg Ellner (UltraTech) to Cyril Hamada (City & County of Honolulu | Dosage calculations | Greg Ellner Cyril Hamada |
| 57 | 6/29/00 – Letter from Jay Stone (GMP) to Chuck Eckman (Bodell) | Comments on submittal | Jay Stone |
| 58 | 7/7/00 – Email from Cyril Hmada (City & County of Honolulu) to Greg Ellner (UltraTech) | GMP's bias; the experience clause | Cyril Hamada Greg Ellner |
| 59 | 7/10/00 – Fax from Tom Swan (Bodell) to Greg Ellner (UltraTech) | Request for information from UTS | Greg Ellner |
| 60 | 7/27/00 – Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS' work on submittals | Greg Ellner |
| 61 | 7/31/00 – Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS' work in response to GMP's questions | Greg Ellner |
| 62 | 8/7/00 – Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Cost of UTS system | Greg Ellner Paul Scott |
| 63 | 8/25/00 – Fax with Submittal from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |

| 64 | 8/28/00 – Fax with Submittals from Horace Payne (UltraTech) to Tom Swan (Bodell) | UTS work on submittals | Greg Ellner |
| 65 | 8/30/00 – Fax with Installation List from Horace Payne (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |
| 66 | 9/00 – Performance Data Submission from UltraTech | UTS work on submittals | Greg Ellner |
| 67 | 9/7/00 – Memo from GMP Associates | Comments on submittal | Lee Mansfield |
| 68 | 9/7/00 – Submittal from GMP Associates | Comments on submittal | Greg Ellner |
| 69 | 9/14/00 – Letter to Gary Jeppson (Bodell) from Greg Ellner (UltraTech) | Comments on response to submittal | Greg Ellner |
| 70 | 2000 – Project Submittal from UltraTech Systems, Inc. | Submittal | Greg Ellner |
| 71 | 10/2/00 – Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |
| 72 | 10/2/00 – Fax with Submittal from Horace Payne (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |
| 73 | 10/4/00 – Letter from Safwat Gergis (GMP) to Kevin Harvey (Bodell) | GMP'S instruction to Bodell to supply Trojan | Safwat Gergis |
| 74 | 10/11/00 – Email from Robert Clay to Nathen Myers and Neil Brown | Rejection of UTS and improper efforts | Michael Elhoff |
| 75 | 10/11/00 – Letter from LeRoy Humke (Bodell) to Robert Clay and David Schwarezel (Trojan Tech.) | Bodell's requirement to purchase Trojan | James Honke |
| 76 | 10/00 – Fax from Greg Ellner (UltraTech) to Gary | UTS' work; Title 22 for vertical system | Greg Ellner |

1242375.2

| | Jeppson (Bodell) | | |
|---|---|---|---|
| 77 | 10/23/00 – Letter from Richard Sakaji (Dept. of Health Services) to Greg Ellner (UltraTech) | Title 22 approved for vertical system | Greg Ellner |
| 78 | 10/25/00 – Letter from David Shulmeister (Cades, Schutte, Flemming & Wright) to Safwat Gergis (GMP) | Demand letter from Bodell's counsel | Safwat Gergis |
| 79 | 10/30/00 - Letter from Greg Ellner to Gary Jeppson (Bodell) | UTS' additional comments on GMP's response | Greg Ellner |
| 80 | 10/30/00 – Email from Cyril Hamada to Dennis Kaneshiro | City's re-cap of events; approval of UTS | Cyril Hamada Guy Inouye |
| 81 | 11/2/00 – Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS' continued work on submittals | Greg Ellner |
| 82 | 11/8/00 – Fax from Tom Swan (Bodell) to Safwat Gergis (GMP) | UTS submittals | Safwat Gergis |
| 83 | 11/15/00 – Email from Richard Pearcey to Mike Elhoff (HES) | Efforts to get UTS rejected | Michael Elhoff |
| 84 | 11/28/00 – Submittal Review Comments from GMP Associates | Comments on submittal | Lee Mansfield |
| 85 | 12/00 – Letter from Greg Ellner (UltraTech) to Gary Yee (City & County of Honolulu) | Post-bid substitution request for Vertical System | Greg Ellner |
| 86 | 12/13/00 – Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Rejection of submittal and response | Greg Ellner |
| 87 | 12/15/00 – Contract Cover Sheet from Bodell Construction | Submittal of 30C | James Honke |
| 88 | 12/19/00 – Submittal | Rejection of submittal | Lee Mansfield |

| | Review Comments from GMP Associates | of 30C | |
|---|---|---|---|
| 89 | 12/19/00 – Submittal Review Comments from GMP Associates | Rejection of submittal of 30C | James Honke |
| 90 | 1/29/01 – Letter from Mike Brown (Trojan Tech.) to Mike Elhoff (HES) | Commission on Trojan sale | Michael Elhoff |
| 91 | Ethics Codes | Ethics codes for engineers | Guy Inouye Eldon Franklin Cyril Hamada Armand Cote |

## (K) Further Discovery or Motions:

Significant discovery remains to be completed. Depositions of the following individuals remain:

1. Cyril Hamada (City)

2. Dennis Kaneshiro (City)

3. Eldon Franklin (City)

4. Guy Inouye (City)

5. Theodore Saito (City)

6. James Honke (City)

7. Lee Mansfield (GMP)

8. Safwat Gergis (GMP)

9. Bruce Bell (GMP's expert)

10. Sidney Ellner (UTS' expert)

1242375.2

11.Armand Cote (UTS' expert)

(L) Stipulations:

No stipulations have been requested or proposed.

(M) Amendments, Dismissals:

(N) Settlement Discussions:

The plaintiff discontinued its action against UTS.  GMP's cross-claim against UTS has been dismissed.  The City and UTS have agreed to resolve their dispute.  The City and the plaintiff agreed to resolve their dispute.  There have been numerous settlement discussions and mediation sessions/settlement conferences.  UTS/ESI still await an offer from GMP.

(O) Agreed Statement:

n/a

(P) Bifurcation, Separate Trial of Issues:

Bifurcation or a separate trial of specific issues does not seem feasible.

(Q) Reference to Master or Magistrate Judge:

UTI and ESI are amenable to referral of the case to Magistrate Judge Leslie Kobayashi.

(R) Appointment and Limitation of Experts:

Appointment of an impartial expert witness or limitation of the number of expert witnesses is not feasible or desirable.

23

(S) Trial:

Trial is currently scheduled to commence on Tuesday, October 17, 2006. A timely request for a jury trial was made.

(T) Estimate of Trial Time:

It is anticipated that the trial will take approximately seven trial days.

(U) Claims of Privilege or Work Product:

None.

(V) Miscellaneous:

None.

DATED:    White Plains, New York
          September 15, 2006.

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP

                              Adam R. Bialek, Esq.
                              Angela Pilla Soares, Esq.
                              *Attorneys for Defendant*
                              **ULTRATECH SYSTEMS, INC.**
                              3 Gannett Drive
                              White Plains, New York 10604
                              Tel: (914) 323-7000
                              Fax: (914) 323-7001

                              Stubenberg & Durrett
                              Adrian W. Rosehill, Esq.
                              *Attorney for 3rd Party Defendant/Cross-
                              Claim Plaintiff*
                              **ENGINEERED SYSTEMS, INC.**
                              Davies Pacific Center
                              841 Bishop Street, Suite 2115
                              Honolulu, Hawaii 96813

1242375.2