# ORIGINAL

Of Counsel:
SAKAI IWANAGA SUTTON
LAW GROUP, AAL, LLLC

RICHARD C. SUTTON JR. 1010-0
City Financial Tower, Suite 2307
201 Merchant Street
Honolulu, Hawaii 96813
Tel. No. (808) 792-3888
Fax No. (808) 521-5262

Attorney for Defendant
OHIO PACIFIC TECH CORPORATION
Fka GMP ASSOCIATES, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 1 5 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION, a Utah Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> OHIO PACIFIC TECH CORPORATION, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRATECH SYSTEMS, a Foreign Corporation, <br><br> Defendants. | CIVIL NO.  CV03-00706 HG-LEK <br><br> **OHIO PACIFIC TECH CORPORATION, INC., fka GMP ASSOCIATES, INC.'S PRETRIAL STATEMENT STATEMENT; CERTIFICATE OF SERVICE** <br><br><br><br><br><br> TRIAL DATE: December 4, 2006 |

CITY AND COUNTY OF
HONOLULU,

        Defendant,
        Cross-Claim Plaintiff,
        Cross-Claim Defendant

        vs.

ULTRATECH SYSTEMS, a Foreign
Corporation,

        Defendant,
        Cross-Claim Defendant,
        Cross-Claim Plaintiff,

OHIO PACIFIC TECH, INC., fka
GMP ASSOCIATES, INC., an Ohio
Corporation,

        Defendant,
        Cross-Claim Plaintiff
        Cross-Claim Defendant

        vs.

ULTRATECH SYSTEMS, a Foreign
Corporation

        Defendant,
        Cross-Claim Defendant,
        Cross-Claim Plaintiff,

## OHIO PACIFIC TECH CORPORATION, INC., fka GMP ASSOCIATES, INC.'S PRETRIAL STATEMENT

On behalf of Defendant Ohio Pacific Tech, Inc, (referred by its prior name "GMP") we respectfully submit pursuant to Local Rule 16.6, this Pretrial Statement as follows:

**(a)    Party:**

Defendant Ohio Pacific Tech, Inc, (referred by its prior name "GMP").

**(b)    Jurisdiction and Venue:**

Jurisdiction is based on diversity of citizenship by 28 U.S.C. §1332. Venue is based on 28 U.S.C. §§1391 (a) because Defendants do business within this judicial district and are subject to the personal jurisdiction of this court.  No party disputes jurisdiction or venue.

**(c)    Substance of Action.**

This litigation arises out of design and construction of the Wahiawa Wastewater Treatment Plant – Ultraviolet disinfection upgrades.  The upgrades were required by a Consent Decree in March 1998 between the City and County of Honolulu and the Environmental Protection Agency which required that the quality of the wastewater entering into Lake Wilson be upgraded.  The consent decree imposed strict time deadline of March 2001

completion as well as requirement of a certain quality of water sanctioned by substantial monetary penalties. Another restraint was the size of existing wastewater facility at Wahiawa and any addition had to fit into the narrow configurations of the existing facility.

The preliminary engineering for the City and County was a company called Brown and Caldwell and March 1999 they recommended a <u>horizontal lamp medium pressure ultraviolet disinfectant system</u>.

GMP Hawaii, Inc. was the Engineering Consultant for the City and County of Honolulu for the design and separately was the Construction Manager for the project. GMP followed Brown and Caldwell's advice and used as a basis of design for the ultraviolet disinfectant system a "Trojan 4000" unit. This Trojan 4000 was a <u>horizontal lamp medium pressure system</u>.

GMP prepared the specifications for the project which included the Trojan 4000 <u>or "equal"</u>. Several suppliers submitted pre-bid submissions to be considered as alternates to Trojan. Among these suppliers was Ultratech. Ultratech supplied only an advertising brochure on their product and nothing to show that the

product complied with the specifications.  GMP indicated after a review of the Ultratech submittal that they had insufficient information to determine suitability.  This advice was sent to the City and County of Honolulu.  Ultratech did not ask for any clarification of the specifications.

Despite GMP's recommendation, the City and County issued a letter on December 9, 1999 telling bidders that Ultratech was acceptable for "bidding purposes" and still had to meet the plans and specifications.  This was procedure is not provided for in the procurement law of the State of Hawaii which requires approval of an alternate supplier in advance of the contractor submitting his bids.  When the bids were opened, Bodell Construction was the winning bidder.  They relied on the Ultratech to be their ultraviolet disinfectant supplier.  However, Ultratech was unclear as to the lamp configuration, as they had bids for both horizontal and vertical systems. It is noteworthy that Bodell and Ultratech never entered into a contract for the supplying of ultraviolet system. Bodell sent a purchase order to Ultratech for a horizontal system but Ultratech never signed it as they knew they could not comply.

The difficulty with the City's issuing a letter allowing Ultratech to be a supplier came to light shortly after the bids were open. After a complaint by Trojan and admitting their "errors"; the City considered deleting and re-bidding the ultraviolet disinfection portion of the project but never followed through.

Additionally, a City Engineer, Cyril Hamada, a design project engineer, was in constant contact with the head of Ultratech, Greg Ellner from prior to the bid. Documents and e-mails between Mr. Hamada and Mr. Ellner indicated that Mr. Hamada was disparaging GMP's involvement as well as trying to enhance the opportunity for Ultratech to obtain the job. Mr. Hamada was responsible for the City's December 9, 1999 letter. The strategy of Ultratech, as fostered by Mr. Hamada, was to try to force the City and GMP to accept a different configuration of lamps at the Wahiawa Wastewater based on installing of a vertical lamps which Ultratech had installed at the Kailua Wastewater Treatment Facility shortly before the Wahiawa project. Ultratech was trying to use a similar configuration of vertical lamps at Wahiawa. However, since the requirement was for horizontal lamps, Ultratech gave the impression they were bidding for horizontal lamps and then tried to

not comply with the specifications hoping that the time constraints would allow them to substitute the vertical for the horizontal. This scheme did not work.

Ultratech made four attempts to comply with the Contract specifications and GMP prepared a list of deficit items which Ultratech did not meet. Mr. Ellner has admitted in e-mails to Mr. Hamada that Ultratech could not meet the experience requirement, but Mr. Hamada reported to the City that he thought that Ultratech could meet the experience requirement. This prolonged this dispute.

After failing to meet the horizontal lamp requirements, Ultratech then tried to make a substitution for vertical which was also rejected.

As the project was on the verge on having to have construction delayed, a reversion to the original Trojan 4000 was made and installed.

**(d)    Undisputed Facts.**

1.    This litigation arises from the design and construction of the Wahiawa Wastewater Treatment Plant-Ultraviolet disinfection upgrades (hereinafter "the Project").

2.    The disinfection upgrades were required by a Consent Decree in March of 1998 between the City and County of Honolulu and the Environmental Protection Agency which required that the quality of the wastewater entering into Lake Wilson be upgraded.

3.    The consent decree imposed a strict deadline of March 2001 for completion of the Project and sanctions if the water did not meet a certain quality requirement.

4.    In March of 1999, the City and County of Honolulu retained Brown and Caldwell to perform preliminary engineering on the Project.

5.    Brown and Caldwell recommended a horizontal lamp medium pressure ultraviolet disinfection system.

6.    The City and County of Honolulu retained GMP as the engineering consultant for the design of the Project by contract dated, December 4, 1996.

7.    The City and County of Honolulu retained GMP as the construction manager for the Project by separate contract dated, December 30, 1999.  Under this contract, GMP was required to ensure the Project was constructed pursuant to the plans and specifications.

8.    On Brown and Caldwell's recommendation GMP used as a basis of the design for the project a Trojan 4000 unit, a horizontal lamp medium pressure system.

9.    GMP prepared the plans and specification for the Project ("Specifications") which called for the Trojan 4000 system or "equal" for the disinfection system.

10.    Section 11376, 1.2B of the Specifications further provided that "[a]ny cost resulting from changes due to the use of an alternate system shall be borne by the Contractor."

11.    Several disinfection system suppliers submitted to the City and County of Honolulu pre-bid submissions to be considered as alternates to the Trojan system.

12.    Engineered Systems, Inc. ("ESI") was the local supplier of Ultra Tech's disinfection system and on behalf of Ultra Tech, ESI submitted an advertising brochure of the product as a

pre-bid submission to be considered as the alternate. The brochure did not contain any specific information to show that the product complied with the Specifications.

     13. GMP reviewed the Ultra Tech submittal and informed the City and County of Honolulu that the brochure did not contain information for GMP to determine the product complied with the Specifications and was suitable for the Project.

     14. Ultra tech did not ask for any clarification of the Specifications.

     15. Despite GMP's recommendation, the City and County of Honolulu issued a letter on December 9, 1999 stating that Ultra Tech was acceptable for "bidding purposes" but still had to meet the Specifications.

     16. This acceptance for bidding purposes procedure is not provided for in the procurement law of the state of Hawaii.

     17. GMP had been retained by the City to provide engineering services and construction management services on numerous other contracts including a separate wastewater treatment project.

18.  The procedure for approval usually followed by the City and County of Honolulu requires approval of an alternate supplier in advance of the contractor submitting bids.

19.  The City and County of Honolulu opened the Project for bids in December 1999.

20.  Bodell Construction submitted the lowest bid and was retained as the general contractor on the Project.

21.  Bodell Construction relied on UltraTech as their ultraviolet disinfectant supplier when submitting its bid.

22.  In its submission for the Project, Ultra Tech was trying to provide vertical lamp orientation as opposed to the horizontal lamps required under the Specifications.

23.  Bodell forwarded a Purchase Order to Ultra Tech for a horizontal lamp disinfection system for the Project which Ultra Tech did not sign.

24.  Ultra Tech could not supply the horizontal lamp disinfection system required by the Specifications because it could not satisfy the experience requirements of the Specifications.

25.  Cyril Hamada, a project engineer employed by the City and County of Honolulu working in its engineering department

communicated with Greg Ellner, head of Ultra Tech prior to and throughout the bid process.

26. Mr. Hamada was the author of the City's December 9, 1999 correspondence approving the Ultra Tech product for bidding purposes.

27. Ultra Tech made four attempts to comply with Project Specifications.

28. GMP prepared a list of deficient items which Ultra Tech did not meet.

29. After failing to meet the horizontal lamp requirements Ultra Tech then tried to make a substitution for vertical which was also rejected.

30. The Project was on the verge of delay and in fear of not meeting the strictly imposed deadline for completion, Bodell used Trojan 4000 product for the Project.

**(e)  Disputed Factual Issues.**

1. Did GMP act with malice in reviewing the UTS submittals.

2. Was GMP justified in its review of UTS submittals.

3.    Whether UTS had any business agreement with Bodell.

4.    Whether GMP's actions were privileged and justified.

**(f)    Relief prayed.**

1.    GMP has asserted Cross-claims against UTS for the damages claimed by Bodell.

2.    Bodell and UTS claims for intentional torts against GMP.

3.    UTS asserted negligence claims against GMP.

**(g)    Points of Law**

1.    <u>Intentional Interference with Contractual Relations</u>

"In order to establish a cause of action against a third party for intentional interference with a contractual right, it must be shown that the third party acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse, or, in other words, the willful violation of a known right." <u>Chow v. Alston</u>, 2 Haw. App. 480, 484, 634 P.2d 430 (1981) (internal citations omitted); <u>see also</u> <u>Shaw v. Santa Monica Bank</u>, 920 F. Supp. 1080, 1087 (D. Hawaii 1996); <u>Kutcher v.</u>

Zimmerman, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (1998); Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 122 P.3d 1133 (Haw. App. 2005); see also 45 Am. Jur. 2d Interferences § 3 (1969).

"[T]ortious interference requires a state of mind or motive more culpable than mere intent." Locricchio v. Legal Services Corp., et al., 833 F.2d 1352, 1358 (9th Cir. 1987) (citing DeVoto v. Pacific Fidelity Life Ins., 618 F.2d 1340, 1347 (9th Cir.) cert.denied, 449 U.S. 869 (1980)). It must be proven that GMP "either pursued an improper objective of harming [UltraTech] or used wrongful means that caused injury in fact." Meridian Mortg. Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 48, 122 P.3d 1133, 1146 (Haw. App. 2005) (citing Omega Env't, Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166 (9th Cir. 1997)).

An engineer acting in his professional capacity is bound by contract to guard the interests of its principal. Thus, a party who acts within the scope of his obligations to the owner will not be liable for advising the owner pursuant to the contract. See, e.g., Kecko Piping Co., Inc. v. Town of Monroe, 374 A.2d 179 (Conn. 1977); R. S. Noonan, Inc. v. School Dist., 162 A.2d 623 (Pa. 1960);

Zoby v. American Fidelity Co., 242 F.2d 76 (4th Cir. 1957);

Commercial Indus. Constr., Inc. v. Anderson, 683 P.2d 378 (Colo.

App. 1984).

> Interference is not wrongful if it is privileged...Privilege can be created by the relationship between the owner and the design professional...The privilege is granted to enable the owner to be advised honestly without the risk of the person giving advice being taken to court.

Justin Sweet, *Legal Aspects of Architecture, Engineering and the Construction Process*, § 27.10, pp. 536-37 (4th ed. West Publishing 1999).

Pursuant to its contract with the City, GMP had a duty to advise the City that UltraTech's system did not meet the requirements of the Specifications. Therefore, GMP cannot be held liable for the City's refusal to accept the alternative system. In addition, the transmittal of this truthful information is considered privileged. Kutcher v. Zimmerman, 87 Haw. 394, 408-9, 957 P.2d 1076, 1090-91 (1998) (citing Restatement (Second) of Torts § 772 (a), "One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person . . . (a) truthful information, (b)

or honest advice within the scope of a request for advice). GMP provided truthful information to the City that UltraTech's substitute system did not meet the Specifications and therefore GMP did not improperly interfere with Bodell's contractual relations with the City. In fact, UltraTech, admits that its system did not meet the Specifications. [Cite]

UltraTech and ESI's claims for interference with contractual relations fail for the same reasons that Bodell's claims fail. And an additional basis, the claims fail because a claim for interference with contractual relations requires, first and foremost, an underlying contract. <u>Weinberg v. Mauch</u>, 78 Haw. 40, 50, 890 P.2d 277, 287 (1995). In this case, there was no underlying contract because UltraTech failed to sign the Purchase Order which would have created a contract with Bodell.

> 1) a prospective contractual relationship existed between the plaintiff and a third party; 2) the defendant knew of this relationship; 3) the defendant intentionally interfered with the plaintiff's prospective contract; 4) the defendant acted without proper justification; 5) the defendant's interference caused the third party to fail to consummate the prospective contract with the plaintiff; and 6) the defendant's interference caused damages to the plaintiff.

Kutcher v. Zimmerman, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (1998).

2.    Interference with Prospective Business Advantage

To sustain a claim for interference with prospective business advantage, a plaintiff must demonstrate:

> 1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; 2) knowledge of the relationship, advantage, or expectancy by the defendant; 3) a purposeful intent to interfere with the relationship, advantage, or expectancy; 4.) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and 5.) actual damages.

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Tran. Co., Inc., 91 Haw. 224, 258, 982 P.2d 853, 887 (1999) (emphasis and footnote in original omitted).

3.    UTS Claim of Negligence

GMP did not owe a duty to either UltraTech or ESI. "A necessary element in a negligence action is a duty, or obligation, recognized by the law, requiring the actor to conform to a certain

standard of conduct for the protection of others against unreasonable risks." <u>Birmingham, et al v. Fodor's Travel Publ'ns, Inc., et al.</u>, 73 Haw. 359, 366, 833 P.2d 70, 75 (1992) (quoting <u>Johnston v. KFC Nat'l Management Co.</u>, 71 Haw. 229, 232, 788 P.2d 159, 161 (1990)).

No contract existed between UltraTech, ESI and GMP which would create a duty owed by GMP to UltraTech and ESI. Further, there is no duty under the law extending from an engineer such as GMP to a party as attenuated as a <u>potential</u> supplier of equipment and its local representative such as UltraTech and ESI.

4.    <u>The Economic Loss Doctrine</u>

UltraTech and ESI are respectively seeking damages for extra cost and lost profits, which are purely economic damages not resulting from injury to person or property.  Thus, their claims for negligence against GMP are barred by the economic loss rule.  "The economic loss rule bars recovery in tort for purely economic loss." <u>City Express, Inc. v. Express Partners, et al.</u>, 87 Haw. 466, 469, 959 P.2d 836, 839 (1998).  Hawaii has adopted the economic loss doctrine "insofar as it applies to claims for relief based on a product liability or negligent design and/or manufacture theory." <u>Bronster</u>

v. United States Steel Corporation, et al., 82 Haw. 32, 40, 919 P.2d 294, 303 (1996).

The overwhelming majority of other jurisdictions preclude recovery of purely economic losses for claims against design professionals grounded in tort. See, e.g., Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269 (M.D. Pa. 1990) (dismissing claim against architect/engineer by subcontractor for purely economic loss dismissed on summary judgment); Carmania Corp. N.V. v. Hambrecht Terrell Int'l, 705 F. Supp. 936, 938-939 (S.D.N.Y. 1988) (dismissing negligence claims brought by owner against architect where owner sought solely economic loss); 2314 Lincoln Park West Condo. Ass'n v. Mann, Gib, Ebel & Frazier, Ltd., 555 N.E.2d 346, 348-353 (Ill. 1990) (barring condominium owners from bringing negligence claim for economic loss against architect); Alvord & Swift v. Muller Constr. Co., 391 N.Y.S.2d 1012 (1976) (applying the economic loss rule to subcontractor plaintiffs who brought economic loss claims in tort against the Owner's architect who was not in privity with the subcontractors); Floor Craft Floor Coverings, Inc. v. Parma Cmty. Gen. Hosp. Ass'n, 560 N.E.2d 206, 208-212 (Ohio 1990) (affirming dismissal of  negligence claim by General

Contractor seeking recovery against architect for purely economic loss); Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 58 (Va. 1988).

**(h)  Previous Motions**

| Date Filed | Motion |
| --- | --- |
| 9/10/04 | Motion by defendant, City and County of Honolulu for leave to file an amended answer to assert cross claims against defendant, UltraTech Systems, Inc. and leave to file a third party complaint against Engineered Systems, Inc. *(Motion granted October 6, 2004)* |
| 4/6/05 | Motion by third party defendant, Engineered Systems, Inc. for leave to file an amended answer to assert a cross claim against City and County of Honolulu and defendant Ohio Pacific Tech, Inc. *(Motion granted May 12, 2005)* |
| 1/9/06 | Motion by Plaintiff, Bodell Construction Company for summary judgment against defendant City and County of Honolulu *(Decision Pending)* |
| 1/18/06 | Motion by UltraTech Systems, Inc. for Extension of time to Complete Discovery and to Extend Deadline for Dispositive Motions *(Denied)* |
| 2/17/06 | Motion by defendant, Cross-Claim Plaintiff/Defendant and Third Party Plaintiff/Counterclaim Defendant City and County of Honolulu for Summary Judgment against Cross Claim Plaintiff/Defendant UltraTech Systems, Inc. and Third Party Defendant/Counterclaim Plaintiff, Engineered Systems, Inc. *(Decision Pending)* |
| 2/17/06 | Motion by Defendant, Cross-Claim Plaintiff/Defendant and Third Party Counterclaim Defendant City and County of Honolulu for Summary Judgment against Bodell Construction Company *(Decision Pending)* |

**(i)  Witnesses to be called.**

1.    <u>Lee Mansfield</u>:

Mr. Mansfield will testify regarding specification and evaluation of UTS submittals.

2.    <u>Jay Stone</u>:

Mr. Stone will testify regarding GMP's specifications and evaluation of UTS submittals.

3.    <u>Cyril Hamada</u>:

Mr. Hamada will testify regarding his involvement in the City's pre-bid approval of UTS. Mr. Hamada will also testify about his bias against GMP and the City's review of the UTS bid.

4.    <u>Guy Inouye</u>:

Mr. Inouye will testify regarding the City's pre-bid approval of UTS and the City's review of UTS's approval.

5.    <u>Dennis Kaneshiro</u>:

Mr. Kaneshiro has yet to be deposed and the substance of his testimony has yet to be confirmed.

6.    <u>Eldon Franklin</u>:

Mr. Franklin's deposition has yet to be completed. However, it is expected that he will testify about the City's retention of GMP and GMP's role and obligations, GMP's, GMP's evaluation of the UTS submittals.

7.    <u>Greg Elmer</u>:

Mr. Elmer will testify concerning UTS' and ESI's claims.

8.    <u>Paul Scott</u>:

Mr. Scoff will testify as UTS' local representative with Engineered Systems, Inc., the facts and circumstances regarding the City's pre-bid approval of UTS, the efforts undertaken to get the UTS system approved by the City and UMP and the ultimate improper rejection of UTS.

9.    James Honke:

Mr. Honke will testify regarding the City's pre-bid approval of UTS and the City's review of the UTS bid.

10.    Safwat Gergis:

Mr. Gergis has yet to be deposed.  This will be supplemented.

11.    Theodore Saito:

Mr. Saito has yet to be deposed. This will be supplemented.

12.    Leroy Humke:

Mr. Humke will testify that Bodell entered into an agreement with UTS to purchase a UTS system, Bodell's reliance on UTS' bid, discussions with the City and claims made against UTS.

13.    Michael Elhoff:

Mr. Elhoff will testify about his contact with (GMP pre-bid and post-bid, his communications with GMP and the City, and Trojan.

14.    Bruce Bell:

Mr. Ellner will provide expert testimony as an expert in the field of ultraviolet disinfection of water; GMP's specifications were appropriate and will testify that GMP's evaluation of UTS'

submittals was appropriate.

**(j)    Exhibits, Schedules, and Summaries**:

| Exhibit No. | Date and Document Description | Summary of Substance/Purpose . | Identity of Sponsoring Witness |
|---|---|---|---|
| A | 5/8/99 - Word processing request with vendor specifications attached | GMP's receipt of Trojan's specifications | Jay Stone |
| B | 5/19/99 — Fax from Jay Stone (GMP) Associates to Mike Elhoff (HES) | Preparation of specification | Jay Stone Mike Elhoff |
| C | 6/7/99 — Letter from Greg Ellner (UltraTech) to Paul Scott at Engineered Systems | Information provided to City | Greg Ellner Paul Scott |
| D | 6/14/99 — Fax from Greg Ellner (UltraTech) Cyril Hamada (City & County of Honolulu) | Information provided to City | Greg Ellner |
| E | 8/18/99 — Email from Jay Stone (GMP) to HES | Preparation of specification | Jay Stone Mike Elhoff |
| F | 8/20/99 — Email from HES to Jay Stone (GMP) | Preparation of specification | Jay Stone Mike Elhoff |
| G | 1999 — Ultraviolet Disinfection Equipment Specification | Specification | Jay Stone Cyril Hamada |
| H | 1999 — General Instructions for Construction Contract Bidding | Instructions to Bidders | 'Cyril Hamada Guy Inouye |
| I | 11/18/99 — Letter from Engineered Systems to City & County of Honolulu | Substitution request | Paul Scott |
| J | 11/23/99 Material | Rejection of UTS | Lee Mansfield |

| | | | |
|---|---|---|---|
| | Substitution Request from Engineered Systems | substitution request | |
| K | 12/1/99 — Memorandum from Cyril to "The Record" | Approval of UTS system | Cyril Hamada |
| L | 12/9/99 — Letter from James Honke to Paul Scott | Approval of UTS system | Cyril Hamada Paul Scott James Honke |
| M | 12/9/99 — Letter from James Honke to Paul Scott | Approval of UTS system | Cyril Hamada |
| M | 12/10/99 — Letter from UltraTech Systems to Bidding Contractors | Proposal to contractors | Greg Ellner |
| N | 12/16/99 — Fax from Greg Ellner to Leroy Humke | Cost of system | Greg Ellner |
| O | 12/16/99 — Fax from Greg Ellner (UltraTech) to Leroy Humke & Gary Jeppson (Bodell) | UTS system; cost of system; Title 22 | Greg Ellner |
| P | 12/17/99 — Fax from Jay Stone (GMP) to Guy Inouye (Department of Design & Construction) | Request for information on UTS substitution request | Jay Stone Guy Inouye |
| Q | 12/30/99 — Email from Guy to Myron Fujimoto, Barry Fukinaga, Cyril Hamada, Mike Wu, James Honke, Tim Houghton, Dennis Kaneshiro, and Cynthia Nojima | Knowledge of UTS in Bodell's bid and potential actions | Guy Inouye Cyril Hamada Eldon Franklin |
| R | 1/10/00 — Management team Meeting Notes of C&C/Bodell | Intent to proceed with Trojan | Cyril Hamada Dennis Kaneshiro James Honke |

| S | 2/25/00 — Contract between City and County of Honolulu and Bodell Construction Co. | Contract | James Honke Cyril Hamada |
|---|---|---|---|
| T | 4/11/00 — Memorandum from City and County of Honolulu to Gary Yee | Notice to Proceed | City Witness |
| U | 4/11/00 — Email from Franklin Eldon to Bodell employees | Intent regarding UV system | Eldon Franklin |
| V | 4/13/00 — Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22 for UV system | Greg Ellner |
| W | 4/13/00 — Letter from Gregg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22; Cost of system | Greg Ellner |
| X | 4/13/00 — Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Title 22; Vertical system | Greg Ellner |
| Y | 4/27/00 — Project Meeting Minutes from Bodell | GMP's stated opinion on UTS system before reviewing info; GMP's request for info from UTS | City Witness |
| Z | 4/28/00 — Letter from Gary Jeppson (Bodell) to Greg Ellner (UltraTech) | Info requested of UTS; GMP's position on UTS | Greg Ellner James Honke |
| AA | 5/1/00 — Fax from Eldon Franklin (City and County of Honolulu) to Jay Stone (GMP) | Evaluation of UTS system | Jay Stone Eldon Franklin |
| BB | 5/2/00 — Minutes of Meeting | GMP's efforts to evaluate UTS; request for information | Jay Stone Lee Mansfield |
| CC | 5/4/00 — Fax from Greg | Title 22 | Greg Ellner |

| | | | |
|---|---|---|---|
| | Ellner (UltraTech) to Cyril Hamada (City and County of Honolulu) | confirmation | |
| DD | 5/8/00 — Fax from Greg Ellner (UltraTech to Gary Jeppson (Bodell) | UTS provision of information requested | Greg Ellner |
| EE | 05/9/00 — Ultraviolet Disinfection equipment Pre Submittal Package from UltraTech | Pre-submittal package, UTS confidential information | Greg Ellner |
| FF | 5/8/00 — Fax from Greg Ellner (UltraTech) to Leroy Humke (Bodell) and Paul Scott (Engineered Systems) | Proposed system | Greg Ellner |
| GG | 6/5/00—Fax from Jay Stone (GMP) to Mike Elhoff (HES) | GMP requests of HES | Jay Stone |
| HH | 6/28/00 — Letter from Greg Ellner (UltraTech) to Cyril Hamada (City & County of Honolulu | Dosage calculations | Greg Ellner Cyril Hamada |
| II | 6/29/00 — Letter from Jay Stone (GMP) to Chuck Eckman (Bodell) | Comments on submittal | Jay Stone |
| JJ | 7/7/00 — Email from Cyril Hamada (City & County of Honolulu) to Greg Ellner (UltraTech) | GMP's bias; the experience clause | Cyril Hamada Greg Elmer |
| KK | 9/00 — Performance Data Submission from UltraTech | UTS work on submittals | Greg Ellner |
| LL | 9/7/00 — Memo from GMP Associates | Comments on submittal | Lee Mansfield |
| MM | 9/7/00 — Submittal from GMP Associates | Comments on submittal | Greg Ellner |
| NN | 9/14/00 — Letter to Gary Jeppson (Bodell) | Comments on response to | Greg Ellner |

| | | | |
|---|---|---|---|
| | from Greg Ellner (UltraTech) | submittal | |
| OO | 2000 — Project Submittal from UltraTech Systems, Inc. | Submittal | Greg Eller . |
| PP | 10/2/00— Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |
| QQ | 10/2/00 — Fax with Submittal from Horace Payne (UltraTech) to Gary Jeppson (Bodell) | UTS work on submittals | Greg Ellner |
| RR | 10/4/00 — Letter from Safwat Gergis (GMP) to Kevin Harvey (Bodell) | (GMP's instruction to Bodell to supply Trojan | Safwat Gergis |
| SS | 10/11/00 — Letter from Leroy Humke (Bodell) to Robert Clay and David Schwarezel (Trojan Tech.) | Bodell 's requirement to purchase Trojan | James Honke |
| TT | 10/00 — Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS' work; Title 22 for vertical system | Greg Ellner |
| UU | 10/23/00 — Letter from Richard Sakaji (Dept. of Health Services) to Greg Ellner (UltraTech) | Title 22 approved for vertical system | Greg Ellner |
| VV | 10/30/00 — Email from Cyril Hamada to Dennis Kaneshiro | City's re-cap of events; approval of UTS | Cyril Hamada Guy Inouye |
| WW | 11/2/00 — Fax from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | UTS' continued work on submittals | Greg Ellner |
| XX | 11/8/00 — Fax from Tom Swan (Bodell) to Safwat Gergis ((IMP) | UTS submittals ~ | Safwat Gergis |
| YY | 11/28/00— Submittal Review Comments from | Comments on submittal | Lee Mansfield |

|  | GMP Associates |  |  |
|---|---|---|---|
| ZZ | 12/00— Letter from Greg Ellner (UltraTech) to Gary Yee (City & County of Honolulu) | Post-bid substitution request for Vertical System | Greg Ellner |
| AAA | 12/13/00 — Letter from Greg Ellner (UltraTech) to Gary Jeppson (Bodell) | Rejection of submittal and response | Greg Ellner |
| BBB | 12/15/00 — Contract Cover Sheet from Bodell Construction | Submittal of 30C | James Honke |
| CCC | 12/19/00 — Submittal Review Comments from GMP Associates | Rejection of submittal of 30C | Lee Mansfield |
| DDD | 12/19/00 — Submittal Review Comments from GMP Associates | Rejection of submittal of 30C | James Honke |

**(k)     Further Discovery or Motions**:

Significant discovery remains to be completed.

Depositions of the following individuals remain:

1.    Cyril Hamada (City)

2.    Dennis Kaneshiro (City)

3.    Eldon Franklin (City)

4.    Guy Inouye (City)

5.    Theodore Saito (City)

6.    James Honke (City)

7.    Lee Mansfield (GMP)

8.    Safwat Gergis (GMP)

    9.    Bruce Bell (GMP's expert)

    10.   Sidney Ellner (UTS' expert)

**(l)   Stipulation**

    None.

**(m)  Amendments, Dismissal**

    None.


**(n)   Settlement Discussion**

    Ongoing.

**(o)   Agreed Statement**

    Not applicable.

**(p)   Bifurcation, Separate Trial Issues**

    Not applicable.

**(q)   Reference to Master or Magistrate**

    Not applicable.

**(r)   Appointment and Limitation of Experts**

    Not applicable.

**(s)   Trial**

    A jury trial is demanded.

**(t)    Estimate of Trial Time**

Three weeks.

**(u)    Claims of Privilege or Work Product**

GMP and the City have a Joint Defense Agreement which asserts joint defense privilege.

**(v)   Miscellaneous**

None.

Dated:  Honolulu, Hawaii,  _____September 15, 2006_____

_____
RICHARD C. SUTTON, JR.
Attorney for Defendant, Cross-
Claim Defendant, Cross-Claim
Plaintiff, OHIO PACIFIC TECH
CORPORATION fka GMP
ASSOCIATES, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BODELL CONSTRUCTION, a Utah Corporation, | CIVIL NO.  CV03-00706 HG-LEK |
| Plaintiff, | CERTIFICATE OF SERVICE |
| vs. | |
| OHIO PACIFIC TECH CORPORATION, INC., fka GMP ASSOCIATES, INC., an Ohio Corporation; CITY AND COUNTY OF HONOLULU; ULTRATECH SYSTEMS, a Foreign Corporation, | |
| Defendants. | |

CITY AND COUNTY OF
HONOLULU,

      Defendant,
      Cross-Claim Plaintiff,
      Cross-Claim Defendant

      vs.

ULTRATECH SYSTEMS, a Foreign
Corporation,

      Defendant,
      Cross-Claim Defendant,

Cross-Claim Plaintiff,
OHIO PACIFIC TECH, INC., fka
GMP ASSOCIATES, INC., an Ohio
Corporation,

       Defendant,
       Cross-Claim Plaintiff
       Cross-Claim Defendant

       vs.

ULTRATECH SYSTEMS, a Foreign
Corporation

       Defendant,
       Cross-Claim Defendant,
       Cross-Claim Plaintiff,

(Caption Continued)

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a copy of the foregoing was duly served on each of the following in the manner specified below, on September 15, 2006, addressed as follows:

|  | Mailed | Delivered |
|---|---|---|
| DAVID SCHULMEISTER, ESQ.<br>KRISTIN S. SHIGEMURA, ESQ.<br>Cades Schutte<br>1000 Bishop Street, Suite 1200<br>Honolulu, Hawaii 96813<br><br>Attorneys for Plaintiff<br> BODELL CONSTRUCTION | **X** |  |

|                     | Mailed | Delivered |
|---------------------|:------:|:---------:|

BERT T. KOBAYASHI, JR., ESQ.    **X**
RONALD T. OGOMORI, ESQ.
GEORGE GUSMAN, ESQ.
Kobayashi, Sugita & Goda
999 Bishop Street, Suite 2600
Honolulu, Hawaii  96813

Attorneys for Defendant
Cross-Claim Plaintiff/Defendant and
Third-Party Plaintiff/Counterclaim Defendant
CITY & COUNTY OF HONOLULU


ADRIAN W. ROSEHILL, ESQ.    **X**
OWEN H. MATSUNAGA, ESQ
ALAN J. MA, ESQ.
Gerson & Hieneman
American Savings Bank Tower
1001 Bishop Street, Suite 780
Honolulu, Hawaii  96813

Attorneys for Third-Party Defendant
ENGINEERED SYSTEMS, INC.

<u>Mailed</u>        <u>Delivered</u>

ADAM R. BIALEK, ESQ.                **X**
Wilson Elsner Moskowitz
Edelman & Dicker, LLP
3 Gannett Drive
White Plains, New York 10604-3407

Attorney for Defendant
ULTRA TECH SYSTEMS, INC.

DATED:  Honolulu, Hawaii, _____September 15, 2006_____.

RICHARD C. SUTTON, JR.
Attorney for Defendant,
Cross-Claimant-Defendant,
Cross-Claim Plaintiff OHIO
PACIFIC TECH
CORPORATION fka GMP
ASSOCIATES