# EXHIBIT 86





December 13, 2000

Bodell Construction
586 West Fine Drive
Salt Lake City, Utah 84115

ATTN: Gary Jeppson
SUBJ: Wahiawa WWTP Effluent Reuse & Wahiawa Reservoir Outfall Adjustment

Dear Mr. Jeppson:

We appreciate your efforts in faxing us the November 29 rejection of the UV equipment submittal (30B).

It is unfortunate that the format of the Engineer's submittal review and rejection was without explanation nor indication of requested correction. A blanket rejection (does not meet specification) without an explanation or rationale as to why specification is not being met raises the question as to whether our UV equipment received a fair and unbiased review. With timing being of the essence, rejection by the Engineer without any explanation does not seem appropriate.

The 11/28 letter from GMP states that the City has concurred with the rejection and non complying items. As it is our desire to provide a UV system that answers all of the owners concerns we request written confirmation of the City's position on each and every item of non compliance along with the City's rationale for non compliance so we may properly address these issues.

In the hope that a fair and unbiased submittal review is available to UltraTech Systems, responses to GMP's rejection are offered. With timing being of the essence as stated by Safwat Gergis' letter of 11/28 it is expected that this document will be immediately reviewed.

000284



15 Kay Fries Drive • Stony Point, NY 10980 • (914) 429-0017 • FAX (914) 429-7527

Remarks: The UV submittal and associated equipment is in compliance with the requirements for this project. UltraTech has submitted a non proprietary UV system that more than equals all disinfection performance requirements of Section 11376. Section 11376 describes a sole source patented UV system utilizing proprietary UV lamps. This proprietary UV system can only be supplied by one foreign UV manufacturer and GMP is aware of this. UltraTech can not choose to provide the specified UV equipment which is why a substitution request was entered and granted for the UV equipment we have submitted.

2. The rejected submittal contains in tab 3 detailed dosage calculations establishing the UV dosages required in paragraph 2.3B. We have also provided dosage calculations for a flow of 2.5 MGD.

   In tab 1 performance levels per 2.3B. are listed, we are adding the following:

   Fecal Coliforms shall not exceed 200 MPN/100ml for any proper sample.

3. The overall purpose of an experience clause is to determine quality assurance. We are a company in the wastewater UV disinfection business for 8 years with personnel possessing over 150 years of UV disinfection experience. UltraTech has 100 wastewater UV installations and our personnel are responsible for hundreds more. In similar sized systems we use the same ballasts, lamps and controls for both our horizontal and vertical systems. In either orientation, factors such as (lamp) wattage, intensity and life remain the same. We feel that we more than meet the experience requirements stated in the specification and have a precedent with the owner who currently has one of our systems. If GMP feels otherwise, what specific engineering parameters regarding vertical UV disinfection operation differs from horizontal operation so that a vertical system is considered a different type of equipment?. Should GMP have valid engineering concerns we would be pleased to address any and all of them.

   To further our position that we meet the experience clause of the specification and to illustrate that the purpose of the experience clause is to limit new upstart UV suppliers with no history or successful installations we point to specification section 2.1.C requiring that the UV system be furnished with the manufacturer's latest components and equipment available at time of shipment. This requirement is for the UV system to be furnished with the latest and greatest components available. If the equipment is to be built with the latest components, then the experience being required by specification is primarily that of the UV company and its personnel and not the components themselves.

4. The specification in 1.3B.D states:

   "UV manufacturer shall submit written third party design validation and test data demonstrating that the system being provided will not have an adverse effect on



000285

surrounding plant equipment. EMI/RFI. distributed capacitance effect, skin effect and ground fault circuit interruption shall be addressed in the report".

The above paragraph applies to a medium pressure lamp UV system but only partially to our low pressure lamp UV system.

Our equipment has no moving part's with exception of small fans. The only potential interference the UV system can exhibit to other plant equipment is that of electrical harmonics. An independent analysis of harmonics was submitted and is located in tab 1. Should this not be sufficient UltraTech, guarantees per 1.5.D that the UV system operation shall not have an adverse effect on other plant equipment's operation.

6. In an effort to make the UV system more user friendly we suggested location of the control panel near the UV lamp modules. As this is not acceptable, the control panel will be located in the reclaim building as shown on the drawings.

7. UltraTech under a change order from Bodell will provide the weir.

8. To provide dose pacing per specification, a continuous on line UV transmission analyzer as manufactured by H. F. Scientific will be provided with the UV system. The UV's PLC, based on the measured UV transmission and effluent flow rate shall determine the number of UV lamps that are to be operating. A cut sheet for UVT analyzer has been provided, see tab 5.

9. See response 8.

11. Section 1.2 A paragraph 3 does not require any data be furnished. The low pressure UV lamp "conforming" UV system is what Title 22 and thus R1 are based on. Any UV system that is not a "conforming" UV system needs to be tested and certified by the California Department of Health Services (CADHS) that it meets Title 22 - NWRI guidelines. Such is the case for the basis of bid medium pressure UV system. Located in the October submittal is certification from CADHS establishing compliance with Title 22 for the submitted UltraTech UV system.

It is our feeling that the Engineer is applying the requirements of Title 22 as they pertain to the non conforming medium pressure UV 4000 system towards our conforming low pressure UV system. This application is not correct.

Non conforming UV systems such as the basis of bid UV 4000 require proof that they can provide the performance of the low pressure conforming UV systems. The NWRI guidelines on page 4 state:
> "UV systems that do not conform to the requirements set forth in this report may be acceptable if it can be demonstrated, to the satisfaction of the California Department of Health Services, that they provide a degree of treatment and



000286

reliability equal to systems that have been shown to be acceptable to the regulatory agencies. Determination of equivalency may require studies directed at the inactivation of viruses or other microorganisms by the proposed UV system. Specific conditions that would require the determination of equivalency using a standard predetermined protocol would include, but not be limited to, the following:

1. When UV disinfection systems with different lamp orientation are proposed.

2. When a UV disinfection system is proposed with a different UV dose than that called for in the guidelines.

3. When medium and high energy UV lamps are proposed.

4. When a UV disinfection system is proposed for wastewater reclamation application where the transmittance of the filtered effluent is below 55 percent"

It may be GMP's prerogative to request additional information, but what additional testing requirements over and above Title 22 are required? As established by the CADHS letter contained in the submittal the UltraTech horizontal UV is certified under the current Title 22 and fully compliant under the NWRI guidelines.

12. UltraTech under a change order from Bodell will provide the crane.

13. All of the alarms listed in 2.4.H.3 are present in the submitted UV system. Below is an item by item comparison:

   a. UV controller failure:
      Not clearly stated in our submittal. We had stated - In the event of failure or interruption of the control and monitoring system the UV system will continue to provide disinfection. We will expand on this by adding, that in the event of a PLC failure all UV lamps in automatic mode will turn on and a contact will be provided to indicate a failure of the PLC

   b. Individual lamp failure:
      Present in submitted UV system see minor alarm 2.

   c. Adjacent lamp failure:
      Present in submitted UV system see major alarm 4.

   d. Multiple lamp failure - >5%
      Present in submitted UV system see major alarm 5.

   e. Module failure

000287



Present in submitted UV system see major alarm 2.

    f. Low UV Intensity
Present in submitted UV system see minor alarms 1.

    g. Low Low UV Intensity
Present in submitted UV system see major alarms 2. Referred to as Unsafe UV intensity.

    h. Low UV transmission
With the addition of the continuous UV transmission analyzer this alarm is now present in the UV system.

    i. Low-low UV transmission
With the addition of the continuous UV transmission analyzer this alarm is now present in the UV system

17. A chemical feed pump shall be provided. Although a chemical pump is not required as stated in our previous submittal, one is provided as evidenced by the cut sheet which is located in tab 5.

18. UltraTech under a change order from Bodell will provide the grating and rubber mats.

With the responses and modifications to our submittal as outlined above we request that the UltraTech submittal be reconsidered and approved as modified. In the event that any items require additional information, we expect that a rationale including an explanation stating why additional information is required will be provided so it may be properly responded. to.

    Sincerely yours,

    Greg E. Ellner
    UltraTech Systems

cc:    Steve Marcellino, Esq. Wilson, Elser, Moskowitz & Dickler
        Jeffrey Lewis, Esq. Patterson, Belknap, Webb & Tyler
        Paul Scott, Engineered Systems
        Leroy Humke, Bodell Construction
        Richard Sakaji, Ph D., California Department of Health Services

000288





# UltraTech
## systems Inc.

December 13, 2000

Bodell Construction
586 West Fine Drive
Salt Lake City, Utah 84115

ATTN: Gary Jeppson
SUBJ: Wahiawa WWTP Effluent Reuse & Wahiawa Reservoir Outfall Adjustment

Dear Mr. Jeppson:

We appreciate your efforts in faxing us the November 29 rejection of the UV equipment submittal (30B).

It is unfortunate that the format of the Engineer's submittal review and rejection was without explanation nor indication of requested correction. A blanket rejection (does not meet specification) without an explanation or rationale as to why specification is not being met raises the question as to whether our UV equipment received a fair and unbiased review. With timing being of the essence, rejection by the Engineer without any explanation does not seem appropriate.

The 11/28 letter from GMP states that the City has concurred with the rejection and non complying items. As it is our desire to provide a UV system that answers all of the owners concerns we request written confirmation of the City's position on each and every item of non compliance along with the City's rationale for non compliance so we may properly address these issues.

In the hope that a fair and unbiased submittal review is available to UltraTech Systems, responses to GMP's rejection are offered. With timing being of the essence as stated by Safwat Gergis' letter of 11/28 it is expected that this document will be immediately reviewed.

000307

15 Kay Fries Drive • Stony Point, NY 10980 • (914) 429-0017 • FAX (914) 429-7527

B00640

Remarks: The UV submittal and associated equipment is in compliance with the requirements for this project. UltraTech has submitted a non proprietary UV system that more than equals all disinfection performance requirements of Section 11376. Section 11376 describes a sole source patented UV system utilizing proprietary UV lamps. This proprietary UV system can only be supplied by one foreign UV manufacturer and GMP is aware of this. UltraTech can not choose to provide the specified UV equipment which is why a substitution request was entered and granted for the UV equipment we have submitted.

2. The rejected submittal contains in tab 3 detailed dosage calculations establishing the UV dosages required in paragraph 2.3B. We have also provided dosage calculations for a flow of 2.5 MGD.

In tab 1 performance levels per 2.3B. are listed, we are adding the following:

Fecal Coliforms shall not exceed 200 MPN/100ml for any proper sample.

3. The overall purpose of an experience clause is to determine quality assurance. We are a company in the wastewater UV disinfection business for 8 years with personnel possessing over 150 years of UV disinfection experience. UltraTech has 100 wastewater UV installations and our personnel are responsible for hundreds more.
In similar sized systems we use the same ballasts, lamps and controls for both our horizontal and vertical systems. In either orientation, factors such as (lamp) wattage, intensity and life remain the same. We feel that we more than meet the experience requirements stated in the specification and have a precedent with the owner who currently has one of our systems. If GMP feels otherwise, what specific engineering parameters regarding vertical UV disinfection operation differs from horizontal operation so that a vertical system is considered a different type of equipment?. Should GMP have valid engineering concerns we would be pleased to address any and all of them.

To further our position that we meet the experience clause of the specification and to illustrate that the purpose of the experience clause is to limit new upstart UV suppliers with no history or successful installations we point to specification section 2.1.C requiring that the UV system be furnished with the manufacturer's latest components and equipment available at time of shipment. This requirement is for the UV system to be furnished with the latest and greatest components available. If the equipment is to be built with the latest components, then the experience being required by specification is primarily that of the UV company and its personnel and not the components themselves.

4. The specification in 1.3B.D states:

"UV manufacturer shall submit written third party design validation and test data demonstrating that the system being provided will not have an adverse effect on surrounding plant equipment. EMI/RFI. distributed capacitance effect, skin effect and ground fault circuit interruption shall be addressed in the report".


UltraTech
systems Inc

000308
B00641

The above paragraph applies to a medium pressure lamp UV system but only partially to our low pressure lamp UV system.

Our equipment has no moving part's with exception of small fans. The only potential interference the UV system can exhibit to other plant equipment is that of electrical harmonics. An independent analysis of harmonics was submitted and is located in tab 1. Should this not be sufficient UltraTech, guarantees per 1.5.D that the UV system operation shall not have an adverse effect on other plant equipment's operation.

6. In an effort to make the UV system more user friendly we suggested location of the control panel near the UV lamp modules. As this is not acceptable, the control panel will be located in the reclaim building as shown on the drawings.

7. UltraTech under a change order from Bodell will provide the weir.

8. To provide dose pacing per specification, a continuous on line UV transmission analyzer as manufactured by H. F. Scientific will be provided with the UV system. The UV's PLC, based on the measured UV transmission and effluent flow rate shall determine the number of UV lamps that are to be operating. A cut sheet for UVT analyzer has been provided, see tab 5.

9. See response 8.

11. Section 1.2 A paragraph 3 does not require any data be furnished. The low pressure UV lamp "conforming" UV system is what Title 22 and thus R1 are based on. Any UV system that is not a "conforming" UV system needs to be tested and certified by the California Department of Health Services (CADHS) that it meets Title 22 - NWRI guidelines. Such is the case for the basis of bid medium pressure UV system. Located in the October submittal is certification from CADHS establishing compliance with Title 22 for the submitted UltraTech UV system.

It is our feeling that the Engineer is applying the requirements of Title 22 as they pertain to the non conforming medium pressure UV 4000 system towards our conforming low pressure UV system. This application is not correct.

Non conforming UV systems such as the basis of bid UV 4000 require proof that they can provide the performance of the low pressure conforming UV systems. The NWRI guidelines on page 4 state:
> "UV systems that do not conform to the requirements set forth in this report may be acceptable if it can be demonstrated, to the satisfaction of the California Department of Health Services, that they provide a degree of treatment and reliability equal to systems that have been shown to be acceptable to the regulatory agencies. Determination of equivalency may require studies directed at the inactivation of viruses or other microorganisms by the proposed UV system.


UltraTech
systems Inc

B00642

000309

Specific conditions that would require the determination of equivalency using a standard predetermined protocol would include, but not be limited to, the following:

1. When UV disinfection systems with different lamp orientation are proposed.

2. When a UV disinfection system is proposed with a different UV dose than that called for in the guidelines.

3. When medium and high energy UV lamps are proposed.

4. When a UV disinfection system is proposed for wastewater reclamation application where the transmittance of the filtered effluent is below 55 percent"

It may be GMP's prerogative to request additional information, but what additional testing requirements over and above Title 22 are required? As established by the CADHS letter contained in the submittal the UltraTech horizontal UV is certified under the current Title 22 and fully compliant under the NWRI guidelines.

12. UltraTech under a change order from Bodell will provide the crane.

13. All of the alarms listed in 2.4.H.3 are present in the submitted UV system. Below is an item by item comparison:

a. UV controller failure:
Not clearly stated in our submittal. We had stated - In the event of failure or interruption of the control and monitoring system the UV system will continue to provide disinfection. We will expand on this by adding, that in the event of a PLC failure all UV lamps in automatic mode will turn on and a contact will be provided to indicate a failure of the PLC

b. Individual lamp failure:
Present in submitted UV system see minor alarm 2.

c. Adjacent lamp failure:
Present in submitted UV system see major alarm 4.

d. Multiple lamp failure - >5%
Present in submitted UV system see major alarm 5.

e. Module failure
Present in submitted UV system see major alarm 2.

f. Low UV Intensity
Present in submitted UV system see minor alarms 1.



B00643

000310

    g. Low Low UV Intensity
   Present in submitted UV system see major alarms 2. Referred to as Unsafe UV intensity.

    h. Low UV transmission
   With the addition of the continuous UV transmission analyzer this alarm is now present in the UV system.

    i. Low-low UV transmission
   With the addition of the continuous UV transmission analyzer this alarm is now present in the UV system

17. A chemical feed pump shall be provided. Although a chemical pump is not required as stated in our previous submittal, one is provided as evidenced by the cut sheet which is located in tab 5.

18. UltraTech under a change order from Bodell will provide the grating and rubber mats.

With the responses and modifications to our submittal as outlined above we request that the UltraTech submittal be reconsidered and approved as modified. In the event that any items require additional information, we expect that a rationale including an explanation stating why additional information is required will be provided so it may be properly responded to.

Sincerely yours,

Greg E. Ellner
UltraTech Systems

cc: Steve Marcellino, Esq. Wilson, Elser, Moskowitz & Dickler
    Jeffrey Lewis, Esq. Patterson, Belknap, Webb & Tyler
    Paul Scott, Engineered Systems
    Leroy Humke, Bodell Construction
    Richard Sakaji, Ph D., California Department of Health Services



000311        B00644